BRIAN A. VOGEL (No. 167413)
HEATHER A. QUEST (No. 186749)
THE LAW OFFICES OF BRIAN A. VOGEL, PC
770 County Square Drive, Suite 104
Ventura, CA 93003
Telephone: (805) 654-0400
Facsimile: (805) 654-0326
E-Mail: brian@bvogel.com; heather@bvogel.com

BARRETT S. LITT (No. 45527)
DAVID S. McLANE (No. 124952)
KAYE, McLANE & BEDNARSKI, LLP
234 East Colorado Boulevard, Suite 230
Pasadena, California 91101
Telephone: (626) 844-7660
Facsimile: (626) 844-7670
E-Mail: dmclane@kmbllp.com; klahue@kmbllaw.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| M.S., an Individual by and through his Guardian Ad Litem, MARY RODGERS-VEY, and O.M., an Individual by and through his Guardian Ad Litem, ADRIAN MOJICA, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>    vs.<br><br>COUNTY OF VENTURA; VENTURA | Case No.<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. §1983, AND DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

1

CLASS ACTION COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF AND DAMAGES

COUNTY SHERIFF'S OFFICE;                  )
VENTURA COUNTY SHERIFF GEOFF             )
DEAN, an Official; CALIFORNIA            )
FORENSIC MEDICAL GROUP;                   )
TAYLOR FITHIAN, an Official as            )
Director of California Forensic Medical   )
Group; PAM AHLIN, an Official as          )
Director of California Department of State )
Hospitals; HARRY OREOL, an Official as    )
Director of Patton State Hospital; MHM    )
SERVICES OF CALIFORNIA, INC.;             )
MARCUS LOPEZ, an Official as Director     )
of MHM Services of California, Inc; and   )
DOES 1 through 10, inclusive,             )
                                          )
                    Defendants.           )
_____ )

## I.   INTRODUCTION

1.      Under California law, a person accused of a crime cannot be tried or punished while that person is mentally incompetent.  Penal Code § 1367.  A court may find a defendant is mentally incompetent if, as a result of mental disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner. *Id.*  Such a finding triggers a process designed to evaluate, treat and restore the defendant's mental health so that judicial proceedings may resume.  If a court determines that a defendant is mentally incompetent, all proceedings in the criminal prosecution are suspended and civil proceedings are instituted until the defendant regains mental competence or a finding is made that the detainee is unlikely to regain competence.  Penal Code § 1370(a)(1)(B).

2

CLASS ACTION COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF AND DAMAGES

2.      The vast majority of defendants found incompetent to stand trial ("IST") have very few resources and are unable to post bail. These detainees generally remain in the county jail while they are evaluated, adjudicated IST, and then subsequently placed in a treatment facility.

3.      During the IST evaluation and restoration periods, speedy trial rights are automatically waived, and detainees lose statutory pre-trial custody credits applicable to criminal pre-trial detainees.  Unfortunately, Defendants have persistently failed to provide adequate mental health treatment or competency restoration services on a timely basis to IST detainees. Stays of criminal proceedings pending the evaluation, placement recommendation, preparation of the mental health commitment packet, and time spent on the waiting list for placement in a California Department of State Hospitals ("DSH") treatment facility often last for months before any restorative treatment begins.  As a result, these individuals often end up spending more time in jail prior to adjudication than they would if they had pled guilty.  More importantly, the delays have caused individuals with mental health disabilities to suffer needless deterioration of their mental health as they sit in jails, frequently in prolonged isolation, for weeks and months before receiving the mental health treatment and restoration services Defendants are responsible for providing.

## II.      JURISDICTION AND VENUE

4.      This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 12132.

5.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343 (civil rights jurisdiction).

CLASS ACTION COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF AND DAMAGES

6.      Venue in the United States District Court, Central District of California, is based upon 28 U.S.C. § 1391(a) (2) in that a substantial part of the events giving rise to the claims occurred in this district.

### III. PARTIES

### PLAINTIFF REPRESENTATIVES

7.      Mary Rodgers-Vey is the mother and guardian ad litem of M.S. who has a lengthy history of mental illness. M.S. was arrested on August 22, 2015, on suspicion of a felony violation of first degree residential burglary. He was booked into the Ventura County Jail the same day.  On August 24, 2015, the Ventura County District Attorney filed a complaint alleging a single felony count of residential burglary as well as several allegations that he had suffered a prior conviction for a serious felony and had not remained free of prison custody for five years following his release on parole.  Bail was set at $175,000 and he was remanded to the custody of the Sheriff.  On August 25, 2015, M.S. was arraigned in Ventura Superior Court.  He waived arraignment and entered a plea of not guilty.

8.      On November 5, 2015, M.S.'s attorney declared a doubt as to his competency to stand trial pursuant to Penal Code section 1368. Criminal proceedings were suspended and civil proceedings were instituted. That same day, Dr. Katherine Emerick, Ph.D., Forensic Psychologist, was ordered to perform a competency evaluation.  Dr. Emerick found M.S. to be incompetent to stand trial and filed a report with the court.  On November 30, 2015, M.S. was formally found to be incompetent to stand trial by the Ventura County Superior Court.  The court made a finding that M.S. consented to the administration of psychotropic medications and referred the case to MHM Services of California, Inc. ("MHM Services"), for a placement recommendation.

