Brian A. Vogel (No. 167413)
E-Mail: brian@bvogel.com
Heather A. Quest (No. 186740)
E-Mail: heather@bvogel.com
THE LAW OFFICES OF BRIAN A. VOGEL, PC
770 County Square Drive, Suite 104
Ventura, California 93003
Telephone: (805) 654-0400
Facsimile: (805) 654-0326

Barrett S. Litt (No. 45527)
E-Mail: blitt@kmbllaw.com
David S. McLane (No. 124952)
E-Mail: dmclane@kmbllaw.com
KAYE, McLANE, BEDNARSKI & LITT, LLP
234 East Colorado Boulevard, Suite 230
Pasadena, California 91101
Telephone: (626) 844-7660
Facsimile: (626) 844-7670

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| M.S., an Individual by and through his Guardian Ad Litem, MARY RODGERS-VEY, and O.M., an Individual by and through his Guardian Ad Litem, ADRIAN MOJICA, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF VENTURA; | Case No. 16-03084-BRO-RAO<br>[Hon. Beverly R. O'Connell]<br><br>***FIRST AMENDED* CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**1.  29 U.S.C. §794, §504 *et seq;***<br>**2.  42 U.S.C. §1983;**<br>**3.  42 U.S.C. §12131*et seq.*;**<br>**4.  California Government Code §11135**<br>**5.  California Civil Code §51 *et seq.*;**<br>**6.  California Civil Code §52.1;**<br>**7.  California Civil Code §54 *et seq.*** |

| | |
|---|---|
| VENTURA COUNTY SHERIFF'S OFFICE; VENTURA COUNTY SHERIFF GEOFF DEAN, an Official; CALIFORNIA FORENSIC MEDICAL GROUP; TAYLOR FITHIAN, an Official as Director of California Forensic Medical Group; PAUL ADLER, M.D., an Official as Director of California Forensic Medical Group; RONALD POLLACK, M.D.; an Official; CALIFORNIA DEPARTMENT OF STATE HOSPITALS; PAM AHLIN, an Official as Director of California Department of State Hospitals; PATTON STATE HOSPITAL; HARRY OREOL, an Official as Director of Patton State Hospital; MHM SERVICES OF CALIFORNIA, INC.; MARCUS LOPEZ, an Official as Director of MHM Services of California, Inc.; and DOES 1 through 10, inclusive, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) **DEMAND FOR JURY TRIAL** |

Defendants.

_____

## I.        INTRODUCTION

1.        Under California law, a person accused of a crime cannot be tried or punished while that person is mentally incompetent.  Penal Code §1367.  A court may find a defendant is mentally incompetent if, as a result of mental disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner. *Id*.

1

2.      If, during the pendency of an action a doubt arises in the mind of the judge as to the mental competence of the defendant, the court shall order a hearing into the mental competence of the defendant.  Penal Code §1368(a).  When an order for a hearing has been issued, all proceedings in the criminal prosecution are suspended. Penal Code §1368(c).

3.      The court then appoints a licensed psychologist or psychiatrist to examine the defendant.  Penal Code §1369.  "While the person is confined pursuant to order of the court under this section, he or she shall be provided with necessary care and treatment." Penal Code §1369(a), emphasis added.

4.      If a court determines that a defendant is mentally incompetent, all proceedings in the criminal prosecution are suspended and civil proceedings are instituted until the defendant regains mental competence or a finding is made that the detainee is unlikely to regain competence.  Penal Code §1370(a)(1)(B).  Such a finding triggers a process designed to evaluate, treat and restore the defendant's mental health so that judicial proceedings may resume.

5.      "In the meantime, the court shall order that the mentally incompetent defendant be delivered by the sheriff to a state hospital ... as directed by the State Department of State Hospitals," or to an approved and available treatment facility "that will promote the defendant's speedy restoration to mental competence," unless the court orders the defendant placed on outpatient status. Penal Code §1370 (a)(1)(B)(i), emphasis added.

6.      The vast majority of detainees found incompetent to stand trial ("IST") have very few resources and are unable to post bail. These detainees generally remain in the county jail while they are evaluated, adjudicated IST, and then subsequently placed in a treatment facility.

7.      During the IST evaluation and restoration periods, speedy trial rights are automatically waived, and detainees lose statutory pre-trial custody credits

applicable to criminal pre-trial detainees, (e.g. Penal Code §4019), and receive only day-for-day credit pursuant to Penal Code §1375.5.  Unfortunately, Defendants have persistently failed to provide adequate mental health treatment or competency restoration services on a timely basis to IST detainees. Stays of criminal proceedings pending the evaluation, placement recommendation, preparation of the 1370 Packet ("1370 Packet," see fn. 1, *infra*), and time spent on the waiting list for placement in a California Department of State Hospitals ("DSH") treatment facility often last for months before any restorative treatment begins.  As a result, these individuals often end up spending more time in jail prior to adjudication than they would if they had pled guilty to a misdemeanor or non-serious felony.  More importantly, the delays have caused individuals with mental health disabilities to suffer needless deterioration of their mental health as they sit in jails, frequently in prolonged isolation, for weeks and months before receiving the mental health treatment and restoration services Defendants are responsible for providing.

8.    The failure to timely transfer IST detainees for treatment delays their restoration to competency and also delays the issuance of the treatment facility's mandatory report concerning the defendant's progress toward becoming mentally competent.  Penal Code §1370.1 (b)(1) requires that "within 90 days of admission of a person committed pursuant to subdivision (a), the executive director or designee of the state hospital… shall make a written report to the committing court and the regional center director or a designee concerning the defendant's progress toward becoming mentally competent  within 90 days of admission."  If the report shows that the defendant has been restored to competency, he is returned to court within ten days so that criminal proceedings can resume. (See Penal Code §§1372(a) and 1370.1(a)(1)(C)).

9.     If the defendant has not become mentally competent, but the report shows a substantial likelihood that he will become competent, treatment may continue. (See Penal Code §§1370(b)(1), 1370.1(b)(1)).  If the facility determines that "there is no substantial likelihood that the defendant will regain mental competence in the foreseeable future," it must return him to court so that the court and prosecution can determine whether to institute civil commitment proceedings or release him from custody. (See Penal Code §§370(b)(1)(A),1370.1(b)(1), (c)(2)).

10.    Unreasonable delays in treating IST detainees have persisted for years, even after California and federal appellate courts have held that these types of delays are unlawful and numerous superior court judges have ordered the State Defendants to show cause why they should not be held in contempt for failing to admit incompetent defendants to an appropriate treatment facility in a timely manner.

## II.    JURISDICTION AND VENUE

11.    This action is brought pursuant to 42 U.S.C. §1983 and 42 U.S.C. §12131et seq..

12.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 (federal question jurisdiction), 28 U.S.C. §1343 (civil rights jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction).

13.    Venue in the United States District Court, Central District of California, is based upon 28 U.S.C. §1391(a) (2) in that a substantial part of the events giving rise to the claims occurred in this district.

## III.   PARTIES

### A.    PLAINTIFF REPRESENTATIVES

14.    Mary Rodgers-Vey is the mother and guardian ad litem of M.S. who has a lengthy history of mental illness. M.S. was arrested on August 22, 2015, on

4

suspicion of a felony violation of first degree residential burglary. He was booked into the Ventura County Jail the same day.  On August 24, 2015, the Ventura County District Attorney filed a complaint alleging a single felony count of residential burglary as well as several allegations that he had suffered a prior conviction for a serious felony and had not remained free of prison custody for five years following his release on parole.  Bail was set at $175,000 and he was remanded to the custody of the Sheriff.  On August 25, 2015, M.S. was arraigned in Ventura Superior Court.  He waived arraignment and entered a plea of not guilty.

15.     On November 5, 2015, M.S.'s attorney declared a doubt as to his competency to stand trial pursuant to Penal Code §1368. Criminal proceedings were suspended and civil proceedings were instituted. That same day, Dr. Katherine Emerick, Ph.D., Forensic Psychologist, was ordered to perform a competency evaluation.  Dr. Emerick found M.S. to be incompetent to stand trial and filed a report with the court.  On November 30, 2015, M.S. was formally found to be incompetent to stand trial by the Ventura County Superior Court.  The court made a finding that M.S. consented to the administration of psychotropic medications and referred the case to MHM Services of California, Inc. ("MHM Services"), for a placement recommendation.

16.     On December 14, 2015, the court held a hearing on placement.  A letter from MHM Services was filed and the court ordered placement at any state hospital. The court found that the maximum commitment time was 3 years and awarded custody credit of 0 actual days and 0 days of Penal Code §4019 additional credit for a total of 0 days of custody credit. M.S. was committed to the DSH pursuant to Penal Code §1368.  M.S. was remanded to the custody of the sheriff and the sheriff was ordered to transport him to Patton State Hospital ("Patton").  On December 24, 2015, the 1370 Packet was sent to the transportation unit of the

5

1   VCSO.  On or about April 28, 2016, M.S. was transported to Patton for treatment,
2   151 days after being found IST and 136 days after he was ordered to be transported
3   to Patton.

