LINK:

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES – GENERAL

| Case No. | **CV 16-03084-BRO (RAOx)** | Date | October 24, 2016 |
|---|---|---|---|
| Title | **M.S. ET AL. V. COUNTY OF VENTURA ET AL.** | | |

Present: The Honorable    **BEVERLY REID O'CONNELL, United States District Judge**

| Renee A. Fisher | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**      (IN CHAMBERS)

## ORDER RE DEFENDANTS' MOTIONS TO DISMISS, MOTION FOR JOINDER, AND MOTION TO AMEND
## [32, 35, 38, 39, 41, 44]

## I.    INTRODUCTION

Pending before the Court are six motions: (1) Defendants Pam Ahlin, Harry Oreal, the California Department of State Hospitals, and Patton State Hospital's (collectively, the "State Defendants") Motion to Dismiss, (Dkt. No. 32 (hereinafter, "State Defs.' MTD")); (2) Defendants California Forensic Medical Group, Taylor Fithian, Paul Adler, and Ronald Pollack's (collectively, "CFMG Defendants") Motion to Dismiss, (Dkt. No. 35 (hereinafter, "CFMG Defs.' MTD")); (3 & 4) Defendants Marcus Lopez and MHM Services of California, Inc. (collectively, "MHM Defendants") Motion to Dismiss,[1] (Dkt. No. 38 (hereinafter, "MHM Defs.' MTD"), and Motion to Amend, (Dkt. No. 44); and, (5 & 6) Defendants County of Ventura, Ventura County Sheriff Geoff Dean, and the Ventura County Sheriff's Office's (collectively, "County Defendants")[2] Motion to Dismiss or for a More Definite Statement, (Dkt. No. 39 (hereinafter, "County Defs.' MTD")), and Motion for Joinder in the State Defendants' MTD,[3] (Dkt. No. 41).  After

---

[1] On September 13, 2016, the MHM Defendants filed a Motion to Amend.  (*See* Dkt. No. 44.)  However, it is not clear to the Court what the MHM Defendants sought to amend or that it had any effect on the MHM Defendants' arguments.  Accordingly, the MHM Defendants' Motion is **DENIED as moot**.

[2] The Court refers to the State Defendants, the CFMG Defendants, MHM, and the County Defendants collectively as "Defendants."

[3] The Ventura County Defendants' Motion for Joinder is unopposed.  Accordingly, the Court **GRANTS** their motion.  *See* C.D. Cal. L.R. 7-12.  In addition, on September 13, 2016, the CFMG Defendants and

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL MINUTES – GENERAL**

| Case No. | **CV 16-03084-BRO (RAOx)** | Date | October 24, 2016 |
|---|---|---|---|
| Title | **M.S. ET AL. V. COUNTY OF VENTURA ET AL.** | | |

considering the papers filed in support of and in opposition to the instant Motion, the Court deems this matter appropriate for resolution without oral argument of counsel. *See* Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15. For the following reasons, Defendants' Motions are **GRANTED in part and DENIED in part**.

## II.   BACKGROUND

### A.   The Parties

Plaintiffs are Mary Rodgers-Vey, who brings this action as the mother and guardian ad litem of Plaintiff M.S., an individual with a lengthy history of mental illness, and Adrian Mojica, the brother and guardian ad litem of Plaintiff O.M.[4] who also has a lengthy history of mental illness. (Dkt. No. 17 (hereinafter, "FAC") ¶¶ 17–18.) Plaintiffs also bring this action on behalf of nine other putative class members whose factual circumstances they claim raise common questions of law and fact. (FAC ¶¶ 23–33.) Defendants are: (1) the County of Ventura, a governmental entity organized and existing under the laws of California, (2) the Ventura County Sheriff's Office, a department of Ventura County; (3) Ventura County Sheriff Geoff Dean; (4) California Forensic Medical Group, Inc. ("CFMG"), an agent of Ventura County who provides medical care and treatment on behalf of the Ventura County Defendants; (5) Taylor Fithian, M.D., the Medical Director of CFMG; (6) Paul Adler, M.D., the onsite Medical Director of CFMG at the Ventura County Pre-Trial Detention Facility ("VCPTDF"); (7) Ronald Pollack, M.D., a Ventura County psychiatrist; (8) California Department of State Hospitals ("DSH"); (9) Pam Ahlin, the Director of DSH; (10) Patton State Hospital, a state psychiatric hospital; (11) Harry Oreol, the Executive Director of Patton State Hospital; (12) MHM Services of California, Inc. ("MHM Services"), a corporation contracted to provide mental health services in Ventura County; and, (13) Marcus Lopez, the Community Program Director for MHM Services. (FAC ¶¶ 34–46.)

---

MHM also filed Notices of Joinder in the State Defendants' MTD. (Dkt. Nos. 42, 43.) And, on September 20, 2016, MHM filed a Notice of Joinder in the Ventura County Defendants' Motion to Dismiss. (Dkt. No. 46.)

[4] The Court refers to M.S. and O.M. collectively as "Plaintiffs."

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL MINUTES – GENERAL**

| Case No. | **CV 16-03084-BRO (RAOx)** | Date | October 24, 2016 |
|----------|----------------------------|------|------------------|
| Title | **M.S. ET AL. V. COUNTY OF VENTURA ET AL.** | | |

### B.     Factual Background

#### 1.     Ventura County's Procedures for Treating Incompetent Prisoner Detainees

California Penal Code section 1367 governs the procedures for evaluation and restoration of a criminal defendant.  (FAC ¶ 49.)  If, during the pendency of an action, a doubt arises as to the defendant's competence, the court shall order a hearing to determine the defendant's competence to stand trial.  (*Id.*)  When the court orders a hearing, the criminal prosecution proceedings are suspended and the court appoints a psychologist or psychiatrist to examine the defendant.  (*Id.*)  While the defendant is confined for examination, under California Penal Code section 1369, he is to be provided with necessary care and treatment.  (*Id.*)  If the defendant is found competent, the criminal proceedings resume.  (FAC ¶ 50.)  If the defendant is found incompetent, however, the criminal proceedings are suspended until competency is regained.  (*Id.*)

If the defendant is found incompetent, the court orders the sheriff to deliver the defendant to (1) a state hospital for mental health treatment, (2)  any other public or private facility approved by the community program director that will promote the defendant's speedy restoration to mental competence, or, (3) outpatient status.  (FAC ¶ 51.)  The defendant's placement is determined by the county mental health director (or his or her designee) who evaluates the defendant and within fifteen days submits a written recommendation as to whether the defendant should be required to undergo outpatient treatment or be committed to a mental health facility.  (FAC ¶ 53.)  No defendant may be committed or placed on outpatient status without first being evaluated by the county mental health director.  (*Id.*)

If the defendant is charged with a felony, he may be held for a maximum of three years or for a period equal to the maximum term of imprisonment for the most serious charge against him, whichever is shorter.  (FAC ¶ 54.)  If the defendant is charged with a misdemeanor, the defendant may be held for the maximum of one year or the maximum term of imprisonment, whichever is shorter.  (FAC ¶ 55.)  If the defendant never regains competence, the charges may be dismissed and the defendant may become subject to a conservatorship.  (FAC ¶¶ 54–55.)

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| Case No. | **CV 16-03084-BRO (RAOx)** | Date | October 24, 2016 |
|---|---|---|---|
| Title | **M.S. ET AL. V. COUNTY OF VENTURA ET AL.** | | |

California's statutory framework does not create a specific timeframe under which a defendant must be admitted to a mental health facility or to an outpatient program. (FAC ¶ 56.) However, the defendant may not be assigned until the county mental health director's recommendation has been submitted along with a fully completed "1370 packet." (*Id.*) A 1370 packet is governed by California Penal Code section 1370 and requires: (1) a commitment order, including a specification of the charges against the defendant; (2) a computation setting forth the maximum time of imprisonment; (3) a computation of the amount of time served to be deducted from the maximum imprisonment term; (4) a state summary of the defendant's criminal history information; (5) arrest reports; (6) court-ordered psychiatric examination or evaluation reports; (7) the community program director's placement or recommendation report; (8) records of a finding of mental incompetence; and, (9) medical records. (FAC ¶ 56 & n.1.) In addition to the 1370 packet, DSH requires an order from the court authorizing the involuntary administration of antipsychotic medication or a finding that the defendant voluntarily consents to the administration of medication. (FAC ¶ 57.)

Once all of these requirements have been met, the defendant then awaits transfer to a mental health facility. (FAC ¶ 58.) According to Plaintiffs, Ventura County participates in a "one in, one out" policy, by which it allows transfer of incompetent defendants to Patton State Hospital (which is, apparently, the primary mental health hospital for Ventura County prisoners) only on a one-to-one ratio for those released from the hospital. (*Id.*) Plaintiffs claim that this results in only approximately one to three patients per week (at most) being transferred to Patton State Hospital ("Patton"). (*Id.*) A county jail may be designated as a treatment facility, but, under California Penal Code section 1369, the maximum amount of time a defendant may be treated in a designated jail is six months. (FAC ¶ 59.)

In Ventura County, Sheriff Dean contracts with CFMG, a private corporation, to provide all mental and medical care to Ventura County detainees. (FAC ¶ 60.) Ventura County's two primary detention facilities, the VCPTDF and the Todd Road Jail ("TRJ"), are not licensed to perform competency restoration services. (FAC ¶ 61.) While CFMG will provide "medication management" for those willing to take the medication, it will not involuntarily medicate patients except in an emergency. (FAC ¶ 62.) Thus, treatment for incompetent defendants before they are transferred to Patton is usually limited to basic clinical psychiatry designed to stabilize the defendant's mental health condition. (FAC ¶ 63.) As Plaintiffs explain, incompetent defendants are "often overly psychotic

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL MINUTES – GENERAL**

| Case No. | **CV 16-03084-BRO (RAOx)** | Date | October 24, 2016 |
|---|---|---|---|
| Title | **M.S. ET AL. V. COUNTY OF VENTURA ET AL.** | | |

and require special housing or segregation." (FAC 64.) In addition, Plaintiffs note that they are often "unpredictable and disruptive" and take up resources that could be used for other defendants. (*Id.*) Further, if incompetent defendants refuse to take medication, they often deteriorate quickly. (*Id.*) Therefore, Plaintiffs aver that keeping incompetent defendants in jail environments rather than in medical hospitals is ineffective at treating the defendants and undermines the mental health of the detainees. (FAC ¶ 66.)

Plaintiffs allege that the County Defendants participate in "a custom, pattern and practice of failing to timely provide mental health treatment and medication" to incompetent defendants held in its custody. (FAC ¶ 72.) Plaintiffs further claim that the County Defendants inappropriately punish incompetent defendants who are housed in VCPTDF or the TRJ rather than being transferred to a mental health facility for their behavior that is due to their disability. (FAC ¶ 73.) According to Plaintiffs, the County Defendants also have a custom or practice of failing to designate mentally incompetent detainees to outpatient status after a reasonable amount of time without treatment elapses, and that they fail to keep records of mental health treatments, fail to properly staff jails with mental health caretakers, fail to prevent suicide of incompetent detainees, and fail to ensure that incompetent defendants have equal opportunity to participate in and benefit from jail programs and activities. (FAC ¶ 75.) And finally, Plaintiffs aver that the County Defendants have a pattern or practice of failing to transfer incompetent defendants to California Department of State Hospitals (such as Patton State Hospital) or to any other treatment facility capable of providing restorative treatment within a reasonable time, which, according to Plaintiffs, would be seven days after the court orders the Sheriff to transfer the detainee to a treatment facility. (FAC ¶ 76.) Plaintiffs also claim that the State Defendants have a custom or practice of failing to accept incompetent detainees within seven days after the court orders the Sheriff to transfer the detainee to a treatment facility, which Plaintiffs allege deprives the detainees of their constitutional right to timely and adequate mental health treatment. (FAC ¶ 77.)

