Brian A. Vogel (No. 167413)
E-Mail: brian@bvogel.com
Heather A. Quest (No. 186740)
E-Mail: heather@bvogel.com
THE LAW OFFICES OF BRIAN A. VOGEL, PC
770 County Square Drive, Suite 104
Ventura, California 93003
Telephone: (805) 654-0400
Facsimile: (805) 654-0326

Barrett S. Litt (No. 45527)
E-Mail: blitt@kmbllaw.com
David S. McLane (No. 124952)
E-Mail: dmclane@kmbllaw.com
KAYE, McLANE, BEDNARSKI & LITT, LLP
234 East Colorado Boulevard, Suite 230
Pasadena, California 91101
Telephone: (626) 844-7660
Facsimile: (626) 844-7670

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| MATTHEW SCOTT, an Individual by and through his Guardian Ad Litem, MARY RODGERS-VEY, and OMAR MOJICA, an Individual by and through his Guardian Ad Litem, ADRIAN MOJICA, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs. | ) | Case No. 16-03084-BRO-RAO<br>[Hon. Beverly R. O'Connell]<br><br>***SECOND AMENDED* CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEFAND DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

COUNTY OF VENTURA; VENTURA COUNTY SHERIFF'S OFFICE; VENTURA COUNTY SHERIFF GEOFF DEAN, an Official, in his individual capacity; CALIFORNIA FORENSIC MEDICAL GROUP; TAYLOR FITHIAN, an Official as Director of California Forensic Medical Group, in his individual capacity; PAUL ADLER, M.D., an Official as Director of California Forensic Medical Group, in his individual capacity; RONALD POLLACK, M.D., an Official of California Forensic Medical Group, in his individual capacity; CALIFORNIA DEPARTMENT OF STATE HOSPITALS; PAM AHLIN, an Official as Director of California Department of State Hospitals, in her official and individual capacities; PATTON STATE HOSPITAL; HARRY OREOL, an Official as Director of Patton State Hospital, in his official and individual capacities; MHM SERVICES OF CALIFORNIA, INC.; MARCUS LOPEZ, an Official as Director of MHM Services of California, Inc., in his individual capacity; and DOES 1 through 10, inclusive,

Defendants.

## I. INTRODUCTION

1. This is a complaint for declaratory and injunctive relief and damages by Plaintiffs, on behalf of themselves and those similarly situated, arising under 42 U.S.C. §1983, 42 U.S.C. §12132 *et seq.*, 29 U.S.C. § 794 *et seq.*, California Civil Code §51 *et seq.*, California Civil Code §54 *et seq.*, and similar state laws. Plaintiffs seek redress for deprivation of their rights, privileges and immunities, secured by the Fourth and Fourteenth Amendments to the United States Constitution.

2. Under California law, Defendant California Department of State Hospitals ("DSH") and its designees are charged with evaluating, placing and providing restorative treatment to individuals found incompetent to stand trial. ("ISTs") Prior to their placement in a specified DSH facility for restorative treatment, ISTs are entitled to receive constitutional and statutorily mandated care and treatment for their mental health condition. If their competency is restored, their criminal cases may be adjudicated; if their competency is not restored, the criminal charges may be dismissed without prejudice to the initiation of a conservatorship proceeding. During the evaluation and restoration periods, speedy trial rights are automatically waived, and the criminal proceedings are stayed. Unfortunately, ISTs are not provided with necessary care and treatment prior to the initiation of restorative treatment. Furthermore, the evaluation and placement process is unduly lengthy and stays of criminal proceedings often last for months even before restorative treatment begins. As a result, individuals with mental health disabilities have languished in jail for weeks and months without appropriate mental health treatment while awaiting restorative treatment. These individuals often end up spending more time in jail prior to adjudication than they would if they had pleaded guilty. More importantly, the delays have caused individuals with mental health disabilities to suffer needless deterioration in their mental health as they sit

in jail, frequently in prolonged isolation, for weeks and months without constitutionally adequate mental health treatment as they await placement in a facility licensed to provide restorative treatment.

3. The defendants in this action intentionally discriminate against and denied ISTs their Constitutional and statutory rights as follows:

A. ISTs are held in county custody in violation of the California and Federal Constitution and state statutes for indefinite and prolonged periods of times without restorative mental health care, or even basic mental health treatment, solely due to their IST condition;

B. ISTs are discriminated against compared to non-IST inmates in housing as they are held in isolation and not general population solely due to their IST and/or mental health condition;

C. ISTs are discriminated against compared to non-IST inmates in conditions of confinement as they are often punished solely due to their IST and/or mental health condition;

D. ISTs are discriminated against as compared to non-IST inmates as they do not get the same day room time, roof time, visiting, phone call privileges, commissary, time outside of their cells working in the jail or going to recreation in general population day rooms or on the roof of the jail, solely due to their IST and/or mental health condition;

E. ISTs are discriminated against compared to non-IST inmates as they serve longer sentences and lose statutory pre-trial custody credits as they languish indefinitely in their conditions of confinement, and,

F. ISTs are denied meaningful access to the Courts due to their indefinite and prolonged custody without mental health care, which in turn denies them their speedy trial rights under the California constitution, and denies them

equal statutory pre-trial custody credits for good behavior and for working in the jail. (See ¶ 70 *infra*.)

4. Non-IST inmates are housed in general population, are not punished due to their mental conditions, and do not lose commissary, visits and phone calls due to their mental conditions. They are not deprived of mental health care treatment. They do not lose pre-trial custody credits and serve additional time due to their non-IST condition. (See ¶ 70, *infra*) The defendants, despite their awareness of the disparate conditions, treatment and length of sentences, act with reckless disregard for, and deliberate indifference to, the IST inmates' conditions of confinement and do nothing to remedy their situation. They act with reckless disregard for, and deliberate indifference to, the IST inmates' federal and state constitutional rights, and state statutory rights. They have been aware of these conditions for years and done nothing to remedy the situation, either by ensuring that the Ventura County Jail does not discriminate against IST inmates while they await transfer for restorative mental health care treatment, ensuring that they receive adequate mental health treatment pending transfer to a state IST facility, or ensuring that they are transferred immediately to a State Hospital for restorative mental health treatment.

## II. JURISDICTION AND VENUE

5. This action is brought pursuant to 42 U.S.C. §1983 and 42 U.S.C. §12131, *et seq.*

6. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 (federal question jurisdiction), 28 U.S.C. §1343 (civil rights jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction).

7. Venue in the United States District Court, Central District of California, is based upon 28 U.S.C. §1391(a) (2) in that a substantial part of the events giving rise to the claims occurred in this district.

## III. PARTIES

### A. PLAINTIFF REPRESENTATIVES

8. Mary Rodgers-Vey is the mother and guardian ad litem of Plaintiff MATTHEW SCOTT ("SCOTT"). SCOTT has been diagnosed with mental illness, and is a person with a disability defined in 42 U.S.C. § 12102. SCOTT requires mental health treatment and accommodations to alleviate his symptoms and to function in jail. SCOTT was arrested on August 22, 2015, on suspicion of a felony violation of first degree residential burglary. He was booked into the Ventura County Jail the same day. On August 24, 2015, the Ventura County District Attorney filed a complaint alleging a single felony count of residential burglary as well as several allegations that he had suffered a prior conviction for a serious felony and had not remained free of prison custody for five years following his release on parole. Bail was set at $175,000 and he was remanded to the custody of the Sheriff. On August 25, 2015, SCOTT was arraigned in Ventura Superior Court. He waived arraignment and entered a plea of not guilty.

9. On November 5, 2015, SCOTT's attorney declared a doubt as to his competency to stand trial pursuant to Penal Code §1368. Criminal proceedings were suspended and civil proceedings were instituted. That same day, Dr. Katherine Emerick, Ph.D., Forensic Psychologist, was ordered to perform a competency evaluation. Dr. Emerick found SCOTT to be incompetent to stand trial and filed a report with the court. On November 30, 2015, SCOTT was formally found to be incompetent to stand trial by the Ventura County Superior Court. The court made a finding that SCOTT consented to the administration of psychotropic medications and referred the case to MHM Services of California, Inc. ("MHM Services"), for a placement recommendation.

10. On December 14, 2015, the court held a hearing on placement. A letter from MHM Services was filed and the court ordered placement at any state

hospital. The court found that the maximum commitment time was 3 years and awarded custody credit of 0 actual days and 0 days of Penal Code §4019 additional credit for a total of 0 days of custody credit. SCOTT was committed to the DSH pursuant to Penal Code §1368. SCOTT was remanded to the custody of the sheriff and the sheriff was ordered to transport him to Patton State Hospital ("Patton"). On December 24, 2015, the 1370 Packet was sent to the transportation unit of the VCSO. On or about April 28, 2016, SCOTT was transported to Patton for treatment, 151 days after being found IST and 136 days after he was ordered to be transported to Patton.

11. During his incarceration, SCOTT was disciplined numerous times for a variety of violations of the jail rules. Most of his violations and subsequent discipline arose because of his mental illness. For example, SCOTT believed that he was being attacked by the devil in his cell. Because he believed that the devil had somehow changed a part of his plastic armband to metal, he tore it off. He was also in an altercation with another inmate whom SCOTT perceived as "acting weird." Additionally, he was disciplined for throwing feces against the wall of his cell after he ran out of toilet paper and was not brought another roll by the guards after several requests. His discipline included loss of commissary, loss of visits, and isolation in a safety cell.

12. Adrian Mojica is the brother and guardian ad litem of OMAR MOJICA ("MOJICA"). MOJICA has been diagnosed with mental illness, and is a person with a disability defined in 42 U.S.C. § 12102. MOJICA requires mental health treatment and accommodations to alleviate his symptoms and to function in jail. MOJICA was arrested on April 8, 2014, on suspicion of a felony violation of attempted robbery. He was booked into the Ventura County Jail the same day. On April 10, 2014, the Ventura County District Attorney filed a complaint alleging a single felony count of attempted robbery, as well as several allegations that he had

suffered a prior conviction for a serious felony, and that he personally used a weapon during the commission of the crime. Bail was set at $110,000, and he was remanded to the custody of the Sheriff. On May 7, 2014, MOJICA was arraigned in Ventura Superior Court and entered a plea of not guilty. MOJICA's attorney declared a doubt as to his competency to stand trial pursuant to Penal Code §1368. Criminal proceedings were suspended and civil proceedings were instituted. That same day, Dr. John Nightingale, Ph.D., Clinical Psychologist, was ordered to perform a competency evaluation. On September 10, 2014, after numerous continuances, a second doctor, Dr. Ines Monguio, Clinical Psychologist, filed a report with the court finding MOJICA incompetent to stand trial. The case was continued to September 24, 2014, and referred for a placement recommendation.

13. On September 26, 2014, the court made a finding that MOJICA consented to the administration of psychotropic medications and ordered placement in Patton State Hospital. The court found that the maximum commitment time was 3 years and awarded custody credit of 172 actual days and 172 days of Penal Code §4019 additional credit, for a total of 344 days of custody credit. MOJICA was committed to the DSH pursuant to Penal Code §1368, and the sheriff was ordered to transport him to Patton State Hospital. On December 23, 2015, a notice of admission to DSH was filed. On March 30, 2015, DSH sent the court a certificate of mental competency. On April 10, MOJICA returned to court. The case was continued to April 17, 2015, and criminal proceedings resumed on that date.

14. MOJICA entered a plea of not guilty. A preliminary hearing was held on May 11, 2015, and MOJICA was held to answer the charges and remained in custody with bail set at $110,000. After several continuances, MOJICA's attorney requested that he receive mental health treatment, pursuant to Penal Code §4011.6. The request was denied. On August 14, 2015, MOJICA entered a plea of not guilty by reason of insanity, and two psychiatrists were appointed to evaluate him. On

October 13, 2015, Penal Code §1026 (not guilty by reason of insanity) evaluations were received from both doctors.

15. On November 25, 2015, MOJICA's attorney declared a doubt as to his mental competence. Criminal proceedings were suspended, civil proceedings were instituted, and Dr. Thomas Lauren was appointed to examine MOJICA. On December 24, 2015, it appears that the court found MOJICA incompetent to stand trial and continued the case to January 6, 2016 for a hearing on placement. On January 6, 2016, a placement recommendation was received from MHM Services and the court committed MOJICA to DSH pursuant to Penal Code §1368. MOJICA was remanded to the custody of the sheriff, and the court ordered the sheriff to transport him to Patton State Hospital. The court made a finding that the maximum term was 3 years, and awarded custody credit for 521 actual days, 0 days of Penal Code §4019 credit, for a total of 521 days of custody credit. On January 28, 2016, the 1370 Packet for Patton State Hospital was sent to the transportation unit of the VCSO.

16. During his incarceration, MOJICA has been disciplined several times for a variety of violations of the jail rules. Most of his violations and subsequent discipline arose because of his mental illness. For example, MOJICA describes "hearing voices," and one of the strongest voices is his former Catholic priest. MOJICA becomes agitated when he hears these voices and was in an altercation with another inmate early on in his incarceration after hearing the voices. He was also disciplined for "hoarding" pills which he did not want to take. His discipline included 5 days in an isolation cell, commonly referred to as "the hole," loss of visits, commissary, and a disciplinary diet. Thereafter, MOJICA was housed alone and locked down 23 hours a day. On May 19, 2016, MOJICA was transported to Patton for treatment, 148 days after being found IST and 135 days after he was ordered to be transported to Patton.

### B. FACTS RELATING TO OTHER IST DETAINEES

17. Plaintiff has identified a number of other ISTs whose factual circumstances raise common questions of fact and law. As of the date of the filing of the first amended complaint on July 28, 2016, most of the IST detainees had been transported to Patton State Hospital.

