Neal P. Panish, Esq. (SBN 131750
Adam Gordon, Esq. (SBN 261386)
SELTZER CAPLAN McMAHON VITEK
750 B Street, Suite 2100
San Diego, CA 92101
Tel: 619-685-3003
Fax: 619-685-3100
Email:      panish@scmv.com
            gordon@scmv.com

Attorneys for Defendants MHM SERVISES OF
CALIFORNIA, INC. and MARCUS LOPEZ

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW SCOTT, an Individual by and through his Guardian Ad Litem, MARY RODGERS-VEY, and OMAR MOJICA, an Individual by and through his Guardian Ad Litem, ADRIAN MOJICA, on behalf of themselves and all others similarly situated.<br><br>        Plaintiffs,<br><br>    vs.<br><br>COUNTY OF VENTURA; et al.,<br><br>        Defendants. | Case No. 2:16-cv-03084-BRO-RAO<br><br>**MHM SERVICES OF CALIFORNIA, INC. AND MARCUS LOPEZ'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>DATE:     February 21, 2017<br>TIME:     1:30 p.m.<br>DEPT.:    Crtrm 7C, 7th Floor<br>JUDGE:   Hon. Beverly R. O'Connell<br><br>Complaint filed:   May 4, 2016 |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................. 1

II.   FACTUAL BACKGROUND ................................................. 3

      A.    MHM's Limited Role is Governed by Statute ............ 3

      B.    Plaintiffs' Limited, Inconsistent Factual Allegations as to MHM. .............. 4

      C.    Plaintiffs' Inadequate Response to Court's Leave to Amend. ................... 7

            1.    The Court's Due Process Claims Directions ................................... 7

            2.    The Court's Title III of the ADA Directions ................................... 8

            3.    The Court's Unruh Civil Rights Act Directions ............................. 9

            4.    The Court's Cal. Civil Code Section 54 Directions ....................... 10

            5.    The Court's Cal. Civil Code Section 52.1 Directions .................... 11

      D.    Plaintiffs' Claims Against MHM ................................................. 12

III.  STANDARD OF REVIEW ................................................. 13

IV.   ANALYSIS .......................................................................... 14

      A.    Plaintiffs' Additional Factual Allegations as to MHM Still Fail to State Cognizable Claims Against MHM, Requiring Dismissal Under Rule 12(b)(6) .................. 14

            1.    Plaintiffs Fail to Allege Facts to Support a Claim for Relief Under the Due Process Clause as to MHM (First Claim for Relief) ........................... 15

            2.    Plaintiffs Fail to Allege Facts Sufficient Under Title III of the ADA as to MHM (Fifth Claim for Relief) ........................... 16

                  a.    Plaintiffs Fail to Allege That MHM Provides a Place of Public Accommodation ....................... 17

                  b.    Plaintiffs Fail to Allege Specific Conduct *by MHM* Constituting Discrimination ................. 18

Case No. 16-03084-BRO-RAO

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

3.   Plaintiffs Fail to State a Cognizable, Unruh Civil Rights Act
Claim  Because They Have Not Alleged Any Facts of
Intentional Discrimination (Seventh Claim for Relief) ................... 19

4.   Plaintiffs Fail to State a Cognizable Claim Under California
Civil Code Section 54 Because Plaintiffs Do Not Allege
MHM Has Any Control Over the Corresponding Facilities
(Eighth Claim for Relief) ................................................................ 20

5.   Plaintiffs Fail to State a Cognizable Claim Under California
Civil Code §52.1 Because Plaintiffs Have Again Failed to
Allege That MHM Has Deprived Plaintiffs Any Right By
Threat, Intimidation, or Coercion (Ninth Claim of Relief) ............ 22

6.   Plaintiffs Fail to State a Cognizable Claim For Violation of the
Right to a Speedy Trial Against MHM (Tenth Claim for
Relief) ............................................................................................. 23

B.   Leave to Amend is Not Warranted After Plaintiffs' Repeated Failure
to Allege Sufficient as to MHM ............................................................... 24

V.   CONCLUSION ................................................................................................. 25

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

Advanced Skin & Hair, Inc. v.  Bancroft
   858 F.Supp.2d 1084 (C.D. Cal. 2012)..................................................... 13

Aetna Cas. & Sur. Co. v. Aniero Concrete Co.
   404 F.3d 566 (2d Cir. 2005) ..................................................................... 13

Allen v. Mayberg
   577 F. App'x 728 (9th Cir. 2014) .............................................................. 15

Am. Int'l Adjustment Co. v. Galvin
   86 F.3d 1455 (7th Cir. 1996) ..................................................................... 14

Ashcroft v. Iqbal
   556 U.S. 662 (2009) ................................................................................... 13

Barr v. Abrams
   810 F.2d 358 (2d Cir. 1987) ...................................................................... 14

Bell Atl. Corp. v. Twombly
   550 U.S. 544 (2007)............................................................................. 13, 18

Chapman v.  Pier 1 Imports (U.S.) Inc.
   631 F.3d 939 (9th Cir. 2011) ..................................................................... 18

Chew v. Gates
   27 F.3d 1432 (9th Cir. 1994) ............................................................... 15, 16

D'Lil v. Stardust Vacation Club
   No. CIV-S-00-1496DFL PAN,
   2001 WL 1825832, at *8 (E.D. Cal. Dec. 21, 2001) ................................ 22

Destfino v. Reiswig
   630 F.3d 952 (9th Cir. 2011) ..................................................................... 24

Ford v. Schering-Plough Corp.
   145 F.3d 601 (3d Cir. 1998) ...................................................................... 17

Gaylor v. Greenbriar of Dahlonega Shopping Ctr., Inc.
   975 F. Supp. 2d 1374 (N.D. Ga. 2013) ..................................................... 17

Kalani v. Starbucks Corp.

81 F. Supp. 3d 876 (N.D. Cal. 2015) ....................................................... 17

Lawman v. City & Cty. of San Francisco
   159 F. Supp. 3d 1130 (N.D. Cal. 2016)................................................ 22

Meyer v. Cahoon
   110 F.3d 69 (9th Cir. 1997)................................................................. 14

Moore v. Kayport Package Exp., Inc.
   885 F.2d 531 (9th Cir. 1989) .............................................................. 25

Olim v. Wakinekona
   461 U.S. 238 (1983)............................................................................ 21

Papasan v. Allain
   478 U.S. 265 (1986)............................................................................ 13

Phillips v. County of Fresno
   No. 1:13-cv-0538 AWI BAM,
   2013 WL 6243278, at *19 (E.D. Cal. Dec. 3, 2013) ............................ 22

Rodde v. Bonta
   375 F. 3d 988 (9th Cir. 2004) ............................................................. 18

Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.
   40 F.3d 247 (7th Cir. 1994) ................................................................ 13

Sprewell v.  Golden State Warriors
   266 F.3d 979 (2001)................................................................. 13, 15, 24

Trueblood v. Washington State Dept. of Social and Health Services
   822 F.3d 1037 (9th Cir. 2016) ............................................................ 24

United States v. Days Inns of Am., Inc.
   997 F. Supp. 1080 (C.D. Ill. 1998)..................................................... 17

Weyer v. Twentieth Century Fox Film Corp.
   198 F.3d 1104 (9th Cir. 2000) ............................................................ 17

