LINK:

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## CIVIL MINUTES – GENERAL

| Case No. | **CV 16-03084-BRO (RAOx)** | | Date | March 7, 2017 |
|---|---|---|---|---|
| Title | **M.S. ET AL. V. COUNTY OF VENTURA ET AL.** | | | |

| Present: The Honorable | **BEVERLY REID O'CONNELL, United States District Judge** | |
|---|---|---|
| Renee A. Fisher | Not Present | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**       (IN CHAMBERS)

## ORDER RE DEFENDANTS' MOTIONS TO DISMISS AND PLAINTIFFS' MOTION FOR RECONSIDERATION [69, 70, 71, 72, 73]

## I.       INTRODUCTION

Pending before the Court are five motions: (1) Defendants Pam Ahlin, Harry Oreal, the California Department of State Hospitals, and Patton State Hospital's (collectively, the "State Defendants") Motion to Dismiss, (Dkt. No. 69 (hereinafter, "State MTD")); (2) Defendants California Forensic Medical Group, Taylor Fithian, Paul Adler, and Ronald Pollack's (collectively, the "CFMG Defendants") Motion to Dismiss, (Dkt. No. 70 (hereinafter, "CFMG MTD")); (3) Defendants County of Ventura, Ventura County Sheriff Geoff Dean, and the Ventura County Sheriff's Office's (collectively, the "County Defendants") Motion to Dismiss or for a More Definite Statement, (Dkt. No. 71 (hereinafter, "County MTD")); (4) Defendants Marcus Lopez and MHM Services of California, Inc.'s (collectively, the "MHM Defendants")[1] Motion to Dismiss, (Dkt. No. 72 (hereinafter, "MHM MTD"); and, (5) Plaintiff Matthew Scott and Omar Mojica's Motion for Reconsideration, (Dkt. No. 73 (hereinafter, "Reconsideration Mot.")).  After considering the papers filed in support of and in opposition to the instant Motion, the Court deems this matter appropriate for resolution without oral argument of counsel.  *See* Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.  For the following reasons, Defendants' Motions are **GRANTED in part** and **DENIED in part** and Plaintiffs' Motion is **DENIED as moot.**

---

[1] The Court refers to the State Defendants, the CFMG Defendants, MHM, and the County Defendants collectively as "Defendants."

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL MINUTES – GENERAL**

| Case No. | **CV 16-03084-BRO (RAOx)** | Date | March 7, 2017 |
|---|---|---|---|
| Title | **M.S. ET AL. V. COUNTY OF VENTURA ET AL.** | | |

## II.    BACKGROUND

### A.    The Parties

Plaintiffs are Mary Rodgers-Vey, who brings this action as the mother and guardian ad litem of Plaintiff Matthew Scott, an individual with a lengthy history of mental illness, (Dkt. No. 65 (hereinafter, "SAC") ¶ 8), and Adrian Mojica, the brother and guardian ad litem of Plaintiff Omar Mojica[2] who also has a lengthy history of mental illness, (SAC ¶ 12).  Plaintiffs also bring this action on behalf of nine other putative class members whose factual circumstances they claim raise common questions of law and fact.  (SAC ¶¶ 17–27.)  Defendants are: (1) the County of Ventura, a governmental entity organized and existing under the laws of California, (2) the Ventura County Sheriff's Office ("VCSO"), a department of Ventura County; (3) Ventura County Sheriff Geoff Dean; (4) California Forensic Medical Group, Inc. ("CFMG"), an agent of Ventura County who provides medical care and treatment on behalf of the Ventura County Defendants; (5) Taylor Fithian, M.D., the Medical Director of CFMG; (6) Paul Adler, M.D., the onsite Medical Director of CFMG at the Ventura County Pre-Trial Detention Facility ("VCPTDF"); (7) Ronald Pollack, M.D., a Ventura County psychiatrist; (8) California Department of State Hospitals ("DSH"), California's state agency designed to administer or supervise the administration of competency evaluation and mental health restoration treatment; (9) Pam Ahlin, the Director of DSH; (10) Patton State Hospital ("Patton"), a state psychiatric hospital responsible for "serving the needs of California individuals with pending criminal proceedings who are ordered to receive competency restoration services"; (11) Harry Oreol, the Executive Director of Patton; (12) MHM Services of California, Inc. ("MHM Services"), a corporation contracted to provide mental health services in Ventura County; and, (13) Marcus Lopez, the Community Program Director for MHM Services.  (SAC ¶¶ 28–40.)

//

//

---

[2] The Court refers to Matthew Scott, Omar Mojica, and their respective guardians ad litem collectively as "Plaintiffs."

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL MINUTES – GENERAL**

| Case No. | **CV 16-03084-BRO (RAOx)** | Date | March 7, 2017 |
|----------|---------------------------|------|---------------|
| Title | **M.S. ET AL. V. COUNTY OF VENTURA ET AL.** | | |

### B.    Factual Background

#### 1.    Ventura County's Procedures for Treating Incompetent Prisoner Detainees

California Penal Code section 1367 governs the procedures for evaluation and restoration of a criminal defendant.  (SAC ¶ 43.)  If, during the pendency of an action, a doubt arises as to the defendant's competence, the court shall order a hearing to determine the defendant's competence to stand trial.  (*Id.*)  When the court orders a hearing, the criminal prosecution proceedings are suspended and the court appoints a psychologist or psychiatrist to examine the defendant.  (SAC ¶ 44.)  While the defendant is confined for examination, under California Penal Code section 1369, he is to be provided with necessary care and treatment.  (SAC ¶ 45.)  If the defendant is found incompetent to stand trial ("IST"), the criminal proceedings are suspended and civil proceedings are instituted until the defendant retains competence or is found unlikely to do so.  (SAC ¶ 48.)

If the defendant is found incompetent, the court orders the sheriff to deliver the defendant to (1) a state hospital for mental health treatment, (2) any other public or private facility approved by the community program director that will promote the defendant's speedy restoration to mental competence, or, (3) outpatient status.  (SAC ¶ 50.)  The defendant's placement is determined by the county mental health director (or his or her designee) who evaluates the defendant and within fifteen days submits a written recommendation as to whether the defendant should be required to undergo outpatient treatment or be committed to a mental health facility.  (SAC ¶ 49.)  No defendant may be committed or placed on outpatient status without first being evaluated by the county mental health director.  (*Id.*)  If the defendant is charged with a felony, he may be held for a maximum of three years or for a period equal to the maximum term of imprisonment for the most serious charge against him, whichever is shorter.  (SAC ¶ 51.)  If a defendant is charged with a misdemeanor, he may be held for a maximum of one year or a period equal to the maximum term of imprisonment for the most serious offense charged in the misdemeanor complaint, whichever is shorter.  (SAC ¶ 55.)  If the defendant never regains competence, the charges may be dismissed and the defendant may become subject to a conservatorship.  (SAC ¶¶ 51, 55.)

LINK:

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES – GENERAL

| Case No. | **CV 16-03084-BRO (RAOx)** | Date | March 7, 2017 |
|----------|---------------------------|------|---------------|
| Title | **M.S. ET AL. V. COUNTY OF VENTURA ET AL.** | | |

Before admission, DSH is required to evaluate each IST patient to determine the patient's appropriate placement. (SAC ¶ 52.) DSH utilizes a "1370 packet"[3] to evaluate an IST for security risks and to determine whether a lower-security facility (such as DSH-Napa or DSH-Metropolitan) is appropriate for the defendant, or whether he or she should be placed in a more secure facility (such as DSH-Atascadero or Patton). (*Id.*)

After the court receives a placement recommendation, DSH (or any other treatment provider) must submit a progress report to the court within ninety days detailing the defendant's progress towards regaining mental competency and addressing the likelihood that defendant will regain mental competence in the future. (SAC ¶ 56.) If the report indicates that the defendant has regained competence, he is returned to court within ten days to resume criminal proceedings. (SAC ¶ 57.) If, on the other hand, the report indicates that there is no substantial likelihood that the defendant will regain competence, the defendant returns to court and the prosecutor may choose to either initiate further civil commitment proceedings or dismiss the charges without prejudice. (SAC ¶ 58.)

A recent amendment to section 1370 requires that the court send DHS a 1370 packet before admitting a defendant. (SAC ¶ 60.) DSH will not accept an IST detainee without a fully completed 1370 packet. (*Id.*) In addition to the 1370 packet, DSH requires an order from the court authorizing the involuntary administration of antipsychotic medication or a finding that the defendant voluntarily consents to the administration of medication. (SAC ¶ 61.)

Once all of these requirements have been met, the defendant is then placed on a waiting list for transfer to a treatment facility. (SAC ¶ 62.) According to Plaintiffs, Ventura County participates in a "one in, one out" policy, by which it allows transfer of incompetent defendants to Patton (which is, apparently, the primary mental health hospital for Ventura County prisoners) only on a one-to-one ratio for those released from the hospital. (SAC ¶ 63.) Plaintiffs claim that this results in only approximately one to

---

[3] A 1370 packet is governed by California Penal Code section 1370 and requires: (1) a commitment order, including a specification of the charges against the defendant; (2) a computation setting forth the maximum time of imprisonment; (3) a computation of the amount of time served to be deducted from the maximum imprisonment term; (4) a state summary of the defendant's criminal history information; (5) arrest reports; (6) court-ordered psychiatric examination or evaluation reports; (7) the community program director's placement or recommendation report; (8) records of a finding of mental incompetence; and, (9) medical records. (*See* SAC ¶ 60 & n.1.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL MINUTES – GENERAL**

| Case No. | **CV 16-03084-BRO (RAOx)** | Date | March 7, 2017 |
|---|---|---|---|
| Title | **M.S. ET AL. V. COUNTY OF VENTURA ET AL.** | | |

three patients per week (at most) being transferred to Patton State Hospital ("Patton").[4]
(*Id.*)  Plaintiffs allege that stays of criminal proceedings pending the procedural
requirements explained above along with time spent on the waiting list often lasts for
months before any restorative treatment begins.  (SAC ¶ 64.)  In addition, Plaintiffs aver
that during the IST evaluation and restoration periods, defendants' speedy trial rights are
automatically waived and they lose pre-trial custody credits applicable to criminal pre-
trial detainees.  (SAC ¶ 70.)

### 2.    Ventura County's Treatment of Prisoners

In Ventura County, Sheriff Dean contracts with CFMG, a private corporation, to
provide all mental and medical care to Ventura County detainees.  (SAC ¶ 71.)  Ventura
County's two primary detention facilities, the VCPTDF and the Todd Road Jail ("TRJ"),
are not licensed to perform competency restoration services.  (SAC ¶ 72.)  While CFMG
will provide "medication management" for those willing to take the medication, it will
not involuntarily medicate patients except in an emergency.  (SAC ¶ 73.)  Thus, treatment
for incompetent defendants before they are transferred to Patton is usually limited to
basic clinical psychiatry designed to stabilize the defendant's mental health condition.
(SAC ¶ 74.)  As Plaintiffs explain, incompetent defendants are "often overly psychotic
and require special housing or segregation."  (SAC ¶ 75.)  In addition, Plaintiffs note that
they are often "unpredictable and disruptive" and take up resources that could be used for
other defendants.  (*Id.*)  Further, if incompetent defendants refuse to take medication,
they often deteriorate quickly.  (*Id.*)  Therefore, Plaintiffs aver that keeping incompetent
defendants in jail environments rather than in medical hospitals is ineffective at treating
the defendants and undermines the mental health of the detainees.  (SAC ¶ 77.)  In
contrast, Plaintiffs claim that DSH hospitals are able to treat a person's mental health
disabilities and to provide competency restoration services.  (SAC ¶ 79.)  These hospitals
are staffed by full-time psychiatrists and psychologists, as well as other mental health and
medical specialists and experts.  (*Id.*)  Further, these hospitals can provide medicine—
even involuntarily—to assist a defendant in regaining competency and provide
individuals with mental health disabilities legal skills training.  (SAC ¶¶ 79–80.)

---

[4]   A county jail may be designated as a treatment facility, but, under California Penal Code section
1369, the maximum amount of time a defendant may be treated in a designated jail is six months.  (SAC
¶ 67.)

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL MINUTES – GENERAL**

| Case No. | **CV 16-03084-BRO (RAOx)** | Date | March 7, 2017 |
|---|---|---|---|
| Title | **M.S. ET AL. V. COUNTY OF VENTURA ET AL.** | | |

Plaintiffs allege that the County Defendants participate in "a custom, pattern and practice of failing to timely provide mental health treatment and medication" to incompetent defendants held in its custody. (SAC ¶ 84.) Plaintiffs further claim that the County Defendants inappropriately punish incompetent defendants who are housed in VCPTDF or the TRJ rather than being transferred to a mental health facility for their behavior that is due to their disability. (SAC ¶ 85.) According to Plaintiffs, the County Defendants also have a custom or practice of failing to designate mentally incompetent detainees to outpatient status after a reasonable amount of time without treatment elapses, and that they fail to keep records of mental health treatments, fail to properly staff jails with mental health caretakers, fail to prevent suicide of incompetent detainees, and fail to ensure that incompetent defendants have equal opportunity to participate in and benefit from jail programs and activities. (SAC ¶¶ 86–87.) Finally, Plaintiffs aver that the County Defendants have a pattern or practice of failing to transfer incompetent defendants to California Department of State Hospitals (such as Patton) or to any other treatment facility capable of providing restorative treatment within a reasonable time, which, according to Plaintiffs, would be seven days after the court orders the Sheriff to transfer the detainee to a treatment facility. (SAC ¶ 88.)