4

CLASS ACTION COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF AND DAMAGES

9.     On December 14, 2015, the court held a hearing on placement.  A letter from MHM Services was filed and the court ordered placement at any state hospital. The court found that the maximum commitment time was 3 years and awarded custody credit of 0 actual days and 0 days of Penal Code section 4019 additional credit for a total of 0 days of custody credit. M.S. was committed to the DSH pursuant to Penal Code section 1368.  M.S. was remanded to the custody of the sheriff and the sheriff was ordered to transport him to Patton  State Hospital ("Patton").  On December 24, 2015, the mental health commitment packet was sent to the transportation unit of the VCSO.  On April 27, 2016, M.S. was transported to Patton for treatment 150 days after being found IST.

10.     During his incarceration, M.S. was disciplined numerous times for a variety of violations of the jail rules.  Most of his violations and subsequent discipline arose because of his mental illness.  For example, M.S. believed that he was being attacked by the devil in his cell.  Because he believed that the devil had somehow changed a part of his plastic armband to metal, he tore it off.  He was also in altercation with another inmate whom M.S. perceived as "acting weird."  He was also disciplined for throwing feces against the wall of his cell after he ran out of toilet paper and was not brought another roll by the guards after several requests. His discipline included loss of commissary, loss of visits, and isolation in a safety cell.

11.     Adrian Mojica is the brother and guardian ad litem of O.M., who has a lengthy history of mental illness. O.M. was arrested on April 8, 2014, on suspicion of a felony violation of attempted robbery. He was booked into the Ventura County Jail the same day. On April 10, 2014, the Ventura County District Attorney filed a complaint alleging a single felony count of attempted robbery, as well as several allegations that he had suffered a prior conviction for a serious felony, and that he

CLASS ACTION COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF AND DAMAGES

personally used a weapon during the commission of the crime.  Bail was set at $110,000, and he was remanded to the custody of the Sheriff.  On May 7, 2014, O.M. was arraigned in Ventura Superior Court and entered a plea of not guilty. O.M.'s attorney declared a doubt as to his competency to stand trial pursuant to Penal Code section 1368. Criminal proceedings were suspended and civil proceedings were instituted. That same day, Dr. John Nightingale, Ph.D., Clinical Psychology, was ordered to perform a competency evaluation.  On September 10, 2014, after numerous continuances, a second doctor, Dr. Ines Monguio, Clinical Psychologist, filed a report with the court finding O.M. incompetent to stand trial. The case was continued to September 24, 2014, and referred for a placement recommendation.

12.     On September 26, 2014, the court made a finding that O.M. consented to the administration of psychotropic medications and ordered placement in Patton State Hospital. The court found that the maximum commitment time was 3 years and awarded custody credit of 172 actual days and 172 days of Penal Code section 4019 additional credit, for a total of 344 days of custody credit.  O.M. was committed to the DSH pursuant to Penal Code section 1368, and the sheriff was ordered to transport him to Patton State Hospital. On December 23, 2015, a notice of admission to DSH was filed. On March 30, 2015, DSH sent the court a certificate of mental competency. On April 10, O.M. returned to court. The case was continued to April 17, 2015, and criminal proceedings resumed on that date.

13.     O.M. entered a plea of not guilty. A preliminary hearing was held on May 11, 2015, and O.M. was held to answer the charges and remained in custody with bail set at $110,000.  After several continuances, O.M.'s attorney requested that he receive mental health treatment, pursuant to Penal Code § 4011.6.  The request was denied. On August 14, 2015, O.M. entered a plea of not guilty by reason of

CLASS ACTION COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF AND DAMAGES

insanity, and two psychiatrists were appointed to evaluate him. On October 13, 2015, Penal Code § 1026 (not guilty by reason of insanity) evaluations were received from both doctors.

14.      On November 25, 2015, O.M.'s attorney declared a doubt as to his mental competence.  Criminal proceedings were suspended, civil proceedings were instituted, and Dr. Thomas Lauren was appointed to examine O.M..  On December 24, 2015, it appears that the court found O.M. incompetent to stand trial and continued the case to January 6, 2016 for a hearing on placement. On January 6, 2016, a placement recommendation was received from MHM Services and the court committed O.M. to DSH pursuant to Penal Code section 1368. O.M. was remanded to the custody of the sheriff, and the court ordered the sheriff to transport him to Patton State Hospital. The court made a finding that the maximum term was 3 years, and awarded custody credit for 521 actual days, 0 days of Penal Code section 4019 credit, for a total of 521 days of custody credit. On January 28, 2016, the mental health commitment packet for Patton State Hospital was sent to the transportation unit of the VCSO.  As of April 28, 2016, O.M. has not yet been transported to Patton and remains in custody at the VCPTDF.

15.      During his incarceration, O.M. has been disciplined several times for a variety of violations of the jail rules.  Most of his violations and subsequent discipline arose because of his mental illness.  For example, O.M. describes "hearing voices," and one of the strongest voices is his former Catholic priest. O.M. becomes agitated when he hears these voices and was in an altercation with another inmate early on in his incarceration after hearing the voices.  He was also disciplined for "hoarding" pills which he did not want to take.  His discipline included 5 days in an isolation cell, commonly referred to as "the hole," loss of

CLASS ACTION COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF AND DAMAGES

visits, commissary, and a disciplinary diet.   O.M. is housed alone and is locked down 23 hours a day.