4          17.     During his incarceration, M.S. was disciplined numerous times for a
5   variety of violations of the jail rules.  Most of his violations and subsequent
6   discipline arose because of his mental illness.  For example, M.S. believed that he
7   was being attacked by the devil in his cell.  Because he believed that the devil had
8   somehow changed a part of his plastic armband to metal, he tore it off.  He was
9   also in an altercation with another inmate whom M.S. perceived as "acting weird."
10  Additionally, he was disciplined for throwing feces against the wall of his cell after
11  he ran out of toilet paper and was not brought another roll by the guards after
12  several requests.   His discipline included loss of commissary, loss of visits, and
13  isolation in a safety cell.

14         18.     Adrian Mojica is the brother and guardian ad litem of O.M., who has a
15  lengthy history of mental illness. O.M. was arrested on April 8, 2014, on suspicion
16  of a felony violation of attempted robbery. He was booked into the Ventura County
17  Jail the same day. On April 10, 2014, the Ventura County District Attorney filed a
18  complaint alleging a single felony count of attempted robbery, as well as several
19  allegations that he had suffered a prior conviction for a serious felony, and that he
20  personally used a weapon during the commission of the crime.  Bail was set at
21  $110,000, and he was remanded to the custody of the Sheriff.  On May 7, 2014,
22  O.M. was arraigned in Ventura Superior Court and entered a plea of not guilty.
23  O.M.'s attorney declared a doubt as to his competency to stand trial pursuant to
24  Penal Code §1368. Criminal proceedings were suspended and civil proceedings
25  were instituted. That same day, Dr. John Nightingale, Ph.D., Clinical Psychologist,
26  was ordered to perform a competency evaluation.  On September 10, 2014, after
27  numerous continuances, a second doctor, Dr. Ines Monguio, Clinical Psychologist,
28

filed a report with the court finding O.M. incompetent to stand trial. The case was continued to September 24, 2014, and referred for a placement recommendation.

19.     On September 26, 2014, the court made a finding that O.M. consented to the administration of psychotropic medications and ordered placement in Patton State Hospital. The court found that the maximum commitment time was 3 years and awarded custody credit of 172 actual days and 172 days of Penal Code §4019 additional credit, for a total of 344 days of custody credit. O.M. was committed to the DSH pursuant to Penal Code §1368, and the sheriff was ordered to transport him to Patton State Hospital. On December 23, 2015, a notice of admission to DSH was filed. On March 30, 2015, DSH sent the court a certificate of mental competency. On April 10, O.M. returned to court. The case was continued to April 17, 2015, and criminal proceedings resumed on that date.

20.     O.M. entered a plea of not guilty. A preliminary hearing was held on May 11, 2015, and O.M. was held to answer the charges and remained in custody with bail set at $110,000. After several continuances, O.M.'s attorney requested that he receive mental health treatment, pursuant to Penal Code §4011.6. The request was denied. On August 14, 2015, O.M. entered a plea of not guilty by reason of insanity, and two psychiatrists were appointed to evaluate him. On October 13, 2015, Penal Code §1026 (not guilty by reason of insanity) evaluations were received from both doctors.

21.     On November 25, 2015, O.M.'s attorney declared a doubt as to his mental competence. Criminal proceedings were suspended, civil proceedings were instituted, and Dr. Thomas Lauren was appointed to examine O.M.. On December 24, 2015, it appears that the court found O.M. incompetent to stand trial and continued the case to January 6, 2016 for a hearing on placement. On January 6, 2016, a placement recommendation was received from MHM Services and the court committed O.M. to DSH pursuant to Penal Code §1368. O.M. was remanded

to the custody of the sheriff, and the court ordered the sheriff to transport him to Patton State Hospital. The court made a finding that the maximum term was 3 years, and awarded custody credit for 521 actual days, 0 days of Penal Code §4019 credit, for a total of 521 days of custody credit. On January 28, 2016, the 1370 Packet for Patton State Hospital was sent to the transportation unit of the VCSO.

22.     During his incarceration, O.M. has been disciplined several times for a variety of violations of the jail rules.  Most of his violations and subsequent discipline arose because of his mental illness.  For example, O.M. describes "hearing voices," and one of the strongest voices is his former Catholic priest. O.M. becomes agitated when he hears these voices and was in an altercation with another inmate early on in his incarceration after hearing the voices.  He was also disciplined for "hoarding" pills which he did not want to take.  His discipline included 5 days in an isolation cell, commonly referred to as "the hole," loss of visits, commissary, and a disciplinary diet.  Thereafter, O.M. was housed alone and and locked down 23 hours a day.  On May 19, 2016, O.M. was transported to Patton for treatment, 148 days after being found IST and 135 days after he was ordered to be transported to Patton.

**B.     PUTATIVE CLASS MEMBERS**

23.     Plaintiff has identified a number of putative class members ("Class Members") whose factual circumstances raise common questions of fact and law. As of the date of the filing of this first amended complaint, most of the putative class members have been transported to Patton State Hospital.

24.     Putative class member S.S. was booked into the Ventura County Jail on October 6, 2015.  She was found incompetent to stand trial on November 10, 2015. The Ventura County Superior Court ordered her transferred to Patton on December 15, 2015. Her "1370 Packet," was sent to the Ventura County Sheriff's

Office Transportation Unit on December 16, 2015.  She was transported to Patton State Hospital on or about May 23, 2016, 196 days after she was found IST and 161 days after she was ordered to be transported to Patton.

25.     Putative class member T.C. was booked into Ventura County Jail on September 10, 2015.  He was found incompetent to stand trial on December 22, 2015.  The Ventura County Superior Court ordered him transferred to Patton on January 11, 2016. His 1370 Packet was sent to the Ventura County Sheriff's Office Transportation Unit on January 21, 2016.  He was transported to Patton State Hospital on or about May 12, 2016, 143 days after he was found IST and 123 days after he was ordered to be transported to Patton.

26.     Putative class member R.O. was booked into Ventura County Jail on September 2, 2015.  He was found incompetent to stand trial on December 4, 2015. The Ventura County Superior Court ordered him transferred to Patton on December 11, 2015.  His 1370 Packet was sent to the Ventura County Sheriff's Office Transportation Unit on December 24, 2015.  He was transported to Patton State Hospital on or about May 19, 2016, 168 days after he was found IST and 161 days after he was ordered to be transported to Patton.

27.     Putative class member T.B. was booked into Ventura County Jail on September 11, 2015.  He was found incompetent to stand trial on December 3, 2015.  The Ventura County Superior Court ordered him transferred to Patton on December 17, 2015. His 1370 Packet was sent to the Ventura County Sheriff's Office Transportation Unit on December 24, 2015.  He was transported to Patton State Hospital on or about May 12, 2016, 162 days after he was found IST and 148 days after he was ordered to be transported to Patton.

28.     Putative class member S.N. (erroneously named as S.M. in the initial complaint in the matter) was booked into Ventura County Jail on August 5, 2015. He was found incompetent to stand trial on September 30, 2015.  The Ventura

County Superior Court ordered him transferred to Patton on February 16, 2015. His 1370 Packet was sent to the Ventura County Sheriff's Office Transportation Unit on February 16, 2016.  He was transported to Patton State Hospital on or about May 19, 2016, 233 days after he was found IST and 94 days after he was ordered to be transported to Patton.

29.     Several recent IST detainees such as D.D., M.C., J.S., and R.M. were transported to Patton after several months and the lengths of their incarceration prior to their transportation to Patton are set forth below in order to provide concrete examples of the length of pre-treatment delay experienced by members of the Class.

30.     D.D. was booked into the Ventura County Jail on July 14, 2015.  He was found incompetent to stand trial on October 19, 2015.  The Ventura County Superior Court ordered him transferred to Patton on November 4, 2015.  His 1370 Packet was sent to the Ventura County Sheriff's Office Transportation Unit on November 17, 2015.  He was transported to Patton State Hospital on or about February 18, 2016, 122 days after he was found IST and 107 days after he was ordered to be transported to Patton.

31.     M.C. was booked into the Ventura County Jail on September 13, 2015.  He was found incompetent to stand trial on October 21, 2015.  The Ventura County Superior Court ordered him transferred to Patton on November 17, 2015.  His 1370 Packet was sent to the Ventura County Sheriff's Office Transportation Unit on November 25, 2015.  He was transported to Patton State Hospital on or about March 3, 2016, 134 days after he was found IST and 108 days after he was ordered to be transported to Patton.

32.     J.S. was booked into Ventura County Jail on July 23, 2015.  He was found incompetent to stand trial on October 28, 2015.  The Ventura County Superior Court ordered him transferred to Patton on November 24, 2015.  His 1370

10

Packet was sent to the Ventura County Sheriff's Office Transportation Unit on December 7, 2015.  He was transported to Patton State Hospital on or about February 25, 2016, 121 days after he was found IST and 94 days after he was ordered to be transported to Patton.