### 2.    The Factual Circumstances of Plaintiffs' Cases

#### a.    Plaintiff M.S.

On August 24, 2015, the Ventura County District Attorney filed a complaint alleging a single felony count of residential burglary (as well as several allegations regarding prior convictions) against Plaintiff M.S. (FAC ¶ 14.) Bail was set at $175,000

LINK:

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## CIVIL MINUTES – GENERAL

| Case No. | **CV 16-03084-BRO (RAOx)** | Date | October 24, 2016 |
|----------|---------------------------|------|------------------|
| Title | **M.S. ET AL. V. COUNTY OF VENTURA ET AL.** | | |

and he was remanded to the Sheriff's custody. (*Id.*)  The next day, M.S. was arraigned in the Superior Court of California, County of Ventura and entered a plea of not guilty. (*Id.*)  On November 5, 2015, M.S.'s attorney declared a doubt as to M.S.'s competency to stand trial. (FAC ¶ 15.)  The criminal proceedings were suspended and that same day Dr. Katherine Emerick, Ph.D., a forensic psychologist, was ordered to perform a competency evaluation of M.S. (*Id.*)  Dr. Emerick found M.S. to be incompetent and filed a report with the court. (*Id.*)  On November 30, 2015, M.S. was formally found to be incompetent by the Ventura County Superior Court. (*Id.*)  The court made a finding that M.S. consented to the administration of psychotropic medications and referred the case to MHM services for a placement recommendation. (*Id.*)

On December 14, 2015, the court held a hearing on M.S.'s placement. (FAC ¶ 16.) The court ordered he be placed at any state hospital. (*Id.*)  The court also found that the maximum commitment time was three years and awarded him zero days of custody credit. (*Id.*)  M.S. was then remanded to the custody of the Ventura County Sheriff, who was ordered to transport him to Patton State Hospital. (*Id.*)  M.S.'s 1370 packet was provided to the Ventura County Sheriff's Office on December 24, 2015. (*Id.*)  M.S. was not transported to Patton State Hospital, however, until April 28, 2016. (*Id.*)

While incarcerated, Plaintiffs allege that M.S. was disciplined numerous times for violations of jail rules, mostly due to M.S.'s mental illness. (FAC ¶ 17.)  For instance, Plaintiffs describe an instance where M.S. believed he was being attacked by the devil, and thus, acted out by tearing off his plastic armband. (*Id.*)  His discipline included the loss of access to the commissary, loss of visits, and isolation in a safety cell. (*Id.*)

### b.    Plaintiff O.M.

On April 8, 2014, O.M. was arrested and booked into Ventura County Jail on suspicion of attempted robbery. (FAC ¶ 18.)  On April 10, 2014, the Ventura County District Attorney filed a complaint against him for a single felony count of attempted robbery (with additional allegations regarding prior convictions and use of a weapon during the commission of the crime). (*Id.*)  Bail was set at $110,000, and he was remanded to the custody of the Sheriff. (*Id.*)  On May 7, 2014, O.M. was arraigned in the Superior Court of California, County of Ventura and entered a plea of not guilty. (*Id.*) The same day, O.M.'s attorney declared a doubt as to O.M.'s competency. (*Id.*) Criminal proceedings were suspended and competency proceedings were initiated. (*Id.*)

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL MINUTES – GENERAL**

| Case No. | **CV 16-03084-BRO (RAOx)** | Date | October 24, 2016 |
|----------|-----------------------------|------|------------------|
| Title | **M.S. ET AL. V. COUNTY OF VENTURA ET AL.** | | |

Dr. John Nightingale, Ph.D., a clinical psychologist, was ordered to perform a competency evaluation. (*Id.*)  On September 10, 2014, after several continuances, Dr. Ines Monguio, another clinical psychologist, filed a report with the court finding O.M. incompetent to stand trial. (*Id.*)  The case was continued until September 24, 2014, and was referred for a placement recommendation. (*Id.*)

On September 26, 2014, the court found that O.M. consented to the administration of psychotropic medication and ordered that O.M. be placed in Patton State Hospital. (FAC ¶ 19.)  The court found that the maximum commitment time was three years and awarded him custody credit of 344 days. (*Id.*)  The court committed O.M. to the custody of the Sheriff and ordered that he be committed to Patton State Hospital. (*Id.*)  On December 23, 2015, a notice of admission to the DSH was filed. (*Id.*)  On March 30, 2015, DSH sent the court a notice of competency, and on April 10, 2015, O.M. returned to court. (*Id.*)  Criminal proceedings resumed on April 17, 2015. (*Id.*)

After several continuances, O.M.'s attorney requested that O.M. receive mental health treatment pursuant to California Penal Code section 4011.6. (FAC ¶ 20.)  The request was denied. (*Id.*)  On August 14, 2015, O.M. entered a plea of not guilty by reason of insanity, and the court appointed two psychiatrists to evaluate him. (*Id.*)  The psychiatrists filed their reports on October 13, 2015. (*Id.*)  On November 25, 2015, O.M.'s attorney declared a doubt as to him competency once again. (FAC ¶ 21.)  Criminal proceedings were suspended and Dr. Thomas Lauren was appointed to evaluate O.M. (*Id.*)  On December 24, 2015, the court found O.M. incompetent to stand trial, and on January 6, 2016, MHM services provided a placement recommendation and O.M. was committed to DSH. (*Id.*)  O.M. was committed to the Sheriff's custody and the court ordered he be transported to Patton State Hospital. (*Id.*)  The court made a finding that the maximum term of imprisonment was three years and awarded him 521 days of custody credit. (*Id.*)  On January 28, 2016, O.M.'s 1370 packet was sent to the Ventura County Sheriff's Office. (*Id.*)

During O.M.'s incarceration, O.M. was disciplined several times for a variety of violations of the jail's rules, arising primarily from his mental illness. (FAC ¶ 22.)  For instance, Plaintiffs provide an example of an instance in which O.M. became agitated in got into an altercation with another inmate after "hearing voices." (*Id.*)  O.M.'s discipline included five days in an isolation cell, loss of visits, loss of access to the commissary, and

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL MINUTES – GENERAL**

| Case No. | **CV 16-03084-BRO (RAOx)** | Date | October 24, 2016 |
|---|---|---|---|
| Title | **M.S. ET AL. V. COUNTY OF VENTURA ET AL.** | | |

a disciplinary diet. (*Id.*) On May 19, 2016, O.M. was transported to Patton State Hospital for treatment.[5] (*Id.*)

### C.   Procedural Background

Plaintiff's filed their Original Complaint in this action on May 4, 2016, alleging only three causes of action and omitting Dr. Adler, Dr. Pollack, DHS, and Patton State Hospital as Defendants.[6] (Dkt. No. 1.) On July 28, 2016, Plaintiffs filed their operative First Amended Complaint against all currently named Defendants and alleging seven[7] causes of action: (1) violations of due process under the Fourteenth Amendment, (FAC ¶¶ 97–110); (2) violations of the American with Disabilities Act ("ADA"), 42 U.S.C. § 12132 *et seq.*, (FAC ¶¶ 111–27); (3) violations of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, (FAC ¶¶ 129–44); (4) violations of California Government Code section 11135, (FAC ¶¶ 145–50); (5) violation of the Unruh Civil Rights Act, California Civil Code section 51 *et seq.*, (FAC ¶¶ 151–57); (6) violation of California Civil Code section 54 *et seq.*, (FAC ¶¶ 158–65); and, (7) violation of California Civil Code section 52.1, (FAC ¶¶ 166–72).

On September 2, 2016: (1) the State Defendants filed their Motion to Dismiss, (*see* State Defs.' MTD); (2) the State Defendants filed a Request for Judicial Notice, (Dkt. No. 32-2 (hereinafter, "Defs.' RJN")); (3) the CFMG Defendants filed their Motion to Dismiss, (*see* CFMG Defs.' MTD); (4) the MHM Defendants filed their Motion to Dismiss, (MHM Defs.' MTD); (5) the MHM Defendants filed their Notice of Joinder in the State Defendants' Motion to Dismiss, (Dkt. No. 37); and, (6) the County Defendants filed their Motion to Dismiss, (County Defs.' MTD). On September 13, 2016, the CFMG

---

[5] Plaintiffs include factual allegations regarding the nine putative class members. (*See* FAC ¶¶ 23–33.) As Defendants' Motions do not address the class allegations, the Court will not address the class members' factual allegations.

[6] On the same day, Plaintiffs filed Petitions to Appoint Mary Rodgers-Vey and Adrian Mojica as guardians ad litem for M.S. and O.M., respectively. (Dkt. Nos. 6, 7.) Magistrate Judge Oliver granted the Petitions on May 20, 2016. (Dkt. Nos. 14, 15.)

[7] Plaintiffs' First Amended Complaint includes no sixth claim for relief. (*See* FAC.) Thus, though there are two causes of action titled as the seventh and eighth claims for relief, these are actually the sixth and seventh causes of action, respectively.

LINK:

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES – GENERAL

| Case No. | **CV 16-03084-BRO (RAOx)** | Date | October 24, 2016 |
|---|---|---|---|
| Title | **M.S. ET AL. V. COUNTY OF VENTURA ET AL.** | | |

Defendants and the MHM Defendants filed their Notices of Joinder, (Dkt. Nos. 42, 43), and the MHM Defendants filed a Motion to Amend, (Dkt. No. 44).  On September 20, 2016, the MHM Defendants filed a Notice of Joinder in the County Defendants' Motion to Dismiss.  (Dkt. No. 46.)  On September 26, 2016, Plaintiffs filed Oppositions to each of the four Motions to Dismiss, (Dkt. Nos. 47 (hereinafter, "State Opp'n"), 48 (hereinafter, "County Opp'n"), 49 (hereinafter, "MHM Opp'n"), 50 (hereinafter, "CFMG Opp'n")), and their own Request for Judicial Notice, (Dkt. No. 51 (hereinafter, "Pls.' RJN")).  On October 10, 2016, the State Defendants filed their Reply.[8]  (Dkt. No. 52 (hereinafter, "State Defs.' Reply").)  On October 11, 2016, the MHM Defendants untimely[9] filed their Replies regarding both their Motion to Dismiss and their Amended Motion to Dismiss, (Dkt. Nos. 54, 56), and the County Defendants untimely filed their Reply, (Dkt. No. 55).  The CFMG Defendants untimely filed their Reply on October 12, 2016.  (Dkt. No. 58.)