18. A female IST was booked into the Ventura County Jail on October 6, 2015. She was found incompetent to stand trial on November 10, 2015. The Ventura County Superior Court ordered her transferred to Patton on December 15, 2015. Her "1370 Packet," was sent to the Ventura County Sheriff's Office Transportation Unit on December 16, 2015. She was transported to Patton State Hospital on or about May 23, 2016, 196 days after she was found IST and 161 days after she was ordered to be transported to Patton.

19. The remaining ISTs identified were male. The second IST was booked into Ventura County Jail on September 10, 2015. He was found incompetent to stand trial on December 22, 2015. The Ventura County Superior Court ordered him transferred to Patton on January 11, 2016. His 1370 Packet was sent to the Ventura County Sheriff's Office Transportation Unit on January 21, 2016. He was transported to Patton State Hospital on or about May 12, 2016, 143 days after he was found IST and 123 days after he was ordered to be transported to Patton.

20. A third IST was booked into Ventura County Jail on September 2, 2015. He was found incompetent to stand trial on December 4, 2015. The Ventura County Superior Court ordered him transferred to Patton on December 11, 2015. His 1370 Packet was sent to the Ventura County Sheriff's Office Transportation Unit on December 24, 2015. He was transported to Patton State Hospital on or about May 19, 2016, 168 days after he was found IST and 161 days after he was ordered to be transported to Patton.

21. A fourth IST was booked into Ventura County Jail on September 11, 2015. He was found incompetent to stand trial on December 3, 2015. The Ventura County Superior Court ordered him transferred to Patton on December 17, 2015. His 1370 Packet was sent to the Ventura County Sheriff's Office Transportation Unit on December 24, 2015. He was transported to Patton State Hospital on or about May 12, 2016, 162 days after he was found IST and 148 days after he was ordered to be transported to Patton.

22. A fifth IST was booked into Ventura County Jail on August 5, 2015. He was found incompetent to stand trial on September 30, 2015. The Ventura County Superior Court ordered him transferred to Patton on February 16, 2015. His 1370 Packet was sent to the Ventura County Sheriff's Office Transportation Unit on February 16, 2016. He was transported to Patton State Hospital on or about May 19, 2016, 233 days after he was found IST and 94 days after he was ordered to be transported to Patton.

23. Additional recent IST detainees identified were transported to Patton after several months and the lengths of their incarceration prior to their transportation to Patton are set forth below in order to provide concrete examples of the length of pre-treatment delay experienced by members of the Class.

24.A sixth IST was booked into the Ventura County Jail on July 14, 2015. He was found incompetent to stand trial on October 19, 2015. The Ventura County Superior Court ordered him transferred to Patton on November 4, 2015. His 1370 Packet was sent to the Ventura County Sheriff's Office Transportation Unit on November 17, 2015. He was transported to Patton State Hospital on or about February 18, 2016, 122 days after he was found IST and 107 days after he was ordered to be transported to Patton.

25. A seventh IST was booked into the Ventura County Jail on September 13, 2015. He was found incompetent to stand trial on October 21, 2015. The Ventura

County Superior Court ordered him transferred to Patton on November 17, 2015. His 1370 Packet was sent to the Ventura County Sheriff's Office Transportation Unit on November 25, 2015. He was transported to Patton State Hospital on or about March 3, 2016, 134 days after he was found IST and 108 days after he was ordered to be transported to Patton.

26. An eighth IST was booked into Ventura County Jail on July 23, 2015. He was found incompetent to stand trial on October 28, 2015. The Ventura County Superior Court ordered him transferred to Patton on November 24, 2015. His 1370 Packet was sent to the Ventura County Sheriff's Office Transportation Unit on December 7, 2015. He was transported to Patton State Hospital on or about February 25, 2016, 121 days after he was found IST and 94 days after he was ordered to be transported to Patton.

27. A ninth IST was booked into Ventura County Jail on September 25, 2015. He was found incompetent to stand trial on October 29, 2015. The Ventura County Superior Court ordered him transferred to Patton on November 30, 2015. His 1370 Packet was sent to the Ventura County Sheriff's Office Transportation Unit on December 8, 2015. He was transported to Patton State Hospital on or about March 18, 2016, 141 days after he was found IST and 109 days after he was ordered to be transported to Patton.

**C. COUNTY DEFENDANTS**

28. Defendant County of Ventura ("COUNTY") is now, and at all times herein mentioned was a governmental entity duly organized and existing under the laws of the State of California and which oversees, owns, operates, manages, directs and controls Defendant Ventura County Sheriff's Office ("VCSO"), an agency of Ventura County. The County is sued for injunctive relief, and damages.

29. At all times mentioned herein, Defendant Ventura County Sheriff's Office ("VCSO") was a department of Defendant COUNTY responsible for overseeing

the operation, management, and supervision of the VCPTDF. At all relevant times, VCPTDF was and is managed directly by the VCSO. Defendant COUNTY was ultimately responsible for the management and supervision of the VCSO deputies. The VCSO is sued for injunctive relief, and damages.

30. Defendant Ventura County Sheriff Geoff Dean ("Sheriff Dean") is now, and at all times herein mentioned, was the Sheriff of Ventura County and was responsible for the management, supervision, control and policy making at the two primary custodial facilities in the county, i.e., the Ventura County Pre-Trial Detention Facility ("VCPTDF"), and the Todd Road Jail ("TRJ"). Sheriff Dean is also responsible for the supervision and training of deputies employed by VCSO. Sheriff Dean is further responsible for the care, custody, control and safekeeping of inmates in his custody. (California Government Code §§26605, 26610; California Penal Code §4006). In sum, Sheriff Dean is responsible for: (1) the management and control of Ventura County Jail; (2) the selection, promotion, supervision, training, discipline and retention of agents and employees working at the VCPTDF and TRJ, including custodial staff, counselors, advisors, nurses, doctors, physician assistants, medical staff, mental health staff, education staff and supervisors; and (3) the implementation of policies and procedures at VCPTDF. Sheriff Dean is sued in his individual capacity for damages.

31. Defendant California Forensic Medical Group, Inc. ("CFMG"), its agents, deputies, employees, and independent contractors, at all times mentioned herein was and is an agent of defendants Ventura County, VCSO and Sheriff Dean, and was and is under contract with defendants Ventura County, VCSO and Sheriff Dean for the purpose of providing medical care and treatment on behalf of defendants Ventura County, VCSO and Sheriff Dean to civil detainees, pre-trial detainees, and sentenced inmates under the care and control of defendants Ventura County. At all times mentioned herein, CFMG and its agents and employees were

acting under color of law and under the direction and agency of Defendants Ventura County, VCSO and Sheriff Dean to provide such care and treatment to civil detainees, pre-trial detainees, and sentenced inmates.

32. Defendant Taylor Fithian, M.D. ("Fithian"), at all times mentioned herein, was and is an employee and/or agent of VCSO, Sheriff Dean and CFMG, acting under color of law, who was and is the Medical Director of CFMG and the physician responsible for establishing policies and practices for CFMG employees and was and is responsible for training, supervision and management of CFMG employees including doctors, nurses, and nurse practitioners at VCPTDF. Defendant Fithian is being sued in his individual capacity for damages.

33. Defendant Paul Adler, M.D. ("Adler"), at all times mentioned herein, was and is an employee and/or agent of VCSO, Sheriff Dean and CFMG, acting under color of law, who was and is the On-site Medical Director of CFMG at VCPTDF and the physician hired to provide medical care, attention, and treatment to civil detainees, pre-trial detainees, and sentenced inmates at VCPTDF. He was and is the physician responsible for the hiring, training, supervision and management of subordinate medical staff providers, including doctors, nurses, and nurse practitioners at VCPTDF. Defendant Adler is being sued in his individual capacity for damages.

34. Defendant Ronald Pollack, M.D. ("Pollack"), at all times mentioned herein, was and is an employee and/or agent of VCSO, Sheriff Dean and CFMG, acting under color of law, who was and is a psychiatrist at VCPTDF and a physician hired to provide mental health treatment civil detainees, pre-trial detainees, and sentenced inmates at VCPTDF. Defendant Pollack is being sued in his individual capacity for damages.

**D. STATE DEFENDANTS**

35. Defendant California Department of State Hospitals ("DSH") is the state agency in the state of California designated to administer or supervise the administration of competency evaluation and restoration treatment pursuant to Penal Code §1367 *et seq*. (involuntary forensic commitment). As such, DSH utilizes federal and state funds in operating services in a way that ensures compliance with state and federal constitutional and statutory protections for people involuntarily detained in order to receive mental health services. Although IST detainees are regularly sent to Patton from VCPTDF, there are six other DSH mental health treatment facilities in California which potentially could house Ventura County IST detainees if there are no beds available at Patton: DSH-Atascadero, DSH-Coalinga, DSH-Metropolitan LA, DSH-Napa, DSH-Sacramento, DSH-Salinas Valley, DSH-Stockton and DSH-Vacaville. It is sued under the ADA and the Rehabilitation Act only for injunctive relief and damages.

36. Defendant Pam Ahlin ("Ahlin") is the Director of DSH. She is sued under § 1983 in her official capacity for injunctive relief only and for damages in her personal capacity under all statutes alleged. Defendant Ahlin is ultimately responsible for the administration of all of the DSH facilities in the state including Patton State Hospital.

37. Defendant Patton State Hospital ("Patton") is a state psychiatric hospital that is charged with serving the needs of California individuals with pending criminal proceedings who are ordered to receive competency restoration services. Pursuant to statute, Patton may house "no more than 1,336 patients." Welfare and Institutions Code §4107(c). However, according to their website located at http://www.dsh.ca.gov/Patton, Patton operates 1,527 beds, 36% of which are used for treatment of IST detainees. This equates to approximately 550 beds total for

IST detainees. It is sued under the ADA and the Rehabilitation Act only for injunctive relief and damages.

38. Defendant Harry Oreol ("Oreol") is the Executive Director of Patton. He is sued under § 1983 in his official capacity for injunctive relief only and for damages in his personal capacity under all statutes alleged. As Executive Director, Defendant Oreol is responsible for oversight, operation, and management of Patton and competency restoration services for individuals with mental health disabilities in pending criminal proceedings. Defendant Oreol knows or should know that incarcerated IST detainees who are ordered to be placed at Patton will not receive appropriate mental health treatment in the jail for months while Patton's "one in, one out" policy slowly grinds forward.

39. MHM Services of California, Inc., ("MHM Services") is a private corporation whose parent company, MHM Services, Inc., is headquartered in Vienna, Virginia. The State of California and DSH entered into a contract with MHM Services in 2014 to provide mental health services in Ventura County including the operation of the CONREP or Forensic Conditional Release Program. On information and belief, DSH has also delegated to MHM Services the task of conducting placement recommendations for IST detainees housed in the Ventura County jails. Delays in issuing these "placement recommendations" have contributed to the indefinite and prolonged delays faced by IST detainees in Ventura County and MHM Services has failed to recommend placement in the CONREP program which it operates for IST detainees despite the knowledge that IST detainees face indefinite and prolonged delays in receiving adequate mental health treatment when they are referred to DSH facilities and spend months on the waiting list. Defendant MHM is sued for injunctive relief and damages under all statutes alleged.

40. Defendant Marcus Lopez ("Lopez") is the CONREP Community Program Director of MHM Services of California, Inc. As the Community Program Director, Defendant Lopez is responsible for oversight, operation, and management of MHM Services' provision of mental health services in Ventura County including the operation of the Forensic Conditional Release Program or "CONREP". Defendant Lopez signs most of the IST placement recommendations for DHS and the overwhelming majority of the recommendations are for placement in Patton. Defendant Lopez knows or should know that incarcerated IST detainees who are ordered to be placed at Patton will not receive appropriate mental health treatment in in the jail for months while Patton's "one in, one out" policy slowly grinds forward. Defendant Lopez is sued in his official capacity for injunctive relief under §1983 in the event it is determined that MHM may not sued directly under that statute, and is sued for damages under all statutes alleged.

**E. DOE DEFENDANTS**

41. The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as Does 1 through 10, inclusive, are unknown to Plaintiffs, who therefore sues said Defendants by such fictitious names. Plaintiffs will amend this complaint to show such true names and capacities when they have ascertained the same. Plaintiffs are informed, believe and thereupon allege that each Doe Defendant named herein is, in some manner, legally responsible for the acts complained of. Does 1 through 10 are VCSO, CFMG, DSH, and MHM Services employees and/or agents who have not yet been identified, including but not limited to, executive, management, and/or policy-making staff and employees, and medical and mental health professionals.

42. At all times herein mentioned Defendants, and each of them, were the agents, servants and employees of each of the Co-Defendants, and in doing the things herein mentioned were acting within the purpose, course and scope of their

authorities and employment as such agents, servants and employees, and with the permission and consent of said Co-Defendants.

## IV. FACTS ENTITLING PLAINTIFFS AND CLASS MEMBERS TO RELIEF

### 1. Defendants' Duty to Provide Adequate Mental Health Care and Restorative Treatment.

43. Penal Code §1367 et seq. governs procedures for evaluation and restoration of competency. Under California law, a person accused of a crime cannot be tried or punished while that person is mentally incompetent. (Penal Code §1367(a)). A court may find a defendant is mentally incompetent if, as a result of mental disorder, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner. If, during the pendency of an action a doubt arises in the mind of the judge as to the mental competence of the defendant, the court shall order a hearing into the mental competence of the defendant. (Penal Code §1368(a)).

44. When an order for a hearing has been issued, all proceedings in the criminal prosecution are suspended. (Penal Code §1368(c)). The court then appoints a licensed psychologist or psychiatrist to examine the defendant.