Whittaker Corp. v. United States
   825 F.3d 1002 (9th Cir. 2016) ............................................................ 14

Wigginton v. Bank of Am. Corp.
   770 F.3d 521 (7th Cir. 2014) .............................................................. 17

Wilkins-Jones v. Cty. of Alameda,

859 F. Supp. 2d 1039 (N.D. Cal 2012).................................................. 10, 19, 20, 21, 22

Williams v. Little Rock
   21 F.3 218 (8th Cir. 1994) ........................................................................ 25

**State Cases**

Quezada v. City of Los Angeles
   222 Cal. App. 4th 993 (Cal. Ct. App. 2014)............................................. 23

Turner v. Ass'n of Am. Medical Colleges
   167 Cal.App.4th 1401 (2008) ................................................................. 19

**Federal Statutes**

42 U.S.C. section 12181(7)(F) ............................................................... 9

42 U.S.C. section 12182 .......................................................................... 17

42 U.S.C. section 12182(a) ................................................................. 10, 16

42 U.S.C. sections 12181-12189 ............................................................ 9

**State Statutes**

Civil Code section 51 ......................................................................... 9, 12

Civil Code section 52.1 ................................................................... 11, 12, 22

Civil Code section 54 ...................................................................... 10, 12, 20

Penal Code section 1368 ....................................................................... 5

Penal Code section 1370(a)(2)(A) ....................................................... 3, 4

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ............................................. 13, 14

**Other Authorities**

28 C.F.R. section 36.104.......................................................................... 9

28 C.F.R., section 36.............................................................................. 10

Case No. 16-03084-BRO-RAO
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**
**PLAINTIFFS' SECOND AMENDED COMPLAINT**

## I.   __INTRODUCTION__

In granting motions to dismiss Plaintiffs' claims in their First Amended Complaint ("FAC"), this Court noted that the putative plaintiffs failed to "tie any of their alleged facts to any specific causes of action[,]" that the FAC tended "primarily [to] recite the elements of the claim" only and alerting the putative plaintiffs that "[t]his [type of pleading] makes it difficult at times for the Court to analyze Plaintiffs' allegations with specificity…." Dkt. 62 at 14, n. 12. The Court concluded: "[t]hus, the Court encourages Plaintiffs to clarify their allegations in any future filing." Id. The Court then identified  specific allegations that were deficient in the FAC and that were required to state claims *against MHM*. Despite the clear directive from the Court, Plaintiffs' Second Amended Complaint ("SAC") fails to allege with specificity the required, prescribed, and factual information to state claims *against MHM and Mr. Lopez* ("MHM").  MHM's motion to dismiss should be granted, without leave to amend.

Plaintiffs' SAC contains additional allegations that: (1) MHM's *delayed* placement recommendations purportedly contributed to prolonged delays; (2) MHM failed to recommend placement in the CONREP program which it operates; (3) MHM operates its business conjointly with Defendant California Department of State Hospitals ("DSH") through a contract by which MHM provides placement recommendation services (court-mandated), arguing this constitutes a "public accommodation" under Title III of the ADA; and (4) MHM intentionally discriminated against Plaintiffs under the Unruh Civil Rights Act by failing to provide placement recommendations which assure adequate and timely restorative treatment.  MHM will show how each additional allegation is insufficient to provide the basis of liability.  For example, Plaintiffs' new allegation that MHM purportedly provided *delayed* recommendations, to the extent this means more than 15 judicial days after a court orders MHM to provide a placement recommendation, is wholly unsupported by, and

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

contrary to, Plaintiffs' specific factual allegations wherein Plaintiffs (paradoxically) allege that both named Plaintiffs received their placement recommendation from MHM timely, within 15 judicial days. See SAC ¶¶ 9-10, 15.  Plaintiffs do not allege MHM provided placement recommendations for any "DOE" Plaintiffs).  See SAC ¶¶ 17-27. In sum, Plaintiffs new allegations are conclusory, not specific and insufficient to provide a basis for liability as to and *against MHM*.

Plaintiffs' inability to plead specific facts, as directed by the Court's order granting the previous motions to dismiss (Dkt. 62), particularly as to MHM, results because MHM cannot commit the alleged harms.  MHM's limited role during the IST process starts when MHM is ordered by a court to provide a placement recommendation *to the court*—pursuant to the guidelines set by DSH—for a defendant that the court has *already* determined to be incompetent to stand trial ("IST"), and it ends when MHM provides the court this required recommendation no later than 15 judicial days later. Indeed, MHM's acts are neither arbitrary nor capricious, but rather required by statute occurring *before* the harm the putative Plaintiffs allege.  Plaintiffs do not allege that MHM writes the policies and guidelines that MHM's court-ordered placement recommendations must follow.  Plaintiffs do not allege that MHM untimely submitted the court-ordered placement recommendations.[1]  Plaintiffs do not allege that MHM has any control over the facilities where the IST defendants are placed after MHM's court-ordered recommendation.  Rather, Plaintiffs (again) simply seek to lump all Defendants together in conclusory fashion (*i.e.,* a specious theory that anyone who participates is culpable), and therefore, Plaintiffs fail to state cognizable claims as to MHM specifically.  Lastly, Plaintiffs' allegation that MHM "knew or should have known" of

---

[1]  Plaintiffs' SAC contains one sentence stating that "delays in issuing these 'placement recommendations' have contributed to the indefinite and prolonged delays faced by IST detainees…." SAC ¶39.  However, it is not clear that "delay" means MHM was untimely.  Furthermore, any untimely allegation would be inconsistent with the dates Plaintiffs' describe in detail regarding the two named plaintiffs and the other class members, as the placement recommendation (pursuant to Plaintiffs' dates) were timely each time.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

the other Defendants alleged wrongs is insufficient to state a claim against MHM (this Court has already so advised Plaintiffs).  SAC ¶¶ 40, 124.

Due to the fatal similarity between Plaintiffs' First Amended Complaint (Dkt. 17) and SAC, not surprisingly, MHM's motion to dismiss here makes many of the arguments made in its first motion to dismiss (Dkt. 38-1)—which the Court granted. (Dkt. 62).   MHM's motion to dismiss differs from its first motion very little, and emphasizes the dearth of additional facts alleged by Plaintiff in their SAC to support a cognizable legal theory *against MHM*.   Accordingly, MHM's motion to dismiss here should be granted without leave to amend.

## II.    FACTUAL BACKGROUND

**A.    MHM's Limited Role is Governed by Statute**

The laborious IST defendant process and the roles of the individual Defendants have been extensively delineated at this point, which MHM incorporates by this reference.  See Dkt. 32-1 ("State Defendants"[2] Motion to Dismiss) (for a detailed, accurate summary of the IST defendant process).   Nevertheless, it is noteworthy to highlight MHM's limited role, beginning and ending with Penal Code section 1370(a)(2)(A).