According to Plaintiffs, on August 12, 2015, Sheriff Dean submitted a Proposal Form to the Board of State and Community Corrections ("BSCC") for construction financing for a sixty-four-bed facility to provide services to inmates with medical and mental health needs. (SAC ¶ 89.) In the proposal, Sheriff Dean identified a gap between the number of mentally incompetent inmates and the number of beds available for them at the current VCPTDF facility. (SAC ¶ 91.) Specifically, only two percent of available beds are designed for inmates that need medical or mental health treatment. (SAC ¶¶ 91, 93.) In this proposal, Sheriff Dean allegedly identified six problems related to treating the mentally ill due to this shortage of space: (1) the release of inmate-patients from medical beds back into the general population prior to the completion of their medical treatment plans; (2) where the facility is not designed for treatment or for "evidence-based programming," the effectiveness of the treatment provided has been diminished; (3) the mental health housing unit is located near the main circulation area, creating undo stress on the mental health inmate population; (4) lack of space requires treatment to take place in hallways; (5) the limited space requires inmate-patients to be handcuffed to individual tables within the dayroom to allow for safe programming; and, (6) inmate-

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL MINUTES – GENERAL**

| Case No. | CV 16-03084-BRO (RAOx) | | Date | March 7, 2017 |
|----------|------------------------|---|------|---------------|
| Title | M.S. ET AL. V. COUNTY OF VENTURA ET AL. | | | |

patients housed in VCPTDF do not have access to higher-level programming otherwise available at TRJ, due to VCPTDF's space limitations. (SAC ¶ 95.)

### 3.    The Factual Circumstances of Plaintiffs' Cases

#### a.    Plaintiff Matthew Scott

On August 24, 2015, the Ventura County District Attorney filed a complaint alleging a single felony count of residential burglary (as well as several allegations regarding prior convictions) against Plaintiff Matthew Scott. (SAC ¶ 8.) Bail was set at $175,000 and he was remanded to the Sheriff's custody. (*Id.*) The next day, he was arraigned in the Superior Court of California, County of Ventura and entered a plea of not guilty. (*Id.*) On November 5, 2015, Plaintiff Scott's attorney declared a doubt as to his competency to stand trial. (SAC ¶ 9.) The criminal proceedings were suspended and that same day Dr. Katherine Emerick, Ph.D., a forensic psychologist, was ordered to perform a competency evaluation of Matthew Scott. (*Id.*) Dr. Emerick found Plaintiff Scott to be incompetent and filed a report with the court. (*Id.*) On November 30, 2015, Plaintiff Scott was formally found to be incompetent by the Ventura County Superior Court. (*Id.*) The court found that Plaintiff Scott consented to the administration of psychotropic medications and referred the case to MHM Services for a placement recommendation. (*Id.*)

On December 14, 2015, the court held a hearing on Plaintiff Scott's placement, ordering that he be placed at any state hospital. (SAC ¶ 10.) The court also found that the maximum commitment time was three years and awarded him zero days of custody credit. (*Id.*) Plaintiff Scott was then remanded to the custody of the Ventura County Sheriff, who was ordered to transport him to Patton. (*Id.*) Plaintiff Scott's 1370 packet was provided to the VCSO on December 24, 2015. (*Id.*) Plaintiff was not transported to Patton, however, until April 28, 2016. (*Id.*)

While incarcerated, Plaintiffs allege that Plaintiff Scott was disciplined numerous times for violations of jail rules, mostly due to his mental illness. (SAC ¶ 11.) For example, Plaintiffs describe an instance where Plaintiff Scott believed he was being attacked by the devil, and thus, acted out by tearing off his plastic armband. (*Id.*) His discipline included the loss of access to the commissary, loss of visits, and isolation in a safety cell. (*Id.*)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL MINUTES – GENERAL**

| Case No. | CV 16-03084-BRO (RAOx) | Date | March 7, 2017 |
|----------|------------------------|------|---------------|
| Title | M.S. ET AL. V. COUNTY OF VENTURA ET AL. | | |

### b. Plaintiff Omar Mojica

On April 8, 2014, Plaintiff Omar Mojica was arrested and booked into Ventura County Jail on suspicion of attempted robbery. (SAC ¶ 12.) On April 10, 2014, the Ventura County District Attorney filed a complaint against him for a single felony count of attempted robbery (with additional allegations regarding prior convictions and use of a weapon during the commission of the crime). (*Id.*) Bail was set at $110,000, and he was remanded to the custody of the Sheriff. (*Id.*) On May 7, 2014, Plaintiff Mojica was arraigned in the Superior Court of California, County of Ventura and entered a plea of not guilty. (*Id.*) The same day, Plaintiff Mojica's attorney declared a doubt as to his competency. (*Id.*) Criminal proceedings were suspended and competency proceedings were initiated. (*Id.*) Dr. John Nightingale, Ph.D., a clinical psychologist, was ordered to perform a competency evaluation. (*Id.*) On September 10, 2014, after several continuances, Dr. Ines Monguio, another clinical psychologist, filed a report with the court finding Plaintiff Mojica incompetent to stand trial. (*Id.*) The case was continued until September 24, 2014, and was referred for a placement recommendation. (*Id.*)

On September 26, 2014, the court found that Omar Mojica consented to the administration of psychotropic medication and ordered that Plaintiff Mojica be placed in Patton State Hospital. (SAC ¶ 13.) The court found that the maximum commitment time was three years and awarded him custody credit of 344 days. (*Id.*) The court committed Plaintiff Mojica to the custody of the Sheriff and ordered that he be committed to Patton. (*Id.*) On December 23, 2015, a notice of admission to the DSH was filed. (*Id.*) On March 30, 2015, DSH sent the court a notice of competency, and on April 10, 2015, Plaintiff Mojica returned to court. (*Id.*) Criminal proceedings resumed on April 17, 2015. (*Id.*)

After several continuances, Plaintiff Mojica's attorney requested that he receive mental health treatment pursuant to California Penal Code section 4011.6. (SAC ¶ 14.) The Court denied the request. (*Id.*) On August 14, 2015, Plaintiff Mojica entered a plea of not guilty by reason of insanity, and the court appointed two psychiatrists to evaluate him. (*Id.*) The psychiatrists filed their reports on October 13, 2015. (*Id.*) On November 25, 2015, Plaintiff Mojica's attorney declared a doubt as to his competency once again. (SAC ¶ 15.) Criminal proceedings were suspended and Dr. Thomas Lauren was appointed to evaluate Plaintiff Mojica. (*Id.*) On December 24, 2015, the court found Plaintiff Mojica incompetent to stand trial, and on January 6, 2016, MHM Services

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL MINUTES – GENERAL**

| Case No. | CV 16-03084-BRO (RAOx) | | Date | March 7, 2017 |
|---|---|---|---|---|
| Title | M.S. ET AL. V. COUNTY OF VENTURA ET AL. | | | |

provided a placement recommendation and he was committed to DSH. (*Id.*) Plaintiff Mojica was committed to the Sheriff's custody and the court ordered he be transported to Patton. (*Id.*) The court made a finding that the maximum term of imprisonment was three years and awarded him 521 days of custody credit. (*Id.*) On January 28, 2016, Plaintiff Mojica's 1370 packet was sent to the Ventura County Sheriff's Office. (*Id.*)

During Plaintiff Mojica's incarceration, he was disciplined several times for a variety of violations of the jail's rules, arising primarily from his mental illness. (SAC ¶ 16.) For instance, Plaintiffs provide an example of an instance in which Plaintiff Mojica became agitated in got into an altercation with another inmate after "hearing voices." (*Id.*) His discipline included five days in an isolation cell, loss of visits, loss of access to the commissary, and a disciplinary diet. (*Id.*) On May 19, 2016, Plaintiff Mojica was transported to Patton for treatment.[5] (*Id.*)

## C.    Procedural Background

Plaintiff's filed their Original Complaint in this action on May 4, 2016, alleging only three causes of action and omitting Dr. Adler, Dr. Pollack, DHS, and Patton State Hospital as Defendants.[6] (Dkt. No. 1.) On July 28, 2016, Plaintiffs filed their First Amended Complaint against all currently named Defendants and alleging seven causes of action. (*See* Dkt. No. 17.) On September 2, 2016, Defendants filed four Motions[7] to Dismiss. (*See* Dkt. Nos. 32, 35, 38, 39.) On October 24, 2016, the Court granted in part and denied in part Defendants' Motions. (*See* Dkt. No. 62 (hereinafter, "Order").) On November 7, 2016, Plaintiffs filed their Second Amended Complaint ("SAC"). (*See* SAC.) Plaintiffs bring ten causes of action in their SAC: (1) violation of due process;

---

[5] Plaintiffs include factual allegations regarding the nine putative class members. (*See* FAC ¶¶ 23–33.) As Defendants' Motions do not address the class allegations, the Court will not address the class members' factual allegations. In addition, as explained further below, Plaintiffs' SAC fails to comply with the Court's Order to include the names of any potential class members. (*See* Dkt. No. 62 at 34.)

[6] On the same day, Plaintiffs filed Petitions to Appoint Mary Rodgers-Vey and Adrian Mojica as guardians ad litem for Matthew Scott and Omar Mojica, respectively. (Dkt. Nos. 6, 7.) Their Petitions were granted on May 20, 2016. (Dkt. Nos. 14, 15.)

[7] The State Defendants, the CFMG Defendants, the County Defendants, and the MHM Defendants each filed separate Motions, as they do here.

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES – GENERAL

| Case No. | CV 16-03084-BRO (RAOx) | Date | March 7, 2017 |
|---|---|---|---|
| Title | M.S. ET AL. V. COUNTY OF VENTURA ET AL. | | |

(2) failure to provide adequate medical care to inmates; (3) violation of Title II of the Americans with Disabilities Act ("ADA") (against the State Defendants); (4) violation of Title II of the ADA (against the County Defendants); (5) violation of Title III of the ADA; (6) violation of § 504 of the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*; (7) violation of the Unruh Civil Rights Act ("UCRA"), Cal. Civ. Code § 51 *et seq.*; (8) violation of California Civil Code section 54 *et seq.*; (9) violation of California Civil Code section 52.1 (the "Bane Act"); and, (10) violation of the right to a speedy and public trial under the California Constitution. (*See* SAC.)

On December 6, 2016, the State and CFMG Defendants filed their Motions to Dismiss. (*See* State MTD; CFMG MTD.) The next day, the County Defendants and the MHM Defendants filed their Motions to Dismiss, (*see* County MTD; MHM MTD), and Plaintiffs filed their Request for Reconsideration, (*see* Reconsideration Mot.). On January 19, 2017, the State Defendants opposed Plaintiffs' Motion for Reconsideration. (*See* Dkt. No. 74.) On January 20, 2017, Plaintiffs filed their Oppositions to Defendants' Motions, as well as a Request for Judicial Notice. (*See* Dkt. Nos. 76 (hereinafter, "CFMG Opp'n"), 82 (hereinafter, "County Opp'n"), 78 (hereinafter, "MHM Opp'n"), 79 (hereinafter, "State Opp'n"), 80 (hereinafter, "RJN").)[8] On February 8, 2017, the State Defendants replied. (*See* Dkt. No. 87 (hereinafter, "State Reply").) On February 9, 2017, Plaintiffs filed a Reply in support of their Motion for Reconsideration, and the CFMG, County, and MHM Defendants filed their Replies in support of their Motions to Dismiss. (*See* Dkt. Nos. 90, 92, 93, 94 (hereinafter, "County Reply").)

## III.   REQUEST FOR JUDICIAL NOTICE

When deciding a motion to dismiss, a court typically does not look beyond the complaint in order to avoid converting a motion to dismiss into a motion for summary judgment. *See Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991). Notwithstanding this precept, a court may properly consider (1) material which is included as part of the complaint, (2) documents incorporated by reference into the complaint, and, (3) material subject to judicial notice under Federal Rule of Evidence

---

[8] Plaintiffs initially filed their Opposition to the County Defendants' Motion on January 20, 2017. (*See* Dkt. No. 77.) On February 1, 2017, however, Plaintiffs filed a Revised Opposition. (*See* Dkt. No. 82.) It is the Revised Opposition to which the Court refers throughout this Order.

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES – GENERAL

| Case No. | CV 16-03084-BRO (RAOx) | | Date | March 7, 2017 |
|---|---|---|---|---|
| Title | M.S. ET AL. V. COUNTY OF VENTURA ET AL. | | | |

201. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001); *see also Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1134, 1137 (C.D. Cal. 2010) ("A court may "consider documents that are incorporated by reference but not physically attached to the complaint if they are central to the plaintiff's claim and no party questions their authenticity."). Under Rule 201(b), a court may judicially notice facts not subject to reasonable dispute because they are either (1) generally known within the trial court's territorial jurisdiction, or, (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201(b). A court "must take judicial notice if a party requests it and the court is supplied with the necessary information." *See* Fed. R. Evid. 201(c)(2); *In re Icenhower*, 755 F.3d 1130, 1142 (9th Cir. 2014).

As noted above, Plaintiff filed a Request for Judicial Notice along with its Oppositions. (*See* RJN.) Plaintiffs request that the Court take judicial notice of four documents: (1) Exhibit 1, California Senate Bill 863, Adult Local Criminal Justice Facilities Construction Financing Program Proposal Form; (2) Exhibit 2, Ventura County Grand Jury 2015–2016, Final Report: Annual Detention Facilities and Law Enforcement Issues, dated May 24, 2016; (3) Exhibit 3, California Legislative Analyst Report, "An Alternative Approach: Treating the Incompetent to Stand Trial," dated January 3, 2012; and, (4) Exhibit 4, a City News Group article detailing expansion of San Bernardino County's restoration of competency program. (*See* RJN.)

In the Court's prior Order, it took judicial notice of Exhibits 1 and 2. (*See* Order at 10–11.) The Senate Bill and the Ventura County Grand Jury Report are public records which are not reasonably subject to dispute. *See Stemplewski v. Suntrust Mortg., Inc.*, No. C 10-01507 HRL, 2010 WL 2179152, at *1 (N.D. Cal. May 26, 2010) (taking judicial notice of the legislative history of a California Senate Bill); *Retired Emps. Ass'n of Orange Cty., Inc. v. County of Orange*, 632 F. Supp. 2d 983, 985 (C.D. Cal. 2009) (taking judicial notice of County of Board Supervisors' Resolution, a California State Public Employee Post-Employment Benefits Commission Report, and a County of Orange Auditor-Controller Department Citizens' Report). Further, as to Exhibit 3, the Court finds that a California Legislative Analyst Report is not subject to reasonable dispute because its accuracy can be accurately and readily determined through easily verifiable sources. Accordingly, the Court **GRANTS** Plaintiffs' Request for Judicial Notice as to Exhibits 1, 2, and 3.