## PUTATIVE CLASS MEMBERS

16.     Plaintiff has identified a number of putative class members ("Class Members") whose factual circumstances raise common questions of fact and law.

17.     Putative class member S.S. was booked into the Ventura County Jail on October 6, 2015.  She was found incompetent to stand trial on November 10, 2015. The Ventura County Superior Court ordered her transferred to Patton on December 15, 2015. Her "Patton Packet" was sent to the Ventura County Sheriff's Office Transportation Unit on December 16, 2015.  As of April 29, 2016, S.S. has not yet been transported to Patton and remains in custody at the VCPTDF.

18.     Putative class member T.C. was booked into Ventura County Jail on September 10, 2015.  He was found incompetent to stand trial on December 22, 2015.  The Ventura County Superior Court ordered him transferred to Patton on January 11, 2016. His "Patton Packet" was sent to the Ventura County Sheriff's Office Transportation Unit on January 21, 2016.  As of April 29, 2016, T.C. has not yet been transported to Patton and remains in custody at the VCPTDF.

19.     Putative class member R.O. was booked into Ventura County Jail on September 2, 2015.  He was found incompetent to stand trial on December 4, 2015. The Ventura County Superior Court ordered him transferred to Patton on December 11, 2015.  His "Patton Packet" was sent to the Ventura County Sheriff's Office Transportation Unit on December 24, 2015.  As of April 29, 2016, R.O. has not yet been transported to Patton and remains in custody at the VCPTDF.

20.     Putative class member T.B. was booked into Ventura County Jail on September 11, 2015.  He was found incompetent to stand trial on December 3, 2015.  The Ventura County Superior Court ordered him transferred to Patton on

CLASS ACTION COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF AND DAMAGES

December 17, 2015. His "Patton Packet" was sent to the Ventura County Sheriff's Office Transportation Unit on December 24, 2015.  As of April 29, 2016, T.B. has not yet been transported to Patton and remains in custody at the VCPTDF.

21.     Putative class member S.M. was booked into Ventura County Jail on August 5, 2015.  He was found incompetent to stand trial on September 30, 2015.  The Ventura County Superior Court ordered him transferred to Patton on February 16, 2015. His "Patton Packet" was sent to the Ventura County Sheriff's Office Transportation Unit on December 24, 2015.  As of April 29, 2016, S.M. has not yet been transported to Patton and remains in custody at the VCPTDF.

22.     Several recent IST detainees such as D.D., M.C.,  J.S., and R.M. were transported to Patton after several months and the lengths of their incarceration prior to their transportation to Patton are set forth below in order to provide concrete examples of the length of pre-treatment delay experienced by members of the Class.

23.     D.D. was booked into the Ventura County Jail on July 14, 2015.  He was found incompetent to stand trial on October 19, 2015.  The Ventura County Superior Court ordered him transferred to Patton on November 4, 2015.  His "Patton Packet" was sent to the Ventura County Sheriff's Office Transportation Unit on November 17, 2015.  He was transported to Patton State Hospital on or about February 18, 2016, (107 days after he was ordered to be transported to Patton).

24.     M.C. was booked into the Ventura County Jail on September 13, 2015.  He was found incompetent to stand trial on October 21, 2015.  The Ventura County Superior Court ordered him transferred to Patton on November 17, 2015 His "Patton Packet" was sent to the Ventura County Sheriff's Office Transportation Unit on November 25, 2015.  He was transported to Patton State

CLASS ACTION COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF AND DAMAGES

Hospital on or about March 3, 2016, (108 days after he was ordered to be transported to Patton).

25.     J.S. was booked into Ventura County Jail on July 23, 2015.  He was found incompetent to stand trial on October 28, 2015.  The Ventura County Superior Court ordered him transferred to Patton on November 24, 2015.  His "Patton Packet" was sent to the Ventura County Sheriff's Office Transportation Unit on December 7, 2015.  He was transported to Patton State Hospital on or about February 25, 2016 (94 days after he was ordered to be transported to Patton).

26.     Putative class member R.M. was booked into Ventura County Jail on September 25, 2015.  He was found incompetent to stand trial on October 29, 2015.  The Ventura County Superior Court ordered him transferred to Patton on November 30, 2015.  His "Patton Packet" was sent to the Ventura County Sheriff's Office Transportation Unit on December 8, 2015. He was transported to Patton State Hospital on or about March 18, 2016, (109 days after he was ordered to be transported to Patton).

## COUNTY DEFENDANTS

27.     Defendant County of Ventura ("Ventura County") is now, and at all times herein mentioned, was a governmental entity duly organized and existing under the laws of the State of California and which oversees, owns, operates, manages, directs and controls Ventura County Sheriff's Office ("VCSO"), an agency of Ventura County.

28.     Defendant Ventura County Sheriff Geoff Dean ("Sheriff Dean") is now, and at all times herein mentioned, was the Sheriff of Ventura County and was responsible for the management, supervision, control and policy making at the two primary custodial facilities in the county, i.e., the Ventura County Pre-Trial Detention Facility ("VCPTDF"), and the Todd Road Jail ("TRJ").  Sheriff Dean is

CLASS ACTION COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF AND DAMAGES

also responsible for the supervision and training of deputies employed by VCSO. Sheriff Dean is further responsible for the care, custody, control and safekeeping of inmates in his custody. *California Government Code* §§ 26605, 26610; *California Penal Code* § 4006.  In sum, Sheriff Dean is responsible for: (1) the management and control of Ventura County Jail; (2) the selection, promotion, supervision, training, discipline and retention of agents and employees working at the VCPTDF and TRJ, including custodial staff, counselors, advisors, nurses, doctors, physician assistants, medical staff, mental health staff, education staff and supervisors; and (3) the implementation of policies and procedures at VCPTDF.