33.     Putative class member R.M. was booked into Ventura County Jail on September 25, 2015.  He was found incompetent to stand trial on October 29, 2015.  The Ventura County Superior Court ordered him transferred to Patton on November 30, 2015.  His 1370 Packet was sent to the Ventura County Sheriff's Office Transportation Unit on December 8, 2015. He was transported to Patton State Hospital on or about March 18, 2016, 141days after he was found IST and 109 days after he was ordered to be transported to Patton.

### C.     COUNTY DEFENDANTS

34.     Defendant County of Ventura ("Ventura County") is now, and at all times herein mentioned was a governmental entity duly organized and existing under the laws of the State of California and which oversees, owns, operates, manages, directs and controls Defendant Ventura County Sheriff's Office ("VCSO"), an agency of Ventura County.

35.     At all times mentioned herein, Defendant Ventura County Sheriff's Office ("VCSO") was a department of Defendant COUNTY responsible for overseeing the operation, management, and supervision of the VCPTDF.  At all relevant times, VCPTDF was and is managed directly by the VCSO.  Defendant COUNTY was ultimately responsible for the management and supervision of the VCSO deputies.

36.     Defendant Ventura County Sheriff Geoff Dean ("Sheriff Dean") is now, and at all times herein mentioned, was the Sheriff of Ventura County and was responsible for the management, supervision, control and policy making at the two primary custodial facilities in the county, i.e., the Ventura County Pre-Trial

11

Detention Facility ("VCPTDF"), and the Todd Road Jail ("TRJ").  Sheriff Dean is also responsible for the supervision and training of deputies employed by VCSO. Sheriff Dean is further responsible for the care, custody, control and safekeeping of inmates in his custody. *California Government Code* §§26605, 26610; *California Penal Code* §4006.  In sum, Sheriff Dean is responsible for: (1) the management and control of Ventura County Jail; (2) the selection, promotion, supervision, training, discipline and retention of agents and employees working at the VCPTDF and TRJ, including custodial staff, counselors, advisors, nurses, doctors, physician assistants, medical staff, mental health staff, education staff and supervisors; and (3) the implementation of policies and procedures at VCPTDF.

37.     Defendant California Forensic Medical Group, Inc. ("CFMG"), its agents, deputies, employees, and independent contractors, at all times mentioned herein was and is an agent of defendants Ventura County, VCSO and Sheriff Dean, and was and is under contract with defendants Ventura County, VCSO and Sheriff Dean for the purpose of providing medical care and treatment on behalf of defendants Ventura County, VCSO and Sheriff Dean to civil detainees, pre-trial detainees, and sentenced prisoners under the care and control of defendants Ventura County.  At all times mentioned herein, CFMG and its agents and employees were acting under color of law and under the direction and agency of Defendants Ventura County, VCSO and Sheriff Dean to provide such care and treatment to civil detainees, pre-trial detainees, and sentenced prisoners.

38.     Defendant Taylor Fithian, M.D. ("Fithian"), at all times mentioned herein, was and is an employee and/or agent of VCSO, Sheriff Dean and CFMG, acting under color of law, who was and is the Medical Director of CFMG and the physician responsible for establishing policies and practices for CFMG employees and was and is responsible for training, supervision and management of CFMG

12

1  employees including doctors, nurses, and nurse practitioners at VCPTDF.

2  Defendant Fithian is being sued in his official and individual capacity.

3      39.   Defendant Paul Adler, M.D. ("Adler"), at all times mentioned herein,

4  was and is an employee and/or agent of VCSO, Sheriff Dean and CFMG, acting

5  under color of law, who was and is the On-site Medical Director of CFMG at

6  VCPTDF and the physician hired to provide medical care, attention, and treatment

7  to civil detainees, pre-trial detainees, and sentenced prisoners at VCPTDF.  He was

8  and is the physician responsible for the hiring, training, supervision and

9  management of subordinate medical staff providers, including doctors, nurses, and

10  nurse practitioners at VCPTDF.  Defendant Adler is being sued in his official and

11  individual capacity.

12      40.   Defendant Ronald Pollack, M.D. ("Pollack"), at all times mentioned

13  herein, was and is an employee and/or agent of VCSO, Sheriff Dean and CFMG,

14  acting under color of law, who was and is a psychiatrist at VCPTDF and a

15  physician hired to provide mental health treatment civil detainees, pre-trial

16  detainees, and sentenced prisoners at VCPTDF.  Defendant Pollack is being sued

17  in his official and individual capacity.

18      **D.   STATE DEFENDANTS**

19      41.   Defendant California Department of State Hospitals ("DSH") is the

20  state agency in the state of California designated to administer or supervise the

21  administration of competency evaluation and restoration treatment pursuant to

22  Penal Code §1367 *et seq*. (involuntary forensic commitment). As such, DSH

23  utilizes federal and state funds in operating services in a way that ensures

24  compliance with state and federal constitutional and statutory protections for

25  people involuntarily detained in order to receive mental health services. Although

26  IST detainees are regularly sent to Patton from VCPTDF, there are six other DSH

27  mental health treatment facilities in California which potentially could house

28

13

Ventura County IST detainees if there are no beds available at Patton:  DSH-Atascadero, DSH-Coalinga, DSH-Metropolitan LA, DSH-Napa, DSH-Sacramento, DSH-Salinas Valley, DSH-Stockton and DSH-Vacaville. It is sued under the ADA and the Rehabilitation Act only.

42.    Defendant Pam Ahlin ("Ahlin") is the Director of DSH and is sued in her official and individual capacity. Defendant Ahlin is ultimately responsible for the administration of all of the DSH facilities in the state including Patton State Hospital.

43.    Defendant Patton State Hospital ("Patton") is a state psychiatric hospital that is charged with serving the needs of California individuals with pending criminal proceedings who are ordered to receive competency restoration services.  Pursuant to statute, Patton may house "no more than 1,336 patients." Welfare and Institutions Code §4107(c).  However, according to their website located at http://www.dsh.ca.gov/Patton, Patton operates 1,527 beds, 36% of which are used for treatment of IST detainees.  This equates to approximately 550 beds total for IST detainees. It is sued under the ADA and the Rehabilitation Act only.

44.    Defendant Harry Oreol ("Oreol") is the Executive Director of Patton and is sued in his official and individual capacity.  As Executive Director, Defendant Oreol is responsible for oversight, operation, and management of Patton and competency restoration services for individuals with mental health disabilities in pending criminal proceedings.  Defendant Oreol knows or should know that incarcerated IST detainees who are ordered to be placed at Patton will not receive appropriate mental health treatment in the jail for months while Patton's "one in, one out" policy slowly grinds forward.  (See ¶58, *infra*)

45.    Defendant MHM Services of California, Inc, ("MHM Services") is a corporation whose parent company, MHM Services, Inc., is headquartered in Vienna, Virginia.  The State of California and DSH entered into a contract with


MHM Services in 2014 to provide mental health services in Ventura County including the operation of the Forensic Conditional Release Program or "CONREP".  DSH has also delegated to MHM Services the task of conducting placement recommendations for IST detainees housed in the Ventura County jails.

46.    Defendant Marcus Lopez ("Lopez") is the CONREP Community Program Director of MHM Services of California, Inc.  As the Community Program Director, Defendant Lopez is responsible for oversight, operation, and management of MHM Services' provision of mental health services in Ventura County including the operation of the Forensic Conditional Release Program or "CONREP".  Defendant Lopez signs most of the IST placement recommendations for DHS and the overwhelming majority of the recommendations are for placement in Patton.  Defendant Lopez knows or should know that incarcerated IST detainees who are ordered to be placed at Patton will not receive appropriate mental health treatment in in the jail for months while Patton's "one in, one out" policy slowly grinds forward.  (See ¶58, *infra*)

**E.    DOE DEFENDANTS**

47.    The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as Does 1 through 10, inclusive, are unknown to Plaintiffs, who therefore sues said Defendants by such fictitious names.  Plaintiffs will amend this complaint to show such true names and capacities when they have ascertained the same.  Plaintiffs are informed, believe and thereupon allege that each Doe Defendant named herein is, in some manner, legally responsible for the acts complained of.  Does 1 through 10 are VCSO, CFMG, DSH, and MHM Services employees and/or agents who have not yet been identified, including but not limited to, executive, management, and/or policy-making staff and employees, and medical and mental health professionals.

48.     At all times herein mentioned Defendants, and each of them, were the agents, servants and employees of each of the Co-Defendants, and in doing the things herein mentioned were acting within the purpose, course and scope of their authorities and employment as such agents, servants and employees, and with the permission and consent of said Co-Defendants.