## III.   REQUESTS FOR JUDICIAL NOTICE

When considering a motion to dismiss, a court typically does not look beyond the complaint in order to avoid converting a motion to dismiss into a motion for summary judgment.  *See Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991).  Notwithstanding this precept, a court may properly take judicial notice of (1) material which is included as part of the complaint or relied upon by the complaint, and, (2) matters in the public record.  *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).  Additionally, a court may take judicial notice pursuant to Federal Rule of Evidence 201(b).  Under Rule

---

[8] On October 11, 2016, the State Defendants filed an Ex Parte Application seeking permission to exceed the page limitation for their Reply, (Dkt. No. 53), which the Court granted on October 12, 2016, (Dkt. No. 57).

[9] Under this Court's Local Rules, any reply is due at least fourteen days prior to the date noticed for hearing on the motion.  See C.D. Cal. L.R. 7-10.  As these Motions are noticed for hearing on October 24, 2016, Defendants' replies were due on October 10, 2016.  October 10, 2016, however, was Columbus Day, a federal holiday.  Under this Court's Standing Order, any opposition or reply papers that are due on a holiday must be filed the Friday before the holiday, rather than the Tuesday following. (Dkt. No. 13 at 3.)  Thus, any Reply filed on either October 11 or October 12, 2016, is considered untimely.  Regardless, the Court has considered these untimely Replies despite their tardiness.

LINK:

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES – GENERAL

| Case No. | **CV 16-03084-BRO (RAOx)** | Date | October 24, 2016 |
|---|---|---|---|
| Title | **M.S. ET AL. V. COUNTY OF VENTURA ET AL.** | | |

201(b), a judicially noticed fact must be one that is "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A court "must take judicial notice if a party requests it and the court is supplied with the necessary information." *See* Fed. R. Evid. 201(c)(2); *In re Icenhower*, 755 F.3d 1130, 1142 (9th Cir. 2014). Both parties have filed Requests for Judicial Notice. (*See* Defs.' RJN; Pls.' RJN.)

The State Defendants request the Court take judicial notice of (1) a summons and petition for writ of mandate filed in the Superior Court of California, County of Alameda in *Stiavetti v. Ahlin*, Case No. RG15779731, on July 29, 2015, and, (2) docket entries from July 26, 2015 through August 17, 2016 in the same case. (*See* Defs.' RJN.) Plaintiffs request that the Court take judicial notice of three documents: (1) California Senate Bill 863, Adult Local Criminal Justice Facilities Construction; (2) Ventura County Grand Jury 2015–2016 Final Report: Annual Detention Facilities and Law Enforcement Issues; and, (3) a California Government Code section 910 claim which Plaintiffs served on the County Defendants prior to their filing of the First Amended Complaint. (*See* Pls.' RJN.) There are no objections to either Request.

"Court orders and filings are proper subjects of judicial notice." *Vasserman v. Henry Mayo Newhall Mem'l Hosp.*, 65 F. Supp. 3d 932, 942–43 (C.D. Cal. 2014). In addition, "[f]ederal courts may 'take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to the matter at issue.'" *Del Puerto Water Dist. v. U.S. Bureau of Reclamation*, 271 F. Supp. 2d 1224, 1233 (E.D. Cal. 2003) (quoting *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992)). Accordingly, the Court **GRANTS** the State Defendants' Request for Judicial Notice as both documents they include in their request are court orders and filings that are properly noticeable.

As for Plaintiffs' Request for Judicial Notice, the Court finds that both of Plaintiffs' first two attached documents, the Senate Bill and the Ventura County Grand Jury Report, are public records which are not reasonably subject to dispute. *See Stemplewski v. Suntrust Mortg., Inc.*, No. C 10-01507 HRL, 2010 WL 2179152, at *1 (N.D. Cal. May 26, 2010) (taking judicial notice of the legislative history of a California Senate Bill); *Retired Emps. Ass'n of Orange Cty., Inc. v. County of Orange*, 632 F. Supp. 2d 983, 985 (C.D. Cal. 2009) (taking judicial notice of County of Board Supervisors'

LINK:

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## CIVIL MINUTES – GENERAL

| Case No. | **CV 16-03084-BRO (RAOx)** | Date | October 24, 2016 |
|---|---|---|---|
| Title | **M.S. ET AL. V. COUNTY OF VENTURA ET AL.** | | |

Resolution, a California State Public Employee Post-Employment Benefits Commission Report, and a County of Orange Auditor-Controller Department Citizens' Report). Further, the authenticity of Plaintiffs' section 910 claim is not in question and its authenticity is easily verifiable. *See Shaw v. City of Porterville*, No. 1:15-cv-00671-SKO, 2015 WL 3795026, at *4 (E.D. Cal. June 17, 2015) (taking judicial notice of California section 910 claim). Accordingly, the Court **GRANTS** Plaintiffs' Request for Judicial Notice.

## IV.   LEGAL STANDARD

Under Rule 8(a), a complaint must contain a "short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). If a complaint fails to do this, the defendant may move to dismiss it under Rule 12(b)(6). Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, there must be "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility'" that the plaintiff is entitled to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557).

In ruling on a motion to dismiss for failure to state a claim, a court should follow a two-pronged approach: first, the court must discount conclusory statements, which are not presumed to be true; and then, assuming any factual allegations are true, the court must determine "whether they plausibly give rise to entitlement to relief." *See id.* at 679; *accord Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012). A court should consider the contents of the complaint and its attached exhibits, documents incorporated into the complaint by reference, and matters properly subject to judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007); *Lee*, 250 F.3d at 688.

Where a district court grants a motion to dismiss, it should provide leave to amend unless it is clear that the complaint could not be saved by any amendment. *Manzarek v.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| Case No. | **CV 16-03084-BRO (RAOx)** | Date | October 24, 2016 |
|---|---|---|---|
| Title | **M.S. ET AL. V. COUNTY OF VENTURA ET AL.** | | |

*St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) ("Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment.").

## V.    DISCUSSION

### A.    Whether the Court Should Abstain from Exercising Subject Matter Jurisdiction

First, Defendants argue that this Court should exercise *Younger* abstention and abstain from exercising jurisdiction over the instant matter because there is an ongoing state court proceeding addressing issues nearly identical to those raised in the current case.  (*See* State Defs.' MTD at 8–11.)  Under the doctrine of *Younger* abstention, federal courts should abstain from exercising jurisdiction when doing so "would interfere with pending state judicial proceedings."  *Hirsh v. Justices of Supreme Ct. of State of Cal.*, 67 F.3d 708, 712 (9th Cir. 1995).  "Absent 'extraordinary circumstances', abstention in favor of state judicial proceedings is required if the state proceedings (1) are ongoing, (2) implicate important state interests, and (3) provide the plaintiff an adequate opportunity to litigate federal claims."  *Id.* (citing *Middlesex Cty. Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).

Defendants bring to the Court's attention a verified petition for writ of mandate and complaint for declaratory and injunctive relief filed in the Superior Court of California, County of Alameda in *Stiavetti v. Ahlin*, Case Number RG15779731.  (*See* RJN, Ex. 1.)  In that case, which was filed on July 29, 2015, the plaintiffs (who are not a party to this action) bring a state-wide challenge to the process by which incompetent detainees are allegedly not timely evaluated or treated for their mental health condition.  (*Id.*)  Thus, it appears that any decision in *Stiavetti* will resolve issues that are nearly identical to those raised in the instant matter, though, as Plaintiffs note, Plaintiffs here bring this action against three additional defendants that are not named in *Stiavetti* and allege additional causes of action.  (*See* State Opp'n at 3.)  However, even assuming the two proceedings are similar enough that *Younger* abstention may be implicated, the Court finds that *Younger* abstention in this case is not warranted.

First, it is undisputed that *Stiavetti* was an ongoing action at the time Plaintiffs filed this action; *Stiavetti* was filed on July 29, 2015, and Plaintiffs filed this action on May 4,

LINK:

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## CIVIL MINUTES – GENERAL

| Case No. | CV 16-03084-BRO (RAOx) | Date | October 24, 2016 |
|---|---|---|---|
| Title | M.S. ET AL. V. COUNTY OF VENTURA ET AL. | | |

2016.  (*Compare* RJN, Ex. 1 *with* Dkt. No. 1.)  Thus, the first element is met.  As for the other elements, the Court need not examine the second element as to whether these cases implicate an important state interest sufficient to warrant *Younger* abstention, because Defendants' argument fails on the third requirement: that the state action have provided plaintiff with an adequate opportunity to litigate his federal claims.[10]  *See Hirsh*, 67 F.3d at 712.

Plaintiffs in this action are not parties to *Stiavetti*.  "Consistent with the limited role of *Younger* abstention, the Supreme Court has indicated that, usually, federal plaintiffs who are not also parties to pending litigation in state court may proceed with their federal litigation."  *Green v. City of Tuscon*, 255 F.3d 1086, 1099 (9th Cir. 2001), *overruled on other grounds by Gilbertson v. Albright*, 381 F.3d 965 (9th Cir. 2004).  Further, "absent extraordinary circumstances, each plaintiff is entitled to his own day in court, and . . . therefore the mere existence of litigation brought by other parties with similar interests does not bar a plaintiff from pursuing his own litigation."  *Id.* at 1100.  Thus, "[o]nly under 'quite limited circumstances' may *Younger* 'oust a district court of jurisdiction over a case where the plaintiff is not a party to an ongoing state proceeding.'"  *Vasquez v. Rackauckas*, 734 F.3d 1025, 1035 (9th Cir. 2013) (quoting *Green*, 255 F.3d at 1103).  "Such circumstances are present only when a federal plaintiff's interests are 'so intertwined with those of the state court party that . . . interference with the state court proceeding is inevitable.'"  *Id.* (quoting *Green*, 255 F.3d at 1103); *see also Hanover Ins. Co. v. Fremont Bank*, 68 F. Supp. 3d 1085, 1107–08 (N.D. Cal. 2014) (defining intertwined interests as arising "when parties in both actions are owned or controlled by the same entity").

The Court finds here that Plaintiffs claims are not so intertwined with the *Stiavetti* plaintiffs' claims as to interfere with the state court proceeding.  First, there appears to be no connection between the *Stiavetti* plaintiffs and the plaintiff in this action (other than that they had similar experiences) that would intertwine their claims.  For instance, the plaintiffs are not part of the same entity, are not owned or controlled by the same entity,

---

[10] In addition, the Ninth Circuit has recognized a fourth element: that "the policies behind the *Younger* doctrine must be implicated by the actions requested of the federal court."  *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1149 (9th Cir. 2007).  But, as the Court finds that this case does not satisfy the third element—which are considered the "threshold" elements—the Court need not address the fourth element.

LINK:

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## CIVIL MINUTES – GENERAL

| Case No. | **CV 16-03084-BRO (RAOx)** | Date | October 24, 2016 |
|---|---|---|---|
| Title | **M.S. ET AL. V. COUNTY OF VENTURA ET AL.** | | |

and have never been a part of the others' proceedings. *See Hanover*, 68 F. Supp. 3d at 1107–08. Moreover, Plaintiffs here raise causes of action not raised in the *Stiavetti* proceeding against defendants who are not named in *Stiavetti*. In addition, even if Plaintiffs were aware of *Stiavetti* before bringing this action, "a federal litigant is not required to intervene in a state court litigation to raise issues similar to those he wishes to raise in the federal court."[11] *Id.* at 1108. Therefore, the Court finds that *Younger* abstention would be inappropriate in this case. Accordingly, the Court will examine Defendants' Motions to Dismiss.