When an order for a hearing has been issued, all proceedings in the criminal prosecution are suspended. (Penal Code §1368(c)). The court then appoints a licensed psychologist or psychiatrist to examine the defendant.

45. After proceedings in the criminal prosecution are suspended, Penal Code §1369 requires that "**While the person is confined pursuant to order of the court under this section, he or she shall be provided with necessary care and treatment**." (Penal Code §1369(a), emphasis added). Thus, **under the state statutory scheme, IST detainees are entitled to receive "necessary care and treatment" during the whole period they are confined after criminal proceedings are suspended, including before being transferred to a state IST**

**treatment facility**. While, as is discussed *infra*, restorative treatment is supposed to occur at state authorized facilities, the obligation to provide necessary, and constitutionally adequate treatment exists during the whole period of confinement, not just once placement in a state authorized facility occurs.

46. More fundamentally for this lawsuit, Plaintiffs' Section 1983 claim is not reliant on duties or responsibilities as they are allocated under California law. Rather, **the fundamental basis of Plaintiffs' Section 1983 claim is that any government agency that is confining a person clearly known to require mental health treatment, specifically including ISTs, is constitutionally required to provide adequate mental health treatment.** The failure to do so, where the agency is on notice of the need for such treatment, constitutes deliberate indifference to, and reckless disregard for, the constitutional rights of the affected inmate. Regardless of the California statutory scheme, and how it allocates responsibilities, it does not have the constitutional authority to remove the constitutional obligations of the entity that is actually holding the affected inmate. IST detainees are entitled to receive constitutionally mandated treatment that meets the constitutional minimum for their mental disabilities while they await placement by DSH for restorative treatment.

47. The failure to timely provide mental treatment and restorative mental treatment, discriminates against inmates under the ADA, the Rehabilitation Act, the Unruh Act, Cal. Civ. Code Sec. 51, the Bane Act, 52.1 as their IST status is a disability, and the Defendants discriminated against them in comparison to non-IST inmates by denying them equal access to the Courts, denying them equal statutory pre-trial custody credits (See ¶ 70, *infra*), denying them mental health and restorative mental health care, punishing them due to their IST status, denying them equal conditions of confinement by housing them in isolation, and denying

them commissary, jail visits and phone calls generally available to inmates. All of this conduct was on account of Plaintiffs' disabilities.

48. If the state court determines that a defendant is IST, all proceedings in the criminal prosecution are suspended and civil proceedings are instituted until the defendant regains mental competence or a finding is made that the detainee is unlikely to regain competence. (Penal Code §§1370(a)(1)(B), 1370.01(a)(1)). Such a finding triggers a process designed to evaluate, treat and restore the defendant's mental health so that judicial proceedings may resume. On information and belief, such a finding also suspends their entitlement to statutory pre-trial custody credits against their sentences. (See ¶ 70, *infra*)

49. After the court makes a formal finding that the defendant is IST, Penal Code §1370(a)(2)(A) mandates that, within 15 judicial days, "A person shall not be admitted to a state hospital or other treatment facility or placed on outpatient status without having been evaluated," and further requires the community program director or designee, (Defendants MHM and Marcus Lopez in this case), to:

A. Evaluate the defendant and submit a written recommendation as to whether the defendant should be required to undergo outpatient treatment, or committed to any other treatment facility; and

B. Evaluate the appropriate placement between DSH, a county jail treatment facility, or the community based residential treatment system based upon guidelines submitted by DSH. (Penal Code §1370(a)(2)(A)).

50. Once the IST finding is made by the court in a felony case, "the court shall order that the mentally incompetent defendant be delivered by the sheriff to a state hospital for the care and treatment of the mentally disordered, as directed by the State Department of State Hospitals, or to any other available public or private treatment facility**, including a county jail treatment facility or the community-based residential treatment system […] if the facility has a secured perimeter**

**or a locked and controlled treatment facility, approved by the community program director that will promote the defendant's speedy restoration to mental competence, or placed on outpatient status as specified in Penal Code §1600." (Penal Code §1370(a)(1)(B)(i), emphasis added).**

51. If a defendant is charged with a felony and determined to be IST, he or she may be held for treatment for a maximum of three years from the date of commitment or for a period equal to the maximum term of imprisonment for the most serious charge, whichever is shorter. (Penal Code §1370(c)(1)). If the person never regains competence, the criminal charges may be dismissed, and under certain circumstances, the person may become the subject of a conservatorship.

52. Prior to admission, DSH is required to evaluate each IST patient "to determine the placement of the patient to the appropriate state hospital." (Cal. Welf & Inst. Code § 7228). DSH utilizes the 1370 packet to evaluate an IST patient for security risks, and thereby determine whether to place an IST patient in low-security DSH facilities, such as DSH-Napa and DSH- Metropolitan or in the "most secure facilities" such as DSH-Atascadero or DSH-Patton." (Cal. Welf & Inst. Code §§ 7225, 7228, and 7230).

53. If the facility is a locked and controlled treatment facility or has a secured perimeter, MHM may approve placement in a:

A. Public Treatment Facility - California law allows a county jail to be designated as a "treatment facility," upon concurrence of the Board of Supervisors, the county mental health director, and the county sheriff, but provides that the maximum amount of time that a defendant may be "treated" in a designated county jail is six months. Penal Code § 1369.1(a); or a

B. Private Treatment Facility; or the

C. Community Based Residential Treatment System, i.e., CONREP

54. Once the IST finding is made by the court in a misdemeanor case, the defendant shall be delivered by the sheriff to an available public or private treatment facility approved by the county mental health director that will promote the defendant's speedy restoration to mental competence, or placed on outpatient status. (Penal Code §1370.01(a)(1)).

55. If a defendant is charged with a misdemeanor and determined to be IST, he or she may held one year from the date of commitment or a period of commitment equal to the maximum term of imprisonment provided by law for the most serious offense charged in the misdemeanor complaint, whichever is shorter. (Penal Code §1370.01(c)(1)). If the person never regains competence, the criminal charges may be dismissed, and under certain circumstances, the person may become the subject of a conservatorship.

56. After the court receives the placement recommendation and makes an order committing the IST for treatment, DSH or any other treatment provider is required to submit a progress report within 90 days concerning the defendant's progress towards recovery of mental competence and the likelihood that the defendant will regain mental competence in the foreseeable future. (Penal Code § 1370(b)(1)).

57. If the report shows that the defendant has been restored to competency, he is returned to court within ten days so that criminal proceedings can resume. (Penal Code §§ 1372(a), 1372(a)(3)(C) and 1370.1(a)(1)(C)).

58. If the report indicates that there is no substantial likelihood that the defendant will regain mental competence, the court shall order the defendant returned to court. (Penal Code §1370(b)(1)(A)) The prosecutor may choose to initiate further civil commitment proceedings pursuant to Penal Code § 1370(c)(2), or the court can dismiss the charges pursuant to Penal Code § 1385 without prejudice to the initiation of additional civil commitment proceedings. (Penal Code § 1370(e)).

59. Similarly, at the end of three years from the date of the commitment or the maximum term of imprisonment for the most serious offense charged in a felony case or one year from the date of commitment in a misdemeanor case, whichever is shorter, a defendant who has not recovered competence shall be returned to the court. (Penal Code § 1370(c)(1)). The prosecutor may choose to initiate further civil commitment proceedings pursuant to Penal Code § 1370(c)(2), or the court can dismiss the charges pursuant to Penal Code § 1385 without prejudice to the initiation of additional civil commitment proceedings. (Penal Code § 1370).

60. A 2014 amendment to Penal Code § 1370 which became effective January 1, 2015 requires that the court send DHS a 1370 Packet prior to the IST detainee's admission. The packet includes medical, psychiatric, legal, and security information. The list of documents required to be included in the transfer packet is set forth in Penal Code § 1370(a)(3).[1] DSH will not accept an IST detainee in the

---

[1] Penal Code § 1370(a)(3):

(3) When the court orders that the defendant be committed to the State Department of State Hospitals or other public or private treatment facility, the court shall provide copies of the following documents prior to the admission of the defendant to the State Department of State Hospitals or other treatment facility where the defendant is to be committed:

(A) The commitment order, including a specification of the charges.

(B) A computation or statement setting forth the maximum term of commitment in accordance with subdivision (c).

(C) A computation or statement setting forth the amount of credit for time served, if any, to be deducted from the maximum term of commitment.

(D) State summary criminal history information.

(E) Arrest reports prepared by the police department or other law enforcement agency.

(F) Court-ordered psychiatric examination or evaluation reports.

(G) The community program director's placement recommendation report.

(H) Records of a finding of mental incompetence pursuant to this chapter arising out of a complaint charging a felony offense specified in Section 290 or a pending Section 1368 proceeding arising out of a charge of a Section 290 offense.

(I) Medical records.

absence of a fully completed 1370 Packet. Health and/or medical records must be included as part of the complete 1370 packet. (Penal Code §1370(a)(3)). If the transportation packet is incomplete in any way, DSH will not approve the transfer and the IST detainee will not be placed on the waiting list for transfer.

61. Prior to admission, DSH also requires an order from the court that Patton (or other DSH facility) be authorized "to administer involuntary antipsychotic medication to the defendant pursuant to Penal Code §1370(a)(2)(b)," or a finding by the court that the detainee "consents to the administration of psychotropic medications."

62. After these procedural hurdles are satisfied, the IST detainee is placed on the waiting list for transfer to a treatment facility.

63. DSH in general and Patton, in particular, have adopted a policy which has come to be known colloquially in Ventura County as "the one in, one out rule." In essence, DSH will not take a new Ventura County IST detainee "in" until a Ventura County patient currently being treated at Patton has been restored to competency and sent "out" of Patton and back to Ventura County. Every Thursday, a small number, (usually one, two, or three) of IST detainees are brought back from DSH facilities, usually from Patton. A correspondingly small number of IST detainees at the jail are then transferred for treatment. However, it is not unusual for no transfers to occur because no ISTs were returned from DSH that particular week.

64. Stays of criminal proceedings pending the evaluation, placement recommendation, preparation of the 1370 Packet, and time spent on the waiting list for placement in a DSH treatment facility often last for months before any restorative treatment begins. As a result, ISTs often end up spending more time in jail prior to adjudication than they would if they had pled guilty to a misdemeanor or non-serious felony.

65. The failure to timely transfer IST detainees for treatment delays their restoration to competency and also delays the issuance of the treatment facility's mandatory report concerning the defendant's progress toward becoming mentally competent. Unreasonable delays in treating IST detainees have persisted for years, even after California and federal appellate courts have held that these types of delays are unlawful and numerous superior court judges have ordered the State Defendants to show cause why they should not be held in contempt for failing to admit incompetent defendants to an appropriate treatment facility in a timely manner.

66. Other than the report from DSH or other treatment provider which is due 90 days after the order of commitment pursuant to Penal Code §1370(b)(1), no specific time limits for transfer to a treatment facility or release to an outpatient program are set forth in California's statutory framework.

67. California law allows a county jail to be designated as a "treatment facility," upon concurrence of the Board of Supervisors, the county mental health director, and the county sheriff, but provides that the maximum amount of time that a defendant may be "treated" in a designated county jail is six months.[2]

---

[2] Penal Code § 1369.1(a):

As used in this chapter, "treatment facility" includes a county jail. Upon the concurrence of the county board of supervisors, the county mental health director, and the county sheriff, the jail may be designated to provide medically approved medication to defendants found to be mentally incompetent and unable to provide informed consent due to a mental disorder, pursuant to this chapter. In the case of Madera, Napa, and Santa Clara Counties, the concurrence shall be with the board of supervisors, the county mental health director, and the county sheriff or the chief of corrections. The provisions of Sections 1370, 1370.01, and 1370.02 shall apply to antipsychotic medications provided in a county jail, provided, however, that the maximum period of time a defendant may be treated in a treatment facility pursuant to this section shall not exceed six months.

(b) This section does not abrogate or limit any law enacted to ensure the due process rights set forth in *Sell v. United States* (2003) 539 U.S. 166.

68. The sole purpose of this IST statutory scheme "is the humanitarian desire to assure that one who is mentally unable to defend himself not be tried upon a criminal charge." *Tarantino v. Superior Court*, 48 Cal.App.3d 465, 469 (1975).

69. The statutory scheme established under Penal Code §1367 *et seq*. is to provide mental competency restorative services so that these disabled individuals have the same access to the criminal justice system and the same rights in connection with facing prosecution for alleged crimes as other mentally able defendants. Indeed, Penal Code §1367 specifically states that a person cannot be tried or punished when that person "is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense." Further, a person must suffer from a mental disorder or developmental disability in order to be considered incompetent to stand trial. *Id*.

70. During the IST evaluation and restoration periods, speedy trial rights are automatically waived and ISTs lose statutory pre-trial custody credits applicable to criminal pre-trial detainees, (*e.g.* Penal Code §4019), and receive only day-for-day credit pursuant to Penal Code §1375.5. Non IST inmates receive additional time off of their sentences in the form of pre-trial custody credits for good behavior ("good time") and for working in the jail, ("work time").

**B. The Ventura County Jail, Sheriff Dean, CFMG, Taylor Fithian (CFMG), Paul Adler (CFMG), Ronald Pollack (CFMG) Do Not Evaluate the Competency of Individuals Charged with Crimes and Dos Not Provide Adequate Mental Health Treatment or Competency Restoration Services. They discriminate against IST inmates compared to Non-IST inmates.**

71. As noted above, Defendant Sheriff Dean contracts with CFMG, a private corporation to provide all of the medical and mental healthcare to detainees housed at the VCPTDF and TRJ. Only one psychiatrist is employed full-time by CFMG. CFMG staff do not perform competency evaluations. These evaluations are performed by approved, private psychiatrists and licensed psychologists.