Penal Code section 1370(a)(2)(A) is particularly relevant because it mandates MHM's specific, but limited, role in IST defendant competency process.   Once the Ventura County Superior Court determines that a defendant is incompetent to stand trial, the court, by a court order, requires the community director or designee (here, MHM) to:

> [E]valuate the defendant and to submit <u>to the court within 15 judicial days of the order a written recommendation as to</u>

---

[2] Plaintiffs' SAC defines "State Defendants" to include MHM and Mr. Lopez.  SAC at 14-16.  In order to avoid confusion, throughout these moving papers, "State Defendants" will refer only to those defendants defines as "State Defendants" in Dkt. 32: the California Department of State Hospitals; Pam Ahlin, Director of the California Department of State Hopsitals; Patton State Hospital; and Harry Oreol, Director of the Patton State Hospitals.  This is consistent with the Court's interpretation of "State Defendants."  See Dkt. 62 at 24.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

whether the defendant should be required to undergo outpatient treatment, or be committed to the [DSH] or to any other treatment facility.

Cal. Penal Code, § 1370(a)(2)(A) (emphasis added).  Additionally:

A person shall not be admitted to a state hospital or other treatment facility or placed on outpatient status under this section without having been evaluated by the community program director or designee.  The community program director or designee shall evaluate the appropriate placement for the defendant between the State Department of State Hospitals, a county jail treatment facility, or the community-based residential treatment system based upon the guidelines provided by the State Department of State Hospitals.

Id. (emphasis added).

Thereafter, MHM submits a written placement recommendation to the court within 15 judicial days of the court's IST order; the court cannot make a placement prior to this receipt of MHM's placement recommendation.  Id.  MHM's placement recommendation **must** be based on DSH's guidelines.  SAC ¶¶ 49-50. (Plaintiffs do not allege MHM's involvement in the IST process persists past this point in the timing of placement.)  Indeed, Plaintiffs' "Facts Entitling Plaintiffs and Class Members to Relief" section in their SAC does not mention MHM —not even once—in any capacity after it provides the court-ordered placement recommendations.  (See SAC 21-34: this section begins at page 17).

**B.    Plaintiffs' Limited, Inconsistent Factual Allegations as to MHM.**

Although the SAC groups MHM and Mr. Lopez again among the "State Defendants," Plaintiffs assert no factual allegations as to MHM's actual, or alleged, wrongful conduct.  SAC ¶¶ 39-40.  Rather, the SAC's allegations merely explain MHM's role in the putative plaintiffs' underlying cases and MHM's statutory duties to provide the court, upon the court's order, a placement recommendation for an IST defendant.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

As to the named Plaintiffs' specific circumstances, the SAC allegations mirror the FAC, verbatim.[3]  For Plaintiff Matthew Scott, the complaints allege:

> On November 30, 2015, [SCOTT] was formally found to be incompetent to stand trial by the Ventura County Superior Court.  The court made a finding that M.S. consented to the administration of psychotropic medications and referred the case to [MHM] for a placement recommendation. [¶] On December 14, 2015, the court held a hearing on placement.  A letter from [MHM] was filed and the court ordered placement at any state hospital…[SCOTT] was remanded to the custody of the sheriff and the sheriff was ordered to transport him to Patton State Hospital.

FAC ¶¶ 15-16; SAC ¶¶ 9-10.  For Plaintiff Omar Mojica, the complaints allege:

> On December 24, 2015, it appears that the court found O.M. incompetent to stand trial and continued the case to January 6, 2016 for a hearing on placement.  On January 6, 2016, a placement recommendation was received from [MHM] and the court committed [MOJICA] to DSH pursuant to Penal Code § 1368.  [MOJICA] was remanded to the custody of the sheriff, and the court ordered the sheriff to transport him to Patton State Hospital.

FAC ¶ 21; SAC ¶ 15.  Plaintiffs  do not allege any MHM role or acts with respect to any putative class members, nor do they allege any specific delays regarding the delivery of any placement recommendation.  See SAC ¶¶ 17-27.

Moreover, the only factual allegations in the SAC related to MHM are as follows:

> 39. MHM Services of California, Inc., ("MHM Services") is a private corporation whose parent company, MHM Services, Inc., is headquartered in Vienna, Virginia.  The State of California and DSH entered into a contract with MHM Services in 2014 to provide mental health services in Ventura County including the operation of the CONREP or Forensic Conditional Release Program.  On information and belief, DSH has also delegated to MHM Services the task of conducting  placement  recommendations  for  IST  detainees

---

[3] The SAC alleges the putative, representative Plaintiffs' full names, instead of their initials (as was alleged in the FAC), per this Court's order granting the motions to dismiss. Dkt. 62, at 32-34.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT**

housed in the Ventura County jails.  <u>Delays in issuing these "placement recommendations" have contributed to the indefinite and prolonged delays</u> faced by IST detainees in Ventura County and MHM Services has failed to recommend placement in the CONREP program which it operates for IST detainees despite the knowledge that IST detainees face indefinite and prolonged delays in receiving adequate mental health treatment when they are referred to DSH facilities and spend months on the waiting list.  Defendant MHM is sued for injunctive relief and damages under all statutes alleged.

40. Defendant Marcus Lopez ("Lopez") is the CONREP Community Program Director of MHM services of California, Inc.  As the Community Program Director, Defendant Lopez is responsible for oversight, operation, and management of MHM Services' provision of mental health services in Ventura County including the operation of the Forensic Conditional Release Program or "CONREP."  Defendant Lopez signs most of the IST placement recommendations for DSH and the overwhelming majority of the recommendations are for placement in Patton.  Defendant Lopez knows or should know that incarcerated IST detainees who are ordered to be placed at Patton will not receive appropriate mental health treatment in in [sic] the jail for months while Patton's "one in, one out" policy slowly grinds forward.  Defendant Lopez is sued in his official capacity for the injunctive relief under § 1983 in the event it is determined that MHM may not sued [sic] directly under that statute, and is used for damages under all statutes alleged.

SAC ¶¶ 39-40 (emphasis added).

As emphasized, Plaintiffs' delayed allegations towards MHM contradict the specific factual allegations provided in the SAC as to the named Plaintiffs.  For Plaintiffs Scott and Mojica, the SAC alleges that MHM returned its court ordered placement recommendation within 15 judicial days of the court determined the Plaintiffs were incompetent to stand trial.  <u>See</u> SAC ¶¶ 9-10 (MHM returned Plaintiff Scott's placement recommendation within 9 judicial days); SAC ¶ 15 (MHM returned Plaintiff Mojica's placement recommendation within 7 judicial days).  Since these are the only

two plaintiffs the SAC (and the FAC) alleges MHM has any involvement with, these "delays in issuing these 'placement recommendations'" appear wholly unfounded.

## C.   **Plaintiffs' Inadequate Response to Court's Leave to Amend.**

The Court urged Plaintiffs to provide the Court clarity with their SAC, especially due to the lack of nexus between the facts and claims alleged:

> While Plaintiffs plead quite a few facts and seven causes of action, they do not, generally, tie any of their alleged facts to any specific causes of action. Rather, when pleading their causes of action, they primarily recite the elements of the claim. This makes it difficult at times for the Court to analyze Plaintiffs' allegations with specificity. Thus, the Court encourages Plaintiffs to clarify their allegations in any future filing.

Dkt. 62 at 14, n. 12. Furthermore, the Court informed Plaintiffs of the specific facts that they would need to plead in order to support each claim for relief.    Nevertheless, Plaintiffs' SAC either fails to state such facts completely or states these facts in a conclusory manner that is inconsistent with Plaintiffs' detailed factual allegations.