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES – GENERAL

| Case No. | CV 16-03084-BRO (RAOx) | Date | March 7, 2017 |
|----------|------------------------|------|---------------|
| Title | M.S. ET AL. V. COUNTY OF VENTURA ET AL. | | |

As to Exhibit 4, the Court may judicially notice the article's existence, but it may not take judicial notice of its contents. *See Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1031 n.90 (C.D. Cal. 2015); *see also United States v. Kane*, No. 2:13-cv-250-JAD-VCF, 2013 WL 5797619, at *9 (D. Nev. 2013) ("When a court takes judicial notice of publications like websites and newspaper articles, the court merely notices what was in the public realm at the time, not whether the contents of those articles were in fact true." (citing *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999))). Therefore, the Court **GRANTS** Plaintiffs' request as to Exhibit 4 for this limited purpose.

On February 23, 2017—four days before the scheduled hearing of the instant Motions and seventeen days after Plaintiffs' Oppositions were due—Plaintiffs filed a Second Request for Judicial Notice, requesting that the Court take judicial notice of four additional documents. (*See* Dkt. Nos. 95, 96.) It does not appear that Plaintiffs relied on these documents in their Oppositions. Due to the untimeliness of their filing and the fact that to consider them would constitute new argument to which Defendants have not an opportunity to respond, the Court **DENIES** Plaintiffs' second request and did not consider the attached documents in reaching its decision.

## IV.   LEGAL STANDARD

### A.   Motion to Dismiss

Under Rule 8(a), a complaint must contain a "short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). If a complaint fails to do this, the defendant may move to dismiss it under Rule 12(b)(6). Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, there must be "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| Case No. | CV 16-03084-BRO (RAOx) | Date | March 7, 2017 |
|---|---|---|---|
| Title | M.S. ET AL. V. COUNTY OF VENTURA ET AL. | | |

short of the line between possibility and plausibility'" that the plaintiff is entitled to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557).

In ruling on a motion to dismiss for failure to state a claim, a court should follow a two-pronged approach: first, the court must discount conclusory statements, which are not presumed to be true; and then, assuming any factual allegations are true, the court must determine "whether they plausibly give rise to entitlement to relief." *See id.* at 679; *accord Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012). A court should consider the contents of the complaint and its attached exhibits, documents incorporated into the complaint by reference, and matters properly subject to judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007); *Lee*, 250 F.3d at 688.

Where a district court grants a motion to dismiss, it should provide leave to amend unless it is clear that the complaint could not be saved by any amendment. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) ("Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment.").

## B.    Motion for Reconsideration

A final order may be reconsidered "under either Federal Rule of Civil Procedure 59(e) (motion to alter or amend a judgment) or Rule 60(b) (relief from judgment)." *Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS Inc.*, 5 F.3d 1255, 1262 (9th Cir. 1993). If the motion is filed within twenty-eight days of entry of judgment, it is treated as a Rule 59(e) motion. *See Am. Ironworks & Erectors Inc. v. N. Am. Constr. Corp.*, 248 F.3d 892, 899 (9th Cir. 2001) (referring to a previous version of Rule 59(e) requiring the motion to be filed within ten days of judgment instead of twenty-eight); Fed. R. Civ. P. 59(e) (requiring a motion to alter or amend a judgment to be filed within twenty-eight days after entry of judgment); *see also* Fed. R. Civ. P. 59 advisory committee's notes to 2009 Amendments. Otherwise, the motion is treated as a Rule 60(b) motion. *Am. Ironworks & Erectors*, 248 F.3d at 899.

Rule 59(e) permits reconsideration where (1) the court "is presented with newly discovered evidence," (2) the court "committed clear error or the initial decision was manifestly unjust," or (3) "if there is an intervening change in controlling law." *Sch. Dist. No. 1J*, 5 F.3d at 1263. Other highly unusual circumstances may also warrant

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL MINUTES – GENERAL**

| Case No. | **CV 16-03084-BRO (RAOx)** | Date | March 7, 2017 |
|----------|----------------------------|------|---------------|
| Title | **M.S. ET AL. V. COUNTY OF VENTURA ET AL.** | | |

reconsideration under the rule.  *Id.*  Rule 60(b) sets forth the following grounds for relief from a final judgment, order, or proceeding: (1) "mistake, inadvertence, surprise, or excusable neglect"; (2) "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial"; (3) fraud; (4) a void judgment; (5) a satisfied, released, or discharged judgment; or, (6) "any other reason that justifies relief."  Fed. R. Civ. P. 60(b); *see also Am. Ironworks & Erectors*, 248 F.3d at 899.

The Central District's Local Rules further limit the grounds for reconsideration. Under Local Rule 7-18, a party may seek reconsideration only upon a showing of one of the following: (1) "a material difference in fact or law" from that initially presented to the Court, which the party could not have known by exercising reasonable diligence; (2) "the emergence of new material facts or a change of law" after the Court's order; or, (3) "a manifest showing of a failure to consider material facts presented to the Court."  C.D. Cal. L.R. 7-18.  Local rules have the force and effect of law so long as they are not inconsistent with a statute or the Federal Rules.  *See Atchison, Topeka & Santa Fe R.R. Co. v. Hercules Inc.*, 146 F.3d 1071, 1074 (9th Cir. 1998).  A court should not depart from the local rules unless the effect on the parties' rights would be "so slight and unimportant that the sensible treatment is to overlook it."  *Prof'l Programs Grp. v. Dep't of Commerce*, 29 F.3d 1349, 1353 (9th Cir. 1994).

## V.    DISCUSSION

### A.    Plaintiffs' Due Process Claim for Failure to Provide Mental Health Restoration Services

Plaintiffs' first cause of action alleges a violation of due process under both the Fourteenth Amendment and Article 1, Section 7 of the California Constitution.  (*See* SAC ¶¶ 117–32.)  Plaintiffs claim that "[s]ubstantive and procedural due process thus require that Plaintiffs, who have not been convicted civilly committed persons be provided with mental health treatment that gives them a realistic opportunity to be cured or improve the mental condition for which they were confined."  (SAC ¶ 125.)  The Ninth Circuit has held that "[d]ue process 'requires *states* to provide civilly-committed persons with access to mental health treatment that gives them a realistic opportunity to be cured and released.'"  *Allen v. Mayberg*, 577 F. App'x 728, 732 (9th Cir. 2014) (emphasis added) (quoting *Sharp v. Weston*, 233 F.3d 1166, 1172 (9th Cir. 2000)).  Thus, in the Court's prior Order, it held that Plaintiffs are correct in asserting that they have an actionable

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES – GENERAL

| Case No. | CV 16-03084-BRO (RAOx) | Date | March 7, 2017 |
|---|---|---|---|
| Title | M.S. ET AL. V. COUNTY OF VENTURA ET AL. | | |

constitutional right to restorative mental health treatment, but that Plaintiffs may only allege a violation of those rights against the State Defendants. (*See* Order at 15.) Nonetheless, the Court noted that Plaintiffs could potentially bring other due process claims against the other Defendants. Accordingly, Plaintiffs' allege due process claims in their SAC against all Defendants.

//

//

### 1.    State Defendants

#### a.    Sovereign Immunity

First, the State Defendants argue that they are entitled to sovereign immunity under the Eleventh Amendment. (State MTD at 7–10.) In their Opposition, Plaintiffs concede that they may not pursue their first cause of action against DSH and Patton. (See State Opp'n at 3 n.1, 9.) Accordingly, DSH and Patton are **DISMISSED with prejudice** from Plaintiffs' first cause of action on the basis of sovereign immunity.

Next, the State Defendants contend that Plaintiffs' state law claims are entirely barred against the individual State Defendants in their official capacity.[9] (*See* State MTD at 7–10; State Reply at 3.) The Court has already dismissed Plaintiffs' state law claims against Defendants Ahlin and Oreol in their official capacity with prejudice. (*See* Order at 25 n.19.) Nonetheless, Plaintiffs reassert a claim brought under the California Constitution against the individual State Defendants. (*See* SAC at 42.) The Supreme Court has unequivocally held that "a claim that state officials violated state law in

---

[9] Plaintiffs ask the Court to reconsider its holding in its prior Order that Plaintiffs' state law claims against the individual State Defendants are dismissed with prejudice. (*See* Reconsideration Mot.) Plaintiffs explain that they only intended to concede that these claims against the individual State Defendants in their official capacity—not their individual capacity. (*See id.*) The Court noted this distinction in the Order, (*see* Order at 25 n.19), though the distinction was not reiterated in its conclusion, (*see* Order at 34). Regardless, once a plaintiff files an amended complaint, the prior pleading "no longer performs any function." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1263 (9th Cir. 1992). Here, the SAC includes allegations against the individual State Defendants in their individual capacity and the Court has addressed them above. Thus, how the Court viewed the First Amended Complaint is now irrelevant, and Plaintiffs' Motion for Reconsideration is **DENIED as moot**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| Case No. | CV 16-03084-BRO (RAOx) | | Date | March 7, 2017 |
|---|---|---|---|---|
| Title | M.S. ET AL. V. COUNTY OF VENTURA ET AL. | | | |

carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984). Accordingly, to the extent Plaintiff brings state law claims against Defendants Ahlin and Oreol in their *official* capacities, these claims are **DISMISSED with prejudice**.

Plaintiffs contend, however, that they may still seek injunctive relief against Defendants Ahlin and Oreol in their official capacities for federal law claims, and seek damages against them in their personal capacities for both state and federal law claims. (State Opp'n at 11.) The Supreme Court has often "found federal jurisdiction over a suit against a state official when that suit seeks only prospective injunctive relief in order to end a continuing violation of federal law." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 73 (1996) (internal quotation marks omitted); *see also Dittman v. California*, 191 F.3d 1020, 1026 (9th Cir. 1997) ("[A] federal court, consistent with the Eleventh Amendment, may *enjoin* state officials to conform their future conduct to the requirements of federal law." (quoting *Quern v. Jordan*, 440 U.S. 332, 337 (1979))). Thus, Plaintiffs are correct in asserting that they may seek prospective injunctive relief against the individual State Defendants.

Further, the Supreme Court has held "that state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983. The Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under § 1983 solely by virtue of the 'official' nature of their acts." *Hafer v. Melo*, 502 U.S. 21, 31 (1991). Thus, Plaintiffs are also correct in asserting that they may pursue the individual State Defendants for damages to the extent their claims are against them in their *personal* capacity for alleged violations of state or federal law. While "imposing personal liability on state officers may hamper their performance of public duties," these "concerns are properly addressed within the framework of our personal immunity jurisdiction," i.e., qualified immunity (as discussed below). *Id.*

### b.    **Qualified Immunity**

Defendants Ahlin and Oreol, however, argue that they are entitled to dismissal based on qualified immunity and because Plaintiffs have failed to plead facts indicating that they were individually responsible for any constitutional violations. (*See* State MTD at 10–13.) "The doctrine of qualified immunity protects government officials 'from

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES – GENERAL

| Case No. | **CV 16-03084-BRO (RAOx)** | Date | March 7, 2017 |
|---|---|---|---|
| Title | **M.S. ET AL. V. COUNTY OF VENTURA ET AL.** | | |

liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). A qualified immunity analysis proceeds in two phases: first, the court must determine whether there is a constitutionally protected right at issue, and second, the court must determine whether that right was clearly established, *id.* at 232, though the court may examine the second question first for the sake of judicial economy, *id.* at 243. The Court has already rejected Defendants Ahlin and Oreol's qualified immunity argument in its prior Order. (*See* Order at 15 n.13.) Nonetheless, Defendants Ahlin and Oreol argue that the Court erred because, even if the right to timely medical restoration treatment was well-established, the definition of "timely" is inherently fluid and incapable of being "clearly established." (*See* State MTD at 10 n.4.) Further, according to the State Defendants, Plaintiffs' claim that they were required to admit mentally incompetent patients within seven days was not clearly established law. (*See* State Reply at 4.)

However, as the Court explained, the Ninth Circuit held in *Oregon Advocacy Center v. Mink*, 322 F.3d 1101, 1121–22 (9th Cir. 2003), that a defendant's due process rights are violated when the state refuses to admit them to mental hospitals in a timely manner. Specifically, *Mink* held that "[h]olding incapacitated criminal defendants in jail for weeks or months violates their due process rights because the nature and duration of their incarceration bear no reasonable relation to the evaluative and restorative purposes for which courts commit those individuals." *Id.* at 1122. Here, Plaintiffs allege that they were held in custody for approximately three months before being transferred to a mental health facility. (*See* SAC ¶¶ 10, 13.) As *Mink* warns against holding mentally incompetent defendants "for weeks or months," the Court finds that Defendants Ahlin and Oreol were on sufficient notice that their conduct was unconstitutional.

Further, the Court does not agree with the State Defendants' characterization of Plaintiffs' due process claims. The State Defendants argue that Plaintiffs' are alleging that the State Defendants' failure to perform competency evaluations within seven days is unconstitutional, and that, because this seven-day time requirement was not clearly established, they are entitled to qualified immunity. (*See* State Reply at 4–5.) While Plaintiffs' Prayer for Relief seeks an order from the Court requiring Defendants to comply with this seven-day requirement, (*see* SAC at 72), Plaintiffs' allegations are that Defendants failed to provide mental health restoration services within a reasonable period of time—that time period is not necessarily limited to seven days, (*see* SAC ¶¶ 96, 118,

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL MINUTES – GENERAL**

| Case No. | CV 16-03084-BRO (RAOx) | | Date | March 7, 2017 |
|----------|------------------------|---|------|---------------|
| Title | M.S. ET AL. V. COUNTY OF VENTURA ET AL. | | | |

125–26).  As determined above, the requirement that mental health restoration treatment be provided in a reasonable time frame is well-established law within the Ninth Circuit. Thus, the State Defendants are not entitled to qualified immunity.