29.    California Forensic Medical Group, Inc. ("CFMG"), its agents, deputies, employees, and independent contractors, at all times mentioned herein was and is an agent of defendants Ventura County, VCSO and Sheriff Dean, and was and is under contract with defendants Ventura County, VCSO and Sheriff Dean for the purpose of providing medical care and treatment on behalf of defendants Ventura County, VCSO and Sheriff Dean to civil detainees, pre-trial detainees, and sentenced prisoners under the care and control of defendants Ventura County.  At all times mentioned herein, CFMG and it agents and employees were acting under color of law and under the direction an agency of Defendants Ventura County, VCSO and Sheriff Dean to provide such care and treatment to civil detainees, pre-trial detainees, and sentenced prisoners.

30.    Defendant Taylor Fithian, M.D. ("Fithian"), at all times mentioned herein, was and is an employee and/or agent of VCSO, SHERIFF DEAN and CFMG, acting under color of law, who was and is the Medical Director of CFMG and the physician responsible for establishing policies and practices for CFMG employees and was and is responsible for training, supervision and management of CFMG

CLASS ACTION COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF AND DAMAGES

employees including doctors, nurses, and nurse practitioners at VCPTDF. Defendant Fithian is being sued in his official capacity.

31.     Defendant Paul Adler, M.D. ("Adler"), at all times mentioned herein, was and is an employee and/or agent of VCSO, SHERIFF DEAN and CFMG, acting under color of law, who was and is the On-site Medical Director of CFMG at VCPTDF and the physician hired to provide medical care, attention, and treatment to civil detainees, pre-trial detainees, and sentenced prisoners at VCPTDF.  He was and is the physician responsible for the hiring, training, supervision and management of subordinate medical staff providers, including doctors, nurses, and nurse practitioners at VCPTDF.  Defendant Adler is being sued in his official capacity.

32.     Defendant Ronald Pollack, M.D. ("Pollack"), at all times mentioned herein, was and is an employee and/or agent of VCSO, SHERIFF DEAN and CFMG, acting under color of law, who was and is a psychiatrist at VCPTDF and a physician hired to provide mental health treatment civil detainees, pre-trial detainees, and sentenced prisoners at VCPTDF.  Defendant Pollack is being sued in his official capacity.

## STATE DEFENDANTS

33.     Defendant Pam Ahlin ("Ahlin") is the Director of DSH and is sued in her official capacity. Defendant Ahlin is ultimately responsible for the administration of all of the DSH facilities in the state including Patton State Hospital.

34.     California Department of State Hospitals ("DSH") is the state agency in the state of California designated to administer or supervise the administration of competency evaluation and restoration treatment pursuant to Penal Code § 1368 *et seq*. (involuntary forensic commitment). As such, DSH utilizes federal and state funds in operating services in a way that ensures compliance with state and federal

CLASS ACTION COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF AND DAMAGES

constitutional and statutory protections for people involuntarily detained in order to receive mental health services. Although IST detainees are regularly sent to Patton from VCPTDF, there are six other DSH mental health treatment facilities in California which potentially could house Ventura County IST detainees if there are no beds available at Patton:  DSH-Atascadero, DSH-Coalinga, DSH-Metropolitan LA, DSH-Napa, DSH-Sacramento, DSH-Salinas Valley, DSH-Stockton and DSH-Vacaville.

35.    Defendant Harry Oreol ("Oreol") is the Executive Director of Patton and is sued in his official capacity.  As Executive Director, Defendant Oreol is responsible for oversight, operation, and management of Patton and competency restoration services for individuals with mental health disabilities in pending criminal proceedings.  Defendant Oreol knows or should know that incarcerated IST detainees who are ordered to be placed at Patton will not receive appropriate mental health treatment in in the jail for months while Patton's "one in, one out" policy slowly grinds forward.

36.    Patton State Hospital ("Patton") is a state psychiatric hospital that is charged with serving the needs of California individuals with pending criminal proceedings who are ordered to receive competency restoration services.

37.    Defendant MHM Services of California, Inc, ("MHM Services") is a corporation whose parent company, MHM Services, Inc., is headquartered in Vienna, Virginia.  The State of California and DSH entered into a contract with MHM Services in 2014 to provide mental health services in Ventura County including the operation of the Forensic Conditional Release Program or "CONREP".  DSH has also delegated to MHM Services the task of conducting placement recommendations for IST detainees housed in the Ventura County jails.

CLASS ACTION COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF AND DAMAGES

38.     Defendant Marcus Lopez ("Lopez") is the CONREP Community Program Director of MHM Services of California, Inc. As the Community Program Director, Defendant Lopez is responsible for oversight, operation, and management of MHM Services' provision of mental health services in Ventura County including the operation of the Forensic Conditional Release Program or "CONREP".  Defendant Lopez signs most of the IST placement recommendations for DHS and the overwhelming majority of the recommendations are for placement in Patton.  Defendant Lopez knows or should know that incarcerated IST detainees who are ordered to be placed at Patton will not receive appropriate mental health treatment in in the jail for months while Patton's "one in, one out" policy slowly grinds forward.