## IV.    FACTS ENTITLING PLAINTIFFS AND CLASS MEMBERS TO RELIEF

### A.    Defendants' Duty to Provide Adequate Mental Health Care and Restorative Treatment.

49.     Penal Code §1367 *et. seq.* governs procedures for evaluation and restoration of competency.  If, during the pendency of an action a doubt arises in the mind of the judge as to the mental competence of the defendant, the court shall order a hearing into the mental competence of the defendant.  Penal Code §1368(a).  When an order for a hearing has been issued, all proceedings in the criminal prosecution are suspended. Penal Code §1368(c).  The court then appoints a licensed psychologist or psychiatrist to examine the defendant.  Penal Code §1369.  "While the person is confined pursuant to order of the court under this section, he or she shall be provided with necessary care and treatment." Penal Code §1369(a), emphasis added.

50.     If the defendant is found mentally competent, the criminal process shall resume. Penal Code §1370(a)(1)(A).  If the defendant is found mentally incompetent, [criminal proceedings] shall be suspended until the person becomes mentally competent. Penal Code §1370(a)(1)(B).

51.     Once the IST finding is made by the court in a felony case, the court shall order that the mentally incompetent defendant be delivered by the sheriff to a state hospital for the care and treatment of the mentally disordered, as directed by the State Department of State Hospitals, or to any other available public or private

treatment facility, including a county jail treatment facility or the community-based residential treatment system. . . if the facility has a secured perimeter or a locked and controlled treatment facility, approved by the community program director that will promote the defendant's speedy restoration to mental competence, or placed on outpatient status as specified in Penal Code §1600. Penal Code §1370(B)(i).

52.     Once the IST finding is made by the court in a misdemeanor case, the defendant shall be delivered by the sheriff to an available public or private treatment facility approved by the county mental health director that will promote the defendant's speedy restoration to mental competence, or placed on outpatient status.  Penal Code §1370.01(a)(1).

53.     Once a defendant is found IST, the court shall order the county mental health director or his or her designee to evaluate the defendant and to submit to the court within 15 judicial days of the order a written recommendation as to whether the defendant should be required to undergo outpatient treatment, or committed to a treatment facility. No person shall be admitted to a treatment facility or placed on outpatient status under this section without having been evaluated by the county mental health director or his or her designee. No person shall be admitted to a state hospital under this section unless the county mental health director finds that there is no less restrictive appropriate placement available and the county mental health director has a contract with the State Department of State Hospitals for these placements. Penal Code §1370.01(a)(2)(a).

54.     If a defendant is charged with a felony and determined to be IST, he or she may be held for treatment for a maximum of three years from the date of commitment or for a period equal to the maximum term of imprisonment for the most serious charge, whichever is shorter.  Penal Code §1370(c)(1).  If the person never regains competence, the criminal charges may be dismissed, and under certain circumstances, the person may become the subject of a conservatorship.

17

55.     If a defendant is charged with a misdemeanor and determined to be IST, he or she may held one year from the date of commitment or a period of commitment equal to the maximum term of imprisonment provided by law for the most serious offense charged in the misdemeanor complaint, whichever is shorter. Penal Code §1370.01(c)(1).  If the person never regains competence, the criminal charges may be dismissed, and under certain circumstances, the person may become the subject of a conservatorship.

56.     No specific time limits for transfer to a treatment facility or release to an outpatient program are set forth in California's statutory framework.  After the court makes a formal finding that the defendant is IST, Penal Code §1370(F)(2)(A) requires the community program director or designee, (MHM Services in this case), to evaluate the defendant and submit a written recommendation on placement within 15 judicial days of the IST order.  No placement can be made prior to receipt of the written recommendation. DSH also refuses to accept an IST detainee in the absence of a fully completed 1370 Packet.  A 2015 amendment to Penal Code § 1370 requires that the court send DHS a 1370 Packet prior to the IST detainee's admission.  The list of documents required to be included in the transfer packet is set forth in Penal Code § 1370(a)(3).[1]

---

[1]  Penal Code § 1370(a)(3):
    (3) When the court orders that the defendant be committed to the State Department of State Hospitals or other public or private treatment facility, the court shall provide copies of the following documents prior to the admission of the defendant to the State Department of State Hospitals or other treatment facility where the defendant is to be committed:
    (A)  The commitment order, including a specification of the charges.
    (B)  A computation or statement setting forth the maximum term of commitment in accordance with subdivision (c).
    (C)  A computation or statement setting forth the amount of credit for time served, if any, to be deducted from the maximum term of commitment.
    (D)  State summary criminal history information.

57.     In addition to the list of documents set forth in Penal Code §1370(a)(3),  DSH requires an order from the court that Patton (or other DSH facility) be authorized "to administer involuntary antipsychotic medication to the defendant pursuant to Penal Code §1370(a)(2)(b)," or a finding by the court that the detainee "consents to the administration of psychotropic medications." DSH also requires that arrest reports be included for each case that the individual is being held for, including all misdemeanors and all violations of probation.  If the transportation packet is incomplete in any way, DSH will not approve the transfer and the IST detainee will not be placed on the waiting list for transfer.

58.     After these procedural hurdles are overcome, the IST detainee is placed on the waiting list for transfer to a treatment facility. The bulk of the delay in transferring IST detainees in Ventura County begins at this stage.  DSH in general and Patton, in particular, have adopted a policy which has come to be known colloquially in Ventura County as "the one in, one out rule."  In essence, DSH will not take a new Ventura County IST detainee "in" until a Ventura County patient currently being treated at Patton has been restored to competency and sent "out" of Patton and back to Ventura County.  Every Thursday, a small number, (usually one, two, or three) of IST detainees are brought back from DSH facilities, usually from Patton.  A correspondingly small number of IST detainees at the jail are then transferred for treatment.  However, it is not unusual for no transfers to occur because no ISTs were returned from DSH that particular week.

(E) Arrest reports prepared by the police department or other law enforcement agency.

(F) Court-ordered psychiatric examination or evaluation reports.

(G) The community program director's placement recommendation report.

(H) Records of a finding of mental incompetence pursuant to this chapter arising out of a complaint charging a felony offense specified in Section 290 or a pending Section 1368 proceeding arising out of a charge of a Section 290 offense.

(I) Medical records.

19

59.     California law also allows a county jail to be designated as a "treatment facility," upon concurrence of the Board of Supervisors, the county mental health director, and the county sheriff, but provides that the maximum amount of time that a defendant may be "treated" in a designated county jail is six months.[2]

B.     **The Ventura County Jail Does Not Evaluate the Competency of Individuals Charged with Crimes and Does Not Provide Adequate Mental Health Treatment or Competency Restoration Services.**

60.     As noted above, Defendant Sheriff Dean contracts with CFMG, a private corporation to provide all of the medical and mental healthcare to detainees housed at the VCPTDF and TRJ.  Only one psychiatrist is employed full-time by CFMG.  CFMG staff do not perform competency evaluations.  These evaluations are performed by approved, private psychiatrists and licensed psychologists.

61.     Neither the VCPTDF nor the TRJ are facilities which are licensed to perform competency restoration services.  Furthermore, CFMG staff are not contracted to perform competency restoration services.  Accordingly, no competency restoration services are provided at the VCPTDF or the TRJ pursuant to Penal Code §1369.1(a), and there is never a Penal Code §1368 placement

---

[2] Penal Code § 1369.1(a):

As used in this chapter, "treatment facility" includes a county jail. Upon the concurrence of the county board of supervisors, the county mental health director, and the county sheriff, the jail may be designated to provide medically approved medication to defendants found to be mentally incompetent and unable to provide informed consent due to a mental disorder, pursuant to this chapter. In the case of Madera, Napa, and Santa Clara Counties, the concurrence shall be with the board of supervisors, the county mental health director, and the county sheriff or the chief of corrections. The provisions of Sections 1370, 1370.01, and 1370.02 shall apply to antipsychotic medications provided in a county jail, provided, however, that the maximum period of time a defendant may be treated in a treatment facility pursuant to this section shall not exceed six months.

(b) This section does not abrogate or limit any law enacted to ensure the due process rights set forth in *Sell v. United States* (2003) 539 U.S. 166.

recommendation or court order that an IST detainee be treated in Ventura County jail facilities.

62.     While CFMG typically provides medication management for people who are willing to take medications, they do not administer medication involuntarily, except in an emergency.

63.     Treatment for IST detainees is generally limited to basic clinical psychiatry and intervention designed to stabilize an individual's mental health condition.

64.     People found incompetent are often overtly psychotic and require special housing or segregation. They are unpredictable and disruptive, taking up valuable resources needed for the care of other inmates. If they refuse to take medications, they often decompensate rapidly.

65.     Incapacitated criminal defendants have a high risk of suicide, and the longer they are deprived of treatment, the greater the likelihood they will decompensate and suffer unduly.  For example, detainee E.S. committed suicide on May 25, 2015, 61 days after he was found IST and ordered to be transported to Patton.  Detainee J.S. was attacked in jail by a fellow inmate weeks after he was found IST and ordered to be transported to Patton.  All of the currently incarcerated IST detainees face an obvious and significant risk of deterioration of their mental health conditions while they are warehoused in the jail awaiting treatment.