## B.     Plaintiffs' Fourteenth Amendment Due Process Claim

Plaintiffs' first cause of action alleges a violation of due process. (*See* FAC ¶¶ 97–110.) It appears that Plaintiffs are alleging that their due process rights were violated when Defendants failed to provide them with timely restorative mental health treatment.[12] (*See* FAC ¶¶ 100–01.) The Ninth Circuit has held that "[d]ue process 'requires states to provide civilly-committed persons with access to mental health treatment that gives them a realistic opportunity to be cured and released.'" *Allen v. Mayberg*, 577 F. App'x 728, 732 (9th Cir. 2014) (quoting *Sharp v. Weston*, 233 F.3d 1166, 1172 (9th Cir. 2000)).

---

[11] The State Defendants also argue that Plaintiffs had the opportunity to raise their federal claims either during the commitment and placement proceedings under California Penal Code section 1370 or through the state habeas process. (*See* State Defs.' Reply at 7.) But Defendants do not argue—likely because they cannot—that Plaintiffs had the opportunity to raise their federal claims in the *Stiavetti* proceeding. It is not merely that there were other procedural avenues by which Plaintiffs could have proceeded that triggers *Younger* abstention; rather, the third element requires that the plaintiff have had an opportunity to raise his federal claims in *the parallel state court action*. *See Baffert v. Cal. Horse Racing Bd.*, 332 F.3d 613, 617 (9th Cir. 2003) ("*Younger* abstention . . . applies when there is a pending state proceeding that implicates important state interests and provides the federal plaintiff with an opportunity to raise federal claims."); *Agriesti v. MGM Grand Hotels, Inc.*, 53 F.3d 1000, 1001 (9th Cir. 1995) ("Before *Younger* abstention can be applied to dismiss a federal claim, . . . there must be ongoing state judicial proceedings [and] . . . the state judicial proceedings must afford the federal plaintiff an adequate opportunity to raise constitutional claims.").

[12] As a preliminary matter, the Court notes that it is, at times, difficult to determine exactly what Plaintiffs are alleging in their First Amended Complaint. While Plaintiffs plead quite a few facts and seven causes of action, they do not, generally, tie any of their alleged facts to any specific cause of action. Rather, when pleading their causes of action, they primarily recite the elements of the claim. This makes it difficult at times for the Court to analyze Plaintiffs' allegations with specificity. Thus, the Court encourages Plaintiffs to clarify their allegations in any future filings.

---

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL MINUTES – GENERAL**

| Case No. | **CV 16-03084-BRO (RAOx)** | Date | October 24, 2016 |
|---|---|---|---|
| Title | **M.S. ET AL. V. COUNTY OF VENTURA ET AL.** | | |

Thus, Plaintiffs are correct in asserting that they have an actionable constitutional right to restorative mental health treatment.  However, for the following reasons, the Court finds that Plaintiff may only allege a violation of those rights against the State Defendants here.

## 1.    County Defendants

The County Defendants[13] argue that Plaintiffs' due process claims against them fail because the County Defendants have no obligation to provide incompetent detainees with

---

[13] Plaintiffs bring their due process claim against the State Defendants as well, (*see* FAC ¶¶ 97–110); however, State Defendants do not address Plaintiffs' due process claim separately, but argue that their due process claim relies, on its face, on Plaintiffs' claims under the ADA and the Rehabilitation Act. (State Defs.' MTD at 12.)  Therefore, according to the State Defendants, to the extent Plaintiffs' ADA and Rehabilitation Act claims fail, their due process claim also fails.  (*Id.*)  The Court disagrees. Plaintiffs' due process claims allege that the state has failed to provide them sufficient mental health restoration treatment after the court ordered Plaintiffs into the custody of Patton State Hospital, while Plaintiffs' ADA and Rehabilitation Act claims allege that Plaintiffs were discriminated against on the basis of their disability.  (*Compare* FAC ¶¶ 97–110 *with* FAC ¶¶ 111–44.)  As the State Defendants provide no other grounds on which the Court should dismiss Plaintiffs' due process claims against them, the Court **DENIES** the State Defendants' Motion to Dismiss as to Plaintiffs' due process claims.

The State Defendants do argue, however, that the Court should dismiss Plaintiffs' damages claims for all causes of action against the individual State Defendants because they are entitled to qualified immunity as to the damages claims.  (State Defs.' MTD at 18–20.)  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  A qualified immunity analysis proceeds in two phases: first, the court must determine whether there is a constitutionally protected right at issue, and second, the court must determine whether that right was clearly established, *id.* at 232, though the court may examine the second question first for the sake of judicial economy, *id.* at 243.

Here, the answer to both questions appears fairly straightforward.  In *Oregon Advocacy Center v. Mink*, 322 F.3d 1101, 1121-22 (9th Cir. 2003), the Ninth Circuit held that a state hospital violated the due process rights of incapacitated criminal defendants when it refused to admit them "in a timely manner."  "'We do not require a case directly on point' before concluding that the law is clearly established, 'but existing precedent must have placed the statutory or constitutional question beyond debate.'"  *Stanton v. Sims*, 134 S. Ct. 3, 5 (2013) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).  The Court finds that the *Mink* decision clearly established the requirement that a state hospital must timely admit civilly-committed defendants.  Though *Mink* addressed an Oregon statute, it still provided clear guidance that untimely admissions to mental hospitals of incapacitated defendants was a constitutional violation.  Further, California Court of Appeal decisions addressing Penal Code section 1370 have explicitly held that "a defendant must arrive at Patton [the same hospital at issue here] timely,

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL MINUTES – GENERAL**

| Case No. | **CV 16-03084-BRO (RAOx)** | Date | October 24, 2016 |
|---|---|---|---|
| Title | **M.S. ET AL. V. COUNTY OF VENTURA ET AL.** | | |

restorative mental health treatment.  (County Defs.' MTD at 4–5.)  Plaintiffs, however, argue that the County Defendants cannot shirk responsibility for Plaintiffs' constitutionally-required treatment.  (*See* County Opp'n at 6.)

The Ninth Circuit addressed a similar issue in *Oregon Advocacy Center v. Mink*, 322 F.3d 1101.  There, the Ninth Circuit analyzed an Oregon statute similar to California Penal Code section 1370, under which the court was required to commit a defendant who was found incompetent to proceed to "'the custody of the superintendent of a state mental hospital'" or to release the defendant on supervision.  *Mink*, 322 F.3d at 1115 (quoting Or. Rev. Stat. § 161.370(2)).  The court noted that "the statute makes no mention of any intermediary, county jail or otherwise, to whom the court can commit a mentally incapacitated defendant before either committing the defendant to [the state hospital] or releasing the defendant on supervision."  *Id.*  Accordingly, the court held that "under Oregon law, it is not the counties but the [state hospital] that has the duty to accept and treat incapacitated defendants once they have been certified as such by a circuit court." *Id.* at 1116.

Here, California Penal Code section 1370 provides that upon a finding of the defendant's incompetence, the court shall order the defendant "be delivered by the sheriff to a state hospital for the care and treatment of the mentally disordered, as directed by the State Department of State Hospitals, or to any other available public or private treatment facility, including a county jail treatment facility."  Cal. Penal Code § 1370(a)(1)(B)(i).  Thus, unlike the Oregon statute, California's statute does provide for mental health treatment at a county jail.

---

not on the 84th day following the commitment order." *In re Mille*, 182 Cal. App. 4th 635, 650 (Cal. Ct. App. 2010).  Thus, there was ample case law indicating to the individual State Defendants that they had a duty to timely admit Plaintiffs to Patton State Hospital.  Accordingly, Plaintiffs are not entitled to qualified immunity and the State Defendants' Motion to Dismiss is **DENIED** on these grounds.

Finally, the State Defendants argue for the first time in their Reply that the Plaintiffs' claims against the individual State Defendants in their personal capacity should be dismissed because Plaintiffs have failed to establish supervisor liability.  (State Defs.' Reply at 14–15.)  "The Court need not, and does not, consider arguments raised for the first time in a reply brief." *Grupo Gigante S.A. de C.V. v. Dallo & Co.*, 119 F. Supp. 2d 1083, 1103 n.15 (C.D. Cal. 2000) (citing *United States v. Cox*, 7 F.3d 1458, 1463 (9th Cir. 1993)).  Therefore, the Court will not entertain this argument.

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES – GENERAL

| Case No. | **CV 16-03084-BRO (RAOx)** | Date | October 24, 2016 |
|---|---|---|---|
| Title | **M.S. ET AL. V. COUNTY OF VENTURA ET AL.** | | |

However, while Penal Code section 1370 *allows* for the court to order that an incompetent defendant be treated at a county jail treatment facility (which may give rise to the county jail's duty to provide mental health restoration services), in this case, Plaintiffs' First Amended Complaint indicates that the court ordered both M.S. and O.M. be committed to Patton State Hospital—not a county jail treatment facility.  (*See* FAC ¶¶ 16, 19.)  Thus, under the guidance of *Mink*, it appears that no duty arose on behalf of the County Defendants to provide mental health restoration services once the court ordered that M.S. and O.M. be delivered to Patton State Hospital for treatment.[14]  *See Mink*, 322 F.3d at 1116.  Accordingly, Plaintiffs have failed to state a claim for a violation of due process against the County Defendants.  Further, because the duty to provide mental health restoration treatment lies only with the state hospital and not with the County, any amendment to Plaintiffs' due process claims to allege that the County Defendants' failure to provide such treatment would be futile.  However, because Plaintiffs could, potentially, allege that the County Defendants have committed other due process violations, Plaintiffs' due process claim against the County Defendants is **DISMISSED without prejudice**.

### 2.    CFMG Defendants

The CFMG Defendants argue that any due process claim against them must be dismissed because Plaintiffs have failed to plead any alleged constitutional violation that they have committed with specificity.  (CFMG Defs.' MTD at 8–11.)  First, the CFMG Defendants argue that Drs. Fithian, Adler, and Pollack cannot be held personally liable because (1) Plaintiffs do not indicate what constitutional violations they were allegedly

---

[14] As the Ninth Circuit noted, "jails can sometimes provide treatment to stabilize a patient," but "they cannot restore a patient to competency" (unless perhaps, under California law, the patient is ordered to be committed to a county jail's mental health restoration program).  *Mink*, 822 F.3d at 1120.  Thus, while the County Defendants could possibly be liable for a failure to provide mental health stabilization or mental health care in general, the Court construes Plaintiffs' due process cause of action as alleging that the County Defendants failed to provide Plaintiffs with timely mental health restoration treatment.  (*See* FAC ¶¶ 101–02, 109; *see also* County Opp'n at 6 ("The County Defendants callously attempt to shirk responsibility by arguing that the State is *solely* responsible for the *restorative treatment* of [incompetent] detainees despite the fact they are in County custody." (first emphasis in original, second emphasis added).)  As discussed above, the Court finds that this mental health restoration treatment is the sole duty of Patton State Hospital once an incapacitated defendant is ordered to be admitted there, not the county jail, and thus, the County Defendants cannot be held liable for failing to provide such treatment.