72. Neither the VCPTDF nor the TRJ are facilities which are licensed to perform competency restoration services. Furthermore, CFMG staff are not contracted to perform competency restoration services. Accordingly, no competency restoration services are provided at the VCPTDF or the TRJ pursuant to Penal Code §1369.1(a), and there is never a Penal Code §1368 placement recommendation or court order that an IST detainee be treated in Ventura County jail facilities.

73. While CFMG typically provides medication management for people who are willing to take medications, they do not administer medication involuntarily, except in an emergency.

74. Treatment for IST detainees is generally limited to basic clinical psychiatry and intervention designed to stabilize an individual's mental health condition. The mental health treatment that they receive prior to being transferred for restorative treatment falls below acceptable constitutional and statutory standards. They are warehoused pending transfer to a State Hospital, and Ventura County and CFMG do nothing to provide on-going mental health treatment, restorative treatment or prompt transfer to a suitable facility that can provide adequate mental health treatment or restorative treatment pending transfer to a State Hospital.

75. Individuals found IST are often overtly psychotic and require special housing or segregation. They are unpredictable and disruptive, taking up valuable resources needed for the care of other inmates. If they refuse to take medications, they often decompensate rapidly.

76. Incapacitated criminal defendants have a high risk of suicide, and the longer they are deprived of treatment, the greater the likelihood they will decompensate and suffer unduly. For example, one detainee committed suicide on May 25, 2015, 61 days after he was found IST and ordered to be transported to Patton. Another Detainee was attacked in jail by a fellow inmate weeks after he

was found IST and ordered to be transported to Patton. All of the currently incarcerated IST detainees face an obvious and significant risk of deterioration of their mental health conditions while they are warehoused in the jail awaiting treatment.

77. Because incapacitated criminal defendants are often found to be either a danger to themselves or others, they are often strip searched, placed in safety cells and housed in isolation. Because they are mentally ill and often incapable of defending themselves or controlling unusual behaviors, they are at high risk of being beaten, having their property taken, or otherwise being taken advantage of by fellow inmates. Jails are punitive environments and the conditions of confinement undermine the mental health of these detainees as well as the government's interests in competency restoration and trial.

78. Jails control inmates through discipline. Jail disciplinary systems are ineffective for individuals with severe mental health disabilities, which characterizes IST detainees. Because of their unpredictable or disruptive behavior, they are often disciplined, which can include being locked in their cells for 23 hours a day, denied visits or phone calls from friends or loved ones, denied commissary privileges or placed on a disciplinary diet. These forms of discipline exacerbate their mental illness. Instead of providing the needed mental health treatment, Plaintiffs are subjected to harsh and punitive treatment as a result of their mental disabilities.

79. Unlike the VCPTDF and TRJ, DSH hospitals can treat a person's mental health disabilities and provide competency restoration services. Their hospitals are staffed by full-time psychiatrists and psychologists, mental health specialists, social workers, mental health technicians, and nurses. In addition, unlike the VCPTDF and TRJ, DSH hospitals can provide necessary medication, even if it is

sometimes involuntary, which is necessary for some persons to regain their competency.

80. In addition to assessment, medication evaluation and management, and individual and group psychotherapy, DSH hospitals provide individuals with mental health disabilities with legal skills training to assist them in learning about the law, the roles of the attorneys, witnesses and the court, and what they can expect after returning to court. This treatment is designed to restore a person to competency to stand trial and to otherwise exercise their constitutional rights meaningfully.

### C. Defendants Have Failed to Evaluate and/or Treat Individuals with Mental Health Disabilities Who Have Been Charged with a Crime in Ventura County in a Timely Fashion.

81. According to public records obtained by Plaintiffs' counsel, at the time of the filing of the initial complaint in this matter, there were more than fifteen people waiting in the VCPTDF and TRJ who had been found incompetent to stand trial, had been approved for transportation to Patton or another facility, but had not yet been transported. Plaintiffs are further informed and believe that at least ten, and probably more, of these civilly committed detainees who were in custody at VCPTDF or TRJ waited more than 30 days for transportation to a treatment facility after being civilly committed by the court. Plaintiffs are further informed and believe that at least six, and probably many more, of these civilly committed detainees at VCPTDF or TRJ waited for more than 120 days for transportation to a treatment facility after being civilly committed by the court. One female detainee waited more than six months for transfer to a state hospital. Plaintiffs are further informed and believe that delays of three to six months have been commonplace for several years preceding the date of this filing, and that the class affected by these policies numbers well over 100 individuals. Defendants have consistently

failed to timely admit these individuals to DSH hospitals for restoration of competency.

82. Plaintiffs and those similarly situated each have histories of severe mental health conditions. Most have been ordered by courts presiding over their criminal proceedings to be transported to a DSH hospital to be restored to competency to stand trial. Plaintiffs have languished in the jail for weeks and months without necessary care and treatment to the detriment of their overall mental health.

83. As a result of languishing in jail for weeks or months without necessary care and treatment, Plaintiffs and those similarly situated have suffered pain, anxiety, isolation, and worsening of their mental illnesses, unequal conditions of confinement as described herein compared to non-IST inmates (both compared to regular general population inmates and to inmates with less severe mental illnesses), as well as being subjected to unjustified disciplinary measures, increased risk of being the victims of violence by other inmates because of their perceived or actual inability to defend themselves. They have also been denied equal access to statutory pre-trial and custody credits compared to Non-IST inmates. All Defendants are aware of this discriminatory treatment and act in reckless disregard for, and deliberate indifference to, this punitive, unequal, and discriminatory treatment compared to non-IST inmates.

**D. Defendants' Custom, Pattern And Practice Of Failing To Provide Constitutionally Required Mental Health Treatment, And Failing To Timely Transfer IST Inmates To A DSH Hospital So That They Can Be Timely Treated And Restored To Competency To Stand Trial.**

84. County Defendants have a custom, pattern and practice of failing to timely provide mental health treatment and medication to IST inmates held in their custody.

85. County Defendants engage in a custom, pattern and practice of failing to provide IST detainees with proper housing to ensure appropriate mental health care treatment. IST inmates are often written up for behavior based on their disability, mental problems and incompetency and are then disciplined inappropriately by placing them in isolation for prolonged periods of time, feeding them a disciplinary diet, denying them commissary and visits and phone calls from friends and family.

86. County defendants have a custom, pattern and practice of failing to place IST inmates in outpatient status as specified in Penal Code Section 1600 after a reasonable amount of time without treatment elapses.

87. County defendants have a custom, pattern and practice of failing to adequately keep records of mental health treatment of IST detainees, failing to adequately staff the jail with mental health caretakers, failing to prevent suicides of IST detainees, failing to provide therapy or therapeutic services for IST detainees, and failing to ensure IST detainees have equal opportunities to participate in and benefit from jail services, programs and activities.

88. County defendants have a custom, pattern and practice of falling to transfer IST detainees to a California Department of State Hospitals, such as Patton State Hospital, or to any other public or private treatment facility capable of providing restorative treatment with a reasonable time, at least within seven days after the date on which the court entered an order for the Sheriff to transfer the person to a treatment facility. They have deprived IST inmates of mental health treatment or restorative treatment, and have acted with reckless disregard of IST inmates' State and Federal constitutional and statutory rights. They have intentionally discriminated against IST inmates by failing to provide timely and constitutionally adequate mental health treatment or restorative treatment, and discriminated against them as compared to non-IST inmates by prolonging their custody in violation of their State Constitutional Speedy Trial Rights, depriving them of equal

statutory pre-trial custody credits, and allowing them to languish in punitive, unequal conditions of confinement compared to non-IST inmates.

89. On August 12, 2015, Sheriff Dean submitted a Proposal Form to the Board of State and Community Corrections (BSCC) for construction financing for a 64-bed housing, clinic and programming unit for inmates with medical and mental health needs. See Plaintiff's Request for Judicial Notice ("PRJN"), ECF Doc. No. 51, Ex. 1, pp. 1- 2.

90. CFMG was well aware of the contents of this proposal because Nicoletta Weeks, CFMG's Facility Manager at the VCPTDF was, and is, a member of the proposed Todd Road Jail medical/mental health facility's Planning Team, which "meets regularly and performs all the necessary tasks associated with the planning process". (PRJN, Ex. 1, p. 40).

91. In the Proposal, Sheriff Dean identified a growing gap between the number of mentally ill inmates and the number of available beds for them. On a system-wide basis, only 2 percent of available beds are presently designed for inmates in need of medical or mental health treatment. The number of beds allocated for inmate-patients requiring treatment services falls short of meeting even minimal jail system needs. (*Id.* at pp. 12-13)

92. "The PTDF was designed with 12 medical/mental health beds to serve a total inmate capacity of 400 in single-bunk cells." (*Id.* at p. 12) The original medical/mental health housing was inadequate to support the facility's larger population. In response, double-bunking of the existing medical/mental health area and conversion of some office and dayroom space increased total facility medical/mental health housing to 32 beds. (*Id.* at p. 12) "Even with this increase, the Sheriff's Office was forced to utilize a housing area designed for general population inmates to house the overflow of inmate-patients with mental health issues. This housing area has inadequate resources with which to provide necessary

services to this population." (*Id.*) Currently, inmate-patients housed in the PTDF's medical/mental health housing do not have access to the higher level of programming that is available at TRJ, due to the PTDF facility's limitations. (*Id.* at p. 22)

93. "Approximately 2 percent of the inmate population is assigned to a specialized medical/mental health care bed, while the current need for the population that has been diagnosed with acute medical/mental health needs is around 5 percent." (*Id*. at p. 19) "The PTDF facility was never intended to house medical or mental health inmate-patients for the length of time they are holding offenders today. The current design does not allow a reasonable way to provide the type of space or programs this population so desperately needs." (*Id.* at p. 29)

94. From 2015-2016, the Ventura County Grand Jury "inquired into the condition and management" of jails in Ventura County and presented its findings in a final report dated May 24, 2016. See Plaintiffs' PRJN, Ex. 2, ECF Doc. No. 51. The Grand Jury reported very different and much more alarming figures than Sheriff Dean. "The Main Jail has 18 cells to house the medically ill and two cells to house inmates with Severe and Persistent Mental Illness (SPMI). The severely mentally ill are segregated from the general populace and are supervised 24/7. It was reported that 42% of female inmates and 18% of male inmates exhibit some symptoms of mental illness. Of this population, 21% of the female inmates and 11% of the male inmates are classified SPMI." (*Id.* at p. 6) (emphasis added).

95. These problems are compounded by the lack of treatment beds and resources identified by Sheriff Dean in his Funding Proposal for a new facility at Todd Road last year. Sheriff Dean asserted that "the jail system's 32 dedicated treatment beds [sic] do not provide adequate resources to manage and effectively treat these inmate-patients." (See Plaintiffs' Request for Judicial Notice ("PRJN"),

Ex. 1, p. 14) Sheriff Dean identified six specific problems relating to treating the mentally ill as a result:

(1) "This shortage of medical/mental health housing has resulted in the release of inmate-patients from medical beds back to general population housing prior to the completion of their medical treatment plans[…] The population of inmates with severe and persistent mental illness that are housed in overflow housing often require separation from other inmates for their own protection." (*Id.* at p. 14);

(2) "While the Sheriff's Office attempts to provide support and programming within the housing unit, the facility is not designed for treatment or for evidence-based programming, diminishing the effectiveness of the treatment provided." (*Id.* at p. 14);

(3) "In addition, the medical/mental health housing unit is located near an area with heavy traffic from within the main circulation area of the PTDF, creating undo stress on the mental health inmate-patient population." (*Id.* at p. 16);

(4) "The lack of adequate programming space within the medical/mental health housing units requires treatment to take place in hallways." (*Id.* at p. 16);

(5) "Currently, the program space for medical/mental health is almost non-existent. When programming does occur, inmate-patients need to be handcuffed to individual tables within the dayroom to allow for safe programming. Handcuffing these individuals to tables in the dayroom is not conducive to the successful treatment of the medical/mental health inmate-patients." (*Id.* at p. 27); and

(6) "Currently, inmate-patients housed in the PTDF's medical/mental health housing do not have access to the higher level of programming that is available at TRJ, due to the PTDF facility's limitations." (*Id.* at p. 22). These TRJ programs include evidence-based treatment for substance abuse, treatment basics, English as a Second Language, Malachi Men class and Women of the Word (both faith-based

leadership programs), ServeSafe food handler certificate, working in the Print Shop, moral reconation therapy, Transitions Program, S.T.E.P.S. program, Re-entry Action Planning (R.A.P.) Bridges to Work, Changing Course Journal, Transitional-Aged Youth programs, Vocational Training (emphasis on local agricultural and landscape employment), County Behavioral Health Agency discharge/pre-release counseling and planning for inmates with mental disorders (including that a prescribed medication supply is available for those in need), County Public Health Agency AIDS awareness sessions and individual counseling. (*Id.* at p. 11, 32-34, 93).

96. State defendants have a custom, pattern and practice of failing to accept IST detainees on a timely basis within a reasonable amount of time, or within any reasonable time, after the date on which the court entered an order for the Sheriff to transfer the person to a treatment facility, thus depriving IST detainees of their constitutional rights to timely and adequate mental health treatment or restorative treatment, and have acted with reckless disregard of IST inmates State and Federal constitutional rights, and State and Federal statutory rights. They have intentionally discriminated against IST inmates by failing to provide timely and constitutionally adequate mental health treatment or restorative treatment, and discriminated against them as compared to non-IST inmates by prolonging their custody in violation of their Speedy Trial Rights, depriving them of equal statutory pre-trial custody credits while in IST custody, and allowing them to languish in punitive, unequal conditions of confinement compared to IST inmates.