### 1.   **The Court's Due Process Claims Directions**

As to Plaintiffs due process claims against MHM, the Court ruled:

> Here, Plaintiffs allege no MHM Services policy that Mr. Lopez created, designed, or implemented when he assigned patients to Patton Hospital; instead, they claim that Mr. Lopez **knew or should have known** that Defendants would not receive mental health restoration treatment while detained at county jail waiting for transfer to Patton. (FAC ¶ 46.) The Court finds that this allegation is insufficient to establish liability for Plaintiffs' due process claims against Mr. Lopez or MHM Services.

Dkt. 62 at 19.

Plaintiffs SAC still alleges the "knew or should have known allegation:

> Defendant Lopez **knows or should know** that incarcerated IST detainees who are ordered to be placed at Patton will not receive appropriate mental health treatment in in [sic] the jail

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

for months while Patton's "one in, one out" policy slowly
grinds forward.

SAC ¶ 40.  The SAC also alleges, in support of its due process claim against "State
Defendants" (but not MHM specifically), that:

> The State Defendants **knew or should have known** and failed
> to adequate address the following: . . .

SAC ¶ 124.  Plaintiffs fail to allege that any of the policies governing the IST process
and created by DSH were in fact "created, designed, or implemented" by Defendants
Lopez or MHM, as instructed by the Court.

## 2.    The Court's Title III of the ADA Directions

After dismissing Plaintiffs' Title II of the ADA claim, with prejudice, the Court
dismissed Plaintiffs' Title III of the ADA claim, without prejudice.  In so doing, the
Court noted that:

> Plaintiffs plead no facts, other than one conclusory statement,
> indicating that the CFMG Defendants may be considered a
> **place of public accommodation** under Title III of the ADA.
> (*See* FAC ¶116).[4] . . . [¶] Further, as with the CFMG
> Defendants, Plaintiffs have failed to plead sufficient facts
> indicating that MHM Services a place of public
> accommodation.

Dkt. 62 at 24.

Plaintiffs' SAC now alleges:

> Defendant MHM operates its business conjointly with
> Defendant DSH pursuant to a contract wherein MHM
> provides placement recommendation <u>services</u> for ISTs, for
> approving the facilities providing restorative treatment to ISTs
> who are placed on outpatient status, for preparing and
> submitting treatment plans for outpatient ISTs, and
> administers the Conditional Release Program in Ventura
> County, and <u>as such, is a public accommodation that owns,</u>

---

[4] "Further, the private entity Defendants are places of public accommodation, making them liable
under Title III of the ADA."  FAC ¶ 116.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT**

> leases, leases to, or operates a professional office of a health
> care provider, hospital, or other service establishment within
> the meaning of 42 U.S.C. § 12181(7)(F), and Title III of the
> ADA's implementing regulations, 28 C.F.R. § 36.104 *et seq*.

SAC ¶ 186 (emphasis added).  Once again, Plaintiffs' allege a conclusory statement that by providing **services** in connection with conduct that entirely predates the activity taking place at the facilities, MHM is somehow providing a place of public accommodation.   Thus, Plaintiffs fail to plead an **actual place** of public accommodation.

### 3.    The Court's Unruh Civil Rights Act Directions

Similar to the Court's directions regarding Plaintiffs due process claim, the Court dismissed Plaintiffs' Unruh Civil Rights Act (*i.e.,* Cal. Civil Code § 51 *et seq.*) claim. In dismissing this claim, the Court ruled:

> Plaintiffs argue that Defendants knew or should have known
> that assigning Plaintiffs to Patton State Hospital would result
> in a delay in treatment and that Defendants should have
> recommended other treatment options. (*See* MHM Opp'n at
> 19.) This does not indicate *intentional* conduct; rather,
> Plaintiffs appear to be alleging, at most, negligence.  Thus,
> Plaintiffs' First Amended Complaint "falls short of alleging
> the 'willful, affirmative misconduct' required to state an
> Unruh Act claim separate from an ADA claim.

Dkt. 62 at 28 (emphasis added, italics in original).

Plaintiffs' SAC alleges:

> MHM fails to provide placement recommendations which
> assure ISTs receive adequate and timely restorative treatment.
> MHM is responsible for the CONREP program which can
> provide adequate and timely treatment of ISTs by quickly
> removing them from the jail and treating them on an
> outpatient basis. However, MHM rarely, if ever, recommends
> outpatient treatment in the CONREP program for ISTs.
> Defendant MHM violates Title III of the ADA, 42 U.S.C. §§
> 12181-12189, by discriminating against individuals with
> disabilities on the basis of disability, in the full and equal
> enjoyment of Defendant MHM's goods, services, facilities,

privileges, advantages, or accommodations. 42 U.S.C. § 12182(a); 28 C.F.R., Part 36.

SAC ¶ 206, subsection G. Plaintiffs merely allege that MHM failed to consider alternative facilities when providing placement recommendations, tracking the negligence language the Court already deemed insufficient. The SAC contains no other allegation as to MHM's potential *intentional* conduct, as necessary to support an Unruh Act claim and ordered by the Court.

### 4. The Court's Cal. Civil Code Section 54 Directions

Plaintiffs' eighth claim arises under California Civil Code section 54 (commonly referred to as the California Disabled Persons Act or "CDPA"). In support of the Court's decision to dismiss Plaintiffs' claim under the CDPA, the Court stated:

> The CDPA is concerned solely with *physical* access to public spaces." *Wilkins-Jones*, 859 F. Supp. 2d at 1054 (emphasis in original). "Thus, Plaintiff cannot maintain a claim based on the denial of services (as opposed to denial of physical access) under the CDPA." *Id.* Plaintiffs concede that "[t]he factual basis" for their DCPA [sic] claim is that Defendants have "failed to provide adequate mental health care" to incompetent detainees during the time periods they have spent in jail awaiting restorative *services*. (CFMG Opp'n at 19.) As noted in *Wilkins-Jones*, denial of services cannot be grounds for a CDPA claim. Plaintiffs' First Amended Complaint does not allege that Plaintiffs were denied *physical access* to any part of VCPTDF once they were committed there. [FN 21].

Dkt. 62 at 29; see also id. at n. 21 ("This comports with longstanding precedent that an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State." [Citations omitted]).

Plaintiffs' additional three paragraphs to show the *physical access* that they do not have access to all pertain to areas inside the jail—*after* MHM's provides its placement recommendation—and appear to be a naturally restricted area for an IST defendant. See, *e.g.*, SAC ¶ 214 ("[IST defendants] are discriminated against compared to non-IST inmates in conditions of confinement as they are often punished solely due

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT**

to their IST condition and therefore lose the right to physically access recreational areas such as the general population dayrooms, and the exercise area **on the roof**." [emphasis added]).

**5.    The Court's Cal. Civil Code Section 52.1 Directions**

The Court dismissed without prejudice Plaintiffs' file claim against MHM, Cal. Civil Code section 52.1 (commonly referred to as the "Bane Act"), because the FAC failed to plead any sort of facts supporting "threat, intimidation, or coercion" as required for a Bane Act claim.   Dkt. 62 at 30 ("Bane Act liability extends only to rights violations accompanied by 'threats, intimidation, or coercion. [Citation]."). The Court denied Plaintiffs' argument that constitutional violations were inherently coercive, stating:

> Detainment in a jail or prison inherently carries with it a certain level of coercion; this coercion, however, is not carried out in order to effect a knowing interference with the plaintiff's constitutional rights. [Citation]. Thus, in order to plead a viable Bane Act claim, the plaintiff must plead *additional* acts of coercion or intimidation beyond that constituting the underlying constitutional violation. [FN 23].