### c.     Supervisor Liability

Next, Defendants Ahlin and Oreol contend that Plaintiffs have failed to allege sufficient facts indicating that they are individually liable, because § 1983 liability may not be premised on supervisor liability.  (*See* State MTD at 11.)  "To state a claim under § 1983 against state officials in their individual capacities, a plaintiff must plead that the officials, 'acting under color of state law, caused the deprivation of a federal right.'" *OSU Student All. v. Ray*, 699 F.3d 1053, 1061 (9th Cir. 2012).  When a supervisor is held liable in a § 1983 action, "the supervisor is being held liable for his or her own culpable action or inaction, not held vicariously liable for the culpable action or inaction of his or her subordinates." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011).  "When a supervisory official advances or manages a policy that instructs its adherents to violate constitutional rights, then the official specifically intends for such violations to occur." *OSU Student All.*, 699 F.3d at 1076; *see also Estate of Prasad ex rel. Prasad v. County of Sutter*, 958 F. Supp. 2d 1101, 1113 (E.D. Cal. 2015) ("Supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." (internal quotation marks omitted) (quoting *Clement v. Gomez*, 298 F.3d 898, 905 (9th Cir. 2002))).

Here, Plaintiffs' SAC alleges that Defendant Ahlin is the Director of DSH and "is ultimately responsible for the administration of all of the DSH facilities in the state including Patton State Hospital."  (SAC ¶ 36.)  Plaintiffs also allege that Defendant Oreol is the Executive Director of Patton and "is responsible for oversight, operation, and management of Patton and competency restoration services for individuals with mental health disabilities in pending criminal proceedings."  (SAC ¶ 38.)  In addition, Plaintiffs contend that "Defendant Oreol knows or should know that incarcerated IST detainees who are ordered to be placed at Patton will not receive appropriate mental health treatment in the jail for months while Patton's 'one in, one out' policy slowly grinds forward."  (*Id.*)  In their Opposition, Plaintiffs claim that their allegations "place direct responsibility on both Ahlin and Oreol as the persons in charge of both DSH and Patton who have instituted this 'one in, one out' policy."  (State Opp'n at 12.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| Case No. | CV 16-03084-BRO (RAOx) | Date | March 7, 2017 |
|---|---|---|---|
| Title | M.S. ET AL. V. COUNTY OF VENTURA ET AL. | | |

At the outset, the Court notes that this is not a case where Plaintiffs are alleging that, for instance, several subordinate state employees have individually violated Plaintiffs' constitutional rights and that Defendants Ahlin and Oreol failed to prevent the harm. Rather, Plaintiffs are alleging that Defendants Ahlin and Oreol in their role as Director of DSH and Executive Director of Patton, respectively, have implemented or acquiesced to the implementation of an unconstitutional "one in, one out" policy at Patton.

The Court finds that Plaintiffs' allegations are sufficient to give rise to the inference that Defendants Ahlin and Oreol were either personally responsible for the implementation of the allegedly unconstitutional one in, one out policy, or knew of the policy and that IST detainees, like Plaintiffs, were not receiving timely mental health restoration services and failed to amend the policy. In Defendant Ahlin's role as the Director of DSH, Plaintiffs allege that she was responsible for administrating all DSH facilities, including Patton.[10] (SAC ¶ 36.) Thus, Plaintiffs' allegations permit for the inference that she knew, or should have known, of the one in, one out admission policy at Patton and that IST detainees were frequently not receiving timely mental health restoration services but failed to take any action to prevent this untimely treatment.

Further, as Executive Director of Patton, Plaintiffs allege that Defendant Oreol was responsible for overseeing and managing Patton's competency restoration services for individuals with mental health disabilities in pending criminal proceedings and that he knew, or should have known, that IST detainees did not receive appropriate mental health treatment in jail. (See SAC ¶ 38.) The Court finds that Plaintiffs' allegations allow the inference that Defendant Oreol was responsible for, or acquiesced in, the allegedly unconstitutional policy and the failure to provide timely mental health treatment to IST detainees.[11] See Prasad, 958 F. Supp. 2d at 1114 (denying motion to dismiss where the

---

[10] In support, Plaintiffs reference a statement that Defendant Ahlin made in the news article that they included as Exhibit 4 to their Request for Judicial Notice. (See State Opp'n at 13.) As explained above, the Court does not consider the truth of the facts contained in that news article, but considers only that it existed in the public realm. Accordingly, the Court does not rely on Defendant Ahlin's alleged statements in the news article in reaching its conclusion.

[11] The State Defendants argue that the SAC fails to establish a "causal connection" between Defendants Ahlin and Oreol's allegedly unlawful actions and Plaintiffs' constitutional deprivations. (State Reply at 7.) The Court disagrees. Plaintiffs have adequately alleged that in allowing the one in, one out policy to

LINK:

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES – GENERAL

| Case No. | CV 16-03084-BRO (RAOx) | Date | March 7, 2017 |
|---|---|---|---|
| Title | M.S. ET AL. V. COUNTY OF VENTURA ET AL. | | |

plaintiffs alleged that supervisor knowingly refused to prevent actions "which they knew or reasonably should have known would cause others to inflict constitutional injury" (alterations and internal quotation marks omitted)).

Further, this case is different than the case on which the State Defendants rely, *Hydrick v. Hunter*, 669 F.3d 937 (9th Cir. 2007). (*See* State MTD at 12.) There, the Ninth Circuit found that the plaintiffs failed to plausibly plead a claim against the state official defendants because the plaintiffs failed to alleged "a *specific* policy implemented by the Defendants or a *specific* event or events instigated by the Defendants that led to these purportedly unconstitutional searches." *Hydrick*, 669 F.3d at 942. Here, however, Plaintiffs *do* plead a specific policy and specific events that allegedly gave rise to a constitutional violation; namely, Patton's one in, one out policy that has resulted in the delay of mental health restoration treatment for IST detainees.

Accordingly, the Court **DENIES** the State Defendants' Motion as to Plaintiffs' first cause of action against Defendants Ahlin and Oreol for injunctive relief in their official capacities and for injunctive relief and damages in their individual capacities.

### 2. The County and CFMG Defendants

In its prior Order, the Court held that, based on the Ninth Circuit's guidance in *Mink* and the facts of this case, the duty to provide mental health restoration services to Plaintiffs lies only with the State Defendants once, as here, a court orders an incompetent defendant be committed to a state hospital. (*See* Order at 17.) Despite the Court's holding, Plaintiffs attempt to reargue the issue and again claim that all Defendants violated Plaintiffs' due process rights by failing to provide restorative mental health treatment.[12] (*See* County Opp'n at 7–12; CFMG Opp'n at 14–16.) However, Plaintiffs provide no new authority; rather, they simply take issue with the Court's prior analysis. The Court will not repeat its analysis here. In sum, as the Court held in its previous

---

proceed, and not otherwise providing IST detainees like Plaintiffs with mental health restoration treatment, Defendants Ahlin and Oreol's actions (or inaction) have violated Plaintiffs' right to timely mental health restoration treatment.

[12] As addressed further below, Plaintiffs now bring two due process claims: one for failure to provide mental health *restorative* treatment, and one for failure to provide appropriate mental health treatment at all. (*See* SAC.) The first cause of action appears to be limited to Defendants' alleged failure to provide mental health *restorative* treatment.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL MINUTES – GENERAL**

| Case No. | CV 16-03084-BRO (RAOx) | | Date | March 7, 2017 |
|---|---|---|---|---|
| Title | M.S. ET AL. V. COUNTY OF VENTURA ET AL. | | | |

Order, while the court in Plaintiffs' cases *could* have committed them to the custody of the county jail and thereby triggered a duty on the County Defendants' part to provide mental health restoration treatment, the court did not do so. Instead, it committed Plaintiffs to DSH, (*see* SAC ¶¶ 10, 15), creating a duty on behalf of the State Defendants to provide mental health restoration services to Plaintiffs, *see Mink*, 322 F.3d at 1116 (holding that it was the state facilities—not the counties—"that has the duty to accept and treat incapacitated defendants once they have been certified as such by a circuit court"); *see also id.* at 1115–16 (addressing former Oregon Statute that specifically indicated that the counties had a duty to provide treatment, unlike section 1370 here); *Allen*, 577 F. App'x at 732 ("Due process 'requires *states* to provide civilly-committed persons with access to mental health treatment that gives them a realistic opportunity to be cured and released.'" (emphasis added)).  Further, as Plaintiffs clarify that its first cause of action alleges due process violations based on the failure to timely provide mental health restoration treatment (and brings a separate cause of action for their other due process claims), and the Court finds that amendment to Plaintiffs' first claim would be futile, Plaintiffs' first cause of action against the County and the CFMG Defendants is **DISMISSED with prejudice**.

### 3.    The MHM Defendants

Finally, Plaintiffs also allege that MHM Services and Defendant Lopez in his role as the CONREP Community Program Director acted unconstitutionally in two ways: (1) by not issuing placement recommendations fast enough, contributing to Plaintiffs' delay in mental health restorative treatment; and, (2) by establishing a policy of frequently recommending that the court place IST detainees at Patton, despite knowing that admission to Patton will be delayed and will result in untimely mental health restoration treatment for the IST detainees.  (*See* MHM Opp'n at 9–12.)

As to Plaintiffs' first theory, section 1370(a)(2)(A) allows the community program director (i.e., Defendant Lopez) fifteen judicial days to submit a placement recommendation.  *See* Cal. Penal Code § 1370(a)(2)(A) ("The Court shall order the community program director or a designee to evaluate the defendant and to submit to the court within 15 judicial days of the order a written recommendation as to whether the defendant should be required to undergo outpatient treatment, or be committed to the State Department of State Hospitals or to any other treatment facility.").  While Plaintiffs allege in a conclusory manner that there have been delays in placement

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| Case No. | **CV 16-03084-BRO (RAOx)** | Date | March 7, 2017 |
|----------|---------------------------|------|---------------|
| Title | **M.S. ET AL. V. COUNTY OF VENTURA ET AL.** | | |

recommendations, (*see* SAC ¶ 39), Plaintiffs have not identified any specific instances of such delays.  In fact, Plaintiffs' allegations indicate that MHM Services provided timely recommendations in both Plaintiffs Scott and Mojica's cases.  (*See* SAC ¶¶ 9, 10, 12, 13.) Thus, it is unclear how MHM Services has delayed placement recommendations.

As to Plaintiffs' second theory, the Court finds it also fails.  Plaintiffs appear to be claiming that the MHM Defendants may be held liable for its discretionary decision to place IST detainees at Patton despite the delay in admission to Patton.  (*See* MHM Opp'n at 10–12.)  Even assuming this theory may give rise to liability (an issue which the Court does not decide at this juncture as the parties do not fully address it), however, Plaintiffs do not adequately plead facts indicating that the MHM Defendants had such discretion. Rather, according to Plaintiffs' allegations, the community program director makes a placement recommendation based on DSH's guidelines.  (*See* SAC ¶ 49.B (citing Cal. Penal Code § 1370(a)(2)(A)).)  Thus, it appears that it is DSH's guidelines which have led to the allegedly unconstitutional placement recommendations—not the MHM Defendants' discretion.  Moreover, Plaintiffs do not allege in their SAC that the MHM Defendants have any discretion to vary from these guidelines, or that it was the MHM Defendants' independent decisions, rather than the DSH's guidelines, that drove the MHM Defendants' Patton placement recommendations.[13]

Further, even if the Court found that Plaintiffs did adequately allege that the MHM Defendants had the requisite discretion, the Court finds that Plaintiffs' have not alleged sufficient facts to establish causation.  When bringing a claim based on supervisor liability (as Plaintiffs are against Defendant Lopez here), the law requires "a sufficient causal connection" between the defendant's conduct and the constitutional right.  *See Starr*, 652 F.3d at 1207.  "The requisite causal connection can be established by setting in motion a series of acts by others, . . . or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause

---

[13] In their Opposition, Plaintiffs assert that the MHM Defendants "had discretionary authority to place inmates in a locked or controlled facility other than Patton, which would obviate the problems caused by the delay including the denial of adequate restorative mental health treatment."  (MHM Opp'n at 10.) Plaintiffs make no mention of this discretion in their SAC, however.  In fact, while section 1370 permits a placement recommendation at a facility other than a state mental hospital, *see* Cal. Penal Code § 1370(a)(2)(A), Plaintiffs' own allegations indicate that the community program director's decision is made based on DSH's guidelines, (*see* SAC ¶ 49.B).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL MINUTES – GENERAL**

| Case No. | CV 16-03084-BRO (RAOx) | | Date | March 7, 2017 |
|---|---|---|---|---|
| Title | M.S. ET AL. V. COUNTY OF VENTURA ET AL. | | | |

others to inflict a constitutional injury." *Id.* at 1207–08 (alterations, citations, and internal quotation marks omitted).

Here, though Plaintiffs allege in a conclusory manner that "Defendant Lopez knows or should know that incarcerated IST detainees who are ordered to be placed at Patton will not receive appropriate mental health treatment in the jail for months while Patton's 'one in, one out' policy slowly grinds forward," (SAC ¶ 40), Plaintiffs allege no facts supporting this proposition. For example, Plaintiffs do not allege any facts suggesting that Defendant Lopez or MHM Services was responsible for, or aware of, the alleged one in, one out policy. In addition, Plaintiffs do not allege that the MHM Defendants were responsible for monitoring, or otherwise aware of, the congestion at the various facilities to which it could recommend placement; in fact, Plaintiffs' allegations do not indicate that current population levels or delays in admission were a placement consideration. Therefore, Plaintiffs have not alleged a sufficient causal connection between the MHM Defendants' conduct and Plaintiffs' alleged constitutional deprivations. Unlike Plaintiffs' claims against the County and the CFMG Defendants, however, it is not clear that amendment is futile. Therefore, Plaintiffs' first cause of action against the MHM Defendants is **DISMISSED without prejudice**.