39.     The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as Does 1 through 10, inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names.  Plaintiff will amend this complaint to show such true names and capacities when she has ascertained the same.  Plaintiff is informed, believes and thereupon alleges that each Doe Defendant named herein is, in some manner, legally responsible for the acts complained of.  Does 1 through 10 are VCSO, CFMG, DSH, and MHM Services employees and/or agents who have not yet been identified, including but not limited to, executive, management, and/or policy making staff and employees, and medical and mental health professionals.

40.     At all times herein mentioned Defendants, and each of them, were the agents, servants and employees of each of the Co-Defendants, and in doing the things herein mentioned were acting within the purpose, course and scope of their authorities and employment as such agents, servants and employees, and with the permission and consent of said Co-Defendants.

CLASS ACTION COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF AND DAMAGES

## IV.  CLASS ACTION ALLEGATIONS

41.      Plaintiffs M.S. and O.M. by and through their guardians ad litem, (collectively, the "Class Plaintiffs") bring this action pursuant to Civil Rule 23(a) and (b)(2) on behalf of themselves and all others similarly situated (collectively, the "Class Members") as members of the following proposed plaintiff class (the "Class"):

> All persons who have been, during the time period of November 30, 2013, until the present, and/or who will be in the future:
>
> (1) incarcerated at the VCPTDF or TRJ;
>
> (2) charged with a crime in Ventura County, California;
>
> (3) found by a court to be incompetent to stand trial and are held in custody while awaiting competency restoration services; and,
>
> (4)  have waited for court-ordered  restoration  services for seven or more days from the date on which the court entered an order for the Sheriff to transfer the person to a treatment facility.

42.      Class Members seek class-wide equitable, declaratory and injunctive relief pursuant to  Federal Rules of Civil Procedure, Rule 23(a), b(1), and (b)(2).

43.      On information and belief, the Class consists of well over 100 individuals making individual joinder of all members impractical. The identities of the Class Members are ascertainable through records held by Defendants and/or the courts from which the evaluations or restorations of competency were ordered.  Members of the Class may be informed of the pendency of this class action by use of contact information in the possession of Defendants as well as from court records.

44.      There are questions of law and fact common to the Class.

45.      The questions of law and fact common to all members of the Class include, but are not limited to: (a) whether IST detainees' 6th and 14th Amendment rights to

CLASS ACTION COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF AND DAMAGES

a speedy trial are being violated; (b) whether County Defendants' failure to provide adequate mental health treatment and restorative services to IST detainees for weeks or months prior to their admission to a treatment facility which provides restorative services violates the Fourteenth Amendment; (c) whether County Defendants' failure to provide adequate mental health treatment and restorative services to IST detainees for weeks or months prior to their admission to a treatment facility which provides restorative services violates the Americans with Disabilities Act; (d) whether State Defendants' failure to admit IST detainees to appropriate restorative treatment facilities within seven days from the date on which the court entered an order for the Sheriff to transfer the person to a treatment facility violates the due process clause of the Fourteenth Amendment; and, (e) whether State Defendants' failure to admit IST detainees to appropriate restorative treatment facilities within seven days from the date on which the court entered an order for the Sheriff to transfer the person to a treatment facility violates the Americans with Disabilities Act. These common questions of law and fact predominate over any questions affecting only individual Class Members.

46.    Class Plaintiffs' claims are typical of the claims of the Class because Defendants have uniformly failed to provide timely adequate mental health treatment and competency restoration services to Class Plaintiffs and to the Class in the same manner.

47.    Class Plaintiffs will fairly and adequately protect interests of the Class. There are no conflicts of interest between the Class Plaintiffs and other Class Members. The Class Plaintiffs will vigorously prosecute this action on behalf of the Class. The Class Plaintiffs are represented by competent counsel with considerable skill and experience in civil rights and class action litigation, who will vigorously prosecute this case on behalf of the Class.

CLASS ACTION COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF AND DAMAGES

48.     Defendants have acted or refused to act on grounds generally applicable to the entire class, thereby making final injunctive and declaratory relief appropriate with respect to the Class as a whole.

49.     The claims asserted herein are capable of repetition while evading review. There is a continuing and substantial public interest in these matters.

50.     The class action is the best available method for the efficient adjudication of these legal issues because individual litigation of these claims would be impracticable, and individual litigation would be unduly burdensome to the courts. Further, individual litigation has the potential to result in inconsistent or contradictory judgments. A class action in this case presents fewer management problems and provides the benefits of single-adjudication, economies of scale, and comprehensive supervision by a single court.

## V. FACTS ENTITLING PLAINTIFFS AND CLASS MEMBERS TO RELIEF

**A.     Defendants' Duty to Provide Adequate Mental Health Care and Restorative Treatment.**

51.     Penal Code § 1367 *et. seq.* governs procedures for evaluation and restoration of competency.  If, during the pendency of an action a doubt arises in the mind of the judge as to the mental competence of the defendant, the court shall order a hearing into the mental competence of the defendant.  Penal Code § 1368(a). When an order for a hearing has been issued, all proceedings in the criminal prosecution are suspended. Penal Code § 1368(c).  The court then appoints a licensed psychologist or psychiatrist to examine the defendant.  Penal Code § 1369.  "**While the person is confined pursuant to order of the court under this section, he or she shall be provided with necessary care and treatment**." Penal Code § 1369(a), emphasis added.