66.     Because incapacitated criminal defendants are often found to be either a danger to themselves or others, they are often strip searched, placed in safety cells and housed in isolation.  Because they are mentally ill and often incapable of defending themselves or controlling unusual behaviors, they are at high risk of being beaten, having their property taken, or otherwise being taken advantage of by fellow inmates.  Jails are punitive environments and the conditions of

21

confinement undermine the mental health of these detainees as well as the government's interests in competency restoration and trial.

67.     Jails control inmates through discipline.  Jail disciplinary systems are ineffective for individuals with mental health disabilities.  Because of their unpredictable or disruptive behavior, they are often disciplined, which can include being locked in their cells for 23 hours a day, denied visits or phone calls from friends or loved ones, denied commissary privileges or placed on a disciplinary diet.  These forms of discipline exacerbate their mental illness.

68.     Unlike the VCPTDF and TRJ, DSH hospitals can treat a person's mental health disabilities and provide competency restoration services.  Their hospitals are staffed by full-time psychiatrists and psychologists, mental health specialists, social workers, mental health technicians, and nurses.  In addition, unlike the VCPTDF and TRJ, DSH hospitals can provide necessary medication, even if it is sometimes involuntary, which is necessary for some persons to regain their competency.

69.     In addition to assessment, medication evaluation and management, and individual and group psychotherapy, DSH hospitals provide individuals with mental health disabilities with legal skills training to assist them in learning about the law, the roles of the attorneys, witnesses and the court, and what they can expect after returning to court.  This treatment is designed to restore a person to competency to stand trial and to otherwise exercise their constitutional rights meaningfully.

**C.      Defendants Have Failed to Evaluate and/or Treat Individuals with Mental Health Disabilities Who Have Been Charged with a Crime in Ventura County in a Timely Fashion.**

70.     According to public records obtained by Plaintiffs' counsel, at the time of the filing of the initial complaint in this matter, there were more than fifteen people waiting in the VCPTDF and TRJ who had been found incompetent

22

to stand trial, had been approved for transportation to Patton or another facility, but had not yet been transported.  Plaintiffs are further informed and believe that at least ten, and probably more, of these civilly committed detainees who were in custody at VCPTDF or TRJ waited more than 30 days for transportation to a treatment facility after being civilly committed by the court.  Plaintiffs are further informed and believe that at least six, and probably many more, of these civilly committed detainees at VCPTDF or TRJ waited for more than 120 days for transportation to a treatment facility after being civilly committed by the court. One female detainee who is still in custody has been waiting more than six months for transfer to a state hospital. Plaintiffs are further informed and believe that delays of three to six months have been commonplace for several years preceding the date of this filing, and that the class affected by these policies numbers well over 100 individuals.  Defendants have consistently failed to timely admit these individuals to DSH hospitals for restoration of competency.

71.     Plaintiffs and those similarly situated each have histories of severe mental health conditions. Most have been ordered by courts presiding over their criminal proceedings to be transported to a DSH hospital to be restored to competency to stand trial.  Plaintiffs have languished in the jail for weeks and months to the detriment of their overall mental health, waiting to receive court-ordered competency restoration services that Defendants are statutorily required to provide.

**D.     Defendants' Custom, Pattern And Practice Of Failing To Provide Constitutionally Required Mental Health Treatment, And Failing To Timely Transfer IST Inmates To A DSH Hospital So That They Can Be Timely Treated And Restored To Competency To Stand Trial.**

72.     County Defendants have a custom, pattern and practice of failing to timely provide mental health treatment and medication to IST inmates held in their custody.

73.     County Defendants engage in a custom, pattern and practice of failing to provide IST detainees with proper housing to ensure appropriate mental health care treatment.  IST inmates are often written up for behavior based on their disability, mental problems and incompetency and are then disciplined inappropriately by placing them in isolation for prolonged periods of time, feeding them a disciplinary diet, denying them commissary and visits and phone calls from friends and family.

74.     County defendants have a custom, pattern and practice of failing to place IST inmates in outpatient status as specified in Penal Code Section 1600 after a reasonable amount of time without treatment elapses.

75.     County defendants have a custom, pattern and practice of failing to adequately keep records of mental health treatment of IST detainees, failed to adequately staff the jail with mental health caretakers, failing to prevent suicides of IST detainees, failing to provide therapy or therapeutic services for IST detainees, and failing to ensure IST detainees have equal opportunities to participate in and benefit from jail services, programs and activities.

76.     County defendants have a custom, pattern and practice of failing to transfer IST detainees to a California Department of State Hospitals, such as Patton State Hospital, or to any other public or private treatment facility capable of providing restorative treatment with a reasonable time, at least within seven days after the date on which the court entered an order for the Sheriff to transfer the person to a treatment facility.

77.     State defendants have a custom, pattern and practice of failing to accept IST detainees on a timely basis within seven days after the date on which

24

the court entered an order for the Sheriff to transfer the person to a treatment facility, thus depriving IST detainees of their constitutional rights to timely and adequate mental health care.

## IV.    CLASS ACTION ALLEGATIONS

78.    Plaintiffs M.S. and O.M. by and through their guardians ad litem, (collectively, the "Class Plaintiffs") bring this action pursuant to Civil Rule 23(a), (b)(1), (b)(2) and (b)(3) on behalf of themselves and all others similarly situated (collectively, the "Class Members").

79.    Class Members seek class-wide equitable, declaratory and injunctive relief, as well as damages,  pursuant to Federal Rules of Civil Procedure, Rule 23(a), b(1), and (b)(2), and (b)(3).

80.    The Equitable Relief Class  (F.R.Civ.P. 23(b)(3)) is defined as follows:

> All persons who are presently, and/or who will be in the future:
>
> (1) incarcerated at the VCPTDF or TRJ;
>
> (2) charged with a crime in Ventura County, California;
>
> (3) found by a court to be incompetent to stand trial;
>
> (4) held in custody while awaiting competency restoration services; and,
>
> (5) have waited for court-ordered  restoration services for seven or more days after DHS first had a duty to admit the detainee.  (This duty arises when **both** of the following have occurred:  (1) the court enters an order for the Sheriff to transfer the person to a treatment facility, and (2) the treatment facility has received the 1370 Packet from the court.)

81.    The damages relief (F.R.Civ.P. 23(b)(3)) class is defined as follows: All persons who have been, during the time period of May 5, 2013, until the present, and through the time of resolution of this case

25

(1) incarcerated at the VCPTDF or TRJ;

(2) charged with a crime in Ventura County, California;

(3) found by a court to be incompetent to stand trial;

(4) held in custody while awaiting competency restoration services; and,

(5) have waited for court-ordered  restoration services for seven or more days after DHS first had a duty to admit the detainee.  (This duty arises when **both** of the following have occurred:  (1) the court enters an order for the Sheriff to transfer the person to a treatment facility, and (2) the treatment facility has received the 370 Packet from the court.)

82.   The  May 5, 2013 Class Period beginning date is based on the three year statute of limitations available at least under the ADA (and likely the Rehabilitation Act). While various of the other claims may have shorter limitations periods, that is the appropriate class period so long as the ADA (or the Rehabilitation Act) are in the case.

**A.   Numerosity**

83.   The class meets the numerosity requirement of Rule 23(a)(1).  On information and belief, more than 40 Class members are denied the rights at issue each year, and the Damages Class for the three year Class period consists of well over 100 individuals, making individual joinder of all members impractical.  Similarly, the Equitable Relief Class consists of an ever increasing number of individuals whose rights are being violated.

84.   The identities of the Class Members are ascertainable through records held by Defendants and/or the courts from which the evaluations or restorations of competency were ordered.  Members of the Class may be informed of the pendency of this class action by use of contact information in the possession of Defendants as well as from court records.

26

**B.**     __Commonality.__

85.     The class meets the commonality requirement of Rule 23(a)(2). Questions of law and fact presented by the named plaintiffs are common to other members of the class.  The common contentions that unite the claims of the class include, but are not limited to, the following:

a.  Did/do the County Defendants have a custom, pattern and practice of failing to provide the mental health treatment and restorative services within the timeframe mandated by the California statutes identified previously?

b.  Did/do the County Defendants have a custom, pattern and practice of failing to provide adequate mental health treatment and restorative services as mandated by the California statutes identified previously?

c.  Did/do those statutes create a liberty interest on behalf of the Plaintiffs and the Class Members?

d.  Did/do the County Defendants have a custom, pattern and practice of failing to provide adequate mental health treatment and restorative services within the meaning of the United States and California due process clauses (Fourteenth Amendment and Article 1 § 7 of the California Constitution)?

e.  Did/do the County Defendants have a custom, pattern and practice of failing to provide adequate mental health treatment and restorative services in violation of the Americans with Disabilities Act, the Rehabilitation Act, and the California Disabled Persons Act?

f.  Did/do the County Defendants have a custom, pattern and practice of failing to provide adequate mental health treatment and restorative services in violation of the Americans with Disabilities Act, the Rehabilitation Act, and the California Disabled Persons Act?