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| Case No. | **CV 16-03084-BRO (RAOx)** | Date | October 24, 2016 |
|---|---|---|---|
| Title | **M.S. ET AL. V. COUNTY OF VENTURA ET AL.** | | |

personally responsible for, and, (2) respondeat superior liability does not apply to § 1983 actions. (CFMG Defs.' MTD at 9.)

Plaintiffs concede that they only mention the CFMG doctors in their First Amended Complaint when they originally identify them as parties. (*See* CFMG Opp'n at 7.) Specifically, Plaintiffs allege that: (1) Dr. Fithian is the Medical Director of CFMG who is "responsible for establishing policies and practices for CFMG employees" and "is responsible for training, supervision and management of CFMG employees," (FAC ¶ 38); (2) Dr. Adler is the onsite Medical Director of CFMG at VCPTDF "and the physician hired to provide medical care, attention, and treatment to civil detainees, pre-trial detainees, and sentenced prisoners at VCPTDF," (FAC ¶ 39); and, (3) Dr. Pollack is a psychiatrist at VCPTDF "hired to provide mental health treatment" for all detainees at VCPTDF, (FAC ¶ 40). Plaintiffs argue that "if CFMG provided *all* of the medical care" for the relevant Ventura County detainment facilities, and it was the individual doctors who provided (or supervised) the medical care at CFMG, then the doctors were responsible for the violations alleged in the First Amended Complaint. (CFMG Opp'n at 7.)

As addressed above, the Court construes Plaintiffs' due process claim as alleging that their constitutional rights were violated when Defendants failed to provide Plaintiffs with timely mental health restoration treatment. (*See* FAC.) "The obligation to provide for the basic human needs of prisoners includes a requirement to provide access to adequate mental health care." *Coleman v. Wilson*, 912 F. Supp. 1282, 1298 (E.D. Cal. 1995) (citing *Doty v. County of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994)). But, as the Ninth Circuit held in *Mink*, it is only state hospitals, not county jails, who have the capacity to restore a mentally incompetent detainee to mental health. *See Mink*, 322 F.3d at 1120, 1122.

Thus, Plaintiffs' claims against the CFMG Defendants who are hired to provide medical services at VCPTDF and the TRJ fail, because the county jail's health care providers do not have a duty to provide *mental health restoration services* (which, as the *Mink* court notes, is different than mental health stabilization services). The analysis may be different if Plaintiffs alleged a different set of facts.. *See Coleman*, 912 F. Supp. at 1298. But, Plaintiffs' First Amended Complaint appears limited to allegations that the CFMG Defendants failed to provide mental health restoration services. As the court here ordered both M.S. and O.M. into the custody of Patton State Hospital for restoration

LINK:

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES – GENERAL

| Case No. | **CV 16-03084-BRO (RAOx)** | Date | October 24, 2016 |
|---|---|---|---|
| Title | **M.S. ET AL. V. COUNTY OF VENTURA ET AL.** | | |

treatment, (FAC ¶¶ 16, 19), the CFMG Defendants did not have a duty to provide such services, *see Mink*, 322 F.3d at 1116.  Accordingly, Plaintiffs' have failed to plead a due process claim against the CFMG Defendants and the CFMG Defendants' Motion to Dismiss is **GRANTED** as to Plaintiffs' due process claim.  For the same reasons as above, however, Plaintiffs' due process claim against the CFMG Defendants is **DISMISSED without prejudice**.

###    3.    The MHM Defendants

According to Plaintiffs' First Amended Complaint, the MHM Defendants should be held liable for a violation of Plaintiffs' due process rights because Mr. Lopez, the Community Program Director for MHM Services, is responsible for most mental hospital assignments within Ventura County and "knows or should know that incarcerated [incompetent] detainees who are ordered to be placed at Patton [State Hospital] will not receive appropriate mental health treatment in the jail" while waiting to be transported to Patton.  (FAC ¶ 46.)  Plaintiffs rely on the Ninth Circuit's decision in *Chew v. Gates*, 27 F.3d 1432 (9th Cir. 1994), for the proposition that an individual may be held liable for causing a constitutional deprivation to occur.  (*See* MHM Opp'n at 10–11.)  *Chew*, however, held that individuals could be held liable for causing a constitutional deprivation where the individuals created, designed, or implemented an unconstitutional policy on behalf of their employer, a police department.  *See Chew*, 27 F.3d at 1446. Here, Plaintiffs allege no MHM Services policy that Mr. Lopez created, designed, or implemented when he assigned patients to Patton State Hospital; instead, they claim that Mr. Lopez simply knew or should have known that Defendants would not receive mental health restoration treatment while detained at county jail waiting for transfer to Patton. (FAC ¶ 46.)  The Court finds that this allegation is insufficient to establish liability for Plaintiffs' due process claim against Mr. Lopez or MHM Services.  Therefore, the MHM Defendants' Motion to Dismiss is **GRANTED** as to Plaintiffs' due process claim.  But, as with Plaintiffs' other due process claims, their due process claim against the MHM Defendants is **DISMISSED without prejudice**.

###    C.    Plaintiffs' ADA and Rehabilitation Act Claims

Next, Defendants move to dismiss Plaintiffs' second and third causes of action for violations of Title II of the ADA and § 504 of the Rehabilitation Act.  "Title II of the [ADA] and § 504 of the Rehabilitation Act . . . 'both prohibit discrimination on the basis

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| Case No. | CV 16-03084-BRO (RAOx) | Date | October 24, 2016 |
|---|---|---|---|
| Title | M.S. ET AL. V. COUNTY OF VENTURA ET AL. | | |

of disability.'" *Bloodworth v. Krall*, No. 09 CV 2671 MMA (CAB), 2011 WL 1043726, at *3 (S.D. Cal. Mar. 22, 2011) (quoting *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002)). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance."[15] 29 U.S.C. § 794(a). To state a viable claim under either statute, the plaintiff must sufficiently allege that: "'(1) he is an "individual with a disability"; (2) he was "'excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability.'" *Rodde v. Bonta*, 357 F.3d 988, 995 (9th Cir. 2004) (quoting *Weinreich v. L.A. Cty. MTA*, 114 F.3d 976, 978 (9th Cir. 1997)).

As an initial matter, the Court notes that it is unclear from the face of Plaintiffs' First Amended Complaint what programs, activities, or other discrimination Plaintiffs are alleging was barred from them due to their disability.[16] (*See* FAC ¶¶ 111–44.) In their Opposition papers, however, Plaintiffs clarify that their claims are "based upon the denial of timely restorative treatment services which DSH must provide" under California Penal Code section 1368 *et seq.* (State Opp'n at 8.) According to Plaintiffs, they were

---

[15] "Because the ADA was modeled on section 504 of the Rehabilitation Act, 'courts have applied the same analysis to claims brought under both statutes.'" *Boose v. Tri-Cty. Metro. Transp. Dist. of Or.*, 587 F.3d 997, 1001 n.5 (9th Cir. 2009) (quoting *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999)). In addition, all of the parties address Plaintiffs' ADA and Rehabilitation causes of action simultaneously. Therefore, the Court will address Plaintiffs' ADA and Rehabilitation Act claims together.

[16] Plaintiffs also allege in a conclusory manner that "Defendants have violated the ADA by failing or refusing to provide Plaintiffs with reasonable accommodations and other services related to their disabilities." (FAC ¶ 119.) It is unclear what accommodations Plaintiffs are indicating, however, and the vast majority of Plaintiffs' Opposition papers argue only that Plaintiffs were discriminated against under the ADA. Accordingly, the Court does not address this reasonable accommodation claim.

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| Case No. | CV 16-03084-BRO (RAOx) | Date | October 24, 2016 |
|---|---|---|---|
| Title | M.S. ET AL. V. COUNTY OF VENTURA ET AL. | | |

"excluded from participation in DSH's restorative treatment program and this exclusion was by reason of their disability."  (*Id.*)

### 1.    State Defendants

The State Defendants argue that Plaintiffs' ADA and Rehabilitation Act claims suffer from one primary flaw: Plaintiffs have failed to establish that Defendants' failure to timely provide Plaintiffs with mental health restoration services was *due to* their disability. (State Defs.' MTD at 12.)  The Court agrees.  The State Defendants do not dispute that Plaintiffs were sufficiently disabled to meet the first element of a viable claim under the ADA and Rehabilitation Act.  (*See* State Defs.' MTD at 12–14.)  Further, the State Defendants do not appear to dispute that Plaintiffs were not admitted to Patton State Hospital immediately upon the court's order and thus, at least to some extent, have been denied access to a public program or service.  (*Id.*)  But the State Defendants argue that Plaintiffs have failed to plead any facts indicating that the State Defendants' failure to transfer Plaintiffs to Patton State Hospital was in any way based on Plaintiffs' disability.  (*Id.*)

In order to establish the third element of a prima facie cause under the ADA or the Rehabilitation Act, Plaintiffs must establish a causal link between Plaintiffs' disability and the alleged discriminatory actions.  *See Martin v. Cal. Dep't of Veterans Affairs*, 560 F.3d 1042, 1048 (9th Cir. 2009) (explaining that the plaintiff was required to establish that she was denied services "by reason of" her disability under the ADA or "solely because of" her disability under the Rehabilitation Act).  But, in their First Amended Complaint, Plaintiffs allege that the reason they were not timely transferred to Patton State Hospital is due to Patton's alleged "one in, one out" policy.  (FAC ¶ 58.)  Plaintiffs do not allege that this "one in, one out" policy has anything to do with Plaintiffs' disability; rather, from the face of Plaintiffs' pleading, it appears that this alleged policy is due to a lack of space at Patton.  (*See id.*)  Defendants cannot be held liable for discrimination under the ADA or the Rehabilitation Act because Patton State Hospital lacks space to accommodate Plaintiffs.  *See Winters v. Ark. Dep't of Health & Human Servs.*, 491 F.3d 933, 937 (8th Cir. 2007) ("[The plaintiff] was not denied admittance to the State Hospital on the basis of his disability, but for a lack of available space.  While a policy of same-day or immediate admission into an appropriate mental health facility may be desirable in the best of all worlds, it is not mandated by the ADA, the Rehabilitation Act, or the Constitution, and it may not always be feasible given a state's

LINK:

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES – GENERAL

| Case No. | **CV 16-03084-BRO (RAOx)** | Date | October 24, 2016 |
|---|---|---|---|
| Title | **M.S. ET AL. V. COUNTY OF VENTURA ET AL.** | | |

limited resources.  We agree with the district court's conclusion that Mr. Winters was not discriminated against on the basis of his disability.").