## V. CLASS ACTION ALLEGATIONS

97. Plaintiffs SCOTT and MOJICA by and through their guardians ad litem, (collectively, the "Class Plaintiffs") bring this action pursuant to Civil Rule 23(a), (b)(1), (b)(2) and (b)(3) on behalf of themselves and all others similarly situated (collectively, the "Class Members").

98. Class Members seek class-wide equitable, declaratory and injunctive relief, as well as damages, pursuant to Federal Rules of Civil Procedure, Rule 23(a), b(1), and (b)(2), and (b)(3).

99. The Equitable Relief Class (F.R.Civ.P. 23(b)(3)) is defined as follows:

All persons who are presently, and/or who will be in the future:

(1) incarcerated at the VCPTDF or TRJ;

(2) charged with a crime in Ventura County, California;

(3) found by a court to be incompetent to stand trial;

(4) held in custody while awaiting competency restoration services; and,

(5) have waited for court-ordered restoration services for seven or more days after DHS first had a duty to admit the detainee. (This duty arises when **both** of the following have occurred: (1) the court enters an order for the Sheriff to transfer the person to a treatment facility, and (2) the treatment facility has received the 1370 Packet from the court.)

100. The damages relief (F.R.Civ.P. 23(b)(3)) class is defined as follows:

All persons who have been, during the time period of May 5, 2014 (or possibly earlier, based on a legal determination of the applicable statute of limitations, hereafter the "damages class period"), until the present, and through the time of resolution of this case

(1) incarcerated at the VCPTDF or TRJ;

(2) charged with a crime in Ventura County, California;

(3) found by a court to be incompetent to stand trial;

(4) held in custody while awaiting competency restoration

services; and,

(5) have waited for court-ordered restoration services for seven or more days after DHS first had a duty to admit the detainee. (This duty arises when **both** of the following have occurred: (1) the court enters an order for the Sheriff to transfer the person to a treatment facility, and (2) the treatment facility has received the 370 Packet from the court.)

**A. <u>Numerosity</u>**

101. The class meets the numerosity requirement of Rule 23(a)(1). On information and belief, more than 40 Class members are denied the rights at issue each year, and the Damages Class currently exceeds 100 individuals (and growing), making individual joinder of all members impractical. Similarly, the Equitable Relief Class consists of an ever increasing number of individuals whose rights are being violated.

102. The identities of the Class Members are ascertainable through records held by Defendants and/or the courts from which the evaluations or restorations of competency were ordered. Members of the Class may be informed of the pendency of this class action by use of contact information in the possession of Defendants as well as from court records.

**B. <u>Commonality.</u>**

103. The class meets the commonality requirement of Rule 23(a)(2). Questions of law and fact presented by the named plaintiffs are common to other members of the class. The common contentions that unite the claims of the class include, but are not limited to, the following:

a. Did/do the County Defendants have a custom, pattern and practice of failing to provide the mental health treatment and/or restorative services within the timeframe mandated by the California statutes identified previously?

b. Did/do the County Defendants have a custom, pattern and practice of failing to provide adequate mental health treatment and/or restorative services as mandated by the California statutes identified previously?

c. Did/do those statutes create a liberty interest on behalf of the Plaintiffs and the Class Members?

d. Did/do the County Defendants have a custom, pattern and practice of failing to provide minimally adequate mental health care to inmates violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution, and Article I, Sections 7 and 17 of the California Constitution?

e. Did/do the County Defendants have a custom, pattern and practice of discriminating against IST inmates by failing to provide adequate mental health treatment and restorative services in violation of the Americans with Disabilities Act, the Rehabilitation Act, and the California Disabled Persons Act housing them in substandard conditions of confinement, and depriving them of equal access to the Courts and equal statutory pre-trial custody credits?

f. Did/do the County Defendants have a custom, pattern and practice of failing to provide adequate mental health treatment and restorative services in violation of California Govt. Code § 11135?

g. Did/do the County Defendants have a custom, pattern and practice of failing to provide adequate mental health treatment and restorative services through threat, coercion or intimidation in violation of California Civil Code § 52.1?

h. As to Defendants CFMG and MHM Services and their individual employees or agents, are they government actors such that they may be held liable under § 1983?

i. As to Defendants CFMG and MHM Services, do they operate a place of public accommodation such that they may be held liable under Title III of the ADA?

j. As to Defendants CFMG and MHM Services, are they a business establishment such that they may they may be held liable under California Civil Code § 51?

k. Did/do the State Defendants, individually or collectively, have a custom, pattern and practice of failing to admit IST detainees to appropriate restorative treatment within seven days, or a reasonable time, after the date DHS has the duty to admit them to mental health/ restorative services facility and/or of failing to provide adequate mental health treatment and restorative services within the timeframe mandated by the California statutes identified previously?

l. Did/do the Defendants violate the IST detainees speedy trial rights?

m. Did DHS and/or Patton State Hospital violate the ADA or the Rehabilitation Act?

n. Did the individual State Defendants violate the due process clause of the United States and California, the California Disabled Persons Act, and/or Civil Code § 52.1?

o. Are Plaintiffs entitled to injunctive relief against the state public entities under the ADA or Rehabilitation Act and, for other claims, against state officials in their official capacity?

p. Are Plaintiffs entitled to damages against the state public entities under the ADA or Rehabilitation Act and, for other claims, against state officials in their individual capacities?

q. Are Plaintiffs entitled to presumed damages under § 1983 and/or statutory damages for violations of California Civil Code §§ 52, 52.1 or 54?

104. These and other common questions of law and fact predominate over any questions affecting only individual Class Members. The Class Action is superior to individual actions; the class is manageable, particularly in light of information contained in Defendants' records; and members of the Class are ascertainable through Defendants' records.

**C. Typicality.**

105. The claims of Plaintiffs SCOTT and MOJICA are typical of those of the class as a whole because they were detained in the County facilities without adequate (or any) mental health services for extended periods (many weeks or months beyond the mandatory periods provided by California law) prior to their admission to a treatment facility which provides restorative services in violation of the Federal Constitution, Federal Statutes, State Constitution and State law.

106. The Class Plaintiffs' claims are typical of the claims of the Class because Defendants have uniformly and systematically failed to provide timely adequate mental health treatment and competency restoration services to Class Plaintiffs and to the Class.

107. Class Plaintiffs will fairly and adequately protect the interests of the Class. There are no known conflicts of interest between the Class Plaintiffs and other Class Members. The Class Plaintiffs will vigorously prosecute this action on behalf of the Class. The Class Plaintiffs are represented by competent counsel with considerable skill and experience in civil rights and class action litigation, who will vigorously prosecute this case on behalf of the Class.

**D. Adequacy of Representation.**

108. Class Plaintiffs will fairly and adequately protect the interests of the Class. There are no known conflicts of interest between the Class Plaintiffs and other Class Members. The Class Plaintiffs will vigorously prosecute this action on behalf of the Class. The Class Plaintiffs are represented by competent counsel with

considerable skill and experience in civil rights and class action litigation, who will vigorously prosecute this case on behalf of the Class.

109. Defendants have acted or refused to act on grounds generally applicable to the entire class, thereby making final injunctive and declaratory relief appropriate with respect to the Class as a whole.

110. The claims asserted herein are capable of repetition while evading review. There is a continuing and substantial public interest in these matters.

111. The class action is the best available method for the efficient adjudication of these legal issues because individual litigation of these claims would be impracticable, and individual litigation would be unduly burdensome to the courts. Further, individual litigation has the potential to result in inconsistent or contradictory judgments. A class action in this case presents fewer management problems and provides the benefits of single-adjudication, economies of scale, and comprehensive supervision by a single court.

112. As alleged throughout this Complaint, damages and injunctive relief are only sought directly from the State public entity defendants (DHS AND Patton) under the ADA and the Rehabilitation Act. Injunctive relief, as it relates to the State Defendants for the other claims, is sought only against those individual State Defendants named in their official capacity. Similarly, damages against the State Defendants for the other claims are sought only against individual State Defendants in their individual capacities.

## VI. EXHAUSTION OF JURISDICTIONAL PREREQUISITES

113. Plaintiff representatives on behalf of themselves and Class Members exhausted the administrative remedies to the extent available required under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e, prior to filing this Complaint. Additionally, such remedies were unavailable within the meaning of the PLRA because a) Ventura County Jail asserted that the claims were beyond its

control and it had no ability to remedy them, b) Plaintiffs totally lacked mental capacity such that they were able to pursue administrative remedies on their own, and Defendants had no grievance mechanism available for such circumstances, and c) Plaintiffs could not pursue administrative remedies against a State entity or the private defendants because Plaintiffs were not inmates of any state entity or private defendant at the time they failed to receive adequate mental health treatment and restorative services such that administrative remedies were available to them.

114. Plaintiff representatives, on behalf of themselves and Class Members, filed Government Code §910 tort claims with the State of California and the County of Ventura. The County denied the 910 claim on May 3, 2016. Inexplicably, the State stated that Claim G631362 for SCOTT was untimely even though SCOTT was still in the custody of the VCPTDF and the other class representative, MOJICA, was also in custody of the VCPTDF at that time. Plaintiffs and Class Members have timely filed this lawsuit thereafter.

115. Plaintiff representatives, on behalf of themselves and Class Members, filed a complaint with the DHS on or about November 7, 2016 in order to comply with the administrative remedies exhaustion requirements pursuant to California Code of Regulations, Title 22, § 98003. Plaintiffs will amend this Complaint to add a claim under Civil Code § 11135 when those administrative remedy provisions have been exhausted.

## VII. DAMAGES

116. As a result of the various violations alleged herein, Plaintiffs experienced physical, emotion and mental harm, and general and/or special damages. Plaintiffs seek all available damages remedies, including but not limited to compensation for actual damages, special and general damages, statutory damages, and, as against the individual defendants, punitive or exemplary damages. They also seek civil penalties to the extent available.

## VIII. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**Violation of the Fourteenth Amendment to the United States Constitution (42 U.S.C. §1983) and Article 1, Section 7, California Constitution (Due Process)**

**Against All Defendants And Does 1-10 Except The State Of California Public Entities For Damages; Against The County Defendants And The Individual State Defendants In Their Official Capacity And Against CFMG And MHM Services For Injunctive Relief**

117. As a result of the various violations alleged herein, Plaintiffs experienced physical, emotion and mental harm, and general and/or special damages. Plaintiffs seek all available damages remedies, including but not limited to compensation for actual damages, special and general damages, statutory damages, and, as against the individual defendants, punitive or exemplary damages. They also seek civil penalties to the extent available.

Plaintiffs incorporate by reference each and every allegation contained in the foregoing and following paragraphs, as though set forth herein *verbatim.*

118. Due process requires that the nature and duration of confinement must bear a reasonable relation to the purpose for which a person is committed.

119. Once an individual is found IST, the only lawful purpose for confinement is to treat the individual in order to return him or her to competency.

120. Individuals found IST have a constitutional right to such individualized treatment as will give each of them a realistic opportunity to be cured or to improve their mental condition.

121. IST inmates are also entitled to constitutionally adequate mental health treatment and equal protection under the law, equal statutory pre-trial custody credits as non -IST inmates, as well as equal conditions of confinement as non-IST inmates.

122. The County Defendants discriminated against, and failed to provide adequate mental health treatment to, IST inmates, given their knowledge of the substandard conditions of confinement, access to the courts and equal statutory pre-trial custody credits that IST inmates have compared to non-IST inmates. The County Defendants knew or should have known and failed to adequately address the following:

as follows:

A. ISTs are held in county custody in violation of the California and Federal Constitution and state statutes for indefinite and prolonged periods of time without restorative mental health care or basic mental health treatment solely due to their IST condition;

B. ISTs are discriminated against compared to non-IST inmates in housing as they are held in isolation and not general population solely due to their IST condition;

C. ISTs are discriminated against compared to non-IST inmates in conditions of confinement as they are often punished solely due to their IST condition;

D. ISTs are discriminated against as compared to non-IST inmates as they do not get the same visiting, phone call and commissary solely due to their IST condition;

E. ISTs are discriminated against compared to non-IST inmates as they serve longer sentences and are denied equal statutory custody credits as they languish indefinitely in their conditions of confinement, and,

F. ISTs were denied equal access to the Courts due to their indefinite and prolonged custody without mental health care that denied them their speedy trial rights under the California Constitution, and denied equal statutory pre-trial custody credits due to their indefinite, prolonged custody.

123. The State Defendants have consistently failed to timely treat IST detainees after their Constitutional and statutory duty to do so arose.

124. The State Defendants discriminated against, and failed to provide adequate mental health treatment to, IST inmates, given their knowledge of the substandard conditions of confinement, access to the courts and equal statutory pre-trial custody credits that IST inmates have compared to non-IST inmates. The State Defendants knew or should have known and failed to adequately address the following::

A. ISTs are held in county custody in violation of the California and Federal Constitution and state statutes for indefinite periods of times without restorative mental health care or basic mental health treatment solely due to their IST condition;

B. ISTs are discriminated against compared to non-IST inmates in housing as they are held in isolation and not general population solely due to their IST condition;

C. ISTs are discriminated against compared to non-IST inmates in conditions of confinement as they are often punished solely due to their IST condition;

D. ISTs are discriminated against as compared to non-IST inmates as they do not get the same visiting, phone call and commissary privileges solely due to their IST condition;

E. ISTs are discriminated against compared to non-IST inmates as they serve longer sentences and lose statutory pre-trial custody credits as they languish indefinitely in their conditions of confinement, and,

F. ISTs were denied equal access to the Courts due to their indefinite and prolonged custody without mental health care that denied them their speedy trial rights under the California Constitution, and denied them equal statutory pre-trial custody credits due to their indefinite, prolonged custody.