> [FN 23] Plaintiffs argue that when Plaintiffs exhibited signs of mental disability, they were unfairly disciplined and denied access to the commissary or the phone. (*See* County Opp'n at 20.) But Plaintiffs plead no facts indicating that this punishment was in response to, or an effort to prevent, Plaintiffs from exercising their constitutional rights. Thus, this alleged "punishment" does not establish Bane Act liability.

Id.  Further, the Court stated that Plaintiffs' alleged untimeliness does not support any sort of intentional discrimination:

> Plaintiffs here plead no facts indicating that Defendants intentionally punished or coerced Plaintiffs when they attempted to exercise their constitutional right to receive prompt mental health restorative treatment. . . .

> [T]he Court declines to presume that failing to timely provide mental health restoration services includes the same inherent

11                                    Case No. 16-03084-BRO-RAO
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT**

1    coercion as cases in which law enforcement applies the
2    inherent coercion of excessive force.

3    Id. at 31-32.

4    Despite the Court's clear directives, including the heightened pleading standards,

5    Plaintiffs' SAC again simply alleges Defendants' (none specifically) untimeliness as the

6    basis for satisfying the coercion element of a Bane Act claim:

7            Defendants engaged in coercive acts that separately and
8            independently interfered with or attempted to interfere with
             the rights of Plaintiffs and the Plaintiff Class to receive timely
9            and proper mental health treatment and, as a result, held them
10           in criminal custody when they were required to be held in civil
             detention for treatment and additionally, as a result, caused
11           them to be held in criminal custody for a period of time longer
             than they otherwise would have.
12

13   SAC ¶ 220.  Furthermore, Plaintiffs go on to allege acts of "independent coercion," but

14   none of these acts identify MHM by name or by conduct, nor do any of these acts even

15   suggest some sort of deprivation of a constitutional right by "threat, intimidation, or

16   coercion"—the "additional facts" the Court instructed Plaintiffs to allege in their SAC.

17   **D.    Plaintiffs' Claims Against MHM**

18   Plaintiffs name all Defendants in their first claim for relief for alleged due process

19   violations under the State and Federal Constitution and seek damages and injunctive

20   relief against MHM and all individuals sued in their official capacity, including

21   Defendant Lopez.  SAC ¶ 132.  Plaintiffs' fifth claim for relief under Title III of the

22   ADA names MHM services (not Mr. Lopez) and seeks declaratory and injunctive relief.

23   Plaintiffs seventh claim for relief under the California Civil Code section 51 names

24   MHM Services and Mr. Lopez as defendants, and seek declaratory and injunctive relief.

25   SAC ¶208.  Plaintiffs name all Defendants in their eighth (Cal. Civil Code section 54)

26   and ninth (Cal. Civil Code section 52.1) claims for relief and seek damages, declaratory

27   and injunctive relief.  SAC ¶¶215-16, 222-23.  With respect to this latter claim,

28

Plaintiffs seek actual, exemplary, statutory, and punitive damages.  SAC ¶ 223.  On all claims, Plaintiffs seek attorneys' fees and costs from all defendants.

### III.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) requires a complaint to contain facts (not legal conclusions) sufficient to state a claim for relief, a "pleading must contain something more . . . than . . . a statement of facts that merely creates suspicion [of] a legally cognizable right of action. [Citation]." Bell Alt. Corp. v. Twombly, 550 U.S. 544, 555-556 (2007). A claim is deficient if it simply recites the elements of a claim, Sanjuan v. American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994); rather, the claim must provide sufficient facial allegations so that a court can draw a reasonable inference that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Advanced Skin & Hair, Inc. v. Bancroft, 858 F.Supp.2d 1084, 1088 (C.D. Cal. 2012). If, after taking all Plaintiffs' allegations of material fact as true in the light most favorable to them, Plaintiffs' complaint still does not present facts consistent with the allegations of the complaint, then the complaint must be dismissed. Twombly, supra, 550 U.S. at 546.

Moreover, the court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (2001); see Papasan v. Allain, 478 U.S. 265, 286 (1986). Such lacking allegations fail for two reasons: (1) they fail to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests"; and (2) they prevent a "plaintiff with a largely groundless claim from taking up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value [citations omitted]." Twombly, supra, 550 U.S. at 545-46.  Rule 8 "does not excuse a party from being bound by its own explicit admissions of fact." Aetna Cas. & Sur. Co. v. Aniero Concrete Co., 404 F.3d 566, 594 (2d Cir. 2005). Pleaders may not assert contradictory statements of fact unless they are legitimately in

doubt about the facts in question.  Am. Int'l Adjustment Co. v. Galvin, 86 F.3d 1455, 1461 (7th Cir. 1996).  Moreover, allegations of statutory or civil rights claims are subject to more *stringent*, specificity pleading requirements: "As we have repeatedly held, complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." Barr v. Abrams, 810 F.3d 358, 363 (2d Cir. 1987).

## IV.   ANALYSIS

### A.   Plaintiffs' Additional Factual Allegations as to MHM Still Fail to State Cognizable Claims Against MHM, Requiring Dismissal Under Rule 12(b)(6)

"Dismissal is proper when the complaint does not make out a cognizable legal theory or does not allege sufficient facts to support a cognizable legal theory." Whittaker Corp. v. United States, 825 F.3d 1002, 1006 (9th Cir. 2016).  If the complaint or claims lack a cognizable legal theory or sufficient facts with respect to *any* defendant, then Rule 12(b)(6) entitles *that defendant* to dismissal of the claims.  Meyer v. Cahoon, 110 F.3d 69 (9th Cir. 1997).

Here, Plaintiffs' few, "additional" factual allegations pertaining to MHM are fatally insufficient to state claims, just as this Court found Plaintiffs' FAC.  Plaintiffs, again, attempt to lump all Defendants together in conclusory fashion, and therefore, fail again to delineate sufficient, wrongful conduct *as to MHM*.  Instead, Plaintiffs factual allegations (again) merely describe MHM's role in providing the IST defendant placement recommendation to the Ventura County Superior Court within 15 judicial days of the court's IST order, as required by statute.  SAC ¶¶ 39-40.  While Plaintiffs do, for the first time, allege that MHM's "delays" in providing placement recommendation caused harm to Plaintiffs, this conclusory allegation does not aver that MHM was ever untimely and provided its placement recommendation after 15 judicial days.  Indeed, Plaintiffs' SAC specifically alleges that, with regards to both named plaintiffs, MHM provided timely placement recommendations, and Plaintiffs do not

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

allege that MHM provided any DOE Plaintiff a placement recommendation (or even that any DOE Plaintiff received untimely placement recommendations).    Plaintiffs' SAC is devoid of any facts as to any purported wrongful conduct as to MHM. Plaintiffs' conclusions, without any basis in alleged facts as to MHM, are factually insufficient to support these specious legal conclusions. <u>Sprewell, supra,</u> 266 F.3d at 988.   Critically, Plaintiffs' SAC fails to provide the Court and MHM the clarity sought by the previous motion to dismiss this Court granted to dismiss all Plaintiffs' claims in the FAC:

> Rather, when pleading their causes of action, they primarily recite the elements of the claim.   This makes it difficult at times for the Court to analyze Plaintiffs' allegations with specificity.   Thus, **the Court encourages Plaintiffs to clarify their allegations in any future filing**."