**B.     Plaintiffs' Due Process Claim for Failure to Provide Mental Health Treatment**

In their SAC, Plaintiffs have added a cause of action alleging that the County and the CFMG Defendants violated Plaintiffs' right to due process by failing to provide adequate medical care to inmates. (*See* SAC ¶¶ 133–51.) As a threshold matter, the County Defendants argue that the Court should dismiss Plaintiffs' first, second, and tenth causes of action for violating the Court's prior Order allowing leave to amend. (*See* County MTD at 3–4.) The County Defendants claim that Plaintiffs' SAC goes beyond the scope of amendment allowed by the Court in its first Order. (*See id.*) The Court disagrees. In its prior Order, the Court did not limit Plaintiffs' right to amend only to certain causes of action; rather, it dismissed several of Plaintiffs' claims without prejudice, allowing Plaintiffs to replead their claims as they saw fit. (*See* Order.) Accordingly, the Court **DENIES** the County Defendants' Motion on this ground. Therefore, the Court turns to the remainder of Defendants' arguments.

**1.     The County Defendants**

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL MINUTES – GENERAL**

| Case No. | CV 16-03084-BRO (RAOx) | | Date | March 7, 2017 |
|---|---|---|---|---|
| Title | M.S. ET AL. V. COUNTY OF VENTURA ET AL. | | | |

The County Defendants do not argue that Plaintiffs have failed to adequately plead their second cause of action; rather, they raise several arguments contending that Plaintiff's claims against them are barred or should be limited. (*See* County MTD.)  The Court will address argument in turn.

### a.    Qualified Immunity

First, the County Defendants argue that Sheriff Dean is entitled to qualified immunity as to the second cause of action. (*See* County MTD at 5–7.)  As explained above, "[t]he doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson*, 555 U.S. 223, 231 (2009).  The analysis involves two questions: first, whether there is a constitutionally protected right at issue; and second, whether that right was clearly established at the time of the defendant's conduct, *id.* at 232, though the court may examine the second question first for the sake of judicial economy, *id.* at 243.

Here, the County Defendants view Plaintiffs' allegations as centering on the failure to provide restorative mental health treatment, and claim that Sheriff Dean was not on notice that he was required to provide such treatment. (*See* County MTD at 7.)  But the County Defendants do not address Plaintiffs' second claim, alleging that the County has failed to provide medical health treatment in general.  It is well-established that non-convicted prison detainees have the right to sufficient medical treatment.  *See Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir. 1996).  "This duty to provide medical care encompasses detainees' psychiatric needs."[14]  *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002), *overruled on other grounds by Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016).  Thus, there is both (1) a constitutional right at issue (a pretrial detainee's right to mental health treatment), and, (2) that treatment was well-established at the time of the County Defendants' alleged conduct, as the Ninth Circuit clearly established that right no later than 2002.  *See id.*  Accordingly, the Court

---

[14] Further, "[b]ecause pretrial detainees are not convicted prisoners, the rights of those in police custody to receive medical treatment arise under the Due Process Clause of the Fourteenth Amendment," rather than the Eighth Amendment.  *Carnell*, 74 F.3d at 979.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| Case No. | CV 16-03084-BRO (RAOx) | | Date | March 7, 2017 |
|---|---|---|---|---|
| Title | M.S. ET AL. V. COUNTY OF VENTURA ET AL. | | | |

finds that qualified immunity does not bar Plaintiffs' second cause of action against Sheriff Dean.

### b.    Personal Liability

In addition, the County Defendants argue that Plaintiffs have failed to plead facts sufficient to establish that Sheriff Dean may be held personally liable for the alleged constitutional violations.  (*See* County Reply at 3–4.)  Plaintiffs contend that they have adequately pleaded facts regarding Sheriff Dean's supervisory role and that he had notice of the deficiencies in mental health treatment.  (*See* County Opp'n at 21.)  As explained above, where a plaintiff attempts to bring a claim against a supervisor, he must establish that the supervisor may be "held liable for his or her own culpable action or inaction, not held vicariously liable for the culpable action or inaction of his or her subordinates." *Starr*, 652 F.3d at 1207.  Further, a supervisor may "be held liable in his individual capacity if he knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known would cause others to inflict a constitutional injury." *Dubner v. City and County of San Francisco*, 266 F.3d 959, 968 (9th Cir. 2001).

Plaintiffs' allege here that Sheriff Dean was responsible for managing and controlling the Ventura County jail and the implementation of policies and procedures at VCPTDF.  (*See* SAC ¶ 30.)  But Plaintiff also alleges facts indicating that Sheriff Dean submitted a Proposal Form to the BSCC seeking construction financing for a new unit to assist inmates with medical and mental health needs.  (*See* SAC ¶¶ 89–95.)  Thus, the Court finds that Plaintiffs have failed to plead facts establishing that Sheriff Dean was "knowingly refus[ing] to terminate a series of acts by others" to provide mental health treatment to inmates.  *See Dubner*, 266 F.3d at 968.  To the contrary, Plaintiffs' allegations establish that Sheriff Dean was actively seeking sufficient mental health treatment for inmates in Ventura County jails.

To sufficiently plead a due process claim against an official for failure to provide medical treatment, a plaintiff must establish that the official was deliberately indifferent. *See Lemire v. Cal. Dep't of Corrs. & Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013). Deliberate indifference requires "something more than mere negligence," but less than intentional harm.  *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994).  Deliberate indifference may be manifested by (1) intentionally denying or delaying access to medical care, or, (2) intentionally interfering with treatment once it is prescribed.  *See*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| Case No. | CV 16-03084-BRO (RAOx) | | Date | March 7, 2017 |
|---|---|---|---|---|
| Title | M.S. ET AL. V. COUNTY OF VENTURA ET AL. | | | |

*Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976).  Here, even if Plaintiffs adequately
establish that Sheriff Dean was aware of a lack of medical treatment for inmates in
Ventura County jails, Plaintiffs' allegations indicate that Sheriff Dean was not acting
with deliberate indifference.  Rather, he was taking steps to correct the problem, (*see*
SAC ¶¶ 89–95), and, to the extent the issue continued, it was *despite* his best efforts, not
because of his indifference.  *See Burns v. Summer*, 993 F.2d 882, at *2 (9th Cir. 1993)
(unpublished) ("[D]efendants provided evidence that prison officials have followed the
recommendations of the health inspector and are attempting to solve the problem.  There
was no showing of deliberate indifference.").  Therefore, the Court finds that Plaintiffs
have failed to state a due process claim against Sheriff Dean.  Further, because any future
amendments to establish that Sheriff Dean acted with deliberate indifference would
require Plaintiffs to contradict their current allegations—which the law does not allow,
*see Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990)—Plaintiffs' second
cause of action is **DISMISSED with prejudice** against Sheriff Dean.  Moreover, it
appears that Plaintiffs' due process claims against Ventura County and the VCSO rely on
Sheriff Dean's actions.  Accordingly, Plaintiffs' claims against these Defendants are also
**DISMISSED with prejudice**.

### 2.      The CFMG Defendants

The CFMG Defendants also argue that Plaintiffs' second cause of action should be
dismissed as to them, because Plaintiffs fail to provide sufficient facts indicating that they
acted unconstitutionally.  (*See* CFMG MTD at 14–18.)

First, the CFMG Defendants argue that Plaintiffs have not established any way in
which CFMG itself, as an entity, acted unconstitutionally.  (*See* CFMG MTD at 14–16.)
A private medical care provider employed by a government entity acts under state law for
§ 1983 purposes when treating inmates.  *See West v. Atkins*, 487 U.S. 42, 54 (1988).  As
explained above, a pretrial detainee has the right to adequate medical care, *see Carnell*,
74 F.3d at 779, which includes the right to psychiatric treatment, *see Gibson*, 290 F.3d at
1187.  To find a defendant liable for failing to provide medical care, the plaintiff must
establish that the defendant "acted with deliberate indifference in failing to respond to a
serious medical need."  *Frost v. Agnos*, 152 F.3d 1124, 1130 (9th Cir. 1998).  Deliberate
indifference may be manifested by (1) intentionally denying or delaying access to
medical care, or, (2) intentionally interfering with treatment once it is prescribed.  *See
Estelle*, 429 U.S. at 104–05.  Alternatively, deliberate indifference "is the equivalent of

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL MINUTES – GENERAL**

| Case No. | **CV 16-03084-BRO (RAOx)** | Date | March 7, 2017 |
|---|---|---|---|
| Title | **M.S. ET AL. V. COUNTY OF VENTURA ET AL.** | | |

recklessly disregarding" a serious risk of harm. *Farmer*, 511 U.S. at 837. "Mere
negligence in the provision of medical care, however, does not constitute a constitutional
violation." *Frost*, 152 F.3d at 1130. An entity—including a privately contracted entity
like CFMG—may only be held liable under § 1983 if the entity enforced an
unconstitutional policy, custom, or practice. *See Tsao v. Desert Palace, Inc.*, 698 F.3d
1128, 1139 (9th Cir. 2012).

Plaintiffs claim that they have established facts indicating that CFMG participates
in a pattern or practice of intentionally delaying sufficient psychiatric care. (*See* CFMG
Opp'n at 18.) The Court agrees. Specifically, Plaintiffs allege that CFMG is responsible
for all the medical care provided at Ventura County jails, (*see* SAC ¶ 139), and that
CFMG has consistently understaffed these jails, (*see* SAC ¶ 142). "[I]nadequate staffing
can create a risk of substantial harm in a prison setting sufficient to qualify as deliberate
indifference." *Tandel v. County of Sacramento*, Nos. 2:11-cv-00353MCE-AC, 2:09-cv-
00842-MCE-CGH, 2015 WL 1291377, at *11 (E.D. Cal. Mar. 20, 2015) (citing *Hoptowit
v. Ray*, 682 F.2d 1237, 1251 (9th Cir. 1982)). In addition, Plaintiffs' allege that
Defendants, including CFMG, "provide little to no individual group treatment to inmates
with mental health problems, even for inmates who are acutely or chronically mentally
ill," and do not provide psychosocial rehabilitation services. (SAC ¶¶ 144–45.) Because
Plaintiffs allege a widespread practice of insufficient staffing and failing to provide
inmates mental health treatment, and CFMG is the entity contracted to provide medical
services at Ventura County jail facilities, the Court finds that Plaintiffs' allegations give
rise to the inference that these policies and practices are implemented by CFMG. Thus,
CFMG may be held liable as an entity.

Second, the CFMG Defendants argue that Plaintiffs have not established how
individual CFMG Defendants Adler, Pollack, and Fithian may be held individually liable.
(*See* CFMG MTD at 17–18.) Plaintiffs aver that the individual CFMG Defendants are
responsible for the policies and procedures giving rise to the due process violation. (*See*
CFMG Opp'n at 19–21.) As the Court explained above, supervisory liability may exist,
even without individual participation, where "supervisory officials implement a policy so
deficient that the policy itself is a repudiation of constitutional rights and is the moving
force of a constitutional violation." *Prasad*, 958 F. Supp. 2d at 1113. Thus, where, as
here, the unconstitutional policy or practice is the alleged understaffing of a jail and the
failure to offer sufficient medical treatment, the individuals responsible for creating or
implementing these policies or practices may be held individually liable. *See Tandel*,

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES – GENERAL

| Case No. | CV 16-03084-BRO (RAOx) | Date | March 7, 2017 |
|---|---|---|---|
| Title | M.S. ET AL. V. COUNTY OF VENTURA ET AL. | | |

2015 WL 1291377, at *13 (denying summary judgment where supervisory sheriff was aware of understaffing and a lack of access to medical care at a jail).

Here, Plaintiffs allege that Defendant Fithian is the Medical Director of CFMG "and the physician responsible for establishing policies and practices for CFMG employees." (SAC ¶ 32.)  Defendant Adler is the on-site Medical Director of CFMG and is "the physician hired to provide medical care, attention, and treatment to civil detainees, pre-trial detainees, and sentenced inmates at VCPTDF," and is responsible for the "hiring, training, supervision and management of subordinate medical staff providers." (SAC ¶ 33.)  Defendant Pollack is a psychiatrist at VCPTDF and is responsible for providing mental health treatment to detainees at VCPTDF.  (SAC ¶ 34.)  Thus, based on these allegations, the Court finds that it is reasonable to draw the inference that Defendant Fithian, who allegedly has the authority to implement policies and practices for CFMG employees, knew or should have known of the lack of sufficient treatment options at VCPTDF and may be held liable for his failure to correct this policy or practice.  Similarly, the Court finds that based on Plaintiffs' allegations that Defendant Adler was responsible for hiring medical staff at VCPTDF, the inference may be drawn that the facility was understaffed due to his deliberate indifference in hiring sufficient medical staff.  As to Defendant Pollack, however, Plaintiffs allege no facts indicating that he was responsible for creating or implementing policies, was responsible for hiring, or otherwise acted deliberately indifferent in treating inmate patients.

Therefore, in sum, the Court **DENIES** the CFMG Defendants' Motion to Dismiss Plaintiffs' second cause of action as to CFMG, Defendant Fithian, and Defendant Adler. Plaintiffs' second cause of action against Defendant Pollack, however, is **DISMISSED without prejudice**.