CLASS ACTION COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF AND DAMAGES

52.     If the defendant is found mentally competent, the criminal process shall resume. Penal Code § 1370(a)(1)(A).  If the defendant is found mentally incompetent, [criminal proceedings] shall be suspended until the person becomes mentally competent. Penal Code § 1370(a)(1)(B).

53.     Once the IST finding is made by the court in a felony case, the court shall order that the mentally incompetent defendant be delivered by the sheriff to a state hospital for the care and treatment of the mentally disordered, as directed by the State Department of State Hospitals, or to any other available public or private treatment facility, including a county jail treatment facility or the community-based residential treatment system. . . if the facility has a secured perimeter or a locked and controlled treatment facility, approved by the community program director that will promote the defendant's speedy restoration to mental competence, or placed on outpatient status as specified in Penal Code Section 1600. Penal Code § 1370(B)(i).

54.     Once the IST finding is made by the court in a misdemeanor case, the defendant shall be delivered by the sheriff to an available public or private treatment facility approved by the county mental health director that will promote the defendant's speedy restoration to mental competence, or placed on outpatient status.  Penal Code § 1370.01(a)(1).

55.     Once a defendant is found IST, the court shall order the county mental health director or his or her designee to evaluate the defendant and to submit to the court within 15 judicial days of the order a written recommendation as to whether the defendant should be required to undergo outpatient treatment, or committed to a treatment facility. No person shall be admitted to a treatment facility or placed on outpatient status under this section without having been evaluated by the county mental health director or his or her designee. No person shall be admitted to a state

18

CLASS ACTION COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF AND DAMAGES

hospital under this section unless the county mental health director finds that there is no less restrictive appropriate placement available and the county mental health director has a contract with the State Department of State Hospitals for these placements.  Penal Code § 1370.01(a)(2)(a).

56.    If a defendant is charged with a felony and determined to be IST, he or she may be held for treatment for a maximum of three years from the date of commitment or for a period equal to the maximum term of imprisonment for the most serious charge, whichever is shorter.  Penal Code § 1370(c)(1).  If the person never regains competence, the criminal charges may be dismissed, and under certain circumstances, the person may become the subject of a conservatorship.

57.    If a defendant is charged with a misdemeanor and determined to be IST,  he or she may held one year from the date of commitment or a period of commitment equal to the maximum term of imprisonment provided by law for the most serious offense charged in the misdemeanor complaint, whichever is shorter.  Penal Code § 1370.01(c)(1).  If the person never regains competence, the criminal charges may be dismissed, and under certain circumstances, the person may become the subject of a conservatorship.

58.    No specific time limits for transfer to a treatment facility or release to an outpatient program are set forth in California's statutory framework.  After the court makes a formal finding that the defendant is IST, Penal Code section 1370(F)(2)(A) requires the community program director or designee, (MHM Services in this case), to evaluate the defendant and submit a written recommendation on placement within 15 judicial days of the IST order.  No placement can be made prior to receipt of the written recommendation. DSH also refuses to accept an IST detainee in the absence of a fully completed "mental health commitment packet" (which is often also referred to as a "Patton packet" or

19

CLASS ACTION COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF AND DAMAGES

"transfer packet"). The list of documents required to be included in the transfer packet is set forth in Penal Code § 1370(a)(3).[1]

59.     In addition to the list of documents set forth in Penal Code § 1370(a)(3), DSH requires an order from the court that Patton (or other DSH facility) be

---

[1] Penal Code § 1370(a)(3):

(3) When the court orders that the defendant be committed to the State Department of State Hospitals or other public or private treatment facility, the court shall provide copies of the following documents prior to the admission of the defendant to the State Department of State Hospitals or other treatment facility where the defendant is to be committed:

(A)     The commitment order, including a specification of the charges.

(B) A computation or statement setting forth the maximum term of commitment in accordance with subdivision (c).

(C) A computation or statement setting forth the amount of credit for time served, if any, to be deducted from the maximum term of commitment.

(D) State summary criminal history information.

(E) Arrest reports prepared by the police department or other law enforcement agency.

(F) Court-ordered psychiatric examination or evaluation reports.

(G) The community program director's placement recommendation report.

(H) Records of a finding of mental incompetence pursuant to this chapter arising out of a complaint charging a felony offense specified in Section 290 or a pending Section 1368 proceeding arising out of a charge of a Section 290 offense.

(I) Medical records.

CLASS ACTION COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF AND DAMAGES

authorized "to administer involuntary antipsychotic medication to the defendant pursuant to Penal Code section 1370(a)(2)(b)," or a finding by the court that the detainee "consents to the administration of psychotropic medications." DSH also requires that arrest reports be included for each case that the individual is being held for, including all misdemeanors and all violations of probation.  If the transportation packet is incomplete in any way, DSH will not approve the transfer and the IST detainee will not be placed on the waiting list for transfer.

60.     After these procedural hurdles are overcome, the IST detainee is placed on the waiting list for transfer to a treatment facility. The bulk of the delay in transferring IST detainees in Ventura County begins at this stage.  DSH in general and Patton, in particular, have adopted a policy which has come to be known colloquially in Ventura County as "the one in, one out rule."  In essence, DSH will not take a new Ventura County IST detainee "in" until a Ventura County patient currently being treated at Patton has been restored to competency and sent "out" of Patton and back to Ventura County.  Every Thursday, a small number, (usually one, two, or three) of IST detainees are brought back from DSH facilities, usually from Patton.  A correspondingly small number of IST detainees at the jail are then transferred for treatment.  However, it is not unusual for no transfers to occur because no ISTs were returned from DSH that particular week.