27

g. Did/do the County Defendants have a custom, pattern and practice of failing to provide adequate mental health treatment and restorative services in violation of California Govt. Code § 11135?

h. Did/do the County Defendants have a custom, pattern and practice of failing to provide adequate mental health treatment and restorative services through threat, coercion or intimidation in violation of California Civil Code § 52.1?

i. As to Defendants CFMG and MHM Services and their individual employees or agents, are they government actors such that they may be held liable under § 1983?

j. As to Defendants CFMG and MHM Services, are they a government actor such that it may be held liable under Title II of the ADA, or does it receive federal funds such that it may be held liable under the Rehabilitation Act?

k. As to Defendants CFMG and MHM Services, do they operate a place of public accommodation such that they may be held liable under Title III of the ADA?

l. As to Defendants CFMG and MHM Services, are they a business establishment such that they may they may be held liable under California Civil Code § 51?

m. Did/do the State Defendants, individually or collectively, have a custom, pattern and practice of failing to admit IST detainees to appropriate restorative treatment within seven days after the date DHS has the duty to admit them to mental health/ restorative services facility and/or of failing to provide adequate mental health treatment and restorative services within the timeframe mandated by the California statutes identified previously?

n. If the answer to (m) above is yes, did DHS and/or Patton State Hospital violate the ADA or the Rehabilitation Act?

28

o. If the answer to (m) above is yes, did the individual State Defendants violate the due process clause of the United States and California, the California Disabled Persons Act, and/or Civil Code § 52.1?

p. If the answer to (m) above is yes, are Plaintiffs entitled to injunctive relief against the state public entities under the ADA or Rehabilitation Act and, for other claims, against state officials in their official capacity?

q. If the answer to (m) above is yes, are Plaintiffs entitled to damages against the state public entities under the ADA or Rehabilitation Act and, for other claims, against state officials in their individual capacities?

r. Are Plaintiffs entitled to presumed damages under § 1983 and/or statutory damages for violations of California Civil Code §§ 52, 52.1 or 54?

86. These and other common questions of law and fact predominate over any questions affecting only individual Class Members. The Class Action is superior to individual actions; the class is manageable, particularly in light of information contained in Defendants' records; and members of the Class are ascertainable through Defendants' records.

**C.   Typicality.**

87. The claims of Plaintiffs M.S. and O.M. are typical of those of the class as a whole because they were detained in the County facilities without adequate (or any) mental health services for extended periods (many weeks or months beyond the mandatory periods provided by California law) prior to their admission to a treatment facility which provides restorative services in violation of the Federal Constitution, Federal Statutes, State Constitution and State law.

88. The Class Plaintiffs' claims are typical of the claims of the Class because Defendants have uniformly and systematically failed to provide timely adequate mental health treatment and competency restoration services to Class Plaintiffs and to the Class.

29

### D. **Adequacy of Representation.**

89.  Class Plaintiffs will fairly and adequately protect the interests of the Class.  There are no known conflicts of interest between the Class Plaintiffs and other Class Members. The Class Plaintiffs will vigorously prosecute this action on behalf of the Class. The Class Plaintiffs are represented by competent counsel with considerable skill and experience in civil rights and class action litigation, who will vigorously prosecute this case on behalf of the Class.

90.  Defendants have acted or refused to act on grounds generally applicable to the entire class, thereby making final injunctive and declaratory relief appropriate with respect to the Class as a whole.

91.  The claims asserted herein are capable of repetition while evading review.  There is a continuing and substantial public interest in these matters.

92.  The class action is the best available method for the efficient adjudication of these legal issues because individual litigation of these claims would be impracticable, and individual litigation would be unduly burdensome to the courts. Further, individual litigation has the potential to result in inconsistent or contradictory judgments. A class action in this case presents fewer management problems and provides the benefits of single-adjudication, economies of scale, and comprehensive supervision by a single court.

93.  As alleged throughout this Complaint, damages and injunctive relief are only sought directly from the State public entity defendants (DHS AND Patton) under the ADA and the Rehabilitation Act. Injunctive relief, as it relates to the State Defendants for the other claims, is sought only against those individual State Defendants named in their official capacity. Similarly, damages, as it relates to the State Defendants for the other claims, are sought only against individual State Defendants in their individual capacities.

## V.   EXHAUSTION OF JURISDICTIONAL PREREQUISITES

94.     Plaintiff representatives on behalf of themselves and Class Members exhausted the administrative remedies to the extent available required under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e, prior to filing this Complaint. Additionally, such remedies were unavailable within the meaning of the PLRA because a) Ventura County Jail asserted that the claims were beyond its control and it had no ability to remedy them, b) Plaintiffs totally lacked mental capacity such that they were able to pursue administrative remedies on their own, and Defendants had no grievance mechanism available for such circumstances, and c) Plaintiffs could not pursue administrative remedies against a State entity or the private defendants because Plaintiffs were not prisoners of any state entity or private defendant at the time they failed to receive adequate mental health treatment and restorative services such that administrative remedies were available to them. Further, Plaintiffs contend that the lack

95.     Plaintiff representatives, on behalf of themselves and Class Members, filed Government Code §910 tort claims with the State of California and the County of Ventura.  The County denied the 910 claim on May 3, 2016. Inexplicably, the State stated that Claim G631362 for M.S. was untimely even though M.S. was still in the custody of the VCPTDF and the other class representative, O.M., was also in custody of the VCPTDF at that time.  Plaintiffs and Class Members have timely filed this lawsuit thereafter.

## VI.   DAMAGES

96.     As a result of the various violations alleged herein, Plaintiffs experienced physical, emotion and mental harm, and general and/or special damages. Plaintiffs seek all available damages remedies, including but not limited to compensation for actual damages, special and general damages, statutory

31

damages, and, as against the individual defendants, punitive or exemplary damages. They also seek civil penalties to the extent available.

## VII.   CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**Violation of the Fourteenth Amendment to the United States Constitution (42 U.S.C. §1983) and Article 1, Section 7, California Constitution**

**Against All Defendants And Does 1-10 Except The State Of California Public Entities For Damages; Against The County Defendants And The Individual State And County Defendants In Their Official Capacity And CFMG And MHM Services For Injunctive Relief**

97.    Plaintiffs incorporate by reference each and every allegation contained in the foregoing and following paragraphs, as though set forth herein *verbatim.*

98.    Due process requires that the nature and duration of confinement must bear a reasonable relation to the purpose for which a person is committed.

99.    Once an individual is found IST, the only lawful purpose for confinement is to treat the individual in order to return him or her to competency.

100.    Individuals found IST have a constitutional right to such individualized treatment as will give each of them a realistic opportunity to be cured or to improve their mental condition.

101.    The VCPTDF and TRJ do not have the capacity to provide the restorative mental health treatment required by the United States Constitution.

102.    The State Defendants have consistently failed to timely treat IST detainees after their Constitutional and statutory duty to do so arose.

103.    The statutory scheme set forth above in ¶¶49-59 provides Plaintiffs and the Plaintiff Class a liberty interest in timely and meaningful medical and mental health treatment while being held pending evaluation, treatment and restoration of his/her mental health so that s/he is competent to stand trial.

32

104.   These Plaintiffs and the Plaintiff Classes are incarcerated civil detainees who lose statutory pre-trial custody credit that ordinary criminal defendants receive while held for restoration of their mental competency and, therefore, are often held in custody longer. These IST detainees sit in county jails for months without treatment so their mental health often deteriorates.  They are disciplined more frequently than other inmates, are often taken advantage of by other inmates, and are at a higher risk for suicide.

105.   Acting under color of state law, Defendants have violated and caused violations of the Class Plaintiffs' due process rights pursuant to the Fourteenth Amendment to the United States Constitution and Article 1 § 7 of the California Constitution.

106.   Unless enjoined by the Court, Defendants will continue to violate and cause the violation of the constitutional rights of the Class Plaintiffs and the Class.

107.   Plaintiffs have no adequate remedy at law for the continuing, ongoing violations of their rights, and will suffer irreparable harm unless

108.   As a direct and proximate cause of the aforementioned acts of Defendants, Plaintiffs and those similarly situated have been damaged in amounts to be determined at trial.

109.   Plaintiffs have been damaged through the additional time they spent in jail due to their prolonged detention in county jail without access to restorative treatment, the lack of treatment and rehabilitation services while spending unnecessary time in jail, the additional physical and emotional trauma and damages incurred while being housed without treatment for prolonged and unnecessary time in jail, and during their unnecessary and prolonged detention in violation of their rights, they have been detained in isolation cells, commonly referred to as "the hole," and administrative segregation, and lost visits, and commissary.