In addition, Plaintiffs rely on *California Council of the Blind v. County of Alameda*, 985 F. Supp. 2d 1229 (N.D. Cal. 2013), in their Opposition to the State Defendants' Motion to Dismiss.  (*See* State Opp'n at 12.)  There, the court held that the plaintiffs had stated a viable claim under the ADA and the Rehabilitation where the County of Alameda failed to sufficiently provide accessible voting booths for the disabled.  *Cal. Council*, 985 F. Supp. 2d at 1245.  In coming to its decision, the court noted that the ADA and the Rehabilitation Act required that public entities provide accommodations that give the disabled "'*an equal opportunity to participate in, and enjoy the benefits of,* a service, program, or activity of a public entity.'"  *Id.* at 1238–39 (emphasis in original) (quoting 28 C.F.R. § 35.160(b)(1)).  Plaintiffs here do not claim that Defendants failed to provide them with "an *equal opportunity*" as any other group (in fact, Plaintiffs' First Amended Complaint does not mention any other non-disabled group) by not transferring them to Patton.  Therefore, Plaintiffs' reliance on *California Council* is unavailing and *California Council* does not support a holding that Plaintiffs have stated a claim for discrimination under the ADA and the Rehabilitation Act.

Accordingly, the Court finds that Plaintiffs have failed to state a viable claim under the ADA and the Rehabilitation Act.  However, because Plaintiffs could possibly cure their claims through amendment, Plaintiffs' ADA and Rehabilitation Act claims against the State Defendants are **DISMISSED without prejudice**.  Further, the fact that Plaintiffs have failed to establish a causal connection between their disability and any alleged discrimination prevents Plaintiffs from proceeding with their ADA or Rehabilitation Act claims against any Defendants.  However, the Court will still address certain of the other Defendants' arguments that may result in a dismissal with prejudice of Plaintiffs' ADA and Rehabilitation Act claims against them.

### 2.     The County Defendants

The County Defendants argue that Plaintiffs' federal claims are barred by the Prisoner Litigation Reform Act ("PLRA") because Plaintiffs fail to allege a physical injury.  (County Defs.' MTD at 9–11.)  The PLRA provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing

LINK:

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## CIVIL MINUTES – GENERAL

| Case No. | **CV 16-03084-BRO (RAOx)** | Date | October 24, 2016 |
|----------|----------------------------|------|------------------|
| Title | **M.S. ET AL. V. COUNTY OF VENTURA ET AL.** | | |

of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e). Plaintiffs, however, indicate that they are not seeking emotional distress damages, but are seeking only "general, special and compensatory damages," (FAC at 45), which include presumed damages that are recoverable despite a lack of physical injury, (*see* County Opp'n at 13 n.2). Because Plaintiffs concede they are not seeking emotional distress damages (and their First Amended Complaint does not state otherwise), the Court finds that this is an improper ground on which to dismiss Plaintiffs' First Amended Complaint.

### 3.    The CFMG and MHM Defendants

The CFMG Defendants seek dismissal of Plaintiffs' ADA and Rehabilitation Act claims on the grounds that CFMG is not a "public entity" as defined under Title II of the ADA. (CFMG Defs.' MTD at 11–12.) Under 42 U.S.C. § 12131, a "public entity" is defined as (1) any state or local government, (2) "any department, agency, special purpose district, or other instrumentality of a State of States or local government"; or, (3) the National Railroad Passenger Corporation. 42 U.S.C. § 12131. There is a dearth of Ninth Circuit law on the issue of whether a private medical care service who contracts with a jail is a public entity under 42 U.S.C. § 12131. Moreover, "[t]here is substantial disagreement among courts as to whether private companies can be held liable under Title II when they perform contracted services for the government." *Wilkins-Jones v. County of Alameda*, 859 F. Supp. 2d 1039, 1045 (N.D. Cal. 2012). However, "[t]he majority of courts—including the only circuit courts to have reached the question—have held that Title II does not apply to government contractors." *Id.* at 1046. These courts have explained that to be considered an instrumentality of the government, and thus exposed to Title II liability, the entity must be "either part of or created by the government itself." *Id. But see Edison v. Douberly*, 604 F.3d 1307, 1311–12 (11th Cir. 2010) (Barkett, J., dissenting) (explaining that, in Judge Barkett's view, "when a company *takes the place of the state* in performing a function within the exclusive province of the state, that company cannot be permitted to avoid the requirement of the law governing that state function" (emphasis in original)). Ultimately, the *Wilkins-Jones* court deferred to the "currently prevailing view in the circuit courts that government contractors are not liable under Title II." *Wilkins-Jones*, 859 F. Supp. 2d at 1047. This Court likewise defers to the circuit courts' holdings and finds that a private government contractor cannot be held liable under Title II. Thus, Plaintiffs have failed to state a claim against the CFMG Defendants under Title II of the ADA. As any amendment of

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES – GENERAL

| Case No. | **CV 16-03084-BRO (RAOx)** | Date | October 24, 2016 |
|---|---|---|---|
| Title | **M.S. ET AL. V. COUNTY OF VENTURA ET AL.** | | |

Plaintiffs' Complaint as to Title II would be futile, Plaintiffs' claims against the CFMG Defendants under Title II of the ADA are **DISMISSED with prejudice**.

Plaintiffs argue that, in the alternative, the CFMG Defendants may be held liable under Title III of the ADA.  (FAC ¶ 116; CFMG Opp'n at 10–13.)  Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a).  "A place of public accommodation" is defined under Title III as one of several specifically-enumerated type of private entities, such as a hotel, a restaurant, or a theater.  *See* 42 U.S.C. § 12181(7).  Plaintiffs plead no facts, other than one conclusory statement, indicating that the CFMG Defendants may be considered a place of public accommodation under Title III of the ADA.  (*See* FAC ¶ 116.)  However, because there is still a possibility that Plaintiffs could amend their Complaint to adequately allege that CFMG is a place of public accommodation, Plaintiffs' claims under Title III of the ADA are **DISMISSED without prejudice**.[17]

### 4.    The MHM Defendants

Like the CFMG Defendants, the MHM Defendants argue that they cannot be considered a public entity under Title II of the ADA because they are a private government contractor.  (*See* MHM Defs.' MTD at 9–11.)  For the same reasons the Court granted the CFMG Defendants' Motion to Dismiss Plaintiffs' Title II ADA claims, the Court finds that Plaintiffs' have failed to state claim under Title II of the ADA against the MHM Defendants.  Accordingly, Plaintiffs' claims against the MHM Defendants arising under Title II of the ADA are **DISMISSED with prejudice**.  Further, as with the CFMG Defendants, Plaintiffs have failed to plead sufficient facts indicating that MHM Services is a place of public accommodation.  (*See* FAC ¶ 116.)  Therefore, Plaintiffs' claims under Title III of the ADA are **DISMISSED without prejudice**.[18]

---

[17] Further, Plaintiffs have agreed to dismiss without prejudice their Rehabilitation Act claim against the CFMG Defendants.  (*See* CFMG Defs.' MTD at 13; CFMG Opp'n at 13–14.)

[18] In addition, as with the CFMG Defendants, Plaintiffs also agree to dismiss their Rehabilitation Act claims against the MHM Defendants without prejudice.  (*See* MHM Opp'n at 16.)

LINK:

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES – GENERAL

| Case No. | CV 16-03084-BRO (RAOx) | Date | October 24, 2016 |
|---|---|---|---|
| Title | **M.S. ET AL. V. COUNTY OF VENTURA ET AL.** | | |

### D.    Plaintiffs' Claim for Violation of California Government Code Section 11135

Plaintiffs bring their fourth cause of action pursuant to California Government Code section 11135 which provides in relevant part that "[n]o person in the State of California, shall, on the basis of . . . disability, be unlawfully denied full and equal access to the benefits of, or be unlawfully subject to discrimination under, any program or activity that is conducted, operated, or administered by the state of by any state agency."[19]   Cal. Gov. Code § 11135(a).   In their First Amended Complaint, Plaintiffs claim that, as with their ADA and Rehabilitation Act claims, Defendants have discriminated against them based on their disability in contravention of section 11135. (FAC ¶¶ 145–50.)   "Section 11135 'is identical to the Rehabilitation Act except that the entity must receive State financial assistance rather than Federal financial assistance.'" *Bassilios v. City of Torrance*, 166 F. Supp. 3d 1061, 1084 (C.D. Cal. 2015) (citations omitted).   "Section 11135 is also coextensive with the ADA because it incorporates the protections and prohibitions of the ADA and its implementing regulations."  *Id.*   "Thus, if a public entity that receives state funding has violated the [Rehabilitation Act] or the ADA, then it has also violated § 11135."  *Id.*   Accordingly, it would also follow that if the plaintiff has failed to sufficiently plead a violation of the ADA or the Rehabilitation Act, the Plaintiff has failed to plead a sufficient claim under section 11135.   As Plaintiffs provide no additional facts to support their section 11135 claim, the Court finds that it fails for the same reason Plaintiffs' ADA and Rehabilitation Act claims fail: Plaintiffs have failed to provide facts indicating that they were discriminated against on the basis of their disability.

In addition, the State Defendants argue that Plaintiffs' section 11135 claim is barred because Plaintiffs failed to exhaust their administrative remedies.  (State Defs.' MTD at 21–22.)   Though section 11135 does not explicitly contain an exhaustion requirement, courts have consistently held that the "regulations implementing the section plainly refer to an exhaustion requirement."  *See J.E.L. v. S.F. Unified Sch. Dist.*, __ F.

---

[19] Plaintiffs concede that their state law claims under their fourth, fifth, sixth, and seventh causes of action cannot proceed against the individual State Defendants in their official capacity under the doctrine of sovereign immunity.  (*See* State Opp'n at 16 (citing *Ex Parte Young*, 209 U.S. 123, 155–56 (1908).)   Therefore, Plaintiffs' state law claims against the individual State Defendants are **DISMISSED with prejudice**.

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| Case No. | **CV 16-03084-BRO (RAOx)** | Date | October 24, 2016 |
|---|---|---|---|
| Title | **M.S. ET AL. V. COUNTY OF VENTURA ET AL.** | | |

Supp. 3d __, Case No. 15-cv-05095-JD, 2016 WL 1757136, at *3 (N.D. Cal. May 12, 2016); *see also Santos v. Merritt Coll.*, No. C-07-5227 EMC, 2008 WL 2622792, at *3 (N.D. Cal. July 1, 2008) ("According to Defendants, there is an exhaustion requirement for a claim brought pursuant to § 11135. . . . Defendants appear to be correct."); *Aikins v. St. Helena Hosp.*, 843 F. Supp. 1329, 1341 (N.D. Cal. 1994) ("[Cal. Code Regs., tit. 22, § 98003] appears to require exhaustion of administrative remedies as a prerequisite to suit for violation of Code section 11135."). Under section 11135's exhaustion requirements, it appears that a party must file a complaint with the agency involved (which is the DSH here). *See* Cal. Code Regs., tit. 22, § 98340 *et seq.*

While Plaintiffs allege that they exhausted all administrative remedies pursuant to the PLRA and under California Government Code section 910, they claim that they were unable to pursue administrative remedies against any state entity because Plaintiffs were not held at a state hospital and thus, could not access the internal complaint system. (*See* FAC ¶ 94.) However, under section 98340 *et seq.*, it does not appear that any access to an internal system at a specific state facility is required; rather, the regulations provide that a complaint should be sent directly to the state agency itself. *See* Cal. Code Regs., tit. 22, § 98343 ("State agencies should permit any person, including such person's duty [sic] authorized representative or an interested third party to file a complaint."); *see also* Cal. Code Regs., tit. 22, § 98345 ("State agencies should acknowledge receipts of complaints to the complainant within 10 days of the date the complaint is *received by the State agency*." (emphasis added)). Therefore, the Court is not persuaded by Plaintiffs' argument that they were not able to access the administrative exhaustion remedies because they were being held in a county, rather than state, facility.