125. The statutory scheme set forth above provides Plaintiffs and the Plaintiff Class a liberty interest in timely and meaningful medical and mental health treatment while being held pending evaluation, treatment and restoration of their mental health. However, Plaintiffs' claims do not depend on such a state created liberty interest, as Plaintiffs have independent liberty interests in freedom from incarceration absent a criminal conviction and in restorative treatment. Substantive and procedural due process thus require that Plaintiffs, who have not been convicted civilly committed persons be provided with mental health treatment that gives them a realistic opportunity to be cured or improve the mental condition for which they were confined.

126. These Plaintiffs and the Plaintiff Class are incarcerated civil detainees who lose statutory pre-trial custody credit that ordinary criminal defendants receive while held pending restoration of their mental competency and, therefore, ISTs are often held in custody longer. These IST detainees sit in county jails for months without treatment so their mental health often deteriorates. They are disciplined more frequently than other inmates, are often taken advantage of by other inmates, and are at a higher risk for suicide.

127. Acting under color of state law, Defendants have violated and caused violations of the Class Plaintiffs' due process rights pursuant to the Fourteenth Amendment to the United States Constitution and Article 1 § 7 of the California Constitution.

128. Unless enjoined by the Court, Defendants will continue to violate and cause the violation of the constitutional rights of the Class Plaintiffs and the Class.

129. Plaintiffs have no adequate remedy at law for the continuing, ongoing violations of their rights, and will suffer irreparable harm unless

130. As a direct and proximate cause of the aforementioned acts of Defendants, Plaintiffs and those similarly situated have been damaged in amounts to be determined at trial.

131. Plaintiffs have been damaged through the additional time they spent in jail due to their prolonged detention in county jail without access to restorative treatment, the lack of treatment and rehabilitation services while spending unnecessary time in jail. During their unnecessary and prolonged detention in violation of their rights, they have been disciplined for violating jail rules as a result of their mental health disabilities, detained in isolation cells, commonly referred to as "the hole," and administrative segregation, and lost visits and commissary.

132. Under this claim, Plaintiffs seek damages from Defendants Ventura County, Ventura County Sheriff's office, Sheriff Dean, CFMG, Taylor Fithian, Paul Adler, Ronald Pollack, Pam Ahlin, Harry Oreol, MHM and Marcus Lopez. The damages against the individuals are sought in their individual capacities. Plaintiffs also seek injunctive relief against California Department of State Hospitals, Patton State Hospital, Ventura County, Ventura County Sheriff's office, CFMG, and MHM, and all individuals sued in their official capacities, Sheriff Dean, Taylor Fithian, Paul Adler, Ronald Pollack, Pam Ahlin, Harry Oreol, MHM and Marcus Lopez.

## SECOND CLAIM FOR RELIEF

### Failure to Provide Adequate Medical Care to Inmates: Violations of the 14th Amendment of U.S. Constitution, and Article I, Sections 7 and 17 of California Constitution

### As Against Defendants VENTURA COUNTY, VCSO, DEAN, CFMG, Fithian, Adler and Pollack

133. Plaintiffs incorporate by reference each and every allegation contained in the foregoing and following paragraphs, as though set forth herein *verbatim.*

134. Defendants COUNTY, VCSO, DEAN, and CFMG have a policy and practice of failing to provide adequate mental health care to inmates in the Jail. The mental health care provided by Defendants to inmates in the Jail is woefully inadequate and falls far short of all of the minimum elements of a constitutional mental health system.

135. Defendants are deliberately indifferent to the fact that their failure to provide adequate mental health care subjects inmates to a substantial risk of deteriorating psychiatric conditions, extreme and unnecessary anguish and suffering, and, in some cases, even death. Defendants have been and are aware of all of the deprivations complained of herein, and have condoned or been deliberately indifferent to such conduct.

136. Defendants' failure to provide minimally adequate mental health care to pre-trial detainees violates the due process clause of the Fourteenth Amendment to the United States Constitution, and Article I, Sections 7 and 15 of the California Constitution.

137. By their policies and practices described herein and above, Defendants COUNTY, VCSO, DEAN, CFMG, Fithian, Adler and Pollack, subject Plaintiffs and the IST class they represent, to inadequate mental health care which falls below minimal constitutional and statutory standards during their pre-trial incarceration at VCPTDF and TRJ.

138. These policies and practices have been, and continue to be, implemented by Defendants and their agents or employees in their official capacities, and are the proximate cause of Plaintiffs' and the IST class's ongoing deprivation of rights secured by the United States Constitution and the California Constitution.

139. All mental health care in the Jails, like medical care, is provided by Defendant CFMG and its employees. CFMG is a for-profit corporation which provides these services pursuant to its contract with Defendants COUNTY and VCSO, and DEAN.

140. Together, Defendants COUNTY, VCSO and CFMG are the sole providers of and fully control all medical and mental health care available to inmates in VCPTDF and TRJ. Accordingly, inmates cannot receive any mental health care services-- including psychotropic medication, group and individual therapy, and suicide intervention--unless Defendants provide them. Defendants control inmates' access to mental health care professionals, inside or outside of the Jails, as well as their access to laboratory or other diagnostic testing.

141. Defendants lack sufficient facilities to provide adequate mental health care to the mentally ill population including IST detainees at the pre-trial detention facility, including the facility deficiencies identified in DEAN's August 2015 "Proposal Form to the Board of State and Community Corrections" and the Ventura County Grand Jury report in 2015-2016 of: (1) on a system-wide basis, only 2% of available beds are designated for inmates in need of medical or mental health treatment, while the current need is around 5% of the inmate population; (2) there are only two cells to house the severely mentally ill inmates, and as a result they are segregated from the general populace; (3) the program space at the pre-trial detention facility is almost non-existent and those at the pre-trial detention facility do not have access to the level of programming at the Todd Road facility; and (4) the medical/mental health housing unit is located near an area with heavy traffic, creating undo stress on the mental health inmate-patient population.

142. Defendants maintain insufficient numbers of mental health care professionals to provide minimally adequate care to the IST detainees.

143. Upon information and belief, Defendants COUNTY, VCSO and DEAN do not adequately train custody staff regarding how to: (1) appropriately house inmates with serious mental illness; (2) transfer inmates to facilities that provide inpatient mental health care when it is necessary; (3) identify inmates who are at risk of suicide and respond adequately to inmates who are exhibiting suicidal tendencies; (4) treat mental health issues without resorting to use of physical force, improper use of restraints, and/or violence to control the inmates; (5) respond to mentally ill inmates whose non-conforming behaviors are a product of their mental illness; and, (6) recognize when they need to refer mentally ill inmates to therapy.

144. Defendants provide little to no individual or group treatment to inmates with mental health problems, even for inmates who are acutely or chronically mentally ill. Therapy in an individual or group setting is almost never offered or provided to inmates, regardless of whether inmates were receiving therapy as a part of their treatment for mental illness outside of the Jail.

145. Defendants do not provide psychosocial rehabilitation services, which include structured out-of-cell programming that addresses their symptoms of mental illness, reduces their isolation, and promotes compliance with treatment and medications. Without this care, seriously mentally ill inmates are at an unreasonable risk of decompensating and of not responding fully to the treatment they do receive. This deterioration can take many damaging forms, including increased symptoms and non-adherence to treatment.

146. Upon information and belief, Defendants do not have adequate safeguards in place to ensure that inmates with mental illness are only placed in administrative segregation when absolutely necessary. Defendants house the IST Detainees in administrative segregation units in ways that place such inmates at substantial risk of serious harm and with little to no amount of structured out of cell time. The conditions in the administrative segregation units are extremely

punitive, isolating, and restrictive. These conditions significantly increase the risk that inmates with mental illness will have their condition decompensate when placed in administrative segregation. A significantly disproportionate percentage of suicides occur in administrative segregation units. Because of the risks posed by administrative segregation to inmates with mental illness, a consensus has been reached in mental health correctional communities that inmates with mental illness should only be placed in administrative segregation if absolutely necessary. In addition, if inmates with mental illness are placed in administrative segregation, there must be limits on the amount of time they remain in such units, they must be monitored closely, and they must be provided with significant structured and unstructured out-of-cell time.

147. Defendants have often placed IST Detainees in isolation cells, commonly referred to as "the hole" and safety cells. When housed in an isolation cell, inmates have even less freedom to move around and interact with other inmates, and they have extremely limited access to programs and services at the Jail. Accordingly, inmates with serious mental illnesses are denied access to programs and services because Defendants place inmates with serious mental illness in lockdown units or isolation cells.

148. Upon information and belief, Defendants exacerbate the psychological trauma experienced by inmates with serious mental health conditions who are housed in safety cells by failing to provide them with necessary mental health care. These inmates do not receive sufficient contact with mental health providers. As a result, their nonconforming behaviors often escalate and they are forced to stay in safety cells or administrative segregation.

149. Upon information and belief, Defendants' disciplinary process fails to take into account behavior which results from inadequate mental health care. Upon information and belief, as a result of Defendants' failure to provide adequate

mental health care, inmates with serious mental conditions may be unable to conform to Jail rules or be safely housed in cells with other inmates. In response, rather than provide them with the treatment they need, Defendants discipline the IST detainees in various ways, including but not limited to: (1) housing these inmates in isolation in the rubber rooms; (2) taking away their visitation rights; (3) taking away commissary rights; and (4) taking away phone calls.

150. Upon information and belief, Defendants lack adequate policies and procedures regarding the transfer of IST inmates who require inpatient care to outside medical facilities that provide higher levels of care and treatment. Inmates in the Jail may require care at an inpatient facility in a variety of circumstances, including, but not limited to, when they are in acute mental health crisis and they have been found mentally incompetent to stand trial. The County Jail is not a facility licensed to provide inpatient mental health care treatment to any individuals, and the Jail does not provide an adequate inpatient level of care.

151. Plaintiffs and the IST detainee class have each been damaged by Defendants' failure to provide adequate mental health care to the IST detainees before their transfer, including but not limited to, suffering pain, anxiety, isolation, and worsening of their mental illnesses, unequal conditions of confinement, punishment due to their IST condition, denial of equal statutory custody credits, as well as being subjected to unjustified disciplinary measures, increased risk of being the victims of violence by other inmates because of their perceived or actual inability to defend themselves and Defendants' failures to provide adequate mental health care in response to the IST inmates' serious medical needs continues to result in further significant injury and the unnecessary and wanton infliction of pain.

## THIRD CLAIM FOR RELIEF

### Violation of Title II of the Americans with Disabilities Act (42 U.S.C. §12132 *et seq.*)

**Against the Defendants DSH, AHLIN, PATTON, and OREOL**

152. Plaintiffs incorporate by reference each and every allegation contained in the foregoing and following paragraphs, as though set forth herein *verbatim.*

153. The ADA defines "a qualified individual with a disability" as a person who suffers from a "physical or mental impairment that substantially limits one or more major life activities," including, but not limited to, "caring for oneself, performing tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(1)(A), (2)(A). All Plaintiffs and the IST class members are individuals with a disability as defined in 42 U.S.C. § 12102 and have met the essential eligibility requirements for the receipt of the services, programs, or activities of the Defendants.

154. Defendants DSH, AHLIN, PATTON, and OREOL'S failure to timely provide restorative and other mental health treatment to the IST detainees is based upon the ISTs' mental disabilities. In addition, the Defendants DSH, AHLIN, PATTON, and OREOL, by failing to timely provide restorative and other mental health treatment are causing a negative disparate impact on a class of mentally disabled persons by barring them from "meaningful access" to not only the public benefit of those services, but also barring their access to an adequate criminal defense and a speedy trial, as compared to non-IST detainees. These defendants are intentionally discriminating against IST inmates compared to non-IST inmates by (a) depriving them of adequate mental treatment, and (b) through their actions and failure to act, depriving them of access to the courts, (c) prolonging their sentences by failing to provide immediate restorative services, and (d) depriving them of equal statutory pre-trial custody credits.

155. Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that

such forms of discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. §12101(a) (2).

156. In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. §12101(b) (1)-(2).

157. Title II of the ADA provides in pertinent part: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12132.

158. The ADA requires public entities to ensure that their programs, services and activities are accessible to and useable by detainees and inmates with disabilities and must provide reasonable accommodations and modifications so they can avail themselves of these programs, services and activities.

159. At all times relevant to this action, the government entity Defendants were each a "public entity" within the meaning of Title II of the ADA and provided a program, service or activity to the general public. The private entity Defendants were agents of the public entity Defendants as alleged above, and therefore qualify as public entities for purpose of Title II of the ADA. Further, the private entity Defendants are places of public accommodation, making them liable under Title III of the ADA.

160. Title II of the ADA prohibits a public entity from discriminating against a qualified individual with a disability on the basis of a disability. 42 U.S.C. §12132.

161. Defendants DSH, AHLIN, PATTON, and OREOL are mandated to operate each program, service, or activity "so that, when viewed in its entirety, it is readily accessible to and useable by individuals with disabilities." 28 C.F.R. §35.150; see also 28 C.F.R. §§35.149 & 35.151. Defendants continue to violate the ADA by maintaining inaccessible facilities that deny people with disabilities access to programs, services and activities.

162. Defendants DSH, AHLIN, PATTON, and OREOL have intentionally discriminated against IST inmates and excluded Plaintiffs and Class Members from participation in the services, programs and activities of the DSH facilities to restorative and other mental health treatment, and as such, have denied them the rights and benefits accorded to other inmates, solely by reason of their mental disabilities in violation of the ADA. In addition, the Defendants have violated the ADA by failing or refusing to provide Plaintiffs with reasonable accommodations and other services related to their disabilities. See generally 28 C.F.R. § 35.130.