Dkt. 62 at 14, n. 12 (emphasis added).    Given the lack of specific facts pertaining to MHM, and this Court's obvious directive to Plaintiffs to clarify their allegations against MHM, it appears Plaintiffs knowingly failed to allege and clarify specific, factual allegations *against MHM*. Accordingly, MHM's motion to dismiss should be granted.

### 1.    Plaintiffs Fail to Allege Facts to Support a Claim for Relief Under the Due Process Clause as to MHM (First Claim for Relief)

Defendants who do not directly violate Plaintiffs' due process right may only be held liable for the acts of another if they "caused [Plaintiff] to be subjected to a constitutional deprivation," which, as the Court acknowledged, requires the defendant to create, design, or implement a unconstitutional policy.  <u>Chew v. Gates</u>, 27 F.3d 1432, 1446 (9th Cir. 1994); *see also* Dkt. 62 at 19.  The Court further recognized that "due process requires states to provide civilly-committed person with access to mental health treatment that gives them a realistic opportunity to be cured and released."  Dkt. 62 at 14 (citing <u>Allen v. Mayberg</u>, 577 F. App'x 728, 732 (9th Cir. 2014)).   But the Court found that MHM cannot commit a due process violation under this principle simply by way of Plaintiffs' allegations that MHM "knew or should have known" that Plaintiffs

would not receive mental health restoration treatment while detained at county jail waiting for transfer to Patton.  Dkt. 62 at 19.

For this reason, Plaintiffs' due process claims against MHM should be dismissed because Plaintiffs' SAC, once again, only alleges that the State Defendants "knew or should have known" that ISTs were being held indefinitely in county custody and discriminated against compared to other non-IST inmates in regards to housing, punishment, treatment, visiting rights, phone call rights, commissary rights, and sentencing.  SAC ¶ 124.  Critically, Plaintiffs do not allege any specific conduct by MHM, instead electing to include MHM with the other State Defendants, which the Court implies, by separating MHM from the State Defendants in its analysis, is improper.  Dkt. 62 at 15, 19.  Furthermore, even if MHM is considered a State Defendant, its alleged improper conduct would be that it knew or should have known of the ISTs' constitutional violations *after* MHM gave its court ordered placement recommendation—which the Court already deemed insufficient to state a claim against MHM upon which relief can be granted.  Id.  Plaintiffs do not allege that MHM designed, created, or implemented an unconstitutional policy, as Chew and the Court prescribe.  Rather, Plaintiffs merely allege that MHM provided timely, court ordered placement recommendations.  Taking all of Plaintiffs' allegations as true, MHM's purported wrongdoing falls fatally short of any due process violation.

### 2.   Plaintiffs Fail to Allege Facts Sufficient Under Title III of the ADA as to MHM (Fifth Claim for Relief)

Title III of the ADA provides: "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of **public accommodation** by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a) (emphasis added).

Case No. 16-03084-BRO-RAO
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

### a. **Plaintiffs Fail to Allege That MHM Provides a Place of Public Accommodation**

Title III applies to "business entities" that provide "public accommodations." 42 U.S.C., § 12182. A public accommodation requires there to be "**an actual physical space**." Weyer v. Twentieth Century Fox Film Corp., 198 F.3d 1104, 1114 (9th Cir. 2000) [emphasis added]; see, e.g., Kalani v. Starbucks Corp., 81 F. Supp. 3d 876, 884 (N.D. Cal. 2015) (coffee retailer); Gaylor v. Greenbriar of Dahlonega Shopping Ctr., Inc., 975 F. Supp. 2d 1374, 1395 (N.D. Ga. 2013) (shopping center); Wigginton v. Bank of Am. Corp., 770 F.3d 521, 523 (7th Cir. 2014) (bank); United States v. Days Inns of Am., Inc., 997 F. Supp. 1080, 1083 (C.D. Ill. 1998) (hospital).

Here, Plaintiffs ADA claim alleges only that MHM provides DSH placement recommendation services for ISTs. SAC ¶ 186. Plaintiffs do not allege that MHM has any control over DSH facilities or that it even visits the facilities. Instead, Plaintiffs aver that MHM's CONREP facility satisfies the public accommodation requirement and therefore, MHM can be held liable for the alleged ADA violations at other public accommodations to which MHM *only* provides services. Id. However, Plaintiffs do not allege that MHM's CONREP facility commits any ADA violations—indeed, ironically insisting that MHM send the ISTs to MHM's CONREP facility on the very next page. SAC ¶ 187. Further, Plaintiffs do not allege any nexus between MHM's CONREP facility and the services provided by MHM that constitute an ADA violation—*i.e.*, MHM's CONREP facility is completely independent of the placement recommendation services it provides the court. See Ford v. Schering-Plough Corp., 145 F.3d 601, 613 (3d Cir. 1998) ("the 'goods, services, facilities, privileges, advantages, or accommodations' concerning which a disabled person cannot suffer discrimination are not free-standing concepts but rather all refer to the statutory term 'public accommodation' and thus to what these places of public accommodation provide."). Accordingly, Plaintiffs' fail to plead facts to show that Title III of the ADA even applies to MHM for alleged violations at DSH facilities.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT**

  **b.** **Plaintiffs Fail to Allege Specific Conduct *by MHM* Constituting Discrimination**

  Pleading requirements for ADA claims are stringent, requiring that plaintiffs allege a defendant's specific conduct that justifies their ADA claim. See Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 950 (9th Cir. 2011) (holding that plaintiff's complaint does not provide a defendant with fair notice concerning the grounds upon which the plaintiff bases the claim of discrimination because it does not identify the specific barriers for which the plaintiff seeks injunctive.) To maintain a claim under the ADA, plaintiffs must allege that (1) they are qualified individuals with a disability; (2) they were either excluded from participation in or denied benefits of the public entity's services, programs, or activities, or were otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of their disability.  Rodde v. Bonta, 357 F. 3d 988, 995 (9th Cir. 2004).  Absent specific facts as to how MHM allegedly violated the ADA intended (or did) discriminate against the Plaintiffs, Plaintiff denies MHM the requisite "fair notice of what the claim is," and the motion to dismiss should be granted. Twombly, supra, 550 U.S. at 545.

  Finding that MHM was not even a place of public accommodation (nor subject to Title II of the ADA), the Court did not find it necessary to determine whether MHM's discriminated against ISTs based on their disability.  Since Plaintiffs' still fail to allege that MHM provides a public accommodation connected to the ADA violations, the Court will likely not have to consider this analysis again.  Nevertheless, assuming *arguendo* that MHM was subject to Title III of the ADA (it is not), Plaintiffs' SAC lacks the specific facts to put MHM on notice of what violation it purportedly committed so MHM may defend itself.

  Here, Plaintiffs' SAC is entirely devoid of any facts that MHM discriminated against Plaintiffs, and indeed, simply alleges MHM fails to provide placement recommendations to other facilities, such as CONREP facilities, that can provide timely restorative treatment.  SAC ¶ 187.  Plaintiffs cannot allege that MHM employs

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT**

discriminatory practices when providing its court ordered placement recommendations because MHM provides its placement recommendations only upon the Court's request, pursuant to the guidelines set by DSH, subject to the Court's approval, and to all ISTs equally.  Plaintiffs do not even allege MHM has an affirmative duty to Plaintiffs beyond the court ordered placement recommendations.  Therefore, Plaintiffs failed to plead facts sufficient to show that MHM discriminated against ISTs when providing its court ordered placement recommendations.