### C.    Plaintiffs' ADA Title II and Rehabilitation Act Claims

Next, Plaintiffs' third, fourth, and sixth causes of actions are claims against the State and County Defendants for alleged violations of Title II of the ADA and § 504 of the Rehabilitation Act.  (*See* SAC ¶¶ 152–83, 188–201.)  As the Court explained in its prior Order, "Title II of the [ADA] and § 504 of the Rehabilitation Act . . . 'both prohibit discrimination on the basis of disability.'"  *Bloodworth v. Krall*, No. 09 CV 2671 MMA (CAB), 2011 WL 1043726, at *3 (S.D. Cal. Mar. 22, 2011) (quoting *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002)).  Title II of the ADA provides that "no qualified

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES – GENERAL

| Case No. | CV 16-03084-BRO (RAOx) | | Date | March 7, 2017 |
|---|---|---|---|---|
| Title | M.S. ET AL. V. COUNTY OF VENTURA ET AL. | | | |

individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance."[15] 29 U.S.C. § 794(a). To state a viable claim under either statute, the plaintiff must sufficiently allege that: "'(1) he is an "individual with a disability"; (2) he was "'excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability.'" *Rodde v. Bonta*, 357 F.3d 988, 995 (9th Cir. 2004) (quoting *Weinreich v. L.A. Cty. MTA*, 114 F.3d 976, 978 (9th Cir. 1997)). In the Court's prior Order dismissing Plaintiffs' ADA and Rehabilitation Act claims, the Court indicated that Plaintiffs had "failed to establish a causal connection between their disability and any alleged discrimination." (Order at 22.)

### 1.    The State Defendants

Plaintiffs now claim that they have stated a viable claim under two theories: (1) a disparate impact theory; and, (2) an intentional discrimination theory. (*See* State Opp'n at 16–22); *see also Crowder v. Kitagawa*, 81 F.3d 1480, 1483 (9th Cir. 1996) ("Congress intended to prohibit outright discrimination, as well as those forms of discrimination which deny disabled persons public services disproportionately due to their disability."). In its prior Order, the Court noted that Plaintiffs had not clearly explained "what programs, activities, or other discrimination" Plaintiffs alleged were at issue. (*See* Order at 20.) In their SAC, Plaintiffs clarify that the "services" at issue is the State Defendants' failure to provide adequate mental health treatment to IST detainees. (*See* SAC ¶ 154.)

---

[15] "Because the ADA was modeled on section 504 of the Rehabilitation Act, 'courts have applied the same analysis to claims brought under both statutes.'" *Boose v. Tri-Cty. Metro. Transp. Dist. of Or.*, 587 F.3d 997, 1001 n.5 (9th Cir. 2009) (quoting *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999)). In addition, the parties address Plaintiffs' ADA and Rehabilitation causes of action simultaneously. Therefore, the Court will address Plaintiffs' ADA and Rehabilitation Act claims together.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL MINUTES – GENERAL**

| Case No. | **CV 16-03084-BRO (RAOx)** | | Date | March 7, 2017 |
|---|---|---|---|---|
| Title | **M.S. ET AL. V. COUNTY OF VENTURA ET AL.** | | | |

The crux of a disparate impact claim is a facially neutral policy.[16]  *See Alexander v. Choate*, 469 U.S. 287, 309 (1985) (determining whether rule that was "neutral on its face" had a disparate impact on the disabled); *K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1102 (9th Cir. 2013) ("[T]o challenge a facially neutral government policy on the ground that it has a disparate impact on people with disabilities, the policy must have the effect of denying meaningful access to public services."); *Crowder*, 81 F.3d at 1483–84 (explaining that Congress intended for the ADA to apply to claims were the barriers arise from policies that are "facially neutral but may work to effectuate discrimination against disabled persons" such as stairs with no access for the wheelchair-bound or communicating only by spoken word and preventing the deaf from obtaining information); *Pruett v. Arizona*, 606 F. Supp. 2d 1065, 1072 (D. Ariz. 2009) ("Section 12132 prohibits both outright discrimination against individuals with disabilities and forms of discrimination, including facially neutral laws, that deny disabled persons meaningful access to public services.").

In *Crowder*, for instance, the Ninth Circuit addressed Hawaii's rules regarding the quarantine of animals upon their arrival in Hawaii.  *See Crowder*, 81 F.3d at 1481–82. To prevent the introduction of rabies into Hawaii, the state "established a 120-day quarantine in a quarantine station for dogs, cats and other carnivorous animals entering Hawaii from the United States mainland or any other country that is not considered rabies free."  *Id.*  The Court explained that "[a]lthough Hawaii's quarantine requirement applies equally to all persons entering the state with a dog, its enforcement burdens visually-impaired persons in a manner different and greater than it burdens others" due to the visually-impaired's use of guide dogs.  *Id.* at 1484.  Accordingly, the Court held that "Hawaii's quarantine requirement [was] a policy, practice or procedure which discriminates against visually-impaired individuals by denying them meaningful access

---

[16] The Court finds Plaintiffs' reliance on *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999) (plurality), unavailing.  There, the Court addressed the narrow issue of "whether the proscription of discrimination may require placement of persons with mental disabilities in community settings rather than in institutions."  *Id.* at 587.  Ultimately, the Court held that "States are required to provide community-based treatment for persons with mental disabilities when the State's treatment professionals determine that such placement is appropriate, the affected persons do not oppose such treatment, and the placement can be reasonably accommodated."  *Id.* at 607.  *Olmstead* was not based on a disparate impact theory and its application is generally limited to the facts before it.  Plaintiffs make no similar challenge here, as they do not argue that they suffered "unjustified institutional isolation."  *Id.* at 600. Thus, the Court finds *Olmstead* inapposite.

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES – GENERAL

| Case No. | CV 16-03084-BRO (RAOx) | | Date | March 7, 2017 |
|---|---|---|---|---|
| Title | M.S. ET AL. V. COUNTY OF VENTURA ET AL. | | | |

to state services, programs and activities by reason of their disability in violation of the
ADA." *Id.* at 1485.

Here, Plaintiffs challenge Patton's one in, one out policy as preventing or
interfering with their ability to access mental health restorative services. This policy is
facially neutral, in that it would apply to any potential Patton admittee, regardless of
whether the admittee was disabled. However, like in *Crowder*, this policy has a disparate
impact on the disabled, because it is only the mentally disabled who are seeking
admittance at Patton.

"When a state's policies, practice or procedures discriminate against the disabled
in violation of the ADA, Department of Justice regulations require reasonable
modifications in such policies, practices or procedures," *id.*, if those modifications "are
necessary to avoid discrimination on the basis of disability, unless the public entity can
demonstrate that making the modifications would fundamentally alter the nature of the
service, program, or activity," 28 C.F.R. § 35.130(b)(7). "As the regulatory language
makes clear, entities are required only to make *reasonable* changes in existing policies in
order to accommodate individuals' disabilities." *Townsend v. Quasim*, 328 F.3d 511, 518
(9th Cir. 2003) (emphasis in original). "[C]ourts evaluating fundamental alteration
defenses must take into account financial and other logistical limitations on a state's
capacity to provide integrated services to the disabled . . . ." *Id.* at 519.

Here, Plaintiffs contend that one such possible modification would be to
recommend more placements at facilities other than Patton. (*See* State Opp'n at 20.)
California's statutory scheme allows for placements at county facilities for treatment, as
well as state hospitals, *see* Cal. Penal Code § 1370(a)(1)(B)(i), and Plaintiffs allege that
the placement recommendations are made based on State-created guidelines, (*see* SAC
¶ 49.B). Thus, it appears that one way in which the State Defendants could ensure that
IST detainees are provided more timely treatment would be through changing the
guidelines to allow more alternative placement recommendations. It is not clear as a
matter of law that this type of modification would fundamentally alter the nature of the
State's treatment of IST detainees.[17] Moreover, the Court finds that it would be

---

[17] By comparison, if Plaintiffs' only proffered alternative was to build an additional hospital this would
likely be considered a fundamental alteration. *See Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 613

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL MINUTES – GENERAL**

| Case No. | CV 16-03084-BRO (RAOx) | | Date | March 7, 2017 |
|----------|------------------------|---|------|---------------|
| Title | M.S. ET AL. V. COUNTY OF VENTURA ET AL. | | | |

inappropriate to decide whether this alternative would fundamentally alter the nature of its programs at the motion to dismiss stage. *See Cal. Council of the Blind v. County of Alameda*, 985 F. Supp. 2d 1229, 1240 (N.D. Cal. 2013) ("Defendants do not argue that providing a functional, accessible voting machine at every polling site on Election Day will be an undue burden or fundamental alteration. Nor should they on a motion to dismiss, in light of the fact they bear the burden of proof on this point."). Thus, the Court finds that Plaintiffs have adequately stated a Title II ADA claim against Defendants Ahlin and Oreol based on Patton's one in, one out policy.

Plaintiffs also allege that the State Defendants intentionally discriminate against Plaintiffs by (1) failing to provide adequate mental treatment, (2) depriving them access to the courts, (3) prolonging sentences by failing to provide immediate restorative services, and, (4) depriving them of equal statutory pre-trial custody credits. (*See* State Opp'n at 17.) Once again, however, the Court finds that Plaintiffs have failed to establish that the State Defendants' failure to provide timely mental health restoration services is *due to* their disability. Once Plaintiffs were found incompetent by the court, they were ordered into the placement at a state hospital, (*see* SAC ¶¶ 10, 13)—a decision made based on their disability. But it is not this decision that Plaintiffs allege is discriminatory. Once they were ordered into the custody, they were required to wait for admission into Patton at a Ventura County jail. During this time at the jail, Plaintiffs did not receive mental health restoration treatment; however, the failure to receive this treatment was not based on Plaintiffs' disability, but on the lack of space at Patton. (*See* SAC ¶¶ 63–64.) Therefore, Plaintiffs have failed to establish that the State Defendants' failure to provide mental health restoration services was by reason of Plaintiffs' disability.

Nonetheless, the Court **DENIES** the State Defendants' Motion to Dismiss Plaintiffs' third and sixth causes of action based on their disparate impact theory.

### 2. The County Defendants

Plaintiffs also bring ADA Title II and Rehabilitation Act claims against the County Defendants. (*See* SAC ¶¶ 169–83, 188–201.) Plaintiffs' claims against the County Defendants appear to be based on two primary courses of conduct: (1) that the County

---

(1999) (plurality) (Kennedy, J., concurring) ("It follows that a State may not be forced to create a community-treatment program where none exists.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| Case No. | **CV 16-03084-BRO (RAOx)** | | Date | March 7, 2017 |
|---|---|---|---|---|
| Title | **M.S. ET AL. V. COUNTY OF VENTURA ET AL.** | | | |

Defendants failed to provide adequate medical treatment to Plaintiffs (and other mentally
incompetent detainees); and, (2) that the County Defendants treated medically
incompetent patients differently and placed them in isolation due to their disabilities.
(*See* County Opp'n at 17–20.)

First, the Ninth Circuit has unequivocally held that "[t]he ADA prohibits
discrimination because of disability, not inadequate treatment for disability."[18]  *Simmons
v. Najavo County*, 609 F.3d 1011, 1022 (9th Cir. 2010); *see also O'Guinn v. Nev. Dep't
of Corrs.*, 468 F. App'x 651, 653 (9th Cir. 2012) (holding that the ADA does not apply to
claims that a detainee "was discriminatorily denied mental health treatment because of
his mental health disability"); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996)
("[T]he [ADA] would not be violated by a prison's simply failing to attend to the medical
needs of its disabled prisoners."); *see Fetter v. Placer Cty. Sheriff*, No. 2:12-cv-02235-
GEB-EFB, 2014 WL 4078638, at *5 (E.D. Cal. Aug. 14, 2014) (dismissing ADA and
Rehabilitation Act claims where the plaintiff alleged that the defendants failed to provide
him with adequate access to medical care).

Here, Plaintiffs argue that the County Defendants have discriminated against them
by "fail[ing] to train their staff in adequate ways to treat mentally ill inmates," "fail[ing]
to maintain sufficient staff to provide minimally adequate care to the mentally ill
population," failing to provide adequate facilities and housing for the mentally ill, failing
to obtain outside medical records for treatment, failing to provide a "functional grievance
policy" to address the needs of the mentally ill population, failing to ensure effective
communications between mentally ill patients and staff, and failing to provide
psychosocial rehabilitation services.  (*See* County Opp'n at 17–18.)  These allegations

---

[18] Plaintiffs allege that the County Defendants provided insufficient medical treatment in general, while
they allege that the State Defendants discriminated against them as disabled persons by being
deliberately indifferent to their statutorily-required mental health restoration treatment.  *See Payne v.
Arizona*, No. CV 09-01195-PHX-NVW, 2012 WL 1151957, at *4 (D. Ariz. Apr. 5, 2012) ("While
evidence of discriminatory medical care can constitute a claim under the ADA, claims based solely on
provision of inadequate or negligent medical care are not cognizable under the ADA.").  Thus,
Plaintiffs' allegations against the State Defendants addressed above amount to more than a violation of
the ADA for "inadequate treatment for disability."  *Simmons*, 609 F.3d at 1022.  Therefore, while the
Court finds *Simmons* bars Plaintiffs' claims against the County Defendants, it does not bar their claims
against the State Defendants.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL MINUTES – GENERAL**

| Case No. | CV 16-03084-BRO (RAOx) | | Date | March 7, 2017 |
|---|---|---|---|---|
| Title | M.S. ET AL. V. COUNTY OF VENTURA ET AL. | | | |

amount to, effectively, negligence or a claim for medical practice and do not give rise to an ADA claim.

Separately, Plaintiffs allege that the County Defendants have isolated mentally ill inmates preventing them from accessing the same services as non-mentally ill inmates and placed mentally inmates "in safety cells unnecessarily." (*See* County Opp'n at 17.) But Plaintiffs concede that these separations and punishments were due to "a variety of violations of the jail rules." (*See* SAC ¶¶ 11, 16.) Thus, Plaintiffs' allegations indicate that the County Defendants' treatment of IST detainees is not based on their disability, but on their misconduct. Moreover, to the extent Plaintiffs claim that they participated in misconduct only because they were otherwise disabled, the Ninth Circuit has rejected this argument.

For instance, in *O'Guinn*, the plaintiff brought an ADA claim, arguing that prison officials "punished him for manifesting symptoms of his mental disability." *See O'Guinn*, 468 F. App'x at 653. However, the Court noted that he was punished not because he was disabled, but because he had acted out, though he only acted out because of his mental disability. *See id.* at 653–54. Regardless, the court held that the plaintiff's claim failed because there was no evidence "that the disciplinary action was on account of his disability—rather than on account of his misconduct." *Id.* at 654 (rejecting argument based on "a chain of causation: because he was untreated, he committed misconduct; because of his misconduct, he was disciplined"); *see also Simmons*, 609 F.3d at 1021–22 (finding no discrimination where prisoner was "deprived of outdoor recreation" because he was on suicide watch, though he was only on suicide watch due to his alleged disability). Because Plaintiffs concede that their deprivation of rights was based on their misconduct rather than their disability, their claims under the ADA and the Rehabilitation Act fail.