61.     California law also allows a county jail to be designated as a "treatment facility," upon concurrence of the Board of Supervisors, the county mental health director, and the county sheriff, but provides that the maximum amount of time that a defendant may be "treated" in a designated county jail is six months.[2]

---

[2] Penal Code § 1369.1. (a):

CLASS ACTION COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF AND DAMAGES

**B.    The Ventura County Jail Does Not Evaluate the Competency of Individuals Charged with Crimes and Does Not Provide Adequate Mental Health Treatment or Competency Restoration Services.**

62.    As noted above, defendant Sheriff Dean contracts with CFMG, a private corporation to provide all of the medical and mental healthcare to detainees housed at the VCPTDF and TRJ.  Only one psychiatrist is employed full-time by CFMG. CFMG staff do not perform competency evaluations.  These evaluations are performed by approved, private psychiatrists and licensed psychologists.

---

As used in this chapter, "treatment facility" includes a county jail. Upon the concurrence of the county board of supervisors, the county mental health director, and the county sheriff, the jail may be designated to provide medically approved medication to defendants found to be mentally incompetent and unable to provide informed consent due to a mental disorder, pursuant to this chapter. In the case of Madera, Napa, and Santa Clara Counties, the concurrence shall be with the board of supervisors, the county mental health director, and the county sheriff or the chief of corrections. The provisions of Sections 1370, 1370.01, and 1370.02 shall apply to antipsychotic medications provided in a county jail, provided, however, that the maximum period of time a defendant may be treated in a treatment facility pursuant to this section shall not exceed six months.

(b) This section does not abrogate or limit any law enacted to ensure the due process rights set forth in *Sell v. United States* (2003) 539 U.S. 166.

The Ventura County jail is not licensed as a "treatment facility" under this provision. The VCPTDF and TRJ have only one psychiatrist on staff to treat the mentally ill in both facilities and does not provide any competency restorative services.

22

CLASS ACTION COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF AND DAMAGES

63.     Neither the VCPTDF nor the TRJ are facilities which are licensed to perform competency restoration services.  Furthermore, CFMG staff are not contracted to perform competency restoration services.  Accordingly, no competency restoration services are provided at the VCPTDF or the TRJ, and therefore, in Ventura County, there is never a Penal Code § 1368 placement recommendation or court order that an IST detainee be treated in the jail.

64.     While CFMG typically provides medication management for people who are willing to take medications, they do not administer medication involuntarily, except in an emergency.

65.     Treatment for IST detainees is generally limited to basic clinical psychiatry and intervention designed to stabilize an individual's mental health condition.

66.     People found incompetent are often overtly psychotic and require special housing or segregation. They are unpredictable and disruptive, taking up valuable resources needed for the care of other inmates. If they refuse to take medications, they often decompensate rapidly.  Because of their unpredictable or disruptive behavior, they are often disciplined which can include being locked in their cells for 23 hours a day, denied visits or phone calls from friends or loved ones, denied commissary privileges or placed on a disciplinary diet, which further exacerbates their mental illness.

67.     Incapacitated criminal defendants have a high risk of suicide, and the longer they are deprived of treatment, the greater the likelihood they will decompensate and suffer unduly.  Because they are often found to be either a danger to themselves or others, they are often strip searched, placed in safety cells and housed in isolation.  Because they are mentally ill and often incapable of defending themselves or controlling unusual behaviors, they are at high risk of being beaten, having their property taken, or otherwise being taken advantage of by fellow

23

CLASS ACTION COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF AND DAMAGES

inmates.  Jails are punitive environments and the conditions of confinement undermine the mental health of these detainees as well as the government's interests in competency restoration and trial.

68.     Jails control inmates through discipline.  Jail disciplinary systems are ineffective for individuals with mental health disabilities, and, in fact, are harmful because many forms of jail discipline may exacerbate their mental health conditions.

69.     Unlike the VCPTDF and TRJ, DSH hospitals can treat a person's mental health disabilities and provide competency restoration services.  Their hospitals are staffed by full-time psychiatrists and psychologists, mental health specialists, social workers, mental health technicians, and nurses.

70.     In addition to assessment, medication evaluation and management, and individual and group psychotherapy, DSH hospitals provide individuals with mental health disabilities with legal skills training to assist them in learning about the law, the roles of the attorneys, witnesses and the court, and what they can expect after returning to court.  This treatment is designed to restore a person to competency to stand trial and to otherwise exercise their constitutional rights meaningfully.

**C.     Defendants Have Failed to Evaluate and/or Treat Individuals with Mental Health Disabilities Who Have Been Charged with a Crime Ventura County in a Timely Fashion.**

71.     According to public records obtained by Plaintiffs' counsel, there are currently more than fifteen people waiting in the VCPTDF and TRJ who have been found incompetent to stand trial, been approved for transportation to Patton or another facility, but have not yet been transported.  Plaintiffs are further informed and believe that at least ten, and probably more, of these civilly committed

CLASS ACTION COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF AND DAMAGES

detainees currently in the custody at VCPTDF or TRJ have been waiting more than 30 days for transportation to a treatment facility after being civilly committed by the court.  Plaintiffs are further informed and believe that at least six, and probably many more, of these civilly committed detainees currently in the custody at VCPTDF or TRJ have been waiting more than 120 days for transportation to a treatment facility after being civilly committed by the court.  One female detainee who is still in custody has been waiting more than six months for transfer to a state hospital. Plaintiffs are further informed and believe that delays of one to six months have been commonplace for several years preceding the date of this filing, and that the class affected by these policies numbers well over 100 individuals. Defendants have consistently failed to timely admit these individuals to DSH hospitals for restoration of competency.