110.   Under this claim, Plaintiffs seek damages from all Defendants from and all the State Defendants sued in their individual capacity. They seek injunctive relief against all State individuals sued in their official capacity, against the County, and against CFMG and MHM Services.

## SECOND CLAIM FOR RELIEF

**Violation of the Americans with Disabilities Act (42 U.S.C. §12132 *et seq.*)**

**Against the County and State Entity Defendants and Against CFMG and MHM Services**

111.   Plaintiffs incorporate by reference each and every allegation contained in the foregoing and following paragraphs, as though set forth herein *verbatim.*

112.   Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms of discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. §12101(a) (2).

113.   In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. §12101(b) (1)-(2).

114.   Title II of the ADA provides in pertinent part: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12132.

115.   The ADA requires public entities to ensure that their programs, services and activities are accessible to and useable by detainees and inmates with disabilities.

116.    At all times relevant to this action, the government entity Defendants were each a "public entity" within the meaning of Title II of the ADA and provided a program, service or activity to the general public. The private entity Defendants were agents of the public entity Defendants as alleged above, and therefore qualify as public entities for purpose of Title II of the ADA. Further, the private entity Defendants are places of public accommodation, making them liable under Title III of the ADA.

117.    At all times relevant to this action, Plaintiffs are qualified individuals within the meaning of Title II of the ADA and met the essential eligibility requirements for the receipt of the services, programs, or activities of the Defendants.

118.    Title II of the ADA prohibits a public entity from discriminating against a qualified individual with a disability on the basis of a disability. 42 U.S.C. §12132.

119.    Defendants have excluded Plaintiffs from participation in the services, programs and activities of the Ventura County Jail facilities, and have denied them the rights and benefits accorded to other inmates, solely by reason of their disabilities in violation of the ADA. In addition, the Defendants have violated the ADA by failing or refusing to provide Plaintiffs with reasonable accommodations and other services related to their disabilities. See generally 28 C.F.R. §35.130.

120.    Defendants are mandated to operate each program, service, or activity "so that, when viewed in its entirety, it is readily accessible to and useable by individuals with disabilities." 28 C.F.R. §35.150; see also 28 C.F.R. §§35.149 & 35.151. Defendants continue to violate the ADA by maintaining inaccessible facilities that deny people with disabilities access to programs, services and activities.

121.   Plaintiffs are informed, believe and thereon allege that Defendants and their agents and employees have failed and continue to fail to:

a.  Provide necessary accommodations, modifications, services and/or physical access necessary to enable inmates with disabilities to participate on an equal basis in programs, services and activities

b.  Develop and enforce procedures for the Ventura Sheriff Department to ensure provision of necessary accommodations, modifications, services and/or physical access necessary to enable inmates with disabilities to participate on an equal basis in programs, services and activities.

c.  Train and supervise the jail personnel to provide necessary accommodations, modifications, services and/or physical access necessary to enable inmates with disabilities to participate on an equal basis in programs, services and activities.

122.   Pursuant to the ADA's implementing regulations, specifically 38 C.F.R. 150(d)(1), Defendants were required to develop a written plan setting forth the steps necessary to ensure that the Ventura County Jail facilities are in compliance with the ADA's mandates. On information and belief, Defendants have not prepared a self-evaluation and a transition plan that is compliant with the ADA.

123.   As a direct and proximate result of the aforementioned acts, Plaintiffs have suffered, and continue to suffer humiliation, hardship and anxiety, as well as deteriorating physical conditions, due to Defendants' failures to address accommodations, modifications, services and access required for Plaintiffs' disabilities.

124.   Defendants acted intentionally, with discriminatory animus and/or deliberate indifferent to the rights of Plaintiffs.

125.   On information and belief, CFMG and MHM Services qualify as government actors within the meaning of Title II of the ADA or alternatively

36

operate a place of public accommodation within the meaning of Title III of the ADA.

126.  Because Defendants' discriminatory conduct is ongoing, declaratory and injunctive relief are appropriate remedies. Moreover, as a result of Defendants' actions, Plaintiffs are suffering irreparable harm, and thus immediate relief is appropriate.

127.  Pursuant to 42 U.S.C. §12133, Plaintiffs are entitled to declaratory and injunctive relief as well as reasonable attorneys' fees and costs incurred in bringing this action.

## THIRD CLAIM FOR RELIEF

### Section 504 of the Rehabilitation Act (29 U.S.C. § 794 *et seq*.)

### Against the County and State Entity Defendants and Against CFMG and MHM Services

129.  Plaintiffs incorporate by reference each and every allegation contained in the foregoing and following paragraphs, as though set forth herein *verbatim*.

130.  Section 504 of the Rehabilitation Act of 1973 provides in pertinent part: "[N]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance ..." 29 U.S.C. §794.

131.  Each Plaintiff and Class Member is at all times relevant herein a qualified individual with a disability within the meaning of the Rehabilitation Act because they have a physical impairment that substantially limits one or more of their major life activities. 29 U.S.C. §705(20) (B).

132.  Plaintiffs and Class Members are otherwise qualified to participate in the services, programs, or activities that are provided to inmates at Ventura County Jail facilities. See 29 U.S.C. §794 (b).

37

133.    Plaintiffs are informed and believe, and based thereon allege that at all times relevant to this action Defendants were recipients of federal funding within the meaning of the Rehabilitation Act. As recipients of federal funds, they are required to reasonably accommodate inmates with disabilities in their facilities, program activities, and services. The act further requires the Defendants to modify their facilities, services, and programs as necessary to accomplish this purpose.

134.    At all times relevant to this action, the government entity Defendants were each a "public entity" that received federal funding for various programs and therefore are liable under the Rehabilitation Act.

135.    On information and belief, CFMG and MHM Services were an agent of one or more of the foregoing public entity Defendants and/or received, directly or indirectly federal funding for programs operated by each.

136.    Defendants acted intentionally, with discriminatory animus and/or deliberate indifferent to the rights of Plaintiffs.

137.    Through their acts and omissions described herein, Defendants have violated the Rehabilitation Act by excluding Plaintiffs from participation in, denying Plaintiffs the benefits of, and subjecting Plaintiffs and Class Members to discrimination in the benefits and services Defendants provide to the detainees and inmates without disabilities.

138.    Plaintiffs are informed, believe, and based thereon allege that Defendants committed the acts and omissions alleged herein with intent and/or reckless disregard of the rights of Plaintiffs and Class Members. It is also alleged that the defendants have violated the Act by providing substandard accommodations or refusing to provide plaintiffs with reasonable accommodations for their disabilities.

139.    Pursuant to the Rehabilitation Act's implementing regulations, specifically, 28 C.F.R. 42.521, Defendants were required to make any structural

38

changes necessary to render the programs and activities in existing Ventura County Jail facilities accessible to persons with disabilities as expeditiously as possible. As part of that process, the Defendants were required to develop a written plan setting forth the steps necessary to complete such changes. Defendants have failed to develop a written plan and failed to abide by the implementing regulations under the Rehabilitation Act.

140.   As a direct and proximate result of the aforementioned acts, Plaintiffs suffered and continue to suffer humiliation, hardship, anxiety as well as deteriorating physical and mental health conditions due to Defendants' failures to address accommodations, modifications, services and access required for their disabilities.

141.   Defendants acted with discriminatory animus and/or deliberate indifferent to the rights of Plaintiffs.

142.   Plaintiffs are entitled to damages as a result of the foregoing violations according to proof.

143.   Because Defendants' discriminatory conduct is ongoing, declaratory and injunctive relief are appropriate remedies. Moreover, as a result of Defendants' actions, Plaintiffs are suffering irreparable harm, and thus immediate relief is appropriate.

144.   Pursuant to 29 U.S.C. §794(a) Plaintiffs are entitled to declaratory and injunctive relief and to recover from Defendants the reasonable attorneys' fees and costs incurred in bringing this action.

## FOURTH CLAIM FOR RELIEF

### *California Government Code* §11135

**Against The County Defendants And The Individual State Defendants In Their Official Capacity And CFMG And MHM Services For Injunctive Relief**

39

145.   Plaintiffs incorporate by reference each and every allegation contained in the foregoing and following paragraphs, as though set forth herein *verbatim.*

146.   Section 11135(a) of the *California Government Code* provides in pertinent part: "No person in the State of California shall, on the basis of. . . disability, be unlawfully denied the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is funded directly by the state or receives any financial assistance from the state."

147.   At all times relevant to this action, Defendants have received financial assistance from the State of California.

148.   Through their acts and omissions described herein, Defendants have violated and continue to violate *California Government Code* §11135 by unlawfully denying Plaintiffs the benefits of, and unlawfully subjecting Plaintiffs to discrimination under Defendants' programs and activities.

149.   As a direct and proximate result of the aforementioned acts, Plaintiffs have suffered, and continue to suffer humiliation, hardship and anxiety, as well as deteriorating physical and mental health conditions due to Defendants' failures to address accommodations, modifications, services and access required for Plaintiffs' disabilities.