In addition, Plaintiffs argue that the exhaustion requirement should be excused or the statute of limitations as to their exhaustion should be tolled due to their incompetence. (State Opp'n at 21.) However, the regulations provide that it does not have to be Plaintiffs themselves who file a complaint with the DSH; a party's representative or an interested third party may also file a complaint. *See* Cal. Code Regs., tit. 22, § 98343. Thus, Plaintiffs' incompetence would not appear to be a bar to their representatives filing a complaint with the DSH. Therefore, the Court finds that Plaintiffs had a duty to exhaust their administrative remedies before bringing their section 11135 claim. The complaint must be filed within one year of the "the date upon which the alleged violation occurred." Cal. Code Regs., tit. 22, § 98344. Plaintiff M.S. was not transferred to Patton until April 28, 2016, (FAC ¶ 16), while Plaintiff O.M. was transferred to Patton on May

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| Case No. | CV 16-03084-BRO (RAOx) | Date | October 24, 2016 |
|---|---|---|---|
| Title | M.S. ET AL. V. COUNTY OF VENTURA ET AL. | | |

19, 2016, (FAC ¶ 22).  Thus, as the Court understands the alleged violation to be the failure to transfer Plaintiffs to Patton, this violation was ongoing up until they were actually transferred.  As Plaintiffs have one year from the time they were transferred to file a complaint with the DHS, the time to exhaust their administrative remedies has not yet expired.  Therefore, Plaintiffs' section 11135 claims are **DISMISSED without prejudice**.

### E.    Plaintiffs' Unruh Civil Rights Act Claim

Plaintiffs' fifth cause of actions alleges that Defendants violated the Unruh Civil Rights Act ("UCRA"), California Civil Code section 51 *et seq.*  (FAC ¶¶ 151–57.)  The UCRA provides that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their . . . disability . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."  Cal. Civ. Code § 51(b).  The UCRA also explicitly provides that a violation of the ADA constitutes a violation of the UCRA.  *See* Cal. Civ. Code § 51(f).  To plead a viable disability discrimination claim under the UCRA, a plaintiff must establish that: (1) he "was denied the full and equal accommodations, advantages, facilities, privileges, or services in a business establishment"; (2) his "disability was a motivating factor for this denial"; (3) "defendants denied plaintiff the full and equal accommodations, advantages, facilities, privileges, or services"; and, (4) "defendants' wrongful conduct caused plaintiff to suffer injury, damage, loss or harm."  *Wilkins-Jones*, 859 F. Supp. 2d at 1048.

At the outset, the Court notes that, once again, it is unclear from the face of Plaintiffs' First Amended Complaint precisely what discrimination they are alleging.  The First Amended Complaint alleges that Defendants have denied "Plaintiffs full and equal access to its programs comparable to the access that it offers to others."  (FAC ¶ 155.)  But it is not clear what "programs" Plaintiffs are indicating.  In their Opposition papers, Plaintiffs clarify that they are alleging that Defendants fail to provide restorative mental health treatment to Plaintiffs (and all incompetent detainees) but that "[p]resumably" Defendants "actually provide[] treatment to other judicially committed persons, e.g. those found not guilty by reason of insanity, or conservatees."  (MHM Opp'n at 19.)

The Court finds that Plaintiffs' UCRA claim fails on the second element because Plaintiffs have failed to establish that Defendants intentionally discriminated against them

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| Case No. | CV 16-03084-BRO (RAOx) | Date | October 24, 2016 |
|---|---|---|---|
| Title | M.S. ET AL. V. COUNTY OF VENTURA ET AL. | | |

due to their disability.  Some courts have held there where a plaintiff establishes a viable ADA claim, the plaintiff need not plead intentional discrimination under the UCRA.  *See Wilkins-Jones*, 859 F. Supp. 2d at 1051; *see also Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 665 (Cal. Ct. App. 2009).  But, where the plaintiff seeks to plead a UCRA claim outside of the ADA, he must plead intentional discrimination.  *Wilkins-Jones*, 859 F. Supp. 2d at 1051 ("To the extent Plaintiff seeks to make an Unruh Act claim separate from an ADA claim, she must allege intentional discrimination.").

Here, as addressed above, Plaintiffs have failed to adequately plead an ADA claim; thus, in order to succeed on their UCRA claims, Plaintiffs must plead facts indicating that Defendants intentionally discriminated against them due to their disability.  *See id.*  Even assuming that Plaintiffs have provided enough facts to meet the first element and to establish that Defendants treat other judicially committed individuals differently than Plaintiffs (and other incompetent detainees) by failing to provide them with timely restorative mental health treatment,[20] Plaintiffs fail to plead any facts indicating that this alleged discrimination was intentional or was due to Plaintiffs' disability.  Plaintiffs argue that Defendants knew or should have known that assigning Plaintiffs to Patton State Hospital would result in a delay in treatment and that Defendants should have recommended other treatment options.  (*See* MHM Opp'n at 19.)  This does not indicate *intentional* conduct; rather, Plaintiffs appear to be alleging, at most, negligence.  Thus, Plaintiffs' First Amended Complaint "falls short of alleging the 'willful, affirmative misconduct' required to state an Unruh Act claim separate from an ADA claim."  *Id.* at 1053.  However, because Plaintiffs may be able to cure their claim through amendment, Plaintiffs' UCRA claim is **DISMISSED without prejudice**.

## F.    Plaintiffs' Claim Under California Civil Code Section 54

Plaintiffs' sixth cause of action arises under California Civil Code section 54 (commonly referred to as the California Disabled Persons Act or "CDPA"), which provides that "[i]ndividuals with disabilities or medical conditions have the same right as the general public to the full and free use of the streets, highways, sidewalks, public

---

[20] Plaintiffs' First Amended Complaint does not clearly allege that other non-incompetent detainees were provided prompt mental health restoration services.  Thus, it is not clear that Plaintiffs have established the first element: that Plaintiffs were denied "full and equal" access to services in a business establishment.  *See Wilkins-Jones*, 859 F. Supp. 2d at 1048.  For the purposes of this Order, however, the Court addresses primarily the second element of Plaintiffs' UCRA claim.

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| Case No. | CV 16-03084-BRO (RAOx) | Date | October 24, 2016 |
|---|---|---|---|
| Title | M.S. ET AL. V. COUNTY OF VENTURA ET AL. | | |

buildings, medical facilities, including hospitals, clinics, and physicians' offices, public facilities, and other public places." Cal. Civ. Code § 54(a). "The CDPA is concerned solely with *physical* access to public spaces." *Wilkins-Jones*, 859 F. Supp. 2d at 1054 (emphasis in original). "Thus, Plaintiff cannot maintain a claim based on the denial of services (as opposed to denial of physical access) under the CDPA." *Id.* Plaintiffs concede that "[t]he factual basis" for their DCPA claim is that Defendants have "failed to provide adequate mental health care" to incompetent detainees during the time periods they have spent in jail awaiting restorative *services*. (CFMG Opp'n at 19.) As noted in *Wilkins-Jones*, denial of services cannot be grounds for a CDPA claim. Plaintiffs' First Amended Complaint does not allege that Plaintiffs were denied *physical access* to any part of VCPTDF once they were committed there.[21] However, as Plaintiffs may be able to cure their deficiencies with amendment, Plaintiffs' CDPA claims are **DISMISSED without prejudice**.

## G.    Plaintiffs' Claim Under California Civil Code Section 52.1

Plaintiffs final cause of action arises under California Civil Code section 52.1 (commonly referred to as the "Bane Act"). The Bane Act makes it unlawful for any person "by threats, intimidation, [or] coercion" to interfere with "the exercise or enjoyment by any individual or individuals" of rights arising under federal or California laws. *See* Cal. Civ. Code § 52.1(a). "'The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., "threats, intimidation or coercion"), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to

---

[21] To the extent Plaintiffs argue that they were denied physical access to the TRJ once they were returned to VCPTDF (and were not later transferred to the TRJ), this argument fails. While, as Plaintiffs note, the court in *Wilkin-Jones* held that the defendants could be liable for failing to provide accommodations to allow the plaintiff access to jail facilities, the court there was addressing access to facilities within the prison in which she was housed—not access to a different prison. *See Wilkins-Jones*, 859 F. Supp. 2d at 1055–56. Plaintiffs provide no authority, and the Court is unaware of any, indicating that a CDPA claim may lie where a plaintiff is not assigned or transferred to a different jail or prison than where he is housed. This comports with longstanding precedent that "an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State." *Olim v. Wakinekona*, 461 U.S. 238, 246 (1983). The Court finds that to hold otherwise, and to allow a CPDA claim to lie where a plaintiff challenges his prison assignment would contravene authority binding on this Court.

LINK:

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## CIVIL MINUTES – GENERAL

| Case No. | **CV 16-03084-BRO (RAOx)** | Date | October 24, 2016 |
|---|---|---|---|
| Title | **M.S. ET AL. V. COUNTY OF VENTURA ET AL.** | | |

do under the law.'" *Shoyoye v. County of Los Angeles*, 203 Cal. App. 4th 947, 955–56 (Cal. Ct. App. 2012) (citation omitted). The statute does not require discriminatory animus or intent; rather, "[a] defendant is liable if he or she interfered with or attempted to interfere with the plaintiff's constitutional rights by the requisite threats, intimidation, or coercion." *Id.* at 956. Thus, "Bane Act liability extends only to rights violations accompanied by 'threats, intimidation, or coercion.'" *M.H. v. County of Alameda*, 90 F. Supp. 3d 889, 897 (N.D. Cal. 2013).

The State Defendants argue that Plaintiffs' Bane Act claim should be dismissed because Plaintiffs have not sufficiently pleaded that the State Defendants acted with the requisite coercion or intimidation.[22] (*See* State Defs.' MTD at 25.) At the outset, the Court notes that, contrary to Plaintiffs' assertion, an allegation that "Defendants engage in coercive acts" is not sufficient to establish coercion; rather, the pleading standard requires that Plaintiffs plead *facts* to support their conclusory statements. *See Phillips v. County of Fresno*, No. 1:13-cv-0538 AWI BAM, 2013 WL 6243278, at *19 (E.D. Cal. Dec. 3, 2013) ("Plaintiffs' pattern of alleging claims for relief that bring forth no facts but simply recite the elements of a claim is fatal to Plaintiffs' ninth claim."). Still, the Court will examine the entirety of Plaintiffs' First Amended Complaint to determine whether they have adequately pleaded a Bane Act claim.