163. Defendants DSH, AHLIN, PATTON, and OREOL are further required under the ADA's "integration mandate" to provide care in integrated environments for as many disabled persons as is reasonably feasible. In order to comply with the integration mandate, STATE ENTITY Defendants are required to make "reasonable modifications in policies, practices, or procedures" that are "necessary to avoid discrimination on the basis of disability." 42 U.S.C. § 12132; 28 C.F.R. § 35.130(b)(7); See also *Townsend v. Quasim*, 328, F.3d 511, 515-518 (9th Cir. 2003); *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 592, 600-601, 119 S.Ct. 2176 (1999); *Arc of Washington State, Inc. v. Braddock*, 427 F.3d 615 (2005).

164. Defendants DSH, AHLIN, PATTON, and OREOL have failed to comply with the ADA's "integration mandate" by limiting DSH mental health services to a particular number of mentally disabled inmates. Defendants DSH,

AHLIN, PATTON, and OREOL have not and cannot demonstrate that either (1) that they have made a comprehensive and effective state program to cope with the lack of services for these mentally ill inmates; or (2) that the necessary modifications would fundamentally alter the nature of the service, program, or activity to be provided.

165. As a direct and proximate result of the aforementioned acts, Plaintiffs have suffered, and continue to suffer unequal access to the courts, denial of equal statutory pre-trial custody credits, pain, humiliation, hardship, anxiety, isolation, and a worsening of their mental illnesses due to Defendants' failures to address accommodations, modifications, services and access required for Plaintiffs' disabilities.

166. Defendants acted intentionally, with discriminatory animus and/or deliberate indifferent to the rights of Plaintiffs in that they have had notice of the problem of IST detainees languishing in jail while awaiting a transfer to an appropriate mental health facility (which DSH has the statutory responsibility to provide) for restorative and other mental health treatment for years, yet they have done nothing to solve the problem, regardless of their ability to do so.

167. Because Defendants' discriminatory conduct is ongoing, declaratory and injunctive relief are appropriate remedies. Moreover, as a result of Defendants' actions, Plaintiffs are suffering irreparable harm, and thus immediate relief is appropriate.

168. Pursuant to 42 U.S.C. §12133, Plaintiffs are entitled to declaratory and injunctive relief as well as reasonable attorneys' fees and costs incurred in bringing this action.

**FOURTH CLAIM FOR RELIEF**

**Violation of Title II of the Americans with Disabilities Act (42 U.S.C. §12132 *et seq.*)**

**Against the COUNTY, VCSO, and DEAN**

169. Plaintiffs incorporate by reference each and every allegation contained in the foregoing and following paragraphs, as though set forth herein *verbatim.*

170. As set forth above, Plaintiffs and the IST class members are individuals with a disability as defined in 42 U.S.C. § 12102 and have met the essential eligibility requirements for the receipt of the services, programs, or activities of the Defendants.

171. Defendants COUNTY, VCSO and DEAN currently incarcerate significant numbers of individuals with mental disabilities, including Plaintiffs and the IST Detainee Class Members, as that term is defined in the ADA and the Rehabilitation Act. As set forth above and herein, together with Defendant CFMG, these Defendants fail to provide IST detainees in Ventura Jails with basic reasonable accommodations to ensure equivalent access to all of the programs, activities, and services offered at the Jail.

172. As set forth above and herein, Defendants COUNTY, VCSO and DEAN, together with CFMG, further violate the ADA by failing to provide adequate mental health care to Plaintiffs and the IST detainees during their incarceration at VC Jails.

173. Defendants COUNTY, VCSO and DEAN's failure to provide adequate mental health treatment to the IST detainees while they are incarcerated in the jails, including failing to transfer them to inpatient facilities for adequate mental health treatment or restorative treatment, is based upon the ISTs' mental disabilities. In addition, Defendants COUNTY, VCSO and DEAN, by failing to timely provide adequate mental health treatment, including providing access to adequate facilities to provide inpatient and restorative services, are causing a negative disparate impact on a class of mentally disabled persons by barring them

from "meaningful access" to not only the public benefit of those services, but also barring their access to an adequate criminal defense and a speedy trial, as compared to non-IST detainees, depriving them statutory pre-trial custody credits, unlike non-IST inmates, and housing them in unequal conditions of confinement, thereby intentionally discriminating against them.

174. Title II of the ADA provides in pertinent part: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12132.

175. At all times relevant to this action, these government entity Defendants were each a "public entity" within the meaning of Title II of the ADA and provided a program, service or activity to the general public. The private entity Defendants were agents of the public entity Defendants as alleged above, and therefore qualify as public entities for purpose of Title II of the ADA. Further, the private entity Defendants are places of public accommodation, making them liable under Title III of the ADA.

176. Title II of the ADA prohibits a public entity from discriminating against a qualified individual with a disability on the basis of a disability. 42 U.S.C. §12132.

177. Defendants have excluded Plaintiffs from participation in the services, programs and activities of the Ventura County Jail facilities, and have denied them the rights and benefits accorded to other inmates, solely by reason of their disabilities in violation of the ADA. In addition, the Defendants have violated the ADA by failing or refusing to provide Plaintiffs with reasonable accommodations and other services related to their disabilities. See generally 28 C.F.R. §35.130.

178. Defendants are mandated to operate each program, service, or activity "so that, when viewed in its entirety, it is readily accessible to and useable by individuals with disabilities." 28 C.F.R. §35.150; see also 28 C.F.R. §§35.149 & 35.151. Defendants continue to violate the ADA by maintaining inaccessible facilities that deny people with disabilities access to programs, services and activities.

179. As set forth herein and above, Plaintiffs are informed, believe and based thereon allege that Defendants COUNTY, VCSO and DEAN and their agents and employees, violate the ADA and the attendant regulations and intentionally discriminate against IST inmates as compared to non-IST inmates, in the following ways: Defendants (1) lack sufficient facilities to provide adequate mental health care, (2) do not adequately train custody staff on issues essential for providing adequate mental health care to these inmates; (3) provide little to no individual or group treatment to the IST detainees; (4) do not provide psychosocial rehabilitation services; (5) house the IST Detainees in administrative segregation units in ways that place such inmates at substantial risk of serious harm and with little to no amount of structured out of cell time; (6) often place IST Detainees in isolation cells, commonly referred to as "the hole" and safety cells, deprive them of equal conditions of confinement including commissary, phone calls, and visits; (7) fail to take into account behavior which results from inadequate mental health care in their disciplinary process; (8) fail to ensure timely transfer or housing in mental health facilities that provide mental health treatment or restorative treatment that would shorten their IST status, whether it is a county facility or a State Mental Hospital, thereby ensuring unequal access to the courts and deprivation of equal statutory pre-trial custody credits, and (9) fail to transfer IST inmates who require

inpatient care to outside medical facilities that provide higher levels of care and treatment.

180. As a direct and proximate result of the aforementioned acts, Plaintiffs have suffered harm and are entitled to general, special and compensatory damages due to Defendants' failures to address accommodations, modifications, services and access required for Plaintiffs' disabilities.

181. Through their policies and practices, Defendants acted intentionally, with discriminatory animus and/or deliberate indifferent to the rights of Plaintiffs in that they have had notice of the problem of IST detainees receiving inadequate mental health care while languishing in jail while awaiting a transfer to an appropriate mental health facility for years, yet they have done nothing to solve the problem, regardless of their ability to do so.

182. Because Defendants' discriminatory conduct is ongoing, declaratory and injunctive relief are appropriate remedies. Moreover, as a result of Defendants' actions, Plaintiffs are suffering irreparable harm, and thus immediate relief is appropriate.

183. Pursuant to 42 U.S.C. §12133, Plaintiffs are entitled to declaratory and injunctive relief as well as reasonable attorneys' fees and costs incurred in bringing this action.

## FIFTH CLAIM FOR RELIEF

### Violation of Title III of the Americans with Disabilities Act (42 U.S.C. §12132 *et seq*.) Against CFMG and MHM Services

184. Plaintiffs incorporate by reference each and every allegation contained in the foregoing and following paragraphs, as though set forth herein *verbatim.*

185. Defendant CFMG is the jail medical treatment provider for Ventura County jails pursuant to a contract with Defendants COUNTY, VCSO and DEAN,

and as such, is a public accommodation that owns, leases, leases to, or operates a professional office of a health care provider, hospital, or other service establishment within the meaning of 42 U.S.C. § 12181(7)(F), and Title III of the ADA's implementing regulations, 28 C.F.R. § 36.104 *et seq*.

186. Defendant MHM operates its business conjointly with Defendant DHS pursuant to a contract wherein MHM provides placement recommendation services for ISTs, for approving the facilities providing restorative treatment to ISTs who are placed on outpatient status, for preparing and submitting treatment plans for outpatient ISTs, and administers the Conditional Release Program in Ventura County, and as such, is a public accommodation that owns, leases, leases to, or operates a professional office of a health care provider, hospital, or other service establishment within the meaning of 42 U.S.C. § 12181(7)(F), and Title III of the ADA's implementing regulations, 28 C.F.R. § 36.104 *et seq*.

187. As set forth herein and above, Plaintiffs are all individuals with a disability and covered by Title III of the ADA, 42 U.S.C. §§ 12102(1), 12182(b); 28 C.F.R. § 36.104. They have violated the ADA by intentionally discriminating against IST inmates in the following ways:

A. By failing to provide adequate mental health treatment to mentally ill inmates in the pre-trial detention facility as described herein and above, including Plaintiffs and the IST detainee class members while they are incarcerated in the Jails, Defendant CFMG violates Title III of the ADA, 42 U.S.C. §§ 12181-12189, by discriminating against individuals with disabilities on the basis of disability, in the full and equal enjoyment of Defendant CFMG's goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. § 12182(a); 28 C.F.R., Part 36.

B. MHM fails to provide placement recommendations which assure ISTs receive adequate and timely restorative treatment. MHM is responsible for the CONREP program which can provide adequate and timely treatment of ISTs by quickly removing them from the jail and treating them on an outpatient basis. However, MHM rarely, if ever, recommends outpatient treatment in the CONREP program for ISTs. Defendant MHM violates Title III of the ADA, 42 U.S.C. §§ 12181-12189, by discriminating against individuals with disabilities on the basis of disability, in the full and equal enjoyment of Defendant MHM's goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. § 12182(a); 28 C.F.R., Part 36.

**SIXTH CLAIM FOR RELIEF**

**Section 504 of the Rehabilitation Act (29 U.S.C. § 794 *et seq*.)**

**Against the County and State Entity Defendants**

188. Plaintiffs incorporate by reference each and every allegation contained in the foregoing and following paragraphs, as though set forth herein *verbatim.*

189. Section 504 of the Rehabilitation Act of 1973 provides in pertinent part: "[N]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance ..." 29 U.S.C. §794.

190. Each Plaintiff and Class Member is at all times relevant herein a qualified individual with a disability within the meaning of the Rehabilitation Act because they have a physical impairment that substantially limits one or more of their major life activities. 29 U.S.C. §705(20) (B).

191. Plaintiffs and Class Members are otherwise qualified to participate in the services, programs, or activities that are provided to inmates at Ventura County Jail facilities. See 29 U.S.C. §794 (b).

192. Plaintiffs are informed and believe, and based thereon allege that at all times relevant to this action County and State Entity Defendants were recipients of federal funding within the meaning of the Rehabilitation Act. As recipients of federal funds, they are required to reasonably accommodate inmates with disabilities in their facilities, program activities, and services. The act further requires the Defendants to modify their facilities, services, and programs as necessary to accomplish this purpose.

193. County and State Entity Defendants acted intentionally, with discriminatory animus and/or deliberate indifferent to the rights of Plaintiffs, and failed to modify their facilities and accommodate IST inmates with disabilities, in the following ways:

A. ISTs are held in county custody in violation of the California and Federal Constitution and state statutes for indefinite and prolonged periods of times without restorative mental health care or basic mental health treatment solely due to their IST condition;

B. ISTs are discriminated against compared to non-IST inmates in housing as they are held in isolation and not general population solely due to their IST condition;

C. ISTs are discriminated against compared to non-IST inmates in conditions of confinement as they are often punished solely due to their IST condition;

D. ISTs are discriminated against as compared to non-IST inmates as they do not get the same visiting, phone call and commissary solely due to their IST condition;

E. ISTs are discriminated against compared to non-IST inmates as they serve longer sentences and are denied statutory pre-trial custody credits as they languish indefinitely in their conditions of confinement, and,

F. ISTs were denied equal access to the Courts due to their indefinite and prolonged custody without mental health care that denied them their speedy trial rights under the Federal and State constitutions, and denied them equal statutory pre-trial custody credits due to their indefinite, prolonged custody.

194. At all times relevant to this action, the government entity Defendants were each a "public entity" that received federal funding for various programs and therefore are liable under the Rehabilitation Act.

195. Through their acts and omissions described herein and above, County and State Entity Defendants have violated the Rehabilitation Act by excluding Plaintiffs from participation in, denying Plaintiffs the benefits of, and subjecting Plaintiffs and Class Members to discrimination in the benefits and services Defendants provide to the detainees and inmates without disabilities.

196. Plaintiffs are informed, believe, and based thereon allege that County and State Entity Defendants committed the acts and omissions alleged herein with intent and/or reckless disregard of the rights of Plaintiffs and Class Members. It is also alleged that the defendants have violated the Act by providing substandard accommodations or refusing to provide plaintiffs with reasonable accommodations for their disabilities.