### 3. Plaintiffs Fail to State a Cognizable, Unruh Civil Rights Act Claim Because They Have Not Alleged Any Facts of Intentional Discrimination (Seventh Claim for Relief)

The Unruh Act, when there are no underlying ADA violations, requires Plaintiff to allege intentional discrimination.  Wilkins-Jones v. Cty. of Alameda, 859 F. Supp. 2d 1039, 1046 (N.D. Cal 2012).   Plaintiffs only state a conclusion; to plead discriminatory intent, a **plaintiff must allege facts** beyond just a disparate impact by showing that the **defendant's actions were motivated by some animus** towards the plaintiffs. Turner v. Ass'n of Am. Medical Colleges, 167 Cal.App.4th 1401, 1411 (2008) (emphasis added) (finding no Unruh Act claim independent of ADA where "plaintiffs have neither alleged nor proven that [defendant administering standardized test] was motivated by an animus toward those with learning and reading-related disabilities" by granting different accommodations to different groups).

Here, Plaintiffs once again conclude that MHM, "through the acts and omissions described herein," intentionally discriminated against ISTs based on their disability. SAC ¶ 203.  Plaintiffs' aver that MHM failed to "provide placement recommendations which assure ISTs receive adequate and timely restorative treatment," and therefore discriminated.  SAC ¶ 206.  These are the same factual allegations that the Court already deemed insufficient:

> Even assuming that Plaintiffs have provided enough facts to
> meet the first element and to establish that Defendants treat
> other judicially committed individuals differently than

Plaintiffs (and other incompetent detainees) by failing to provide them with timely restorative mental health treatment,[20] Plaintiffs fail to plead any facts indicating that this alleged discrimination was intentional or was due to Plaintiffs' disability. Plaintiffs argue that Defendants knew or should have known that assigning Plaintiffs to Patton State Hospital would result in a delay in treatment and that Defendants should have recommended other treatment options. (*See* MHM Opp'n at 19.) **This does not indicate *intentional* conduct; rather, Plaintiffs appear to be alleging, at most, negligence.** Thus, Plaintiffs' First Amended Complaint "falls short of alleging the 'willful, affirmative misconduct' required to state an Unruh Act claim separate from an ADA claim."

Dkt. 62 at 28 (emphasis added) (italics in original) (citing Wilkins-Jones, 859 F. Supp. 2d at 1053). The fact that Plaintiffs now allege that MHM has its own CONREP facility capable of providing timely restorative treatment is insufficient to show any sort of animus by MHM towards ISTs based on their disability. Indeed, Plaintiffs cannot allege MHM treats ISTs different than non-ISTs because MHM provides court ordered placement recommendation *only* for ISTs, and there is no allegation that MHM treats one group of ISTs different than another group of ISTs based on their disability. Since Plaintiffs cannot maintain their ADA claim against MHM under Title III of the ADA, and since there are no facts or allegations evincing discriminatory intent, Plaintiffs cannot maintain a claim based on the Unruh Act against MHM.

**4. Plaintiffs Fail to State a Cognizable Claim Under California Civil Code Section 54 Because Plaintiffs Do Not Allege MHM Has Any Control Over the Corresponding Facilities (Eighth Claim for Relief)**

California Civil Code section 54 (commonly referred to as the California Disable Persons Act or "CDPA") provides that, "[i]ndividuals with disabilities or medical conditions have the same right as the general public to the full and free use of the streets, highways, sidewalks, walkways, public buildings, medical facilities, including hospitals, clinics, and physicians' offices, **public facilities, and other public places**." Cal. Civ. Code, § 54 (emphasis added). "The CDPA is concerned solely with physical

access to public spaces." <u>Wilkins-Jones</u>, 859 F. Supp. 2d at 1054.  "Thus, Plaintiff cannot maintain a claim based on the denial of services (as opposed to denial of physical access) under the CDPA." <u>Id</u>.  In finding that Plaintiffs' CDPA claims should be dismissed, the Court stated:

> Plaintiffs concede that "[t]he factual basis" for their DCPA claim is that Defendants have "failed to provide adequate mental health care" to incompetent detainees during the time periods they have spent in jail awaiting restorative *services*. (CFMG Opp'n at 19.) As noted in *Wilkins-Jones*, denial of services cannot be grounds for a CDPA claim. Plaintiffs' First Amended Complaint does not allege that Plaintiffs were denied *physical access* to any part of VCPTDF once they were committed there.

Dkt. 62 at 29; <u>see also</u> <u>id</u>. at n. 21 (Plaintiffs provide no authority, and the Court is unaware of any, indicating that a CDPA claim may lie where a plaintiff is not assigned or transferred to a different jail or prison than where he is housed. This comports with longstanding precedent that "an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State." <u>Olim v. Wakinekona</u>, 461 U.S. 238, 246 (1983).).

Here, Plaintiffs did not attempt to cure their deficiencies noted by the Court in their FAC, instead failing to allege *any* allegation towards MHM under the CDPA.  <u>See</u> SAC ¶¶ 209-16.  Since Plaintiffs have not alleged MHM provides a public facility, only a service for a public facility, Plaintiffs must show that MHM has autonomous control over the facilities. MHM does not.  Indeed, Plaintiffs do not allege that MHM has any control over the IST process after it provides its court ordered placement recommendations pursuant to the guidelines set by DSH.  Thus, while courts have found that private contractors who provide jails services may be subject to section 54, those services were "responsible <u>for establishing</u> and enforcing policies regarding the processing of inmates being brought into the jail, classification and housing needs of inmates as well as identification and treatment of inmates with disabilities, including

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

provision of reasonable accommodations." <u>Wilkins-Jones,</u> 859 F. Supp. 2d at 1043. Unlike the treatment service in <u>Wilkins-Jones</u> that "establish[es]" policies, MHM's role is merely governed by statute or directed in accordance with DSH's guidelines. This point is critical because the Court in <u>Wilkins-Jones</u> based its decision on the fact that the County delegated to the service provider "the authority to set policies." <u>Id.</u> at 1056. MHM has no such authority and should not be held responsible for its good faith reliance on DSH guidelines.   <u>See D'Lil v. Stardust Vacation Club,</u> No. CIV-S-00-1496DFL PAN, 2001 WL 1825832, at *8 (E.D. Cal. Dec. 21, 2001) ("defendant's good faith reliance on an agency's erroneous legal opinion may in some instances preclude liability").   Plaintiffs' failure to allege MHM's court ordered *services* rise to the level of actual control of a physical space that ISTs are being denied *within the facilities* makes their CDPA claim *against MHM* proper for dismissal.