Accordingly, Plaintiffs' fourth and sixth causes of action against the County Defendants are **DISMISSED without prejudice**.

**D.     Plaintiffs' Title III ADA Claims**

Plaintiffs' fifth claim alleges that the CFMG Defendants and the MHM Defendants violated Title III of the ADA. (*See* SAC ¶¶ 184–87.) Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and

LINK:

| Case No. | CV 16-03084-BRO (RAOx) | Date | March 7, 2017 |
|---|---|---|---|
| Title | M.S. ET AL. V. COUNTY OF VENTURA ET AL. | | |

equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). "A place of public accommodation" is defined under Title III as one of several specifically-enumerated type of private entities, such as a hotel, a restaurant, or a theater. *See* 42 U.S.C. § 12181(7). In the Court's prior Order, it dismissed Plaintiffs' Title III claims because they had failed to establish how either the CFMG or the MHM Defendants operated a place of public accommodation. (*See* Order at 24.) The CFMG and MHM Defendants now move for dismissal on the same grounds. (*See* CFMG MTD at 19–23; MHM MTD at 16–19.)

### 1.    The CFMG Defendants

First, the CFMG Defendants argue that jails are not places of public accommodation within the meaning of Title III. (*See* CFMG MTD at 19–20.) The Ninth Circuit has not addressed this issue, and district courts within this Circuit have reached conflicting conclusions. *See Shaymus v. Tulare County*, No. 1:14-cv-01633-MCE-GSA, 2015 U.S. Dist. LEXIS 70828, at *20–*21 (E.D. Cal. May 29, 2015) (finding jail not a place of public accommodation under Title III because it is not included in 42 U.S.C. § 12181(7)); *Hernandez v. County of Monterey*, 70 F. Supp. 3d 963, 977–78 (N.D. Cal. 2014) (finding independent contractor operating at jail could operate a place of public accommodation under Title III).

However, the Court need not decide whether jails may be considered a place of public accommodation, because even assuming they can, Plaintiffs have not pleaded facts establishing that CFMG operates in a physical space at VCPTDF, thereby operating as a place of public accommodation. *See Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000) (explaining that Title III applies to "actual, physical places where goods or services are open to the public, and places where the public gets those goods or services"). In *Hernandez*, the court held that the plaintiffs had alleged a valid Title III claim against CFMG (who was also the relevant defendant in that action), as a private contractor operating at a jail facility because they "sufficiently alleged that CFMG 'operates' a professional office in the actual physical 'place' of the jail to provide the 'public accommodation' of all required medical care." *Hernandez*, 70 F. Supp. 3d at 978. Title III specifically includes a "professional office of a health care provider" and a "hospital" as places of public accommodation. *See* 42 U.S.C. § 12181(7)(F). Thus,

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL MINUTES – GENERAL**

| Case No. | CV 16-03084-BRO (RAOx) | | Date | March 7, 2017 |
|----------|------------------------|---|------|---------------|
| Title | M.S. ET AL. V. COUNTY OF VENTURA ET AL. | | | |

relying on the broad scope of Title III, *Hernandez* held that the plaintiffs' allegations that CFMG operated a professional office within the jail was sufficient to establish that "the health care facilities that CFMG operates in the jail are covered service establishments and public accommodations within the meaning of Title III." *Hernandez*, 70 F. Supp. 3d at 977.

Here, Plaintiffs allege that CFMG is responsible for the medical care and treatment of inmates at Ventura County jail facilities. (*See* SAC ¶ 31.) But Plaintiffs include no allegations regarding where CFMG keeps its physical offices, whether it operates an office or clinic-like space at any Ventura County jail, or whether any of the individual CFMG Defendants likewise operate physical offices there. Thus, unlike in *Hernandez*, Plaintiffs do not sufficiently allege facts indicating that CFMG operates a "professional office within the jail." Therefore, Plaintiffs have failed to plead a sufficient Title III claim against CFMG, and Plaintiffs' fifth cause of action against the CFMG Defendants is **DISMISSED without prejudice**.[19]

### 2.    The MHM Defendants

The MHM Defendants make nearly identical arguments to that of the County Defendants, (*see* MHM MTD at 17), and the Court finds that Plaintiffs' Title III claims fail for the same reasons. As explained above, Title III applies only to places of public accommodation that "are actual, physical places." *Weyer*, 198 F.3d at 1114. Plaintiffs allege only that MHM Services "entered into a contract with MHM Services in 2014 to provide mental health services in Ventura County," but do not allege that MHM Services operates any office or any facility at any state or county facility within Ventura County. (*See* SAC ¶ 39.) In other words, Plaintiffs' allege that the MHM Defendants perform services on behalf of the State Defendants, but not that they operate any physical location.

Further, even if Plaintiffs had adequately alleged that MHM Services was a place of public accommodation, Plaintiffs have failed to allege how MHM Services

---

[19] Moreover, it appears that Plaintiffs rely on the same factual allegations in its Title III claim against the CFMG Defendants as they rely on for their Title II claim against the County Defendants. (*Compare* County Opp'n at 17–18 *with* CFMG Opp'n at 22–23.) As the Court has found that Plaintiffs have failed to plead a viable discrimination claim against the County Defendants under Title II, Plaintiffs' Title III claims against the CFMG Defendants fail on the same grounds.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL MINUTES – GENERAL**

| Case No. | CV 16-03084-BRO (RAOx) | | Date | March 7, 2017 |
|----------|------------------------|---|------|---------------|
| Title | M.S. ET AL. V. COUNTY OF VENTURA ET AL. | | | |

discriminated against Plaintiffs. Plaintiffs' allegations indicate that the MHM Defendants were responsible for making placement recommendations for IST detainees based on DSH guidelines. (*See* SAC ¶ 49.B.) One of the elements of a Title III claim requires that the plaintiff be "excluded from participation in or denied the benefits of a public entity's services, programs or activities." *Rodde v. Bonta*, 357 F.3d 988, 995 (9th Cir. 2004). As alleged, the MHM Defendants' services are limited to the placement of detainees at appropriate facilities. (*See* SAC ¶¶ 39, 49.B, 187.B.) Plaintiffs do not allege that they were excluded from or denied the benefits of these services. In other words, Plaintiffs do not allege that the MHM Defendants refused to provide or denied them the benefit of a placement recommendation based on their disability. They merely disagree with the MHM Defendants' recommendation. Accordingly, Plaintiffs' fifth cause of action for violation of Title III of the ADA against the MHM Defendants is **DISMISSED without prejudice**.

### E. Plaintiffs' Unruh Civil Rights Act Claim

Plaintiffs' seventh cause of actions alleges that the CFMG and the MHM Defendants violated the UCRA, California Civil Code section 51 *et seq.* (SAC ¶¶ 202–08.) The UCRA provides that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their . . . disability . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). The UCRA also explicitly provides that a violation of the ADA constitutes a violation of the UCRA. *See* Cal. Civ. Code § 51(f). To plead a viable disability discrimination claim under the UCRA, a plaintiff must establish that: (1) he "was denied the full and equal accommodations, advantages, facilities, privileges, or services in a business establishment"; (2) his "disability was a motivating factor for this denial"; (3) "defendants denied plaintiff the full and equal accommodations, advantages, facilities, privileges, or services"; and, (4) "defendants' wrongful conduct caused plaintiff to suffer injury, damage, loss or harm." *Wilkins-Jones*, 859 F. Supp. 2d at 1048.

Just as in the Court's prior Order, the Court finds (as indicated above) that Plaintiffs have failed to adequately plead an ADA claim against the CFMG and the MHM Defendants. Thus, though some courts have held that where a plaintiff establishes a viable ADA claim, the plaintiff need not plead intentional discrimination under the UCRA, *see id.* at 1051; *see also Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 665 (Cal. Ct.

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES – GENERAL

| Case No. | CV 16-03084-BRO (RAOx) | | Date | March 7, 2017 |
|---|---|---|---|---|
| Title | M.S. ET AL. V. COUNTY OF VENTURA ET AL. | | | |

App. 2009), where, as here, the plaintiff seeks to plead a UCRA claim outside of the
ADA, he must plead intentional discrimination, *Wilkins-Jones*, 859 F. Supp. 2d at 1051
("To the extent Plaintiff seeks to make an Unruh Act claim separate from an ADA claim,
she must allege intentional discrimination.").

First, Plaintiffs identify seven ways in which the CFMG and MHM Defendants
allegedly discriminated against them: (1) failing to provide mental health treatment;
(2) holding IST detainees in isolation; (3) punishing IST detainees based on their IST
condition; (4) not giving IST detainees the same visiting, phone call, and commissary
rights as non-IST detainees; (5) requiring IST detainees to serve longer sentences than
non-IST detainees; (6) denying equal access to the Court; and, (7) that the MHM
Defendants failed to provide placement recommendations which assure ISTs receive
adequate and timely restorative treatment. (*See* SAC ¶ 206.) As has been addressed
above, Plaintiffs allege that the CFMG Defendants are responsible only for medical
treatment at Ventura County jails and that the MHM Defendants are responsible for
providing placement recommendations for IST detainees. (*See* SAC ¶¶ 31–34, 39–40.)
Thus, reasons (2) through (6), in which Plaintiffs allege that they have been discriminated
against due to how they have been treated while in custody do not appear to fall within
the purview of either the CFMG or MHM Defendants' authority. Accordingly, this
alleged conduct cannot give rise to the CFMG or the MHM Defendants' liability.

Because the CFMG Defendants are responsible for providing mental health
treatment at Ventura County facilities, Plaintiffs' allegations that they were denied mental
health treatment is the only possible proffered reason that could support the CFMG
Defendants' liability. (*See* SAC ¶ 206.A.) Similarly, the seventh reason—allegedly
inadequate placement recommendations—is the only possible basis for the MHM
Defendants' liability. (*See* SAC ¶ 206.G.) However, Plaintiffs' claims against both sets
of Defendants fail.

As to the failure to provide mental health treatment, Plaintiffs fail to allege that
they were denied "full and equal" services or accommodations. *See* Cal. Civ. Code
§ 51(b). In other words, Plaintiffs' allegations against the CFMG Defendants are
essentially that they failed to provide adequate medical (and mental health) treatment to
all detainees or inmates at Ventura County jail facilities. (*See* SAC ¶¶ 71–72.) Plaintiffs
do not claim that they provided any different treatment to non-mentally incompetent
inmates held at these facilities. Thus, it is unclear how Plaintiffs have been denied full

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL MINUTES – GENERAL**

| Case No. | **CV 16-03084-BRO (RAOx)** | Date | March 7, 2017 |
|---|---|---|---|
| Title | **M.S. ET AL. V. COUNTY OF VENTURA ET AL.** | | |

and equal access to this medical treatment.  Further, Plaintiffs have failed to establish that their disability was a motivating factor for any denial of services.  Plaintiffs have alleged no facts indicating that the CFMG Defendants failed to provide Plaintiffs with mental health services due to their disability.

In addition, to establish intentional discrimination under the UCRA, a plaintiff must allege facts indicating "willful, affirmative misconduct on the part of those who violate the [UCRA]."  *Koebke v. Bernardo Heights Country Club*, 36 Cal. 4th 824, 853 (Cal. 2005) (internal quotation marks omitted).  Plaintiffs' allegations indicate that, at most, the MHM Defendants acted passively in failing to take additional steps to ensure that Plaintiffs were placed at different, less crowded facilities.  None of Plaintiffs' allegations indicate that the CFMG or MHM Defendants acted intentionally; i.e., that the CFMG Defendants affirmatively sought to discriminate against the disabled by providing them with inadequate mental health treatment or that the MHM Defendants purposefully recommended that Plaintiffs be placed in an overcrowded facility.  Therefore, Plaintiffs' SAC "falls short of alleging the 'willful, affirmative misconduct' required to state an Unruh Act claim separate from an ADA claim."  *Wilkins-Jones*, 859 F. Supp. 2d at 1053. Accordingly, Plaintiffs' seventh cause of action is **DISMISSED without prejudice**.

### F.    Plaintiffs' Claim Under California Civil Code Section 54

Plaintiffs' eighth cause of action arises under California Civil Code section 54 (commonly referred to as the California Disabled Persons Act or "CDPA"), which provides that "[i]ndividuals with disabilities or medical conditions have the same right as the general public to the full and free use of the streets, highways, sidewalks, public buildings, medical facilities, including hospitals, clinics, and physicians' offices, public facilities, and other public places."  Cal. Civ. Code § 54(a).  "The CDPA is concerned solely with *physical* access to public spaces."  *Wilkins-Jones*, 859 F. Supp. 2d at 1054 (emphasis in original).  "Thus, Plaintiff cannot maintain a claim based on the denial of services (as opposed to denial of physical access) under the CDPA."[20]  *Id.*  In the Court's

---

[20] Plaintiffs' SAC claims to be bringing this cause of action against all Defendants other than the public State Defendants.  (*See* SAC.)  In their Opposition, however, Plaintiffs withdraw this claim against the CFMG and the MHM Defendants.  (*See* CFMG Opp'n at 28; MHM Opp'n at 18.)  Accordingly, Plaintiffs' eighth cause of action against the CFMG and the MHM Defendants is **DISMISSED without prejudice**.