72.     Plaintiffs and those similarly situated each have histories of severe mental health conditions. Most have been ordered by courts presiding over their criminal proceedings to be transported to a DSH hospital to be restored to competency to stand trial.  Plaintiffs have languished in the jail for weeks and months to the detriment of their overall mental health, waiting to receive court-ordered competency restoration services that Defendants are statutorily required to provide.

## VI.     EXHAUSTION OF JURISDICTIONAL PREREQUISITES

73.     Plaintiff representatives on behalf of themselves and Class Members exhausted the administrative remedies required under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, prior to filing this Complaint.

74.     Plaintiff representatives on behalf of themselves and Class Members have filed Government Code section 910 tort claims with the State of California and the County of Ventura.  These claims have not been responded to yet.  Plaintiffs will

CLASS ACTION COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF AND DAMAGES

amend this Complaint to include state law claims for relief in the event the State and County reject them.

## VII.  CLAIMS OF RELIEF

### FIRST CLAIM FOR RELIEF

### (Violation of the Fourteenth Amendment to the United States Constitution (42 U.S.C. § 1983))

75.    The allegations of paragraphs 1–74 above are incorporated herein.

76.    Due process requires that the nature and duration of confinement must bear a reasonable relation to the purpose for which a person is committed.

77.    Once an individual is found unable to aid and assist in his own defense, the only lawful purpose for confinement is to treat so as to return him to competency.

78.    Individuals found unable to aid and assist have a constitutional right to such individualized treatment as will give each of them a realistic opportunity to be cured or to improve their mental condition.

79.    The Ventura County Jails do not have the capacity to provide the restorative mental health treatment required by the United States Constitution.

80.    Acting under color of state law, Defendants have violated and caused violations of the Class Plaintiffs' due process rights pursuant to the Fourteenth Amendment to the United States Constitution.

81.    Unless enjoined by the Court, Defendants will continue to violate and cause the violation of the constitutional rights of the Class Plaintiffs and the Class Members.

### SECOND CLAIM FOR RELIEF

### (Speedy Trial - 42 U.S.C. § 1983, 6th & 14th Amendments)

82.    The allegations of paragraphs 1–81 above are incorporated herein.

CLASS ACTION COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF AND DAMAGES

83.     By their actions of unnecessarily prolonging the incarceration of Plaintiffs and Class Members without trial, Defendants, and each of them, deprived Plaintiffs and Class Members of their constitutional right to a speedy trial in violation of the Sixth and Fourteenth Amendments to the United States Constitution. Therefore Plaintiffs and Class Members are entitled to bring suit and recover damages pursuant to 42 U.S.C. § 1983.

84.     As a direct and proximate cause of the aforementioned acts of Defendants, Plaintiffs and those similarly situated have been damaged in amounts to be determined at trial.

## THIRD CLAIM FOR RELIEF

### (Violation of the Americans with Disabilities Act (42 U.S.C. § 12132 *et seq.*))

85.     The allegations of paragraphs 1–84 above are incorporated herein.

86.     Plaintiffs and the Class are qualified disabled persons as defined in the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132 *et seq.*

87.     Defendants failed to provide reasonable accommodation of the disability of Plaintiffs and the Class; and furthermore.

88.     Unless enjoined by the Court, Defendants will continue to violate and cause the violation of the ADA rights of the Class Plaintiffs and the Class Members.

## VIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

A.     For certification of a class as defined above;

B.     For a declaration that Defendants are depriving Class Members of their due process rights pursuant to the Fourteenth Amendment to the United States Constitution, and the Americans with Disabilities Act;

C.     For the issuance of preliminary and permanent injunctions restraining Defendants from violating the Sixth and Fourteenth Amendments to the United

CLASS ACTION COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF AND DAMAGES

States Constitution and the Americans with Disabilities Act in the confinement of individuals awaiting competency evaluation and/or restoration treatment;

D.      For general, special and compensatory damages for the named Plaintiffs and Class Members, to be determined according to proof;

E.      For any applicable statutory penalties;

F.      For an award of Plaintiffs' costs and attorneys' fees under 42 U.S.C. § 1988 and other applicable statutes; and,

G.      For such other and further relief as the Court may deem just and proper.


Dated: May 4, 2016                    LAW OFFICES OF BRIAN A. VOGEL, PC


                                      By: _____/s/_____
                                          BRIAN A. VOGEL
                                          Attorney for Plaintiffs and Class
                                          Members


## DEMAND FOR JURY TRIAL

        Plaintiffs hereby demand a jury trial.


Dated: May 4, 2016                    LAW OFFICES OF BRIAN A. VOGEL, PC


                                      By: _____/s/_____
                                          BRIAN A. VOGEL
                                          Attorney for Plaintiffs and Class
                                          Members

CLASS ACTION COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF AND DAMAGES