150.   Because Defendants' discriminatory conduct is ongoing, declaratory and injunctive relief are appropriate remedies. Moreover, as a result of Defendants' actions, Plaintiffs are suffering irreparable harm, and thus immediate relief is appropriate. Plaintiffs are also entitled to reasonable attorneys' fees and costs.

**FIFTH CLAIM FOR RELIEF**

**Unruh Civil Rights Act - *California Civil Code* §51 *et seq*.**

**Against CFMG,  MHM Services And Their Individual Defendants**

151.   Plaintiffs incorporate by reference each and every allegation contained in the foregoing and following paragraphs, as though set forth herein *verbatim.*

40

152.   Through the acts and omissions described herein, CFMG, MHM Services and  their Individual Defendants have violated *California Civil Code* §51(b) which provides in pertinent part, "All persons within the jurisdiction of this state are free and equal, and no matter what their...disability or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

153.   Pursuant to California *Civil Code* §51 (f), a violation of the ADA also constitutes a violation of *California Civil Code* §51 *et seq*.

154.   CFMG and MHM Services are "business establishments" within the meaning of *California Civil Code* §51 *et seq*.

155.   Through the acts and omissions described herein, Defendants are violating *California Civil Code* §51 *et seq*. by denying Plaintiffs full and equal access to its programs comparable to the access that it offers to others.

156.   As a direct and proximate result of the aforementioned acts, Plaintiffs have suffered, and continue to suffer, humiliation, hardship and anxiety, as well as deteriorating physical conditions, due to Defendants' failures to address accommodations, modifications, services and access required for Plaintiffs' disabilities.

157.   Because Defendants' discriminatory conduct is ongoing, declaratory and injunctive relief are appropriate remedies.  Moreover, as a result of Defendants' actions, Plaintiffs are suffering irreparable harm, and thus immediate relief is appropriate. Plaintiffs are also entitled to reasonable attorneys' fees and costs in filing this action.

<div align="center">

**SEVENTH CLAIM FOR RELIEF**

**Violation of *California Civil Code* §54 *et seq*.**

**Against All Defendants   and Does 1-10 Except the State of California Public Entities**

</div>

41

158.   Plaintiffs incorporate by reference each and every allegation contained in the foregoing and following paragraphs, as though set forth herein *verbatim.*

159.   Through the acts and omissions described herein, CFMG and CFMG Individual Defendants are violating *California Civil Code* §54 which states that "[i]ndividuals with disabilities or medical conditions have the same rights as the general public to the full and free use of public services."

160.   Under California Civil Code §54(c), a violation of the ADA also constitutes a violation of California Civil Code §54 *et seq.*

161.   Plaintiffs are persons with disabilities within the meaning of California Civil Code §54(b) (1) and California Government Code §12926.

162.   The County and the VCSO provide public services, within the meaning of California Civil Code §54 *et seq.*

163.   By failing to provide accommodations, modifications, services and physical access to the detainees and inmates with disabilities, Defendants are violating California Civil Code §54, by denying detainees and inmates full access to the jail programs, services and activities.

164.   As a direct and proximate result of the aforementioned acts, Plaintiffs have suffered, and continue to suffer, humiliation, hardship and anxiety, as well as deteriorating mental conditions, due to Defendants' failures to address accommodations and services required for Plaintiffs' mental disabilities. Plaintiffs seek damages according to proof.

165.   Because Defendants' discriminatory conduct is ongoing, declaratory and injunctive relief are appropriate remedies. Moreover, as a result of Defendants' actions, Plaintiffs are suffering irreparable harm, and thus immediate relief is appropriate. Plaintiffs are also entitled to reasonable attorneys' fees and costs in filing this action.

## EIGHTH CLAIM FOR RELIEF

42

### *California Civil Code* §52.1 Interference with Exercise of Civil Rights
### Against All Defendants and Does 1-10 Except the California State  Public Entities

166.   Plaintiffs incorporate by reference each and every allegation contained in the foregoing and following paragraphs, as though set forth herein *verbatim.*

167.   As alleged above, the conduct of the Defendants and Does as described herein violated *California Civil Code* §52.1, in that they interfered with Plaintiffs' and Class Members' exercise and enjoyment of their civil rights, by denying them access to timely restorative treatment.

168.   Plaintiffs do not seek damages against the State of California, only injunctive relief as with the other Defendants.

169.   Defendants engaged in coercive acts that separately and independently interfered with or attempted to interfere with the rights of Plaintiffs and the Plaintiff Class to receive timely and proper mental health treatment and, as a result, held them in criminal custody when they were required to be held in civil detention for treatment and additionally, as a result, caused them to be held in criminal custody for a period of time longer than they otherwise would have. By doing so, Defendants separately, through coercion, violated Plaintiffs' rights under Penal Code §§ 1368-70 and other statutes described above, the ADA and the Rehabilitation Act, and the Due Process clauses of the United States and California Constitutions.

170.   Plaintiffs are informed, believe, and based thereon allege that in engaging in the conduct alleged herein, Defendants acted with deliberate indifference and the intent to injure, vex, annoy and harass Plaintiffs, and subjected Plaintiffs to cruel and unjust hardship in conscious disregard of Plaintiffs' rights with the intention of causing Plaintiffs injury and depriving them of their constitutional rights.

43

171.   As a result of the foregoing, Plaintiffs seek exemplary and punitive damages against the private entity and individual Defendants.

172.   As a direct and proximate cause of the aforementioned actions of Defendants and Does, Plaintiffs were injured as set forth above, thereby entitling Plaintiffs to damages against Defendants under Cal. Civil Code §52.1, including but not limited to actual damages, exemplary damages, civil penalties, statutory damages and attorney's fees.

## VIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

A.    For certification of a class as defined above;

B.    For a declaration that Defendants are depriving Class Members of their due process rights pursuant to the Fourteenth Amendment to the United States Constitution, the Americans with Disabilities Act; and the other statutes alleged above.

C.    For the issuance of preliminary and permanent injunctions restraining Defendants from violating the Sixth and Fourteenth Amendments to the United States Constitution and the Americans with Disabilities Act in the confinement of individuals awaiting competency evaluation and/or restoration treatment, and violating the other statutes alleged above, including but not limited to:

1.  An order requiring Defendants to provide prompt and adequate mental health treatment to Class Members, to begin no more than 7 days from the time of a court order for a mental competency evaluation

2.  An order requiring proper training of mental health professionals to ensure that Class Members receive proper mental health care and treatment, including restorative treatment,  in county custody;

44

3.  An order that Class Members shall not improperly be placed in isolation or disciplined due to their mental conditions, and shall receive access to full programming, visitation and commissary while in county custody;

4.  An order that, if the transfer from county custody to a State Mental Health Hospital as designated by DSH cannot be accommodated within 7 days of the Court order to transfer an inmate to State Mental Health Hospital for restorative mental health care treatment to restore competency, the County either release the inmate, or find alternative County custody where medications and restorative health care can commence;

5.  An order that the DSH and State Defendants abolish the "one in one out policy", and accept Class Members within 7 days of the court order requiring transfer to a State Mental Health Hospital, and hire the staff and establish facilities so that Class Members can be transferred on a timely basis as required by the applicable statutes and federal and state constitutional provisions;

6.  An order that the County and State Defendants comply with all applicable time periods for various actions, including reporting requirements on Class Members, as required by State law; and,

7.  An order that the County and State Defendants comply with all federal and state laws, including the Penal Code, the Statutes cited above, and the State and Federal Constitution, concerning the treatment, custody and care of Class Members.

D.  For general, special and compensatory damages for the named Plaintiffs and Class Members, to be determined according to proof;

E.  For any applicable statutory damages or penalties;

45

F.     For punitive damages against the applicable defendants.

G.     For an award of Plaintiffs' costs and attorneys' fees under 42 U.S.C. §1988, Cal. Civil Code § 52.1(h), Cal. CCP § 1021.5, and other applicable statutes; and,

H.     For such other and further relief as the Court may deem just and proper.

Dated: July 28, 2016          LAW OFFICES OF BRIAN A. VOGEL, PC
                              By:  /s/   Brian A. Vogel
                                       BRIAN A. VOGEL

Dated: July 28, 2016          KAYE McLANE, BEDNARSKI & LITT, LLP
                              By:  /s/  Barrett S. Litt
                                       BARRETT S. LITT
                              Attorneys for Plaintiffs and the Class

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial.

Dated: July 28, 2016          LAW OFFICES OF BRIAN A. VOGEL, PC
                              By:  /s/    Brian A. Vogel
                                       BRIAN A. VOGEL

Dated: July 28, 2016          KAYE McLANE, BEDNARSKI & LITT, LLP
                              By:  /s/   Barrett S. Litt
                                       BARRETT S. LITT
                              Attorneys for Plaintiffs and the Class