"[W]here coercion is inherent in the constitutional violation alleged, i.e., an overdetention in County jail, the statutory requirement of 'threats, intimidation, or coercion' is not met." *Shoyoye*, 203 Cal. App. 4th at 959. Detainment in a jail or prison inherently carries with it a certain level of coercion; this coercion, however, is "not carried out in order to effect a knowing interference" with the plaintiff's constitutional rights. *See id.* at 961. Thus, in order to plead a viable Bane Act claim, the plaintiff must plead *additional* acts of coercion or intimidation beyond that constituting the underlying

---

[22] The State Defendants also claim that they read Plaintiffs' First Amended Complaint as alleging that "Defendants Ahlin and Oreol used an alleged delay in mental health treatment as the 'coercive' act that interfered with Plaintiffs' alleged constitutional or statutory right not be incarcerated." (State Defs.' MTD at 25.) However, the Court understands Plaintiffs' First Amended Complaint as alleging that Defendants' conduct violated Plaintiffs' constitutional right to timely restorative mental health treatment. (*See* FAC ¶ 167.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| Case No. | CV 16-03084-BRO (RAOx) | Date | October 24, 2016 |
|---|---|---|---|
| Title | M.S. ET AL. V. COUNTY OF VENTURA ET AL. | | |

constitutional violation.[23]  *See, e.g.*, *Quezada v. City of Los Angeles*, 222 Cal. App. 4th 993, 1008 (Cal. Ct. App. 2014) ("The coercion inherent in detention is insufficient to show a Bane Act violation.").  Plaintiffs here plead no facts indicating that Defendants intentionally punished or coerced Plaintiffs when they attempted to exercise their constitutional right to receive prompt mental health restorative treatment.  *See Shoyoye*, 203 Cal. App. 4th at 961 ("They coerced [the plaintiff] to remain incarcerated, but they did not for example coerce him to stop inquiring about his release, threaten him for doing so, or punish him in any way.").  Thus, Plaintiffs have failed to plead facts indicating threats, intimidation, or coercion.[24]

Plaintiffs argue that in some situations such as those involving excessive force, courts have held that there is inherent coercion involved in the underlying constitutional violation, meaning that the plaintiff need not plead additional threats, intimidation, or coercion.  (*See* County Opp'n at 23 (citing *Bender v. County of Los Angeles*, 217 Cal. App. 4th 968, 978 (Cal. Ct. App. 2013) (holding that an unlawful arrest accompanied by the use of force "i.e., coercion that is in no way inherent in an arrest, either lawful or unlawful" could be the basis of a Bane Act claim).)  According to Plaintiffs, the instant

---

[23] Plaintiffs argue that when Plaintiffs exhibited signs of mental disability, they were unfairly disciplined and denied access to the commissary or the phone.  (*See* County Opp'n at 20.)  But Plaintiffs plead no facts indicating that this punishment was in response to, or an effort to prevent, Plaintiffs from exercising their constitutional rights.  Thus, this alleged "punishment" does not establish Bane Act liability.

[24] In the context of medical treatment of prisoners, some courts have held that when a prison official is deliberately indifferent to the medical needs of a prisoner, Bane Act liability will lie.  *See M.H.*, 90 F. Supp. 3d at 899 ("Because deliberate indifference claims necessarily require more than 'mere negligence,' a prisoner who successfully proves that prison officials acted or failed to act with deliberate indifference to his medical needs in violation of his constitutional rights . . . adequately states a claim for relief under the Bane Act."); *see also Atayde v. Napa State Hosp.*, No. 1:16-cv-00398-DAD-SAB, 2016 WL 4943959, at *8 (E.D. Cal. Sept. 16, 2016) ("The court finds the reasoning of the decision in *M.H.* to be more persuasive, adopts that analysis and finds that threats, coercion, and intimidation are inherent in a deliberate indifference claim.").  However, Plaintiffs' do not allege that Defendants were deliberately indifferent in regards to their Bane Act claim in their First Amended Complaint, and, absent one mention in passing, (*see* County Opp'n at 24), do not otherwise argue deliberate indifference in regards to their Bane Act claim in their Opposition papers.  Therefore, the Court will not address at this stage whether it is persuaded by *M.H.*'s analysis or whether Plaintiffs' First Amended Complaint states a viable claim for deliberate indifference in relation to their Bane Act claim.

LINK:

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## CIVIL MINUTES – GENERAL

| Case No. | CV 16-03084-BRO (RAOx) | Date | October 24, 2016 |
|---|---|---|---|
| Title | M.S. ET AL. V. COUNTY OF VENTURA ET AL. | | |

factual scenario in which Plaintiffs have not been provided prompt mental health restoration treatment is similar to these excessive force claims, and thus, there is inherent coercion included in the constitutional violation itself.  (County Opp'n at 22–23.)  Plaintiffs provide no authority for this proposition, however, and the Court is unaware of any.  Thus, the Court declines to presume that failing to timely provide mental health restoration services includes the same inherent coercion as cases in which law enforcement applies the inherent coercion of excessive force.[25]

Therefore, the Court finds that Plaintiffs have failed to plead sufficient facts to establish a viable Bane Act claim.  It is not clear that Plaintiffs' claim may not be cured by amendment, however; accordingly, Plaintiffs' Bane Act Claim is **DISMISSED without prejudice**.[26]

### H.     The County Defendants' Request for a More Definite Statement

The County Defendants request that the Court require Plaintiffs to use their full names, rather than suing under only their initials as a pseudonym.  (*See* County Defs.' MTD at 21–22.)  Pursuant to Federal Rule of Civil Procedure 10(a), every pleading must "name all the parties."  Fed. R. Civ. P. 10(a).  Further, under Rule 12(e), "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e).  The County Defendants argue that the use of Plaintiffs' initials renders their First Amended Complaint vague and ambiguous and prevents them

---

[25] In fact, there is a stark difference between the two: the use of excessive force is an affirmative act of aggression causing coercion or intimidation; failure to provide mental health restoration services is a negative action that includes no affirmative act on behalf of law enforcement.  *See Bender*, 217 Cal. App. 4th at 979 ("There is no Bane Act violation 'where the overdetention occurs because of mere negligence rather than a volitional act intended to interfere with the exercise of enjoyment of the constitutional right.'" (quoting *Shoyoye*, 203 Cal. App. 4th at 957–58)).  Thus, the Court finds the failure to provide mental health restoration services to be more parallel to an overdetention.  As the *Shoyoye* court explained, an additional intentional act of coercion or intimidation is required before a Bane Act violation occurs.  *See Shoyoye*, 203 Cal. App. 4th at 959.

[26] To the extent Defendants raised additional arguments in their Motions to Dismiss, the Court found that they were all arguments which would have, at most, resulted in dismissal of Plaintiffs' claims without prejudice.  If the Court otherwise dismissed Plaintiffs' claim without prejudice, it did not address all of Defendants' additional arguments.

---

LINK:

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES – GENERAL

| Case No. | **CV 16-03084-BRO (RAOx)** | Date | October 24, 2016 |
|---|---|---|---|
| Title | **M.S. ET AL. V. COUNTY OF VENTURA ET AL.** | | |

from adequately responding.  (County Defs.' MTD at 21.)  Plaintiffs argue that "because each member of the class is incarcerated and mentally ill, exposure of their full names in public pleadings should be avoided."  (County Opp'n at 25.)

"As a general rule, the identity of the parties in any action . . . should not be concealed except in the unusual case where there is a need for the cloak of anonymity." *United States v. Stoterau*, 524 F.3d 988, 1012 (9th Cir. 2008).  "In the unusual case, we consider whether pseudonymity is 'necessary to protect a person from injury or harassment.'"  *Id.* (citation omitted); *see also Does I thru XXIII v. Adv. Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000) ("In this circuit, we allow parties to use pseudonyms in the 'unusual case' when nondisclosure of the party's identity 'is necessary . . . to protect a person from harassment, injury, ridicule or personal embarrassment.'" (citation omitted)). The court must then "balance the need for anonymity against the general presumption that parties' identities are public information."  *Adv. Textile Corp.*, 214 F.3d at 1068; *see also Lindsey v. Dayton-Hudson Corp.*, 592 F.2d 1118, 1125 (10th Cir. 1979) ("[I]dentifying a plaintiff only by a pseudonym is an unusual procedure, to be allowed only where there is an important privacy interest to be recognized.").

Here, Plaintiffs have not presented any reason why Plaintiffs fall into the rare category of parties which may bring suit under a pseudonym.  For instance, Plaintiffs have not indicated that requiring them to use their full names will expose them to injury, harassment, ridicule, or embarrassment.  *See Adv. Textile Corp.*, 214 F.3d at 1068.  They have alleged only that because they are incarcerated and are mentally ill, they should not be required to use their full names.  But the Ninth Circuit has never held that incarcerated or mentally disabled parties are, categorically, subject to injury, harassment, ridicule, or embarrassment.  *Cf. Jane Roes 1-2 v. SFBSC Mgmt., LLC*, 77 F. Supp. 3d 990, 993 (N.D. Cal. 2015) (allowing exotic dancers to proceed under pseudonym because they expressed "a legitimate concern for their privacy, and more compelling for the anonymity analysis, an understandable fear of social stigmatization"); *see also United States v. Doe*, 655 F.2d 920, 922 n.1 (9th Cir. 1981) (allowing an incarcerated party to proceed under a pseudonym due to fear of retaliation from other prisoners if he was discovered to be a government witness).  Plaintiffs also argue that because the guardians ad litem in this case through which Plaintiffs bring their claims are not anonymous, there is no need for Plaintiffs to use their full names.  (*See* County Opp'n at 24–25.)  However, though represented by guardians ad litem in this proceeding, Plaintiffs are still parties to the proceeding.  Rule 10(a) explicitly requires that a pleading name "all the parties."  Fed. R.

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL MINUTES – GENERAL**

| Case No. | **CV 16-03084-BRO (RAOx)** | Date | October 24, 2016 |
|---|---|---|---|
| Title | **M.S. ET AL. V. COUNTY OF VENTURA ET AL.** | | |

Civ. P. 10(a).  Thus, naming just the guardians ad litem is insufficient to satisfy Rule 10(a).

Therefore, the Court finds that the Plaintiffs' proffered reasons for proceeding under pseudonyms is insufficient to outweigh the presumption that parties' identities are to be public.  Accordingly, the County Defendants' request for a more definite statement is **GRANTED** and Plaintiffs (along with any potential class members) are required to bring suit under their full names.

## V.     CONCLUSION

Therefore, in the sum, the Court holds the following:

1) The County Defendants' Motion for Joinder is **GRANTED**;
2) The MHM Defendants' Motion to Amend is **DENIED as moot**;
3) Plaintiffs' first cause of action is **DISMISSED without prejudice** as to the County Defendants, the CFMG Defendants, and the MHM Defendants, but not dismissed as to the State Defendants;
4) Plaintiffs' second cause of action is **DISMISSED with prejudice** under Title II of the ADA as to the CFMG and MHM Defendants and otherwise **DISMISSED without prejudice**;
5) Plaintiffs', third, fourth, fifth, sixth, and seventh causes of action are **DISMISSED without prejudice**;
6) Plaintiffs' fourth, fifth, sixth, and seventh causes of action are **DISMISSED with prejudice** as to individual Defendants Ahlin and Oreol; and,
7) The County Defendants' Motion for a More Definite Statement is **GRANTED**.

Plaintiff is HEREBY ORDERED to file any amended Complaint by November 7, 2016 by 4:00 p.m.

**IT IS SO ORDERED.**

| | : |
|---|---|
| Initials of Preparer | rf |