197. Pursuant to the Rehabilitation Act's implementing regulations, specifically, 28 C.F.R. 42.521, County and State Entity Defendants were required to make any structural changes necessary to render the programs and activities in existing Ventura County Jail facilities accessible to persons with disabilities as expeditiously as possible. As part of that process, the County and State Entity Defendants were required to develop a written plan setting forth the steps

necessary to complete such changes. County and State Entity Defendants have failed to develop a written plan and failed to abide by the implementing regulations under the Rehabilitation Act.

198. As a direct and proximate result of the aforementioned acts, Plaintiffs suffered and continue to suffer humiliation, hardship, anxiety as well as deteriorating physical and mental health conditions due to County and State Entity Defendants' failures to address accommodations, modifications, services and access required for their disabilities.

199. Plaintiffs and class members are entitled to damages as a result of the foregoing violations according to proof.

200. Because County and State Entity Defendants' discriminatory conduct is ongoing, declaratory and injunctive relief are appropriate remedies. Moreover, as a result of Defendants' actions, Plaintiffs and the class members are suffering irreparable harm, and thus immediate relief is appropriate.

201. Pursuant to 29 U.S.C. §794(a) Plaintiffs are entitled to declaratory and injunctive relief and to recover from Defendants the reasonable attorneys' fees and costs incurred in bringing this action.

**SEVENTH CLAIM FOR RELIEF**

**Unruh Civil Rights Act - *California Civil Code* §51 *et seq*.**

**Against CFMG, FITHIAN, ADLER, POLLACK, MHM Services and LOPEZ**

202. Plaintiffs incorporate by reference each and every allegation contained in the foregoing and following paragraphs, as though set forth herein *verbatim.*

203. Through the acts and omissions described herein, CFMG, MHM Services and their Individual Defendants have violated *California Civil Code* §51(b) which provides in pertinent part, "All persons within the jurisdiction of this state are free and equal, and no matter what their...disability or medical condition

are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

204. Pursuant to California *Civil Code* §51 (f), a violation of the ADA also constitutes a violation of *California Civil Code* §51 *et seq*.

205. CFMG and MHM Services are "business establishments" within the meaning of *California Civil Code* §51 *et seq*.

206. Through the acts and omissions described herein, Defendants are violating *California Civil Code* §51 *et seq*. by denying Plaintiffs full and equal access to its programs comparable to the access that it offers to others, and have intentionally discriminated against IST detainees and plaintiffs in the following manner:

A. ISTs are held in county custody in violation of the California and Federal Constitution and state statutes for indefinite periods of times without restorative mental health care or basic mental health treatment solely due to their IST condition;

B. ISTs are discriminated against compared to non-IST inmates in housing as they are held in isolation and not general population solely due to their IST condition;

C. ISTs are discriminated against compared to non-IST inmates in conditions of confinement as they are often punished solely due to their IST condition;

D. ISTs are discriminated against as compared to non-IST inmates as they do not get the same visiting, phone call and commissary solely due to their IST condition;

E. ISTs are discriminated against compared to non-IST inmates as they serve longer sentences and lose statutory pre-trial custody credits as they languish indefinitely in their conditions of confinement, and,

F. ISTs were denied equal access to the Courts due to their indefinite and prolonged custody without mental health care that denied them their speedy trial rights under the California Constitution, and denied them equal statutory pre-trial custody credits due to their indefinite, prolonged custody.

G. MHM fails to provide placement recommendations which assure ISTs receive adequate and timely restorative treatment. MHM is responsible for the CONREP program which can provide adequate and timely treatment of ISTs by quickly removing them from the jail and treating them on an outpatient basis. However, MHM rarely, if ever, recommends outpatient treatment in the CONREP program for ISTs. Defendant MHM violates Title III of the ADA, 42 U.S.C. §§ 12181-12189, by discriminating against individuals with disabilities on the basis of disability, in the full and equal enjoyment of Defendant MHM's goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. § 12182(a); 28 C.F.R., Part 36.

207. As a direct and proximate result of the aforementioned acts, Plaintiffs have suffered, and continue to suffer, humiliation, hardship and anxiety, as well as deteriorating physical conditions, due to Defendants' failures to address accommodations, modifications, services and access required for Plaintiffs' disabilities.

208. Because Defendants' discriminatory conduct is ongoing, declaratory and injunctive relief are appropriate remedies. Moreover, as a result of Defendants' actions, Plaintiffs are suffering irreparable harm, and thus immediate relief is appropriate. Plaintiffs are also entitled to reasonable attorneys' fees and costs in filing this action.

**EIGHT CLAIM FOR RELIEF**

**Violation of *California Civil Code* §54 *et seq*.**

**Against All Defendants and Does 1-10 Except the State of California Public Entities**

209. Plaintiffs incorporate by reference each and every allegation contained in the foregoing and following paragraphs, as though set forth herein *verbatim.*

210. Through the acts and omissions described herein, CFMG and CFMG Individual Defendants are violating *California Civil Code* §54 which states that "[i]ndividuals with disabilities or medical conditions have the same rights as the general public to the full and free use of public services."

211. Under California Civil Code §54(c), a violation of the ADA also constitutes a violation of California Civil Code §54 *et seq*.

212. Plaintiffs are persons with disabilities within the meaning of California Civil Code §54(b) (1) and California Government Code §12926.

213. The County and the VCSO provide public services, within the meaning of California Civil Code §54 *et seq*.

214. By failing to provide accommodations, modifications, services and physical access to the detainees and inmates with disabilities, Defendants are violating California Civil Code §54, by denying detainees and inmates full access to the jail programs, services and activities, in the following ways:

A. They are discriminated against compared to non-IST inmates in housing as they are held in isolation and not general population solely due to their IST condition;

B. They are discriminated against compared to non-IST inmates in conditions of confinement as they are often punished solely due to their IST condition and therefore lose the right to physically access recreational areas such as the general population dayrooms, and the exercise area on the roof;

C. They are discriminated against as compared to non-IST inmates as they are often denied access to the visiting area as a result of punishments they receive because of their mental health conditions.

215. As a direct and proximate result of the aforementioned acts, Plaintiffs have suffered, and continue to suffer, humiliation, hardship and anxiety, as well as deteriorating mental conditions, due to Defendants' failures to address accommodations and services required for Plaintiffs' mental disabilities. Plaintiffs seek damages according to proof.

216. Because Defendants' discriminatory conduct is ongoing, declaratory and injunctive relief are appropriate remedies. Moreover, as a result of Defendants' actions, Plaintiffs are suffering irreparable harm, and thus immediate relief is appropriate. Plaintiffs are also entitled to reasonable attorneys' fees and costs in filing this action.

**NINTH CLAIM FOR RELIEF**

***California Civil Code* §52.1 Interference with Exercise of Civil Rights**

**Against All Defendants and Does 1-10 Except the California State Public Entities**

217. Plaintiffs incorporate by reference each and every allegation contained in the foregoing and following paragraphs, as though set forth herein *verbatim.*

218. As alleged above, the conduct of the Defendants and Does as described herein violated *California Civil Code* §52.1, in that they interfered with Plaintiffs' and Class Members' exercise and enjoyment of their civil rights, by denying them access to timely restorative treatment.

219. Plaintiffs do not seek damages against the State of California, only injunctive relief as with the other Defendants.

220. Defendants engaged in coercive acts that separately and independently interfered with or attempted to interfere with the rights of Plaintiffs and the

Plaintiff Class to receive timely and proper mental health treatment and, as a result, held them in criminal custody when they were required to be held in civil detention for treatment and additionally, as a result, caused them to be held in criminal custody for a period of time longer than they otherwise would have. By doing so, Defendants separately, through coercion, violated Plaintiffs' rights under Penal Code §§ 1368-70 and other statutes described above, the ADA and the Rehabilitation Act, and the Due Process clauses of the United States and California Constitutions. The independent coercion resulting from the Bane act violation is based on the following coercive conduct by the defendants:

A. They are held in county custody in violation of the California and Federal Constitution and state statutes for indefinite periods of times without restorative mental health care or basic mental health treatment solely due to their IST condition;

B. They are discriminated against compared to non-IST inmates in housing as they are held in isolation and not general population solely due to their IST condition;

C. They are discriminated against compared to non-IST inmates in conditions of confinement as they are often punished solely due to their IST condition;

D. They are discriminated against as compared to non-IST inmates as they do not get the same visiting, phone call and commissary solely due to their IST condition;

E. They are discriminated against compared to non-IST inmates as they serve longer sentences and lose jail credits as they languish indefinitely in their conditions of confinement, and,

F. They were denied equal access to the Courts due to their indefinite and prolonged custody without mental health care that denied them their speedy

trial rights under the Federal and State constitutions, and denied them equal jail credits due to their indefinite, prolonged custody.

221. Plaintiffs are informed, believe, and based thereon allege that in engaging in the conduct alleged herein, Defendants acted with deliberate indifference and the intent to injure, vex, annoy and harass Plaintiffs, and subjected Plaintiffs to cruel and unjust hardship in conscious disregard of Plaintiffs' rights with the intention of causing Plaintiffs injury and depriving them of their constitutional rights.

222. As a result of the foregoing, Plaintiffs seek exemplary and punitive damages against the private entity and individual Defendants.

223. As a direct and proximate cause of the aforementioned actions of Defendants and Does, Plaintiffs were injured as set forth above, thereby entitling Plaintiffs to damages against Defendants under Cal. Civil Code §52.1, including but not limited to actual damages, exemplary damages, civil penalties, statutory damages and attorney's fees.

**TENTH CLAIM FOR RELIEF**

**(Violation of Right to Speedy Public Trial - California Constitution Article I, § 15)**

224. Plaintiffs incorporate by reference each and every allegation contained in the foregoing and following paragraphs, as though set forth herein *verbatim*.

225. Article I, Section 15 of the California Constitution guarantees every criminal defendant the right to a speedy trial. Defendants' delays in admitting defendants who have been found incompetent to stand trial violate this right.

226. Defendants' delays in providing restorative treatment to IST detainees does not afford adequate time for incompetent defendants to be examined and have their potential to regain competency evaluated within the 90 day period prescribed under California Penal Code §§ 1370(b)(1) and 1370.1(b)(1).

227. State Defendants' practice of not timely accepting transfer of incompetent defendants from county jails is unjustified, and is outweighed by prejudice to the speedy trial rights of incompetent defendants by causing incompetent defendants to be held in jails for prolonged periods of time, and by causing incompetent defendants to not receive the course of treatment that serves as the basis for the suspension of their court proceedings during this prolonged imprisonment. IST detainees who have been committed solely on account of their incapacity to proceed to trial are held for more than the reasonable period of time necessary to determine whether there is a substantial probability that they will attain that capacity in the foreseeable future.

228. IST detainees also suffer prejudice from the delay because they lose statutory pre-trial custody credits for good behavior or working in the jail during the period of time that criminal proceedings are suspended.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

A. For certification of a class as defined above;

B. For a declaration that Defendants are depriving Class Members of their due process rights pursuant to the Fourteenth Amendment to the United States Constitution, the Americans with Disabilities Act; and the other statutes alleged above.

C. For the issuance of preliminary and permanent injunctions restraining Defendants from violating the Sixth and Fourteenth Amendments to the United States Constitution and the Americans with Disabilities Act in the confinement of individuals awaiting competency evaluation and/or restoration treatment, and violating the other statutes alleged above, including but not limited to:

1. An order requiring Defendants to provide prompt and adequate mental health treatment to Class Members, to begin no more than 7 days from the time of a court order for a mental competency evaluation
2. An order requiring proper training of mental health professionals to ensure that Class Members receive proper mental health care and treatment, including restorative treatment, in county custody;
3. An order that Class Members shall not improperly be placed in isolation or disciplined due to their mental conditions, and shall receive access to full programming, visitation and commissary while in county custody;
4. An order that, if the transfer from county custody to a State Mental Health Hospital as designated by DSH cannot be accommodated within 7 days of the Court order to transfer an inmate to State Mental Health Hospital for restorative mental health care treatment to restore competency, the County either release the inmate, or find alternative County custody where medications and restorative health care can commence;
5. An order that the DSH and State Defendants abolish the "one in one out policy", and accept Class Members within 7 days of the court order requiring transfer to a State Mental Health Hospital, and hire the staff and establish facilities so that Class Members can be transferred on a timely basis as required by the applicable statutes and federal and state constitutional provisions;
6. An order that the County and State Defendants comply with all applicable time periods for various actions, including reporting requirements on Class Members, as required by State law; and,

7. An order that the County and State Defendants comply with all federal and state laws, including the Penal Code, the Statutes cited above, and the State and Federal Constitution, concerning the treatment, custody and care of Class Members.

D. For general, special and compensatory damages for the named Plaintiffs and Class Members, to be determined according to proof;

E. For any applicable statutory damages or penalties;

F. For punitive damages against the applicable defendants.

G. For an award of Plaintiffs' costs and attorneys' fees under 42 U.S.C. §1988, 42 U.S.C § 12205; Cal. Civil Code § 52.1(h), Cal. CCP § 1021.5, and other applicable statutes; and,

H. For such other and further relief as the Court may deem just and proper.

Dated: November 7, 2016

LAW OFFICES OF BRIAN A. VOGEL, PC
By: /s/ Brian A. Vogel
BRIAN A. VOGEL

Dated: November 7, 2016

KAYE McLANE, BEDNARSKI & LITT, LLP
By: /s/ Barrett S. Litt
BARRETT S. LITT
Attorneys for Plaintiffs and the Class

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial.

Dated: November 7, 2016

LAW OFFICES OF BRIAN A. VOGEL, PC
By: /s/ Brian A. Vogel
BRIAN A. VOGEL

Dated: November 7, 2016

KAYE McLANE, BEDNARSKI & LITT, LLP
By: /s/ Barrett S. Litt
BARRETT S. LITT
Attorneys for Plaintiffs and the Class