**5.     Plaintiffs Fail to State a Cognizable Claim Under California Civil Code §52.1 Because Plaintiffs Have Again Failed to Allege That MHM Has Deprived Plaintiffs Any Right By Threat, Intimidation, or Coercion (Ninth Claim of Relief)**

California Civil Code §52.1 (commonly referred to as the "Bane Act") protects individuals from persons who "interfere[] by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights." <u>Cal. Civ. Code, § 52.1</u>.   "In order to prevail on his Bane Act claim, [Plaintiffs] must show that (1) Defendants interfered with his constitutional or statutory rights; and (2) that interference was accompanied by actual or attempted threats, intimidation, or coercion." <u>Lawman v. City & Cty. of San Francisco,</u> 159 F. Supp. 3d 1130, 1151 (N.D. Cal. 2016).   As the Court pointed out, "the pleading standard [under the Bane Act] requires that Plaintiffs plead *facts* to support their conclusory statements.   Dkt. 62 at 30; <u>see also</u> <u>Phillips v. County of Fresno,</u> No. 1:13-cv-0538 AWI BAM, 2013 WL 6243278, at *19 (E.D. Cal. Dec. 3, 2013) ("Plaintiffs' pattern of alleging claims for relief that bring forth no facts but simply recite the

1   elements of a claim is fatal to Plaintiffs' ninth claim.").  Detainment in a jail or prison
2   inherently carries with it a certain level of coercion, and therefore, Plaintiffs must plead
3   *additional* acts of coercion or intimidation beyond that constituting the underlying
4   constitutional violation.  Dkt. 62 at 30; see, e.g., Quezada v. City of Los Angeles, 222
5   Cal. App. 4th 993, 1008 (Cal. Ct. App. 2014) ("The coercion inherent in detention is
6   insufficient to show a Bane Act violation.").

7       Here, Plaintiffs do not make a single factual allegation towards MHM delineating
8   what conduct by MHM supports a claim under the Bane Act.  Plaintiffs allege neither
9   that MHM specifically interfered with their constitutional or statutory rights nor that
10  they did so by threats, intimidation, or coercion. Somewhat ubiquitous at this point,
11  Plaintiffs' sole allegation as to MHM is that they provided court mandated placement
12  recommendations without regard for the other Defendants' alleged conduct. Taking
13  Plaintiffs' allegation as true, MHM's alleged conduct is well bereft of any sort of
14  "threat, intimidation, or coercion."  Furthermore, while Plaintiffs delayed allegation is
15  unclear or, to the extent it implies untimeliness, is unsupported by Plaintiffs' specific
16  allegations, even assuming true, the Court already instructed Plaintiffs that there is no
17  authority to support its proposition that the failure to provide prompt mental health
18  restoration constitutes excessive force.  See Dkt. 62 at 32.  Per Plaintiffs' own
19  pleading, MHM acts in conformity with statute, doing its job ably and timely.
20  Plaintiffs fail to support this serious claim against MHM.

21      **6.   Plaintiffs Fail to State a Cognizable Claim For Violation of the Right to
22          a Speedy Trial Against MHM (Tenth Claim for Relief)**

23      Plaintiffs' SAC, *for the first time*, asserts a claim for violation of the right to a
24  speedy trial.  SAC at 70-71.  Plaintiffs do not identify any specific defendant in this
25  claim.  Rather, Plaintiffs allege insufficiently that "Defendants' delays in admitting
26  defendants who have been found incompetent to stand trial violate this right."  SAC ¶
27  225.  This claim is entirely conclusory, without any factual support, and therefore
28  dismissal on that ground alone is warranted because the Court is "not required to accept

as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell, supra, 266 F.3d at 988.

This claim also lacks merit because delays due to competency issues are not a proper basis to support relief under both the statutory and constitutional speedy trial provisions.  See Trueblood v. Washington State Dept. of Social and Health Services, 822 F.3d 1037, 1043 (9th Cir. 2016).  Trueblood specifically holds:

> Unlike in Sixth Amendment cases, these class members do not seek relief from prejudicial delays in their criminal prosecutions. Their complaint is that they should receive a timely determination of competency—a go or no-go decision on whether their criminal proceedings will move forward and whether they are eligible for restorative services. Many of them will never be tried, or might not be tried until after a lengthy restorative treatment process. Their focus is not the guarantee of a speedy trial.

Id.  Under Trueblood, Plaintiffs' claim is untenable is because it derives entirely from delays in the IST process, which Trueblood found an improper basis for relief under the right to a speedy trial.  Id.

**B.    Leave to Amend is Not Warranted After Plaintiffs' Repeated Failure to Allege Sufficient as to MHM**

"It is well-established that a court may dismiss an entire complaint with prejudice where plaintiffs have failed to plead properly after 'repeated opportunities.'"  Destfino v. Reiswig, 630 F.3d 952, 959 (9th Cir. 2011) ("The district court made clear in this order that plaintiffs must amend their 'shotgun pleading' to 'state[ ] clearly how each and every defendant is alleged to have violated plaintiffs' legal rights.' The second amended complaint was properly dismissed because it failed to do this, continuing to make 'everyone did everything' allegations.").  Indeed, there is no absolute or automatic right to amend, and "the trial court's decision whether to allow amendment will be reviewed only for an abuse of discretion."  Williams v. Little Rock, 21 F.3d 218, 224 (8th Cir. 1994); see also Moore v. Kayport Package Exp., Inc., 885 F.2d 531, 538 (9th Cir. 1989).

Having had three opportunities to allege specific facts *as to MHM* and repeatedly alleging the same or similar deficient facts, Plaintiffs should not be granted leave to amend their SAC.  The Court has very clearly directed Plaintiff as to what allegation must be pleaded against MHM to support their deficient claims against MHM. Nevertheless, missing the mark yet again, Plaintiffs SAC contains the same or similar conclusory allegations that the Court previously deemed inadequate (*e.g.*, MHM "knew or should have known" of the subsequent mistreatment of Plaintiffs) or inconsistent with Plaintiffs' specific allegations (*e.g.*, Plaintiffs allege that MHM provided its placement recommendations within 15 judicial days of the courts' order, as required by statute, but also that "delays" in MHM's placement recommendations caused Plaintiffs harm).  Plaintiffs repeated failures ignore the Court's directive to not "primarily recite the elements of the claim" as "[t]his makes it difficult at times for the Court to analyze Plaintiffs' allegations with specificity." Dkt. 62 at 14, n. 12.  Plaintiffs have not done this and continue to make it difficult to understand why MHM should be held liable, particularly since Plaintiffs do not allege MHM has any control over the IST process after it provides its court ordered placement recommendations pursuant to guidelines set by DSH.  Meanwhile, MHM is forced to expend significant resources litigating claims against it that all suffer from the save overall defect.  There are no colorable grounds for relief against MHM, and as a result, the Court should refuse to grant leave to amend.

## V.   **CONCLUSION**

For the foregoing reasons, MHM respectfully requests that this Court grant their motion to dismiss without leave to amend.

Dated:  December 7, 2016             SELTZER CAPLAN McMAHON VITEK

                                     By:   s/ *Adam Gordon*
                                           Adam Gordon, Esq.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

**CERTIFICATE OF SERVICE**
**M.S., et al. v. COUNTY OF VENTURA, et al.**
**Case No. 2:16-cv-03084-BRO-RAO**

I hereby certify that on December 7, 2016, I electronically filed the following documents with the Clark of the Court by using the CM/ECF system:

I certify that all participants in the above entitled case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on December 7, 2016, at San Diego, California.


By:     s/ *Adam Gordon*
        Adam Gordon

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**
**PLAINTIFFS' SECOND AMENDED COMPLAINT**