LINK:

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES – GENERAL

| Case No. | CV 16-03084-BRO (RAOx) | Date | March 7, 2017 |
|---|---|---|---|
| Title | M.S. ET AL. V. COUNTY OF VENTURA ET AL. | | |

prior Order, it noted that Plaintiffs' factual basis for its CDPA claim was a failure to provide *services* rather than a claim regarding physical access to public spaces.  (*See* Order at 29.)  Plaintiffs' SAC provides no new allegations regarding diminished access to physical spaces.  Accordingly, Plaintiffs' eighth cause of action is **DISMISSED without prejudice**.[21]

### G.    Plaintiffs' Claim Under California Civil Code Section 52.1

Plaintiffs ninth cause of action arises under California Civil Code section 52.1 (commonly referred to as the "Bane Act").  The Bane Act makes it unlawful for any person "by threats, intimidation, [or] coercion" to interfere with "the exercise or enjoyment by any individual or individuals" of rights arising under federal or California laws.  *See* Cal. Civ. Code § 52.1(a).  "'The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., "threats, intimidation or coercion"), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law.'"  *Shoyoye v. County of Los Angeles*, 203 Cal. App. 4th 947, 955–56 (Cal. Ct. App. 2012) (citation omitted).  The statute does not require discriminatory

---

In addition, Plaintiffs fail to substantively oppose the State Defendants arguments in their Opposition.  (*See* State Opp'n at 23.)  It appears that Plaintiffs have made a typographical error as they indicate that they are conceding their claims against the CFMG Defendants without mentioning the State Defendants.  (*See id.*)  Failure to respond to the merits of one party's argument constitutes a concession of that argument.  *Ramirez v. Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197, 1210 (N.D. Cal. 2013) (deeming failure to oppose an argument as concession of the issue); *Hall v. Mortg. Inv'rs Grp.*, No. 2:11-CV-00952-JAM-GGH, 2011 WL 4374995, at *5 (E.D. Cal. Sept. 19, 2011) (explaining that the plaintiff's failure to oppose defendants' argument on motion to dismiss "serve[d] as a concession"); *Qureshi v. Countrywide Home Loans, Inc.*, No. C 09-4198 SBA, 2010 WL 841669, at *6 n.2 (N.D. Cal. Mar. 10, 2010) (holding that plaintiff's failure to address arguments as to why certain claims should not be dismissed as "an abandonment of those claims").  Accordingly, the Court construes Plaintiffs' lack of substantive response as an intent to withdraw their claim against the individual State Defendants.  Accordingly, Plaintiffs' eighth cause of action against the individual State Defendants is **DISMISSED without prejudice**.

[21] Plaintiffs' SAC notes that under section 54(c), a violation of the ADA also constitutes a CDPA violation.  (*See* SAC ¶ 211 (citing Cal. Civ. Code § 54(c)).)  However, the Court finds (as determined above) that Plaintiffs' have not stated a viable ADA claim against the County Defendants.  Accordingly, this provision is unavailing.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL MINUTES – GENERAL**

| Case No. | CV 16-03084-BRO (RAOx) | | Date | March 7, 2017 |
|---|---|---|---|---|
| Title | M.S. ET AL. V. COUNTY OF VENTURA ET AL. | | | |

animus or intent; rather, "[a] defendant is liable if he or she interfered with or attempted to interfere with the plaintiff's constitutional rights by the requisite threats, intimidation, or coercion." *Id.* at 956. Thus, "Bane Act liability extends only to rights violations accompanied by 'threats, intimidation, or coercion.'" *M.H. v. County of Alameda*, 90 F. Supp. 3d 889, 897 (N.D. Cal. 2013).

In its prior Order, the Court dismissed Plaintiffs' Bane Act claims because they failed to allege that Defendants participated in any coercive or threatening conduct. (*See* Order at 31–32.) However, the Court noted that "[i]n the context of medical treatment of prisoners, some courts have held that when a prison official is deliberately indifferent to the medical needs of a prisoner, Bane Act liability will lie." (Order at 31 n.24 (citing *M.H.*, 90 F. Supp. 3d at 899).) Accordingly, Plaintiffs now argue that, because they have adequately pleaded that Defendants were deliberately indifferent, their Bane Act claim is also adequately pleaded. (*See* State Opp'n at 23–24; County Opp'n at 25–26; CFMG Opp'n at 28–30; MHM Opp'n at 18–20.) In its prior Order, the Court declined to decide whether it was persuaded that alleged deliberate indifference supported a Bane Act claim. (*See* Order at 31 n.24.) Upon review of the relevant authority, however, the Court finds it does.

As courts have explained, the Bane Act protects against interference (or attempted interference) "by threats, intimidation, or coercion" in an individual exercising constitutionally-protected rights. *See Atayde v. Napa State Hosp.*, No. 1:16-cv-00398-DAD-SAB, 2016 WL 4943959, at *7 (E.D. Cal. Sept. 16, 2016). But, as the Court explained in its prior Order, "where coercion is inherent in the constitutional violation alleged, i.e., an overdetention in County jail, the statutory requirement of 'threats, intimidation, or coercion' is not met." *Shoyoye*, 203 Cal. App. 4th at 959; *see also Atayde*, 2016 WL 4943959, at *7 (noting that Fourth Amendment violations do not require a separate showing of coercion). In the context of a lack of medical treatment, mere negligence or medical malpractice does not give rise to a constitutional claim; rather, to plead a viable claim the plaintiff must allege deliberate indifference, which requires "a purposeful act or failure to respond to a prisoner's pain or possible medical need." *See Atayde*, 2016 WL 4943959, at *8 (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)). Thus, because "'deliberate indifference' has been a substantially higher standard than negligence, and has been associated with affirmatively culpable conduct," the Court finds that "a prisoner who successfully proves that prison officials

LINK:

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES – GENERAL

| Case No. | **CV 16-03084-BRO (RAOx)** | Date | March 7, 2017 |
|---|---|---|---|
| Title | **M.S. ET AL. V. COUNTY OF VENTURA ET AL.** | | |

acted or failed to act with deliberate indifference . . . adequately states a claim for relief under the Bane Act." *M.H.*, 90 F. Supp. 3d at 898–99.

Deliberate indifference may be manifested by (1) intentionally denying or delaying access to medical care, or, (2) intentionally interfering with treatment once it is prescribed. *See Estelle*, 429 U.S. at 104–05. As determined above, the Court has already found that the individual State Defendants may be held liable in their individual capacity for their apparent involvement in the implication (or lack of prevention) of the one in, one out policy at Patton that interfered with Plaintiffs' mental health restorative treatment.[22] In addition, the Court found that Plaintiffs have adequately stated deliberate indifference claims against Defendants CFMG, Fithian, and Adler for their alleged role in failing to adequately provide medical treatment at the Ventura County jails. The Court has found that Plaintiffs have not adequately alleged that the County Defendants were deliberately indifferent, however. Further, the Court finds that Plaintiffs' allegations as to the MHM Defendants do not establish deliberate indifference. As explained above, Plaintiffs have not pleaded any facts indicating that the MHM Defendants intentionally denied or delayed Plaintiffs' access to medical care; rather, their only role was to perform placement recommendations based on DSH guidelines. (*See* SAC ¶¶ 39–40, 49.B.) There are no facts indicating that when applying those guidelines and making placement recommendations Plaintiffs purposefully sought to prevent or interfere with Plaintiffs' treatment.

Thus, in sum, the Court finds that, based on deliberate indifference, Plaintiffs have adequately pleaded a Bane Act claim against Defendants Ahlin, Oreol, CFMG, Fithian, and Adler. Otherwise, Plaintiffs' Bane Act claim is **DISMISSED without prejudice**.

### H.    Plaintiffs' Speedy Trial Claim

---

[22] In their Motion, the individual State Defendants reiterate their argument that they are entitled to qualified and sovereign immunity as to Plaintiffs' Bane Act claims. (*See* State MTD at 19.) As Plaintiffs' Bane Act claim is premised on the exact conduct alleged in their first cause of action, and the Court has already addressed the State Defendants' arguments when addressing that claim, the Court does not address them again here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| Case No. | CV 16-03084-BRO (RAOx) | Date | March 7, 2017 |
| Title | M.S. ET AL. V. COUNTY OF VENTURA ET AL. | | |

Finally, Plaintiffs add a new claim in their SAC alleging that the State Defendants have violated their right to a speedy trial under the California Constitution.[23] (*See* SAC ¶¶ 224–28.) The Ninth Circuit has already rejected a similar claim. *See Trueblood v. Wash. State Dep't of Soc. & Health Servs.*, 822 F.3d 1037, 1042–44 (9th Cir. 2016). In *Trueblood*, the Ninth Circuit explained that due process—not the right to a speedy trial—governs pretrial detention. *See id.* at 1042. The court explained that the right to a speedy trial is "ill-suited" to claims based on pretrial detention, because the claims do not arise from a delay in the criminal proceedings; rather, "[t]heir complaint is that they should receive a timely determination of competency—a go or no-go decision on whether their criminal proceedings will move forward and whether they are eligible for restorative services." *Id.* at 1043. "Many of them will never be tried, or might not be tried until after a lengthy restorative treatment process. Their focus is not the guarantee of a speedy trial."[24] *Id.* at 1043–44. Moreover, Plaintiffs concede that competency-related delays are not relevant to the speedy trial inquiry. (*See* State Opp'n at 26.) Thus, as the only facts supporting Plaintiffs' speedy trial claim are competency-related delays, the Court finds that there are no other facts suggesting that Defendants violated Plaintiffs' right to a speedy trial.

Further, under California Penal Code section 1381, the remedy for an untimely claim is dismissal of the criminal charge. *See* Cal. Penal Code § 1381 ("In the event the action is not brought to trial within the 90 days the court in which the action is pending shall . . . dismiss the charge."). Plaintiffs do not seek dismissal of their criminal cases here. Thus, there is no adequate remedy that Plaintiffs may seek. Accordingly, Plaintiffs' tenth cause of action is **DISMISSED with prejudice**.[25]

---

[23] Plaintiffs do not indicate in their SAC which Defendants they are alleging violated Plaintiffs' right to a speedy trial, but in their Opposition papers clarify that they bring their claim against Defendants Ahlin, Oreol, MHM, and Lopez. (*See* MHM Opp'n at 20.)

[24] To the extent Plaintiffs attempt to differentiate between the Sixth Amendment and the California Constitution's right to a speedy trial, the Court finds the distinction unavailing. *See Jones v. Superior Court*, 3 Cal. 3d 734, 738 (Cal. 1970) ("The California provision for a speedy trial 'reflects the letter and spirit of' the Sixth Amendment to the United States Constitution . . . .'" (citation omitted)).

[25] If Defendants raised additional arguments in their Motions to Dismiss, the Court found that they were all arguments which would have, at most, resulted in dismissal of Plaintiffs' claims without prejudice. If

LINK:

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES – GENERAL

| Case No. | CV 16-03084-BRO (RAOx) | Date | March 7, 2017 |
|---|---|---|---|
| Title | M.S. ET AL. V. COUNTY OF VENTURA ET AL. | | |

## I.    The County Defendants' Request for a More Definite Statement

In the Court's prior Order, the Court held that "Plaintiffs (along with any potential class members) are required to bring suit under their full names." (Order at 34.)  Despite the Court's clear direction, Plaintiffs have failed to identify the potential class members by name, instead using only generic descriptions (i.e., "[a] female IST"). (*See* SAC ¶¶ 18–27.)  Accordingly, the Court **ORDERS** Plaintiffs to provide the names of the potential class members.  Failure to do so may result in the Court striking the portions of Plaintiffs' SAC that fail to comply with the Court's Order.  *See Baranyi v. University of Hawaii*, No. 13-00667 SOM/KSC, 2014 WL 4457195, at *3 (D. Haw. Sept. 9, 2014) ("The court may dismiss a complaint or a claim therein based on failure to comply with an order pursuant to its inherent power or to Rule 41(b) of the Federal Rules of Civil Procedure." (citing *Fendler v. Westage-Cal. Corp.*, 527 F.2d 1168, 1170 (9th Cir. 1975) (per curiam))).

## V.    CONCLUSION

Therefore, in the sum, the Court holds the following:

1) Plaintiffs' First Cause of Action is **DISMISSED with prejudice** as to the County and CFMG Defendants, **DISMISSED without prejudice** as to the MHM Defendants, but not dismissed as to Defendants Ahlin and Oreol;
2) Plaintiffs' Second Cause of Action is **DISMISSED with prejudice** as to the County Defendants, **DISMISSED without prejudice** as to Defendant Pollack, but not dismissed as to Defendants CFMG, Fithian, and Adler;
3) Plaintiffs' Third Cause of Action is not dismissed;
4) Plaintiffs' Fourth Cause of Action is **DISMISSED without prejudice**;
5) Plaintiffs' Fifth Cause of Action is **DISMISSED without prejudice**;
6) Plaintiffs' Sixth Cause of Action is **DISMISSED without prejudice** as to the County Defendants, but not dismissed as to the State Defendants;
7) Plaintiffs' Seventh Cause of Action is **DISMISSED without prejudice**;
8) Plaintiffs' Eighth Cause of Action is **DISMISSED without prejudice**;

---

the Court otherwise dismissed Plaintiffs' claim without prejudice, it did not address all of Defendants' additional arguments.

LINK:

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES – GENERAL

| Case No. | CV 16-03084-BRO (RAOx) | Date | March 7, 2017 |
|---|---|---|---|
| Title | M.S. ET AL. V. COUNTY OF VENTURA ET AL. | | |

9) Plaintiffs' Ninth Cause of Action is not dismissed as to Defendants Ahlin, Oreol, CFMG, Fithian, and Adler, but otherwise **DISMISSED without prejudice**;

10) Plaintiffs' Tenth Cause of Action is **DISMISSED with prejudice**; and,

11) Plaintiffs' Motion for Reconsideration is **DENIED as moot**.

Plaintiffs are **ORDERED** to file a Third Amended Complaint containing the names of the potential class members and amendments to their claims, if any, no later than **Monday, March 27, 2017, at 4:00 p.m.** Any future failure to adequately amend Plaintiffs' claims may result in their dismissal with prejudice. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (holding that leave to amend may be denied based on "repeated failure to cure deficiencies by amendments previously allowed").

**IT IS SO ORDERED.**

| | : |
|---|---|
| Initials of Preparer | rf |